# EXHIBIT A

LAW OFFICES
## Stetina Brunda Garred & Brucker
A PROFESSIONAL CORPORATION
PATENT, TRADEMARK, COPYRIGHT AND UNFAIR COMPETITION CAUSES

75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656

KIT M. STETINA
BRUCE B. BRUNDA
WILLIAM J. BRUCKER
MARK B. GARRED
MATTHEW A. NEWBOLES
ERIC L. TANEZAKI
LOWELL ANDERSON

SEAN O'NEILL
JAMES C. YANG
NATHAN S. SMITH
STEPHEN Z. VEGH

JESSIE WANG *
SHUNSUKE S. SUMITANI *
BENJAMIN N. DIEDERICH *

RECEIVED
DEC 3 0 2005
McCARTER & ENGLISH
WILMINGTON, DE

TELEPHONE      (949) 855-1246
FACSIMILE I    (949) 855-6371
FACSIMILE II   (949) 716-8197
www.stetinalaw.com
Writer's Direct E-mail:
landerson@stetinalaw.com

December 23, 2005



Michael P. Kelly.
Richard Winchester
James Freebery
Christopher Selzer
McCarter & English

RE: UD Technology Corp. v. Phenomenex, Inc. et al.
Our Ref. MAJOR.1221

Dear Sirs:

I write on behalf of Phenomenex, Inc. in the lawsuit which you filed on behalf of UD Technology, Corp. days before Christmas. Please withdraw the Complaint or sanctions will be sought not only from UD Technology, but to the extent permitted will also be sought from each of you personally, if Phenomenex is forced to respond to the Complaint.

Fed.R.Civ.P. 11 requires a reasonable investigation before commencing suit, and also requires cessation of suit when claims are found to lack merit. Similar obligations are found under the patent laws and trade secret laws, and redress is also available under malicious prosecution.

The Complaint alleges Phenomenex infringes U.S. Patent No. 5,599,625 by the sale of Phenomenex's "Jupiter" product. The patent names Dr. Wirth as an inventor, and involves coating silica with monolayers of polysiloxane.

Attached is an excerpt from a 1993 paper co-authored by Dr. Fatumbi and Dr. Wirth regarding the $^{29}Si$ and $^{13}C$ NMR Characterization of Mixed Horizontally Polymerized Monolayers on Silica Gel. The excerpt shows three NMR spectra including the prior art (top & bottom), and Dr. Wirth's patented silica (middle), with those images reproduced above for reference.

Also attached is a $^{13}C$ NMR spectra of Phenomenex's Jupiter 5 C18 300A sorbent that was taken by an independent laboratory, Spectral Data Services, Inc. Phenomenex considers this spectrum confidential, and it is being provided to you on the expectation that it will be treaded as

* PATENT AGENT

*Stetina Brunda Garred & Brucker*

December 23, 2005
Page 2

confidential, not disclosed to third parties and will be used for this litigation only. The spectrum is shown above so you can see that the spectra of Jupiter tracks the prior art spectra, and is different from the spectra of the patented product. In short, the products are different, there is not basis for infringement, and you should have performed such objective testing before alleging infringement. Since the alleged infringement began over 10 years ago, there is no excuse for an incomplete investigation, and since you imply many millions of dollars in damages are due then the cost of an adequate pre-litigation investigation is not a factor.

Each claim of Patent No. 5,599,625 also requires the density of hydrocarbly substitutents be "at least 7 micromoles per square meter of substrate surface." That limitation was added in order to obtain allowance of the patent claims, so that requirement must be scrupulosity met, and no equivalents are available. Phenomenex's Jupiter product uses less than 7 micromoles per square meter. I am willing to arrange the disclosure of suitable information to verify this upon suitable protective measures, or perhaps we can have a suitable third party verify this – if you explain why the $^{13}$C NMR analysis is not enough to warrant dismissal.

The remaining claims in the Complaint are based on disclosures made some 12-13 years ago and involve a non-disclosure agreement to which UD Laboratory was not a party. Phenomenex does not have a copy of that agreement. Please send that agreement, and any other written agreement on which UD Technology claims rights to me at 949-855-1246 (fax).

Your Complaint alleges a number of claims arising from the alleged breach of a March 1993 evaluation agreement. In Delaware the time within which a claim for breach of a written agreement (such as the non-disclosure agreement identified in the Complaint), is three years. 10 Del.C. §8119. In California where Phenomenex is located the period is four years, and in Arizona it is six years for contracts executed in Arizona and four years for contracts executed outside Arizona. ARS §§ 12-548, 12-144(e). No mater what limitations period is selected, it is long past and thus the burden of proving tolling of the limitations period is on UD Technologies. The limitations periods for the other claims also lapsed many years ago. Since Phenomenex has been selling its Jupiter brand product for over 10 years all claims are barred by the statute of limitations. The Complaint does not plead any tolling of the statute of limitations.

Please explain why you expect the Complaint to survive a motion for judgment on the pleadings, let alone survive later motions for laches and being barred by the statute of limitations.

For your information, the Jupiter product was primarily developed by an independent contractor from another country and who still lives in another country.

*Stetina Brunda Garred & Brucker*

December 23, 2005
Page 3

      I look forward to your response, and an acknowledgement that the spectra will be treaded in confidence. My offices are closed today, Friday, and are also Monday for the Christmas Holiday.

                                Sincerely,

                                Lowell Anderson

cc: F. Mahjoor

enclosures (2 pg)

# EXHIBIT B

LAW OFFICES
## Stetina Brunda Garred & Brucker
A PROFESSIONAL CORPORATION
PATENT, TRADEMARK, COPYRIGHT AND UNFAIR COMPETITION CAUSES

75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656

KIT M. STETINA
BRUCE B. BRUNDA
WILLIAM J. BRUCKER
MARK B. GARRED
MATTHEW A. NEWBOLES
ERIC L. TANEZAKI
LOWELL ANDERSON

SEAN O'NEILL
JAMES C. YANG
NATHAN S. SMITH
STEPHEN Z. VEGH

JESSIE WANG *
SHUNSUKE S. SUMITANI *
BENJAMIN N. DIEDERICH *

TELEPHONE         (949) 855-1246
FACSIMILE I       (949) 855-6371
FACSIMILE II      (949) 716-8197
www.stetinalaw.com
Writer's Direct E-mail:
landerson@stetinalaw.com

December 29, 2005

Michael P. Kelly.
McCarter & English
919 N. Market St., 19th Floor
Wilmington, DE 19801

RE: UD Technology Corp. v. Phenomenex, Inc. et al.
Our Ref. MAJOR.1221

Dear Mr. Kelly

You timed the service of the Complaint so that the Answer by Phenomenex, Inc. is due a few days after the end of the Christmas and New Year holidays. Many Phenomenex employees are on vacation over the holidays and it is difficult to acquire information on the activities alleged in the Complaint that occurred 12 or more years ago. On behalf of Phenomenex, I request an extension of time until January 30, 2006 to respond to the Complaint.

Please let me know whether you will stipulate to such a time extension.

Sincerely,

*Lowell Anderson*

Lowell Anderson

* PATENT AGENT

# EXHIBIT C

Case 1:05-cv-00842-GMS   Document 13-2   Filed 01/23/2006   Page 7 of 11

LAW OFFICES
# Stetina Brunda Garred & Brucker
A PROFESSIONAL CORPORATION
PATENT, TRADEMARK, COPYRIGHT AND UNFAIR COMPETITION CAUSES

75 ENTERPRISE, SUITE 250
ALISO VIEJO, CALIFORNIA 92656

RECEIVED
JAN 09 2006
McCARTER & ENGLISH
WILMINGTON, DE

KIT M. STETINA
BRUCE B. BRUNDA
WILLIAM J. BRUCKER
MARK B. GARRED
MATTHEW A. NEWBOLES
ERIC L. TANEZAKI
LOWELL ANDERSON

SEAN O'NEILL
JAMES C. YANG
NATHAN S. SMITH
STEPHEN Z. VEGH

JESSIE WANG *
SHUNSUKE S. SUMITANI *
BENJAMIN N. DIEDERICH *

TELEPHONE      (949) 855-1246
FACSIMILE I    (949) 855-6371
FACSIMILE II   (949) 716-8197
www.stetinalaw.com
Writer's Direct E-mail:
landerson@stetinalaw.com

January 3, 2006

Michael P. Kelly.
McCarter & English
919 N. Market St., 19th Floor
Wilmington, DE 19801

RE: UD Technology Corp. v. Phenomenex, Inc. et al.
Our Ref. MAJOR.1221

Dear Mr. Kelly

I renew the request for UD Technology to voluntarily dismiss the Complaint against Phenomenex. You ignored my request for a courtesy copy of the contracts which you claim were breached by Phenomenex. But I obtained them elsewhere and was shocked to see how they show there is no basis for the contract claims or for the trade secret claims.

In short, the alleged secrets were published in 1992 and 1993 and thus could not be secrets when they were allegedly disclosed to Phenomenex. Any remaining doubts are dispelled by publication of the '625 patent application in December, 1993. All of those public disclosure occurred many years before the 1997 introduction of the Jupiter product which is accused of using this publicly disclosed information.

The **Materials Treatment Agreement** is dated Aug. 25, 1992, between Phenomenex and Research Corporation Technologies, Inc. ("RCT"). Neither UD Technologies nor the University of Delaware was a party to that agreement. Further, neither UD Technologies nor the University of Delaware was contemplated as a beneficiary because if Phenomenex found a new use for that treated column, any invention would be assigned to RCT, not UD Technology and not the University of Delaware. UD Technology has not rights under that agreement, and lacks standing to assert any rights for breach of that Materials Treatment Agreement. Since UD Technologies lacks standing, please withdraw the claims regarding this Agreement.

Further, the Materials Testing Agreement focuses on use of the treated column, not on a broad technology prohibition as alleged in your Complaint. Phenomenex was to test the column, but was limited on what it could do with the column thereafter. The alleged acts of breach identified in paragraph 47 are believed to be based on wishful thinking and speculation, not

* PATENT AGENT

January 3, 2006
Page 2

based on any reasonable investigation as required by Rule 11. Speculation and hopes do not satisfy Rule 11. As reflected by the agreement, Phenomenex was not told how the material was treated. But as discussed below, numerous publications in 1992 and 1993, and later, describe the coating process apparently used. There is no reasonable basis to believe that Phenomenex used the material from the initial 1992 testing, coated by an unknown process, when the numerous publications from 1992 and 1993 (and onward) described how to make such coatings.

Please withdraw the allegations regarding the Materials Treatment Agreement. If you maintain these allegations, be prepared to show the evidentiary results of the reasonable investigation required by Rule 11, and to explain how UD Technologies has any rights under a 13 year old agreement to which it is not a party.

The **Evaluation Agreement** is between Phenomenex and RCT. Neither UD Technologies nor the University of Delaware was a party to that agreement. Indeed, the University of Delaware is identified as a potential RCT nonexclusive licensee. Thus, UD Technology has no rights under this agreement, and lacks standing. Since there is no standing, please withdraw the claims arising from this agreement.

By the express terms of Section 2.1, the Evaluation Agreement "shall expire and have no further effect on the date six (6) months after the EFFECTIVE DATE" of March 29, 1993. That date passed long ago. There is no basis to allege breach base on later actions, and there is no basis for the remedies requested which far exceed those specified in the Evaluation Agreement. Please drop the claims based on this Evaluation Agreement.

Moreover, the Evaluation Agreement only involves the 1992 patent application, an application which lacks the additional information filed in the Continuation in Part application, information which was critical to obtaining allowance of Patent No. 5,599,625. Please dismiss any claims based on technology not covered by the Evaluation Agreement.

Significantly, the Evaluation Agreement does not apply to any information which, at the time of disclosure or use by Phenomenex, was publicly available. Section 4.2. The Evaluation Agreement is dated March 29, 1993 with Mr. Fatunmbi's visit occurring later. Before the agreement was even signed and before Mr. Fatunmbi arrived at Phenomenex, the inventors had disclosed everything in several publications, and further disclosed it shortly after his visit.

1.  November, 1992: Horizontal Polymerization of Mixed Trifunctional Silanes on Silica: A Potential Chromatographic Stationary Phase, Mary J. Wirth and Hafeez O. Fatunmbi, *Anal Chem.*, 64, 2783 (1992) (copy attached).

2.  At least by March 28, 1993: Horizontal Polymerization of Mixed Trifunctional Silanes on Mary J. 'Wirth and Hafeez O. Fatunmbi, Silica 2, Application to Chromatographic Silica Gel, *Anal. Chem.*, 1992, 65, 822-826 (copy attached).

3.  June 16-18, 1993 Symposium: Spectroscopic and Chromatographic Characterization of a Self-Assembled Monolayer as a Stationary Phase, published in 1994 by the Royal Society of Chemistry (copy attached) (other disclosures on attached sheet).

January 3, 2006
Page 3

Any claims based on alleged misuse of trade secret information or breach of contract must exclude anything shown or suggested by any paper which was published **before** the Evaluation Agreement was even entered. The Uniform Trade Secrets Act of both Delaware and Arizona provide no protection to information that is published and thus generally known or readily ascertainable.

Moreover, the Jupiter product accused of infringement and of misusing trade secrets was introduced in 1997, and there were numerous other publications between 1993 and 1997. But more importantly, the entire contents of U.S. Patent 5,599,625 were published years earlier in Dec. 23, 1993, as application PCT/US93/05816, publication no. WO 93/25307.

As of December 23, 1993, Phenomenex could use any information in the 1992 patent application covered by the Evaluation Agreement, as well as any additional information in the continuation-in-part application that issued as the '625 patent. The Evaluation Agreement expired Sept. 29, 1993, and the publication of the patent application effectively destroyed any potentially remaining obligations not to use anything disclosed by Mr. Fatunmbi. The same applies as of the publication dates of the numerous other articles published by Wirth and Fatunmbi on these coating materials, including the 1992 and 1993 publications by Wirth and Fatunmbi, as well as later publications. A list is attached.

The publication of the patent application is especially pertinent because the inventors (Wirth and Fatunmbi) were obligated to disclose the best mode contemplated for carrying out the invention. 35 U.S.C. §112 ¶1. Thus, because of the disclosure obligations under §112, there is nothing beyond the '625 application which could be a trade secret without invalidating the '625 patent for failure to comply with §112. To the extent you maintain otherwise, I do not see how UD Technologies can prove it since the alleged disclosure occurred some 13 years ago in 1993.

Please withdraw the allegations based on the breach of contract and alleged misappropriation of trade secrets based on a disclosure occurring in 1993, some 13 years ago.

The Trade Secrets Acts of both Delaware and Arizona allow recovery of Phenomenex's attorney fees when UD Technologies maintains these claims of misappropriation in bad faith. The claims here should never have been filed, let alone filed 13 years after the alleged disclosure, and filed by a party which lacks any rights to assert misappropriation of trade secrets. To continue with these claims in the face of documented knowledge of the massive public disclosure of the allegedly secret technology as evidenced by this letter and the attached publication list, will constitute bad faith. Rule 11 provides similar relief for the non-trade secret claims.

Sincerely,

*Lowell Anderson*

enclosures

cc: M. Rusing
　　F. Mahjoor

*Stetina Brunda Garred & Brucker*

January 3, 2006
Page 4

1. Horizontal Polymerization of Mixed Trifunctional Silanes on Silica: A Potential Chromatographic Stationary Phase, Mary J. Wirth and Hafeez O. Fatunmbi, *Analytical Chemistry*, 64, 2783 (1992).

2. Horizontal Polymerization of Mixed Trifunctional Silanes on Silica II: Application to Chromatographic Silica Gel, Mary J. Wirth and Hafeez O. Fatunmbi, *Analytical Chemistry*, 65, 822 (1993).

3. $^{13}$C and $^{29}$Si NMR Investigations of Mixed Horizontal Polymerization on Chromatographic Silica Gel, Hafeez O. Fatunmbi, Martha D. Burch and Mary J. Wirth, *Analytical Chemistry*, 65, 2048 (1993).

4. Products Having Multiple-Substituted Polysiloxane Monolayers, Wirth, Mary J, Fatunmbi, Hafeez, O., application no. PCT/US93/05816, International Publication No. WO 93/25307, published Dec. 23, 1993.

5. Self Assembled Monolayers in Separations, Mary J. Wirth and Hafeez O. Fatunmbi, *LC/GC*, 12, 222 (1994).

6. Spectroscopic and Chromatographic Characterization of a Self-Assembled Monolayer as a Stationary Phase, M.J. Wirth and H.O. Fatunmbi, in "Chemically Modified Surfaces", J.J. Pesek and I.E. Leigh, Eds. (Royal Society of Chemistry, Cambridge, UK, 1994).

7. Horizontally Polymerized Chromatographic Stationary Phases, Hafeez. O. Fatunmbi and Mary J. Wirth, in Chemically Modified Surfaces, JJ. Pesek, Ed. (Royal Society of Chemistry, Cambridge, UK, 1996).

8. Preparation of Mixed C18/DC1 Horizontally Polymerized Chromatographic Phases, Mary J. Wirth and R.W. Peter Fairbank, *Journal of Liquid Chromatography*, 19, 2799 (1996).

9. Mixed Self-Assembled Monolayers in Chemical Separations, Mary J. Wirth, R.W. Peter Fairbank, and H.O. Fatunmbi, *Science*, 275, 44-47 (1997).