IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UD TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-842 (GMS) |
| | ) | |
| PHENOMENEX, INC., and RESEARCH | ) | |
| CORPORATION TECHNOLOGIES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT RESEARCH CORPORATION TECHNOLOGIES'
OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs Louden (#2881)
Benjamin Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for defendant Research Corporation
  Technologies

OF COUNSEL:
Donna M. Tanguay
Ronald J. Pabis
MCDERMOTT, WILL & EMERY
600 13th Street, N.W.
Washington, DC  20005-3096
(202) 756-8000

Michael J. Rusing
RUSING & LOPEZ, P.L.L.C.
6262 N. Swan Rd., Ste. 200
Tucson, AZ  85718
520-792-4800

January 23, 2006

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                              ii

NATURE AND STAGE OF THE PROCEEDING                                             1

SUMMARY OF ARGUMENT                                                            1

STATEMENT OF FACTS                                                            3

ARGUMENT                                                                       8

I.      THE LEGAL STANDARD                                                    8

II.     UD TECH'S CLAIMS AGAINST RCT ARE BARRED BY THE
        STATUTE OF LIMITATIONS                                                9

        A.      Delaware's Choice of Law Principles Apply                     9

        B.      Delaware's Three-Year Statute Of Limitations Applies To
                Each Of UD Tech's Claims Against RCT.                          11

        C.      The Three-Year Statute Of Limitations For UD Tech's
                Claims Against RCT Has Expired                                12

III.    UD TECH'S COMPLAINT FAILS TO STATE A CLAIM UPON
        WHICH RELIEF MAY GRANTED AS AGAINST RCT                               14

        A.      UD Tech's Breach Of Contract Claim Is Legally Deficient
                And Must Be Dismissed                                         14

        B.      UD Tech's Claim for Violation of the Implied Covenant of
                Good Faith and Fair Dealing Must Be Dismissed as
                Duplicative of the Claim for Breach of Contract               19

        C.      UD Tech's Claims for Equitable Relief Must Be Dismissed
                Because an Adequate Legal Remedy Exists                       20

CONCLUSION                                                                    23

ii.

TABLE OF CITATIONS

Page(s)

Cases

*Adams v. Jankouskas*,
452 A.2d 148 (Del. Super. Ct. 1982)                                    11

*Adkins v. Rumsfeld*,
389 F. Supp. 2d 579 (D. Del. 2005)                                      8

*Am. Energy Tech., Inc. v. Codey & McCoy Co.*,
1999 WL 301648 (D. Del. April 15, 1999)                                 10

*Amtitle Trust Co. v. Fitch*,
541 P.2d 1166 (Ariz. Ct. App. 1975)                                     22

*Artesian Water Co. v. Lynch*,
283 A.2d 690 (Del. Ch. 1971)                                            11

*Baker v. Cummings,*
169 U.S. 189 (1898)                                                     20

*Burch & Cracchiolo, P.A. v. Pugliani*,
697 P.2d 674 (Ariz. 1985)                                               22

*Burkons v. Ticor Title Ins. Co. of Cal.*,
813 P.2d 710 (Ariz. 1991)                                               20

*Chevron Oil Co. v. Huson*,
404 U.S. 97 112, n. 2 (1971)                                            10

*Cracchiolo v. State of Ariz.,*
660 P.2d 494 (Ariz. Ct. App. 1983)                                      20

*Ensminger v. Merritt Marine Constr., Inc.,*
597 A.2d 854 (Del. Super. Ct. 1988)                                     12

*Fleet Nat'l Bank v. Boyle,*
2005 WL 2455673 (E.D. Pa. 2005)                                         9

*Gen. Motors Corp. v. New A.C. Chevrolet, Inc.,*
263 F.3d 296 (3d Cir. 2001)                                             7

*Gluck v. Unisys Corp.*,
960 F.2d 1168 (3d Cir. 1991)                                            10

*Haskins v. Point Towing Co.*,
    421 F.2d 532 (3d Cir. 1970)    8

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)    8

*Jaskey Fin. & Leasing v. Display Data Corp.*,
    564 F. Supp. 160 (E.D. Pa 1983)    8, 14

*Klaxon v. Stentor Elec. Mfg., Co.*,
    313 U.S. 487 (1941)    9

*Leone v. Aetna Cas. & Surety Co.*,
    599 F.2d 566 (3d Cir. 1979)    9

*Long v. Buckely*,
    629 P.2d 557 (Ariz. Ct. App. 1981)    14

*Martinez v. Gastroenterology Assoc. P.A.*,
    2005 WL 1953091 (Del. Super. Ct. July 5, 2005)    11

*Maurey v. Univ. of S. Cal.*,
    12 Fed. Appx. 529 (9th Cir. 2001)    19

*Penn. ex rel. Zimmerman v. Pepsico, Inc.*
    836 F.2d 173 (3d Cir. 1988)    9

*Pension Benefit Guaranty Corp., v. White Consol. Indust., Inc.*,
    998 F. 2d 1192 (3d Cir. 1993)    8

*Rawlings v. Apodaca*,
    726 P.2d 565 (Ariz. 1986)    20

*Schuster v. Derocili*,
    775 A.2d 1029 (Del. Super. Ct. 2001)    11

<u>Statutes</u>

10 *Del. C.* § 8106    passim

10 *Del. C.* § 8121    11

Fed. R. Civ. P. 12(b)(6)    passim

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff UD Technology Corporation ("UD Tech") filed this action against Defendants Phenomenex, Inc. ("Phenomenex") and Research Corporation Technologies ("RCT") on December 5, 2005.  The Complaint primarily alleges that Phenomenex is infringing UD Tech's patents and misappropriating its trade secrets.  There are no such allegations against RCT.  UD Tech brought RCT into this action based on a contract that RCT had with the University of Delaware ("University") to patent and commercialize certain inventions discovered by faculty of the University. The Complaint alleges claims against RCT for breach of contract, violation of the implied covenant of good faith and fair dealing, and demands the equitable remedies of an accounting and imposition of a constructive trust. (D.I. 1).  The Court extended RCT's time to answer the Complaint until January 23, 2006.  (D.I. 6).  RCT's answer is filed concurrently herewith.  Because the claims against RCT are barred by the statute of limitations and the Complaint otherwise fails to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6), RCT has filed a motion to dismiss.  This is RCT's opening brief in support of that motion.

## SUMMARY OF ARGUMENT

1.     Each of UD Tech's claims against RCT must be dismissed as time barred by Delaware's three year statute of limitations, 10 *Del. C.* § 8106.

2.     UD Tech's claim for breach of contract against RCT also fails to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) because: 1) the Complaint alleges breaches of a contractual duty to police and monitor the market that is not contained in the contract; 2) the Complaint itself establishes that RCT did not breach

2.

the contract by failing to maintain confidentiality or by permitting Phenomenex to use the Licensed Technology. The Complaint alleges RCT breached the contract by sharing "material that is the subject of the Patent Application and the `625 Patent and certain licensed technologies with third parties" and by "permitting Phenomenex to employ the licensed technology in commercial manufacturing." UD Tech acknowledges, however, that RCT was expected to share the licensed technologies with third parties in order to commercialize them and, further, that the University's own employees disclosed the technologies to Phenomenex. UD Tech also acknowledges that RCT obtained the '625 Patent on the licensed technologies in 1997, an admission that defeats UD Tech's claim that RCT did not maintain confidentiality of the licensed technologies, as required by the contract. Therefore, UD Tech's claim for breach of contract based on the sharing of such material fails as a matter of law and should be dismissed.

3.    UD Tech's claim for violation of the implied covenant of good faith and fair dealing must be dismissed because it is duplicative of the breach of contract claim and does not allege that any special relationship exists between the parties, as required under Arizona law.

4.    UD Tech's claims for equitable relief against RCT must be dismissed because an adequate contractual remedy exists and the claims are deficient on their face.

STATEMENT OF FACTS[1]

1.    The RCT/University Of Delaware
Commercialization Agreement

RCT is a non-profit Delaware corporation that partners with affiliated institutions in an effort to license patentable and patented processes, products and procedures to third parties. (*See* D.I. 1 at ¶ 6). On April 1, 1990, the University and RCT entered into an Agreement for Disclosure, Evaluation and Commercialization of Inventions, (inaccurately referred to in the Complaint as the "Marketing Agreement" but correctly referred to herein as the "Commercialization Agreement"). (*See id.* at ¶ 15). Under the Commercialization Agreement, the University granted RCT the right to commercialize and promote the University's proprietary technologies developed by its faculty members (the "Inventions"), which included the right of RCT to allow third parties to review and evaluate the Inventions. (*See id.* at ¶ 15; Ex. A, Commercialization Agreement, § 1.2).[2]

The Commercialization Agreement required RCT to treat any Invention disclosed to it, that had not been published or which was not the subject of an issued Patent or pending Patent Application, as proprietary and with the requisite degree of confidentiality necessary *to preclude jeopardizing the patentability of the Invention.* (*See* Ex. A at § 1.2). If RCT disclosed any such Invention to any third party, RCT was to require that

---

[1]    This Statement of Facts assumes the truth of the allegations of UD Tech's Complaint, as required by Fed. R. Civ. P. 12(b)(6). It does so only for the purposes of this motion.

[2]    UD Tech's Complaint repeatedly mischaracterizes the language of the Commercialization Agreement. As discussed further below, because the Complaint refers to the Commercialization Agreement, the Court may consider it in ruling on RCT's motion to dismiss without converting the motion to one for summary judgment. A true and correct copy of the Commercialization Agreement is attached hereto as Exhibit A.

the third party exercise its best efforts to keep the same confidential. (*Id.*) (As set forth, *supra*, the Materials Treatment and Evaluation Agreements that Phenomenex signed were such agreements).

RCT could, in its discretion, choose to accept an Invention for commercialization. (*Id.* at § 1.4.) Upon acceptance, the University agreed to assign to RCT all rights, title and interest in and to the Invention and its corresponding Patent Rights. (*Id.*). Thereafter, RCT agreed to file United States and foreign patent applications on each accepted invention, "as RCT may deem appropriate and prosecute such Patent Applications to the extent RCT determines that such prosecution will result in Patents that have reasonable commercial potential." (*Id.* at § 2.1).

Once RCT accepted an invention, RCT agreed to "expend reasonable efforts to commercialize each accepted Invention and corresponding Patent applications and Patents and to secure reasonable revenue from such commercialization *in the manner RCT deems appropriate.*"[3] (*See* Ex. A at §3.1) (emphasis added). The parties would share any resulting revenue with RCT paying the University "fifty-seven and one-half percent (57.5%) of the gross income, if any, received during the prior calendar year in respect to each accepted invention." (*See* D.I. 1 at ¶ 17; Ex. A at § 3.2). The Commercialization Agreement granted the University a contractual right to an audit, providing:

---

[3]     UD Tech's Complaint omits the italicized language.

> RCT shall maintain at its offices, in usual form, books of record, ledgers and accounts relating to its activities under this Agreement, which shall be open to examination by **Institution** or its nominees during regular business hours.

Ex. A at § 3.2.

RCT was entitled to abandon its commercialization efforts for any accepted Invention, Patent Application or Patent, if RCT determined, in its discretion, that such efforts were no longer justified. (*See id.* at §3.3). Upon written request of the University, RCT would assign such Invention, Patent Application or Patent to the University. *See id.*

The Commercialization Agreement contained a choice of law clause that provided that it "shall be governed and construed according to the laws of the State of Arizona, without regard to the laws of Arizona concerning any conflicts of laws." (*See id.* at § 5.4). It further contained an integration clause providing that "this Agreement constitutes the entire agreement and understanding of the parties concerning the subject matter of this Agreement." (*See id.*)

## 2.     The '625 Patent Application And Patent

In June 1992, RCT filed U.S. Patent Application Serial Number 07/900,215 (the "Patent Application") on inventions discovered through the research efforts of Dr. Mary Wirth and Dr. Hafeez O. Fatunmbi, of the Department of Chemistry and Biochemistry at the University (the "Inventors"). (*See* D.I. 1 at ¶¶ 12-15). In 1997, the `625 Patent was issued in the name of the Inventors on the Patent Application. (*See id.* at ¶¶ 15 and 27). The '625 Patent was assigned to RCT, pursuant to the terms of the Commercialization Agreement. (*See id.*).

3.      The RCT/Phenomenex Materials Treatment
        And Evaluation Agreements

In August 1992, RCT and Phenomenex entered into a Materials Treatment Agreement under which the Inventors would manufacture a sample product that was the subject of the Patent Application and send it to Phenomenex for evaluation. (*See id*. at ¶ 18). UD Tech alleges that the Materials Treatment Agreement granted Phenomenex access to licensed technologies and trade secrets "solely for research purposes." (*See id.*) UD Tech further alleges that the Materials Agreement provided that Phenomenex would never use the proprietary technology "for any commercial or non academic purpose." (*See id.* at ¶ 19).

In March 29, 1993, RCT and Phenomenex entered into a six-month Evaluation License Agreement and Right of First Refusal for the evaluation of the technology that was the subject of the pending Patent Application (the "Evaluation Agreement"). (*See id.* at ¶ 20). The Evaluation Agreement provided that "the Evaluation License does not give Licensee the right to sell Licensed Products or to use Licensed Products or Licensed Processes for any purpose other than evaluation of the Invention." (*See id.* at ¶ 21). UD Tech further alleges that the Evaluation Agreement provided that Phenomenex acknowledged that certain proprietary information belonging to RCT would be disclosed to Phenomenex pursuant to the agreement, and that Phenomenex agreed that it would maintain in confidence all proprietary information regarding the Licensed Technology. (*See id.* at ¶ 22).

Thereafter, Dr. Fatunmbi, while still employed by the University, spent approximately three weeks in the Phenomenex laboratory teaching Phenomenex and its employees/agents the use and application of the Licensed Technology. (*See id.* at ¶ 25).

As a result of this visit, UD Tech alleges that Phenomenex obtained access to the University's confidential information, as well as trade secrets and know how associated with the Licensed Technology.  (*See id.*)

4.     RCT's Assignment Of The '625 Patent To The University

In July 2001, RCT assigned back to the University "all right, title, interest in and to the `625 Patent and the inventions described therein."  (*See id.* at ¶ 30; *see also* Ex. B, Agreement to Assign).[4]  Pursuant to the Agreement to Assign, RCT assigned to the University RCT's "entire right, title and interest in the Invention, the Patent Rights and all reissues, extensions, renewals and reexaminations of the patent rights."  (*See* Ex. B at §§ 1-2.  The Agreement to Assign provided that the University accepted RCT's assignment "with the understanding that RCT shall have no further obligation with respect to the patenting of the INVENTION" and "RCT shall have no further obligation with respect to *the marketing or licensing* of the INVENTION or PATENT RIGHTS," either under the Commercialization Agreement or otherwise.  (*See* Ex. B at §§ 2.1 -2.2) (emphasis added).  Thereafter, the University assigned to UD Tech all right, title and interest in the technologies.  (*See* D.I. 1 at ¶ 8).

---

[4]     The Complaint alleges that on July 24, 2001, the date of the Agreement to Assign, RCT assigned all right, title and interest in and to the '625 Patent and the inventions described therein to the University.  (*See* D.I. 1 at ¶ 30).  Because UD Tech referenced the Agreement to Assign, the Court may consider it, without converting the motion to one for summary judgment.  (*See* Section I, *infra.*)  A true and correct copy of the Agreement to Assign, dated July 24, 2001, is attached as Exhibit B hereto.

8.

## ARGUMENT

### I.     THE LEGAL STANDARD

In evaluating a motion to dismiss, the court takes the allegations of the complaint as true. Fed. R. Civ. P. 12(b)(6).   However, the court need not "credit conclusory allegations or legal conclusions in deciding a motion to dismiss."  *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 333 (3d Cir. 2001).  The court may also consider "documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to a motion for summary judgment." *Adkins v. Rumsfeld*, 389 F. Supp. 2d 579, 584 (D. Del. 2005) (citing *In Re Rockefeller Center Prop., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).  The Third Circuit has recognized that "[p]laintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a document on which it relied." *Pension Benefit Guaranty Corp., v. White Consol. Indust., Inc.,* 998 F. 2d 1192, 1196 (3d Cir. 1993).

UD Tech's Complaint relies on several documents, including the 1990 Commercialization Agreement, the 1992 Patent Application, the 1992 Materials Treatment Agreement, the 1993 Evaluation Agreement, the 1997 Patent, the 2001 Agreement to Assign, and the University's subsequent assignment of that technology to UD Tech. (*See* D.I. 1 at ¶¶ 8, 15-27).  Because each of these documents is explicitly referred to or relied upon in the Complaint, the court may consider them in ruling on RCT's motion to dismiss without converting the motion to one for summary judgment. *Id.*

A motion to dismiss should be granted if the plaintiff's claims are barred by the unambiguous terms of a contract referred to in the Complaint because the interpretation of an unambiguous contract is a question of law for the court. *Jaskey Fin. & Leasing v. Display Data Corp.*, 564 F. Supp. 160, 163 (E.D. Pa 1983) (citing *Haskins v. Point Towing Co.*, 421 F.2d 532, 536 (3d Cir. 1970)). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *Penn. ex rel. Zimmerman v. Pepsico, Inc.* 836 F.2d 173, 179 (3d Cir. 1988).

## II.    UD TECH'S CLAIMS AGAINST RCT ARE BARRED BY THE STATUTE OF LIMITATIONS

UD Tech's claims for breach of contract, violation of the implied covenant of good faith and fair dealing, accounting, and constructive trust must be dismissed because the Complaint on its face shows that they are barred by Delaware's three-year statute of limitations. *Leone v. Aetna Cas. & Surety Co.*, 599 F.2d 566, 567 (3d Cir. 1979) (a 12(b)(6) motion may be advanced on the ground that the complaint on its face shows that the claim is barred by the applicable statute of limitations); 10 *Del. C.* § 8106.

### A.    Delaware's Choice of Law Principles Apply

UD Tech's state law claims against RCT are based upon the 1990 Commercialization Agreement between RCT and the University.    While the Commercialization Agreement has an Arizona choice of law provision, it is well-settled that a federal court exercising supplemental jurisdiction over state law claims applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941); *Fleet Nat'l Bank v. Boyle,* 2005 WL 2455673 *6, n.10 (E.D. Pa. 2005)

10.

(whether jurisdiction is based on diversity jurisdiction or supplemental jurisdiction, federal courts apply the choice of law rules of the forum state).[5] Therefore, Delaware's choice of law rules determine which state's statute of limitations and substantive law apply to UD Tech's state law claims against RCT.

Under Delaware law, as elsewhere, choice of law provisions in contracts are generally understood to incorporate only substantive law. *Am. Energy Tech., Inc. v. Colley & McCoy Co.,* 1999 WL 301648, at *2 (D. Del. April 15, 1999); *see also Chevron Oil Co. v. Huson*, 404 U.S. 97 112, n.2 (1971) (concurring opinion) (citation omitted) ("In actions where the rights of parties are grounded upon the law of jurisdictions other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply foreign substantive law, but will follow its own rules of procedure."). Statutes of limitations are generally considered to be procedural rather than substantive law. *Am. Energy Tech.*, 1999 WL at *2. Therefore, a choice of law provision in a contract does not control the applicable statute of limitations unless the reference to the chosen state's statute of limitations is express. *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1991).

The choice of law provision in the Commercialization Agreement does not specifically incorporate Arizona's statute of limitations. *See* Ex. A at § 5.4. Therefore, Delaware's statute of limitations applies to UD Tech's state law claims against RCT.

---

[5]     Unreported decisions are attached alphabetically under Ex. C to this brief.

> B.    Delaware's Three-Year Statute Of Limitations
> Applies To Each Of UD Tech's Claims Against
> RCT.

The three-year limitations period set forth in 10 *Del. C.* § 8106 applies to each of

UD Tech's claims against RCT. It provides:

> No action... based on a detailed statement of the mutual demands in
> the nature of debit and credit between parties arising out of contractual
> or fiduciary relations, [and] no action based on a promise... shall be
> brought after the expiration of 3 years from accruing of the cause of
> such action.

10 *Del. C.* § 8106.

It is well established that this provision applies to claims for breach of contract

and breach of the implied covenant of good faith and fair dealing. *See Martinez v.*

*Gastroenterology Assoc. P.A.,* 2005 WL 1953091 at *2 (Del. Super. Ct. July 5, 2005)

(three-year statute of limitations applies to breach of contract claim); *Schuster v. Derocili*,

775 A.2d 1029, 1034 (Del. Super. Ct. 2001) (three-year statute of limitations applies to

breach of the implied covenant of good faith and fair dealing).

UD Tech's equitable claims for accounting and imposition of a constructive trust

against RCT are also governed by Delaware's three-year statute of limitations. *Artesian*

*Water Co. v. Lynch*, 283 A 2d 690, 691-92 (Del. Ch. 1971) (demand for accounting was

governed by a three-year statute of limitations under 10 *Del. C.* § 8106); *Adams v.*

*Jankouskas*, 452 A.2d 148, 157 (Del. Super. Ct. 1982) (three-year statute of limitations

under 10 *Del. C.* § 8106 applies to demand for resulting or constructive trust).

Even assuming *arguendo* that UD Tech's claims against RCT arose outside of

Delaware, Delaware's three-year statute of limitations still applies to these claims.

Delaware's borrowing statute provides:

> Where a cause of action arises outside of this State, an action cannot
> be brought in a court of this State to enforce such cause of action after
> the expiration of whichever is shorter, the time limited by the law of
> this State, or the time limited by the state or country where the cause
> of action arose, for bringing an action upon such cause of action.
> *Where the cause of action originally accrued in favor of a person who
> at the time of such accrual was a resident of this State, the time limited
> by the law of this State shall apply*.

10 *Del. C.* § 8121 (emphasis added).

Where the plaintiff was a Delaware resident at the time the cause of action accrued, Delaware law requires that the Delaware statute of limitations apply. *Id.* As that is the situation here, each of UD Tech's claims against RCT are governed by Delaware's three-year statute of limitations.

> C.    The Three-Year Statute Of Limitations For UD
>       Tech's Claims Against RCT Has Expired

Under Delaware law, a claim for breach of contract accrues at the time of the breach. *Ensminger v. Merritt Marine Constr., Inc.,* 597 A.2d 854, 856 (Del. Super. Ct. 1988). UD Tech's Complaint does not specify the date of breach of the Commercialization Agreement or the date RCT allegedly violated the implied covenant of good faith and fair dealing. Each of the breaches alleged by UD Tech in the Complaint, however, concerns duties that either are not contained within the Commercialization Agreement or from which the University expressly released RCT on July 24, 2001.

UD Tech alleges that RCT breached the Commercialization Agreement with respect to the marketing and commercialization of the Licensed Technology and the Patent. Specifically, UD Tech alleges that RCT: 1) failed to "expend reasonable efforts to secure revenues from third parties commercially or otherwise employing the Licensed

Technology and the '625 Patent"; 2) "knowingly and recklessly shar[ed] material that is the subject of the Patent Application and thereafter the '625 Patent with third parties, as well as the Licensed Technologies . . .;" and 3) "knowingly, recklessly, negligently or otherwise permitt[ed] Phenomenex to employ the Licensed Technology in the commercial manufacture of HPLC products following the expiration of the six month review period. . ." (*See* D.I. 1 at ¶ 91).

However, UD Tech's Complaint acknowledges that "on July 24, 2001, RCT assigned all of its right, title and interest in and to the `625 Patent and the inventions described therein to the University." (*See id.* at ¶ 30). Under the terms of that assignment, the University released RCT from all further obligations under the Commercialization Agreement with respect to the patenting, marketing, or licensing of the Invention or Patent Rights. *See* Ex B at §2.2 ("RCT shall have no further obligation with respect to the patenting of the Invention . . . RCT shall have no further obligation with respect to the marketing or licensing of the Invention or Patent Rights, either under the DECA or otherwise.").

Each of these alleged breaches concern duties that are not contained within the Commercialization Agreement or from which the University expressly released RCT on July 24, 2001. Therefore, although not alleged in the Complaint, the latest possible date on which RCT could have committed the alleged breaches was July 24, 2001, because after that date, the University expressly released RCT from all further duties concerning the marketing, commercialization or licensing of the technology. (*See id.*). Therefore, under Delaware's three-year statute of limitations, the latest date UD Tech's claims could have begun to run was on July 24, 2001, and they would have expired on July 24, 2004.

UD Tech filed this action on December 5, 2005, well after the statute of limitations ran on its claims. Therefore, all of UD Tech's claims against RCT are absolutely barred by the statute of limitations and must be dismissed.

### III.    UD TECH'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY GRANTED AS AGAINST RCT

Each of UD Tech's claims against RCT are based on the Commercialization Agreement, which contains an Arizona choice of law provision. Delaware gives effect to express choice of law provisions in contracts. *Weiss v. Northwest Broadcasting, Inc*., 140 F. Supp. 2d 336, 342 (D. Del. 2001). Therefore, Arizona substantive law applies to UD Tech's state law claims against RCT.

#### A.    UD Tech's Breach Of Contract Claim Is Legally Deficient And Must Be Dismissed

To state a claim for breach of contract under Arizona law, the plaintiff must allege that a contract existed between the parties, the essential terms of that contract, a breach of duty imposed by the contract and injury or damages resulting from the alleged. *Long v. Buckely,* 629 P.2d 557, 561 (Ariz. Ct. App. 1981). UD Tech alleges that RCT breached the Commercialization Agreement in three ways, as discussed below.

##### 1.    RCT Owed No Duty to Police, Monitor and Secure Revenues From Third Parties Commercially Employing the Licensed Technology

First, UD Tech alleges that RCT failed "to expend reasonable efforts to secure revenues from third parties commercially or otherwise employing the Licensed Technology and the `625 Patent." (*See* D.I. 1 at ¶ 91(a)). Under the plain language of the

Commercialization Agreement, there is no duty to police, monitor, and secure revenues from third parties employing the technology. Rather, it provides:

> RCT shall expend reasonable efforts to commercialize each accepted **Invention** and corresponding **Patent Applications** and **Patents** and secure reasonable revenue from such commercialization, *in the manner RCT deems appropriate.*

*See* Ex. A at § 3.1. (emphasis added).

The terms of the Commercialization Agreement are unambiguous, therefore the Court may interpret and apply them as a matter of law. *Jaskey,* 564 F. Supp. at 163. The Commercialization Agreement unambiguously provides that the manner in which RCT commercialized the Invention and secured reasonable revenue from such commercialization was within RCT's discretion. (*See id.*). Furthermore, the Commercialization Agreement did not include any duty to police, monitor and secure revenues from third parties employing the technology. (*See* Ex. A at §3.1).

Absent a duty there can be no breach. Because the manner in which RCT commercialized and secured revenues from such commercialization was within RCT's own discretion and the Commercialization Agreement did not contain any duty to police, monitor or secure revenues from third parties commercially or otherwise employing the Licensed Technology and the '625 Patent, UD Tech's claim for breach of this duty is legally deficient and must dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2.    RCT Was Entitled To Share Material With Third Parties

Second, UD Tech alleges that RCT breached the Commercialization Agreement by "knowingly and recklessly sharing material that is the subject of the Patent Application and thereafter, the `625 Patent, as well as the Licensed Technologies with

third parties without paying University the percentage of Gross Revenue that it did or should have collected." (*See* D.I. 1 at ¶ 91(b)). The only third party identified by UD Tech in its Complaint is Phenomenex. UD Tech's amorphous allegation that RCT shared information with unidentified third parties is conclusory and fails to set forth specific facts necessary to support its claim for breach of contract as to disclosure to unidentified third parties. It should be dismissed on that basis alone.

Furthermore, UD Tech acknowledges that under the express terms of the Commercialization Agreement, RCT was authorized and expected to "permit interested third parties to review and evaluate such technologies." (*See id.* at ¶ 15). This authorization was subject to a limited confidentiality provision, which provided:

> RCT shall treat any Invention disclosed to it under 1.1. above, that has not been published or which is not the subject of an issued **Patent** or a pending **Patent Application**, as proprietary and *with the requisite degree of confidentiality necessary to preclude jeopardizing the patentability of the Invention.* If RCT discloses any Invention to any third party, RCT shall require such third party to exercise its best efforts to keep the same confidential.

Ex. A at § 1.2. (emphasis added).

The plain language of the above provision applies only to Inventions that had not been published or were not the subject of an issued patent or pending patent application. In its Complaint, UD Tech admits that RCT filed a patent application on June 17, 1992, and that it was only thereafter, on August 28, 1992, that RCT and Phenomenex entered into the Materials Treatment Agreement. (*See* D.I. 1 at ¶¶ 15, 18). Thus, the confidentiality provision of the Commercialization Agreement did not apply to RCT's disclosure of information to Phenomenex. Nevertheless, in its Complaint UD Tech acknowledges that both the Materials Treatment Agreement and the Evaluation

Agreement between RCT and Phenomenex contained provisions to protect the confidentiality of the Licensed Technology. For example, UD Tech alleges that the Materials Treatment Agreement granted Phenomenex access to licensed technologies and trade secrets "solely for research purposes,"  and provided that Phenomenex would never use the proprietary technology "for any commercial or non academic purpose." (*See id.* at ¶¶ 19-20). UD Tech further alleges that the Evaluation Agreement did not give Phenomenex the right to sell or use the Licensed Products or Processes for any purpose other than evaluation and that Phenomenex acknowledged that proprietary information would be disclosed to it and that Phenomenex agreed that it would maintain in confidence all proprietary information regarding the licensed technology. (*See id.* at ¶¶ 21-22).

Moreover, in its Complaint, UD Tech admits that the University itself disclosed the Licensed Technology to Phenomenex, stating:

> Dr. Fatunmbi, while still in the employ of the University, then spent approximately three weeks in the Phenomenex laboratory teaching Phenomenex and its employees/agents the use and application of the Licensed Technology. As a result of this visit, Phenomena obtained access to the University's confidential information, as well as trade secrets and know-how associated with the Licensed Technology.

(*Id.* at ¶ 25).

Taking the allegations of the Complaint as true, it is clear that the confidentiality provision does not apply because it was directed only to protecting the University's patent position. Moreover, the Complaint itself establishes that RCT used reasonable measures to preserve confidentiality and that it was the University who disclosed its confidential information, trade secrets and know-how associated with the Licensed Technology to Phenomenex. Therefore, UD Tech's claim against RCT for breach of the

Commercialization Agreement based on the allegation that RCT "knowingly and recklessly" shared material that was the subject of the Patent Application and Patent and Licensed Technologies with Phenomenex fails as a matter of law.

Finally, UD Tech's allegation that RCT breached a contractual duty by sharing information with unidentified third parties, prior to filing the patent application, also fails as a matter of law. Under the plain language of the Commercialization Agreement, RCT's duty of confidentiality was limited to treating the Invention "with the requisite degree of confidentiality that was necessary to preclude jeopardizing the patentability of such Invention." *See* Ex. A. at § 1.2.   In its Complaint, UD Tech acknowledges  that RCT obtained the patent on the Invention in 1997.  (*See* D.I. 1 at ¶ 27).   As the patent was obtained, RCT clearly satisfied its duty not to jeopardize its patentability under the Commercialization Agreement as a matter of law. Based on the foregoing, UD Tech's claim for breach of the Commercialization by sharing information with third parties is legally deficient and must be dismissed under Fed. R. Civ. P. 12(b)(6).

3.     RCT Did Not Owe A Duty To Monitor For
Patent Infringement

Third, UD Tech alleges that RCT breached the Commercialization Agreement by "knowingly, recklessly, negligently or otherwise permitting Phenomenex to employ Licensed Technology in the commercial manufacture of HPLC products following expiration of the six-month review period without paying University or UDTC its percentage of Gross Revenues that it did or should have collected."  (*See id*. at ¶ 91(c)). In essence, this amounts to an allegation that RCT should have monitored for patent infringement. Yet, the  Commercialization Agreement does not impose a duty on RCT to monitor for infringement by third parties.  (*See*  Ex. A).  Moreover, as discussed above,

UD Tech acknowledges that the University itself provided the technology to Phenomenex. (*See* D.I. 1. at ¶ 25).  Based on the foregoing, it is clear that UD Tech's claim for breach of contract fails as a matter of law and should be dismissed.

> **B.** **UD Tech's Claim for Violation of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed as Duplicative of the Claim for Breach of Contract**

UD Tech's claim for violation of the implied covenant of good faith and fair dealing must be dismissed because it is duplicative of UD Tech's breach of contract claim and fails to allege an essential element of the cause of action.

UD Tech alleges that RCT breached the implied covenant by "failing to monitor and police usage of the Licensed Technology and Trade Secrets after sharing such technology with third parties." (*See* D.I. 1 at ¶ 96).  However, this allegation describes essentially the same conduct that forms the basis of UD Tech's breach of contract claim. (*See* D.I 1 at ¶ 91) ("RCT breached the Marketing Agreement by failing to expend reasonable efforts to secure revenues from third parties commercially or otherwise employing the technology," and RCT "knowingly, recklessly, negligently or otherwise permit[ted] Phenomenex to employ Licensed Technology in the commercial manufacture of HPLC products following expiration of the six-month review period.")).  At bottom, both of these allegations assert that RCT breached a duty to police and monitor third party usage of the technology.  Where the claim for breach of the implied covenant merely re-alleges the same conduct that forms the basis for the breach of contract claim, the claims are duplicative, and must be dismissed.  *Maurey v. Univ. of S. Cal.,* 12 Fed. Appx. 529, 535 (9th Cir.) 2001 (claim for breach of the implied covenant of good faith and fair dealing dismissed as duplicative of the breach of contract claim).

Under Arizona law, the remedy for the breach of the implied covenant is normally by action on the contract. However, in certain circumstances, "the breach . . . may provide the basis for imposing tort damages." *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720 (Ariz. 1991). In order to state a tort claim for breach of the implied covenant of good faith and fair dealing, a special relationship must exist between the parties. *Id.* Such a relationship is characterized by a fiduciary relationship, elements of public interest (such as unequal bargaining positions), and adhesion. *Rawlings v. Apodaca,* 726 P.2d 565, 569 (Ariz. 1986).

In its Complaint, UD Tech does not allege that any special relationship existed between itself and RCT. Moreover, while the implied covenant exists in every contract, it does not provide a basis to add additional terms to the contract that were simply never negotiated between the parties. As no special relationship is alleged to exist between the parties, UD Tech's claim for violation of the implied covenant of good faith and fair dealing does not sound in tort, and is simply duplicative of its claim for breach of contract. As such, it must be dismissed.

> C.    UD Tech's Claims for Equitable Relief Must Be Dismissed Because an Adequate Legal Remedy Exists

UD Tech seeks the equitable remedy of an accounting and imposition of a constructive trust against RCT. Under Arizona law, equitable remedies are only available where there is no adequate remedy at law. *Cracchiolo v. State of Ariz.,* 660 P.2d 494, 498 (Ariz. Ct. App. 1983). Here, the legal remedy of damages was plainly available to UD Tech. Moreover, the fact that UD Tech's claims for legal relief are barred by the statute of limitations does not entitle it to equitable relief. It is well established that

equitable relief is not available where one who had an adequate remedy at law neglected to avail himself thereof. *Baker v. Cummings,* 169 U.S. 189 (1898). Therefore, UD Tech's claims for equitable relief should be dismissed.

1.     UD Tech Fails To State A Claim for
<u>Equitable Accounting</u>

In its Complaint, UD Tech demands that "RCT actively investigate the global market and provide to UDTC an accounting of all past, present, and future uses of the Licensed Technology and the `625 Patent and account for all revenues, benefits or otherwise accrued or that should have accrued from such use." (*See* D.I. 1 at ¶ 104) However, in its Complaint, UD Tech admits that RCT assigned the Licensed Technologies back to the University Delaware in July 2001. (*See id.* at ¶ 8). The Assignment released RCT from all further obligations to commercialize or secure revenue from the commercialization of the Licensed Technologies for the better part of **five years**. *See* Ex. B at § 2.2. In fact, UD Tech admits in its Complaint that by virtue of University's assignment of the Licensed Technologies to it, it is UD Tech who has had an obligation regarding the Licensed Technologies during this time frame. Absent a duty to provide an accounting, UD Tech's request is unreasonable and its demand for an equitable remedy should be dismissed.

Furthermore, the Commercialization Agreement provides for a contractual right to an audit. Section § 3.2 provides:

> RCT shall maintain at its offices, in usual form, books of record, ledgers and accounts relating to its activities under this Agreement, which shall be open to examination by **Institution** or its nominees during regular business hours.

Ex. A at § 3.2.

Thus, UD Tech has an adequate contractual remedy available to it, which it has failed to pursue.  However, it is the appropriate and proper avenue to pursue before proceeding with the instant litigation.  Based on the foregoing, UD Tech's demand for equitable relief in the form of a court supervised accounting should be dismissed.

         2.      **UD Tech Fails To State A Claim For A Constructive Trust**

Under Arizona law, a constructive trust may only be imposed where "there is a *wrongful* holding of property which unjustly enriches the defendant at the expense of the plaintiff." *Burch & Cracchiolo, P.A.  v. Pugliani*, 697 P.2d 674, 679 (Ariz. 1985) (emphasis in original).  A prerequisite to imposition of a constructive trust is the identification of specific property or *res* in which the claimant has an interest. *Amtitle Trust Co. v. Fitch*, 541 P.2d 1166, 1168 (Ariz. Ct. App. 1975).  UD Tech makes no allegation that RCT wrongfully withheld property or that RCT was unjustly enriched at UD Tech's expense. Instead, UD Tech alleges that RCT is liable to it for monies that RCT *should* have collected from Phenomenex or unknown third parties.  (*See* D.I 1 at ¶ 107).  This is nothing more than a speculative claim for general money damages, which does not give rise to a constructive trust. *Amtitle*, 541 P.2d at 1168.  As set forth above, it is also based on a purported contractual duty to monitor for infringement which does not exist.  Based on the foregoing, UD Tech's demand for a constructive trust must be dismissed as well.

CONCLUSION

UD Tech's claims against RCT are time barred by Delaware's three year statute of limitations. Furthermore, UD Tech's claims for breach of contract, violation of the implied covenant of good faith and fair dealing, demand for an accounting and resulting trust are each fatally deficient and fail to state a claim on which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, RCT's motion to dismiss should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*
Karen Jacobs Louden (#2881)
Benjamin Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for defendant Research Corporation
  Technologies

OF COUNSEL:
Donna M. Tanguay
Ronald J. Pabis
MCDERMOTT, WILL & EMERY
600 13th Street, N.W.
Washington, DC  20005-3096
(202) 756-8000

Michael J. Rusing
RUSING & LOPEZ, P.L.L.C.
6262 N. Swan Rd., Ste. 200
Tucson, AZ  85718
520-792-4800

January 23, 2006

503207

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to Michael P. Kelly and John W. Shaw.

I further certify that true and correct copies of the foregoing were caused to be served on January 23, 2006 upon the following individuals in the manner indicated:

**<u>BY HAND</u>**

Michael P. Kelly
MCCARTER & ENGLISH, LLP
919 North Market Street
Suite 1800
Wilmington, DE 19899

John W. Shaw
Young, Conaway, Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

*/s/ Karen Jacobs Louden*
Karen Jacobs Louden