# EXHIBIT A

Agreement Between
Research Corporation Technologies, Inc. ("RCT")
and
UNIVERSITY OF DELAWARE
_____

("Institution")
For Disclosure, Evaluation
and Commercialization of Inventions

Effective _____ April 1 _____, 19 90 ___ (the "Effective Date"), **Institution** and **RCT** agree as follows (the definitions of terms appear in Article VI):

I. DISCLOSURE, EVALUATION AND ACCEPTANCE OF INVENTIONS

1.1. In its discretion, **Institution** shall submit to **RCT**, for evaluation and possible commercialization by **RCT**, the **Inventions** of its **Faculty** which **Institution** owns or shall be entitled to own or license to others.

1.2. **RCT** shall treat any **Invention** disclosed to it under 1.1. above, that has not been published or which is not the subject of an issued **Patent** or a pending **Patent Application**, as proprietary and with the requisite degree of confidentiality necessary to preclude jeopardizing the patentability of such **Invention**. If **RCT** discloses any **Invention** to any third party, **RCT** shall require such third party to exercise its best efforts to hold the same confidential.

1.3. **RCT** shall evaluate all such submitted **Inventions**. Within a reasonable time after **RCT's** receipt of any submitted **Invention**, **RCT** shall advise **Institution** in writing of its decision to accept or decline to accept such submitted **Invention** for commercialization under this Agreement. If **RCT** declines to accept any **Invention**, **Institution** shall, upon receipt of such written decision from **RCT**, be free to take steps to protect and commercialize such **Invention** as **Institution** may see fit to do, without further obligation under this Agreement. If **RCT** accepts any **Invention**, **Institution** shall promptly comply with the provisions of 1.5 below.

1.4. At any time after three (3) months from the date of receipt by **RCT** of any submitted **Invention**, **Institution** may notify **RCT** in writing that **RCT** must accept or decline to accept such **Invention** on or before the date thirty (30) days after **RCT's** receipt of such notice. If **RCT** fails to accept or decline such **Invention** on or before the expiration of such thirty (30) day period, **RCT** shall be deemed to have declined such **Invention**. The provisions of this paragraph shall not apply to an **Invention** so long as **RCT** has submitted such **Invention** to a third party for screening or other evaluation, with approval of **Institution**, in the course of evaluation of such **Invention**.

1.5. Upon **RCT's** acceptance of any **Invention**, **Institution** shall assign or arrange for assignment to **RCT** of all rights, title and interest in and to any such **Invention** and its corresponding **Patent Rights** (foreign and domestic), employing **RCT's** customary forms of assignment.

II. PATENTS

2.1. Upon **RCT's** acceptance of any submitted **Invention**, and **Institution's** assignment in accordance with 1.5 above, **RCT** shall file United States and foreign **Patent Application(s)** on each such accepted **Invention** as **RCT** may deem appropriate and prosecute such **Patent Application(s)** to the extent **RCT** determines that such prosecution will result in **Patent(s)** that have reasonable commercial potential.

2.2. **RCT** shall maintain such **Patents** to the extent **RCT** may deem desirable for its commercialization efforts. **RCT** may abandon or take no further action as to any such **Patent Application** or **Patent** subject to this Agreement and thereafter abandon same if **RCT** determines that corresponding commercialization efforts are no longer justified, or that patent protection is no longer desired. On or before the date sixty (60) days before **RCT** abandons same, **RCT** shall notify **Institution** that it will abandon such **Patent** or **Patent Application**. If, on or before the expiration of such sixty (60) day period, **Institution** requests, in writing, **RCT**

to assign such *Patent Application* or *Patent* to *Institution* or its nominee, *RCT* shall so assign such *Patent Application* or *Patent* as requested. In the case of foreign filed *Patent Applications*, only the perfected filing of a *Patent Application* under the Patent Cooperation Treaty or in the European Patent Office (to extend the time for filing *Patent Applications* which may be perfected in certain countries) in a country shall be regarded as the filing of such a *Patent Application* which requires such notice and only in the country of such perfected filing.

III. COMMERCIALIZATION

    3.1. *RCT* shall expend reasonable efforts to commercialize each accepted *Invention* and corresponding *Patent Applications* and *Patents* and secure reasonable revenue from such commercialization in the manner *RCT* deems appropriate.

    3.2. On or about March 15 of each year, *RCT* shall pay to *Institution* fifty-seven and one-half percent (57-1/2%) of *Gross Income*, if any, received during the prior calendar year in respect of each accepted *Invention*. *RCT* shall retain, for its own benefit, the remaining *Gross Income*. *Gross Income* and *Institution's* share of *Gross Income* shall be separately computed and reported for each such *Invention*, although payment of *Institution's* share of *Gross Income* for all *Institution's Inventions* commercialized under this Agreement may be aggregated and made in one check. If *Institution* has approved the deduction from *Gross Income* of *Special Expenses* pertaining to a particular *Invention* (the "*Invention's Special Expenses*"), *RCT* shall make the following adjustments to *Gross Income* attributable to such *Invention* and received in the prior calendar year (the "*Invention's Gross Income*"):

    (a) subtract from the *Invention's Gross Income* the *Invention's Special Expenses* incurred during the prior calendar year and any excess of the *Invention's Special Expenses* carried forward from earlier calendar years; and

    (b) if the *Invention's Special Expenses* incurred during the prior calendar year and the excess, if any, of the *Invention's Special Expenses* carried forward from earlier calendar years together do not exceed the *Invention's Gross Income*, *RCT* shall pay to *Institution* fifty-seven and one-half percent (57-1/2%) of the remainder.

*RCT* shall furnish a computation of all payments made to *Institution*. *RCT* shall maintain at its offices, in usual form, books of record, ledgers and accounts relating to its activities under this Agreement, which shall be open to examination by *Institution* or its nominees during usual business hours. *RCT* shall also annually report on its previous year's efforts to commercialize each accepted *Invention*.

    3.3. *RCT* shall have the right to abandon its commercialization efforts for any accepted *Invention*, *Patent Application* or *Patent* if *RCT* determines, in its discretion, that such efforts are no longer justified. *RCT* shall notify *Institution* of such abandonment. Upon written request by *Institution*, *RCT* shall assign such *Invention*, *Patent Application* or *Patent* to *Institution* or its nominee. *RCT* shall continue as licensor, grantor or contracting party (or licensee, if applicable) as to licenses, grants, working rights, agreements or other contracts to which any accepted *Invention*, *Patent Application* or *Patent* is then subject if *RCT* reassigns to *Institution* such *Invention*, *Patent Application* or *Patent*. *RCT* shall also continue to compute, pay and retain *Gross Income* and to make reports under 3.2 above with respect to such *Invention*, *Patent Application* or *Patent*.

IV. TERMINATION

    Either party may terminate this Agreement upon three (3) months' written notice to the other party, although any *Invention Institution* has submitted to *RCT* under this Agreement before the effective date of termination shall be subject to this Agreement. Such termination shall not relieve *RCT* of its duty or affect its rights under 3.2 above. Termination of this Agreement shall not prejudice or affect the tenor, validity, effectiveness or scope of any rights *RCT* may have in any submitted or accepted *Invention* or its corresponding *Patent Rights* or any agreement between *RCT* and any third party concerning any submitted or accepted *Invention*. Any such agreement shall survive termination of this Agreement or the assignment, if any, of such *Invention* and its corresponding *Patent Rights* from *RCT* to *Institution*. Any such agreement shall continue to be managed by *RCT* under this Agreement.

## V. GENERAL

5.1. Any controversy or claim arising out of or relating to this Agreement or the breach of this Agreement shall be settled by arbitration, in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction.

5.2. This agreement is expressly subject to and conditioned upon any rights the United States Government may have in any *Invention* administered under this Agreement or the *Patent Rights* to such *Invention* as a result of any contract, grant or funding related to the research or other work that resulted in such *Invention* or *Patent Rights*.

5.3. All notices, requests and other communications provided for in this Agreement shall be directed to the respective parties at the address provided below, shall be in writing, and shall be deemed to have been made or given: (a) when delivered, if delivered by hand or sent by telex, telegram, telecopier or facsimile; (b) on the day following deposit with an overnight courier, if sent via overnight courier; or (c) on the date three (3) days following deposit with the United States Mail, certified or registered. Each party reserves the right to change such address for notification, by notice so given.

If to *RCT*: Research Corporation Technologies, Inc.  
6840 East Broadway Boulevard  
Tucson, AZ 85710-2815

If to *Institution*: at the address indicated below on the signature block.

5.4. This Agreement constitutes the entire agreement and understanding of the parties concerning the subject matter of this Agreement. All prior understandings are merged into and extinguished by this document. This agreement shall be governed and construed according to the laws of the State of Arizona without regard to laws of Arizona concerning any conflicts of laws.

5.5. This Agreement shall apply to *Inventions* of *Faculty* which are submitted or assigned to *RCT* after the Effective Date and shall be in lieu of any earlier invention administration agreement, if any, between *RCT* and *Institution* (the "Superseded IAA") with respect to such *Inventions*. The Superseded IAA shall, nevertheless, continue in full force and effect as to any *Inventions* submitted and accepted by *RCT* before the Effective Date except to the extent *RCT* and *Institution* agree to treat any such previously submitted *Invention* under this Agreement.

5.6. Each party shall exercise due diligence and good faith in performing all acts required or contemplated by this Agreement.

## VI. DEFINITIONS

6.1. When printed in italic letters in this Agreement, the following terms shall have the meanings set forth below:

"*Faculty*" shall mean the members of *Institution's* faculty, staff, fellows, associates, students, employees or others covered by the *Patent Policy*.

"*Gross Income*" shall mean money and other consideration received by *RCT* by reason of its assignment or licensing of any *Invention*, *Patent* or *Patent Rights* to which *RCT* has rights under this Agreement, but shall not include any amounts paid to *RCT* or to *Institution*: (i) for developmental research, feasibility or market studies, or other work undertaken to enhance the *Invention* or its commercialization; or (ii) for the expenses of filing or prosecuting any *Patent Application* or maintaining or working any *Patent* on such *Invention*; or (iii) in respect of, or as a return on, any equity interest *RCT* may have in an entity licensed to practice the *Invention* (although the parties understand and agree that any license agreement between *RCT* and any entity in which it has an equity interest must be approved in writing by *Institution*).

"*Invention*" shall mean invention or discovery or novel plant variety. An *Invention* shall be "made" when it is conceived.

"*Inventor*" shall mean one who makes an *Invention* or one who is a breeder of a novel plant variety eligible for protection by means of a Plant Variety Protection Certificate or the like.

"*Patent*" shall mean a patent or Certificate of Invention or Utility Model or Design Registration or Plant Variety Protection Certificate or other form of protection for an *Invention* issued by a government or governmental agency.

"*Patent Application*" shall mean an application for a *Patent*.

"*Patent Policy*" shall mean the applicable policies, programs, regulations and contracts, expressed or implied, governing or determining the rights of *Institution* in and to *Inventions*, *Patent Applications* and *Patents* and other intellectual property of its professors, teachers, assistants, researchers, staff, fellows, associates, students, employees or others who may be subject to same.

"*Patent Rights*" shall mean:

(a) all right, title and interest in and to an *Invention*, any *Patent Application* filed or to be filed on the *Invention*, any *Patent* issued or issuing on such *Patent Application*;

(b) the right to file for any such *Patent* and to have any such *Patent* issued in the name of the owner or assignee; and

(c) the right to claim any priority right to which the *Inventor* or anyone claiming under him may be entitled.

"*Special Expenses*" shall mean any expenses incurred by *RCT* for litigation or other legal proceedings concerning the infringement, enforceability, validity or scope of any *Patent* or *Patent Application* or any license agreement concerning same, including attorney's fees and disbursements and court costs.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed, and their corporate seals to be affixed, by their duly authorized corporate officers on the date(s) indicated below to be effective as of and on the Effective Date.

RESEARCH CORPORATION
TECHNOLOGIES, INC.

UNIVERSITY OF DELAWARE

Newark, Delaware 19716

By: _Gary M Munsinger_
President
Date: 3-13-90

By: _[signature]_
Title President
Date: 3/22/90

Attest:
By: _Timothy J. Richard_
Secretary

Attest:
By: _[signature]_
Title Secretary

(Seal of *RCT*)

(Seal of *Institution*)