IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UD TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 05-842-GMS |
| | ) | |
| PHENOMENEX, INC., and RESEARCH | ) | |
| CORPORATION TECHNOLOGIES, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PHENOMENEX, INC.'S OPENING BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP
John W. Shaw (No. 3362)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
Attorneys for Defendant Phenomenex, Inc.

Dated: February 6, 2006

**TABLE OF CONTENTS**

Page

NATURE AND STATE OF THE PROCEEDINGS....................................................................1

SUMMARY OF ARGUMENT ............................................................................................1

STATEMENT OF FACTS ................................................................................................3

     A.    UDTC...............................................................................................3

     B.    Phenomenex ......................................................................................3

     C.    RCT.................................................................................................3

     D    The Alleged Patent Infringement............................................................3

     E.    The Assignments Referenced in the Complaint..........................................4

     F.    The Agreements Allegedly Breached by Phenomenex ...............................7

          1.    The Materials Treatment Agreement ............................................7

          2.    The Evaluation License...........................................................8

     G.    The Complaint ....................................................................................9

ARGUMENT..............................................................................................................10

     I.    This Court Must Dismiss The Complaint Under Applicable Law ...........................10

     II.    Plaintiff Does Not Allege When It Acquired Rights To The
          '625 Patent; Its Claim For Patent Infringement Must Therefore Be
          Dismissed At Least In Part For Failure Of Subject Matter Jurisdiction....................11

     III.    UDTC Lacks Standing To Assert Claims Under Either The
          Evaluation License Or The Materials Treatment Agreement ......................................13

     IV.    UDTC's Allegation That Phenomenex Violated The Evaluation
          License Is Time-Barred..............................................................................15

     V.    Plaintiff Does Not Adequately Allege A Breach Of The Materials
          Agreement Based Upon The Covenants Contained In That Agreement ...................18

VI.    UDTC Does Not Adequately Allege A Breach Of The Contractual
       Covenant Of Good Faith And Fair Dealing ................................................... 19

VII.   Counts VI, VII, VIII, XL, And XII Are Preempted By UDTC's
       Trade Secret Misappropriation Claims ........................................................ 23

VIII.  The Trade Secret Misappropriation Counts Must Be Dismissed
       Because UDTC Cannot Assert Any Claim Based On Alleged
       Misappropriations That Occurred Before The University Assigned
       Its Claims to UDTC ................................................................................ 28

       A.   Because of RCT's and Phenomenex's Clear and Unambiguous
            Agreement, Set Forth in the Evaluation License, UDTC Cannot
            State a Claim for Misappropriation or Misuse of Confidential
            Information Under the Delaware and Arizona Stat ........................... 28

       B.   UDTC Does Not Allege That It Has Standing to Sue for
            Misappropriations Occuring Before the University Assigned
            Its Rights to UDTC ..................................................................... 31

CONCLUSION .......................................................................................................... 33

## TABLE OF AUTHORITIES

Page

**Cases**

ABKCO Music, Inc. v. Harrisongs Music, Ltd.,
    944 F.2d 971 (2d Cir. 1991) ........................................................................ 32

All West Pet Supply Co. v. Hill's Pets Products Div.,
    840 F. Supp. 1433 (D. Kan. 1993) ........................................................ 30, 31

Am. Energy Techs., Inc. v. Colley & McGoy, Inc.,
    No. 98-398 MMS, 1999 U.S. Dist. LEXIS 7097,
    (D. Del. Apr. 15, 1999) ............................................................................... 17

Arachnid, Inc. v. Merit Indus., Inc.,
    939 F.2d 1574 (Fed. Cir. 1991) .................................................................. 11

Aspen Advisors LLC v. United Artists Theatre Co.,
    861 A.2d 1251 (Del. 2004) ......................................................................... 21

Bonito Boats, Inc. v. Thundercraft Boats, Inc.,
    489 U.S. 141 (1989) .................................................................................... 28

Burkons v. Ticor Title Ins. Co. of Cal.,
    813 P.2d 710 (Ariz. 1991); ......................................................................... 23

Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,
    318 F. Supp. 2d 216 (D. Del. 2004) ........................................................... 26

Chandler Med. Bldg. Partners v. Chandler Dental Group,
    855 P.2d 787 (Ariz. Ct. App. 1993), ..................................................... 13, 16

Cincinnati SMSA Ltd. P'ship. v. Cincinnati Bell Cellular,
    708 A.2d 989 (Del. 1998) ...................................................................... 21, 22

Cito v. Bridgewater Twp. Police Dept.,
    892 F.2d 23 (3d Cir. 1989) ......................................................................... 15

Conley v. Gibson,
    355 U.S. 41 (1957) ...................................................................................... 10

Demetree v. Commonwealth Trust Co.,
    1996 Del. Ch. LEXIS 112, (Del. Ch. Aug. 27, 1996) ................................. 16

Digital Envoy, Inc. v. Google, Inc.,
    370 F. Supp. 2d 1025 (N.D. Calif. 2005) ................................................... 26

i

Ethypharm S.A. v. Bentley Pharm., Inc.,
    388 F. Supp. 2d 426 (D. Del. 2005)................................................................. 24, 26

Fobes v. Blue Cross and Blue Shield of Arizona, Inc.,
    861 P.2d 692 (Ariz. Ct. App. 1993)........................................................................ 13

Fovargue v. Singer,
    270 P.2d 1090 (Ariz. 1954) .................................................................................... 16

GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.,
    270 F. Supp. 2d 476 (D. Del. 2003)......................................................................... 16

Gen. Motors Corp. v. New A.C. Chevrolet, Inc.,
    263 F.3d 296 (3d Cir. 2001) ................................................................ 10, 13, 15, 22

George W. Luft Co. v. Zande Cosmetic Co.,
    142 F.2d 536 (2d Cir. 1944) .................................................................................... 32

Guardian Construction Co. v. Tetra Tech Richardson, Inc.,
    583 A.2d 1378 (Del. 1990) ...................................................................................... 14

H & J Foods, Inc. v. Reeder,
    477 F.2d 1053 (9th Cir. 1973) ................................................................................. 32

Harris, Inc. v. Loebach,
    145 F.3d 1454 (Fed. Cir. 1998) ............................................................................... 12

In re Rockefeller Ctr. Properties, Inc.,
    184 F.3d 280 (3d Cir. 1999); .................................................................................... 5

In re Student Finance Corp.,
    No. 03-507-JJF, 2004 U.S. Dist. LEXIS 4952,  (D. Del. Mar. 23, 2004) .......... 10, 21

Indium Corp. of Am. v. Semi-Alloys, Inc.,
    781 F.2d 879 (Fed. Cir. 1985) ................................................................................. 13

Insituform of N. Am., Inc. v. Chandler,
    534 A.2d 257 (Del. Ch.1987) .................................................................................. 13

Leal v. Allstate Ins. Co.,
    17 P.3d 95 (Ariz. Ct. App. 2000)............................................................................. 23

Madison Realty Partners 7, LLC v. AG ISA, LLC,
    No. 18094, 2001 Del.Ch. LEXIS 37, (Del. Ch. Apr. 17, 2001) ........................ 13, 14

Marketel Int'l, Inc. v. Priceline.com, Inc.,
    36 Fed. Appx. 423 (Fed. Cir. 2002)..................................................................... 30, 31

Minco. Inc. v. Combustion Eng'g, Inc.,
  95 F.3d 1109 (Fed. Cir. 1996) ................................................................. 12

Nilssen v. Motorola, Inc.,
  963 F. Supp. 664 (N.D. Ill. 1997) ............................................................ 30

Norton v. First Federal Savings,
  624 P.2d 854 (Ariz. 1981) ....................................................................... 14

Oatway v. Am. Int'l Group, Inc.,
  No. 01-033-GMS, 2002 U.S. Dist. LEXIS 1771 (D. Del. Feb. 5, 2002 .................................... 5

On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,
  386 F.3d 1133 (Fed. Cir. 2004), ............................................................... 25

Opteum Financial Services. LLC v. Spain,
  No. 1:05-CV-02073-MHS,
  2005 U.S. Dist. LEXIS 34444 (N.D. Ga. Dec. 8, 2005) ........................................ 26

Penalty Kick Management Ltd. v. Coca Cola Co.,
  318 F.3d 1284 (11th Cir. 2003) ................................................................ 26

Pension Benefit Guar. Corp. White Cons. Inds. Inc.,
  998 F.2d 1192 (3d Cir. 1993) ................................................................... 5

Rawlings v. Apodaca,
  726 P.2d 565 (Ariz. 1986) ....................................................................... 20

Smith v. Melson, Inc.,
  659 P.2d 1264 (Ariz. 1983) ...................................................................... 15

Southwest Savings & Loan Assoc. v. Sunamp Sys., Inc.,
  838 P.2d 1314 (Ariz. Ct. App. 1992) ................................................. 21, 22, 23

Suntex Indus. Corp. v. Cit Group/BBC, Inc.,
  No. 99-81-RRM, 2001 U.S. Dist. LEXIS 17656 (D. Del. Sept. 28, 2001) ......................... 20

Union Pacific R.R. Co. v. Mower,
  219 F.3d 1069 (9th Cir. 2000) .................................................................. 30

Valentine v. Shepard,
  168 P. 643 (Ariz. 1917) .......................................................................... 16

Villegas v. Transamerica Fin. Services, Inc.,
  708 P.2d 781 (Ariz. Ct. App. 1985) ........................................................... 21

VLIW Tech. LLC v. Hewlett-Packard Co.,
  No. 20069, 2005 Del. Ch. Lexis 59, (Del. Ch. May 4, 2005) ................................. 18

Wagenseller v. Scottsdale Memorial Hospital,
  710 P.2d 1025 (Ariz. 1985) ........................................................................ 23

Waner v. Ford Motor Co.,
  331 F.3d 851 (Fed. Cir. 2003) ................................................................... 28

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. v. Pima County,
  88 P.3d 169 (Ariz. Ct. App. 2004) ............................................................ 22

**Statutes**

10 Del. C. § 8106 .......................................................................................... 18

10 Del. C. § 8121 .................................................................................... 17, 18

6 Del. C. § 2001 (2005) ................................................................................ 29

6 Del. C. § 2007 ........................................................................................... 24

Ariz. Rev. Stat. § 12-548 ............................................................................. 18

Ariz. Rev. Stat. § 44-401(b) ........................................................................ 29

Ariz. Rev. Stat. § 44-407 ............................................................................. 24

Cal. Civ. Code Section 337 (Deering 2005) ............................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 13

**Other Authorities**

2-12 James Wm. Moore, et al., Moore's Federal Practice
  §12.34[1][b] (Matthew Bender Co. 2005) ................................................. 11

Uniform Laws Annotated (West 2005) ........................................................ 29

Uniform Trade Secrets Act § 1.(2)(ii) ......................................................... 29

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff UD Technology Corporation ("UDTC") attempts in this action to state claims against Defendant Phenomenex, Inc. ("Phenomenex") for patent infringement, breach of contract, misappropriation of trade secrets, and equitable relief.  Asserting broad and overlapping theories of recovery based on nearly thirteen-year old conduct, UDTC attempts to allege that Phenomenex has somehow misappropriated trade secrets and other proprietary information. UDTC does so by constructing claims based on long-expired contracts between Phenomenex and co-defendant Research Corporation Technologies ("RCT") to which UDTC was never a party nor a third-party beneficiary; and based on statutory and common law causes of action, many of which are preempted, and with respect to which UDTC is not, and was never, the proper plaintiff.  To do so, UDTC alleges a vague series of assignments that are insufficient to allow it to bring these claims and to revive long-since expired causes of action.  Accordingly, as set forth below, none of UDTC's claims as pled have any merit; they should be dismissed based on the face of the Complaint and the language of the contracts referenced therein.

## SUMMARY OF ARGUMENT

UDTC's claims are insufficient as pled and must be dismissed, insofar as UDTC has failed to state claims upon which relief can be granted and improperly alleged subject matter jurisdiction for its claim of patent infringement.

The patent claim must be dismissed, at least in part.  Even accepting all of the allegations of the Complaint as true, UDTC did not acquire any rights to the patent at issue until the University made the alleged assignment of rights in the patent to UDTC, which could not have occurred until 2001 at the earliest.  (Complaint ¶¶ 8, 30.)  That was more than four years after the

patent issued. Fatally, UDTC fails to allege that it was assigned rights to bring suit retroactively for the alleged patent infringement.

For multiple reasons, UDTC has failed to adequately allege claims pursuant to the contracts at issue—the Materials Treatment Agreement and the Evaluation License. UDTC was not a party to or an intended third-party beneficiary of either of those agreements, and has not adequately alleged that it was assigned the right to enforce the agreements. It therefore lacks standing to assert the contract claims. Moreover, the time period for bringing claims under at least one of the agreements has long since passed. Separately, even assuming UDTC had properly alleged standing to assert the breach of contract claims, it has not alleged a breach of any of the covenants contained in the Materials Treatment Agreement. Again, assuming that it had standing, UDTC has not adequately alleged breaches of the implied covenant of good faith and fair dealing under either of the contracts at issue. The clear and unambiguous covenants contained in both agreements preclude UDTC's assertion that the implied covenant was somehow breached by alleged conduct specifically addressed by the agreements.

UDTC's non-contractual claims similarly fail. UDTC's claims for deceptive trade practices and equitable relief fail because they are preempted by state statutory law of trade secret misappropriation, under which UDTC, again, has failed to adequately allege its right to bring suit. UDTC's Complaint therefore fails to state a claim upon which UDTC can recover the relief it is seeking in this action.

## STATEMENT OF FACTS

A.    <u>UDTC</u>

Plaintiff UDTC is a non-profit Delaware corporation which was founded in 2002.  It is separate from the University of Delaware (hereinafter "University").  (Complaint Introductory ¶.)  Its purpose is to own and manage intellectual property developed through certain of the University's research and doctoral programs.  (Complaint ¶ 1.)  According to its website, UDTC "aids in bringing new technologies into the market to compete with colleges and universities which currently have a separate technology transfer arm."  The University is not a party to this litigation.

B.    <u>Phenomenex</u>

Phenomenex is a California corporation engaged in the business of developing, manufacturing and supplying columns and accessories for the separation, analysis and purification of chemicals and biochemicals.  Phenomenex's current product lines are primarily in the areas of high pressure liquid chromatography ("HPLC"), gas chromatography, solid phase extraction, and gel extraction.

C.    <u>RCT</u>

Defendant RCT is an Arizona corporation engaged in the development of technology investment, management, development, and marketing.  <u>See</u> Complaint ¶ 6.  RCT's business is to partner with affiliated institutions to license patentable and patented processes, products, and procedures to third parties.  <u>Id.</u>

D.    <u>The Alleged Patent Infringement</u>

The Complaint asserts that Phenomenex willfully infringes United States Patent No. 5,599,625 (the "'625 patent"), which addresses certain aspects of HPLC materials containing

trichlorosilanes.  The Complaint alleges generally that Phenomenex's Jupiter brand HPLC

products infringe the '625 patent.  (Complaint ¶ 30.)  Certain (but not all) of the products in

Phenomenex's Jupiter line are HPLC materials containing trichlorosilanes.  The inventors of the

'625 patent (the "Inventors") are not parties to this lawsuit.

       E.      <u>The Assignments Referenced in the Complaint</u>

The Complaint references a vague series of assignments—none of which it attaches—

pursuant to which Plaintiff UDTC purportedly acquired the rights to bring this lawsuit.  As set

forth below, those assignments do not constitute an adequate basis to confer standing upon

UDTC to bring any of the instant claims.  In sum, the chain of assignments alleged is as follows:

    (a)      Inventors of the '625 patent were Dr. Mary Wirth and Dr. Hafeez O. Fatunmbi, both of whom were employed by the University of Delaware in or around 1991 when the research allegedly giving rise to the '625 patent was conducted.  (Complaint ¶¶ 13-14.)

    (b)      On April 1, 1990, the University granted to RCT certain rights, title and interest in certain University technologies, including those developed by the Inventors, and corresponding patent rights (foreign and domestic) in such technologies, based on a Marketing Agreement between RCT and the University.  <u>See</u> Complaint ¶¶ 15-17.  Pursuant to that agreement, on June 17, 1992, RCT filed U.S. Patent Application 07/900,215.  <u>Id.</u>  As a result of that application, U.S. Patent No. 5,599,625 issued on February 4, 1997 in the name of the Inventors.  (Complaint ¶ 27; Complaint, Ex. A)  Based

on the Marketing Agreement, RCT became the licensee of the '625 patent upon its issuance. See id.

(c)  The Complaint alleges that RCT eventually assigned back its rights in the patent at issue back to the non-party University of Delaware. Specifically, UDTC alleges that, on July 24, 2001, "RCT assigned all of its right, title and interest in and to the '625 Patent and the inventions described therein" to the University. (Complaint ¶ 30.) It does not allege that RCT assigned any other rights to the University such as, for example, the assignment of contractual rights. The underlying instrument by which such assignment was effected is not referenced in or attached to the Complaint. A copy of the agreement and the accompanying deed of assignment (collectively, the "2001 Assignment Agreement") is attached to this motion at Ex. C.[1] That agreement and deed demonstrate that the rights transferred from RCT to

---

[1] This Court is permitted to review the agreements relied upon by UDTC in the Complaint as part of the determination of whether UDTC has stated a claim upon which relief may be granted. Such review does not convert this motion to dismiss into one for summary judgment. See In re Rockefeller Ctr. Properties, Inc., 184 F.3d 280, 287 (3d Cir. 1999); Oatway v. Am. Int'l Group, Inc., No. 01-033-GMS, 2002 U.S. Dist. LEXIS 1771, at *2 (D. Del. Feb. 5, 2002) (Sleet, J.) (considering agreements referenced in complaint for purposes of motion to dismiss; granting motion). In addition, "a district court may examine an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. White Cons. Inds. Inc., 998 F.2d 1192 (3d Cir. 1993) (in evaluating 12(b)(6) motion district court properly considered a contract upon which allegations of complaint relied). In the Pension Benefit case, the Third Circuit explained that the policy behind this rule is to prevent plaintiffs from surviving motions to dismiss by deliberately omitting from a complaint documents upon which their claims are based. Id. at 1196 ("Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

the University were limited to RCT's "entire right, title and interest in" the '625 patent and the invention described in the patent. <u>See</u> Ex. C.

(d)     UDTC alleges that at some unspecified point in time after July 24, 2001, the University of Delaware assigned to Plaintiff UDTC "all of its past, present and/or future right, title and interest in and to the technology and any agreements, causes of action and/or third party beneficiary rights associated with the '625 patent." (Complaint ¶ 8.) Again, the underlying instrument by which such assignment was effected is not referenced in or attached to the Complaint.

Because the Complaint does not allege that RCT ever made an underlying grant to the University of "all of its past, present and/or future right, title and interest in and to the technology and any agreements, causes of action and/or third party beneficiary rights associated with the '625 Patent" (<u>see</u> Complaint ¶ 8), as pleaded, the University granted broader rights to Plaintiff UDTC than it actually possessed as a result of the July 2001 assignment from RCT. As set forth below, this attempt by UDTC to claim the benefit of an assignment broader than that which it could have actually received, taking the allegations of the Complaint as true, is fatal to many of the claims UDTC attempts to assert in this lawsuit. <u>See</u> <u>infra</u> Sections II, IV and VIII (addressing claims for patent infringement, breach of contract, and trade secret misappropriation).

F.   The Agreements Allegedly Breached by Phenomenex

The Complaint alleges breaches of two long since expired agreements to which

Phenomenex and co-defendant RCT (but not Plaintiff UDTC) were parties:  (a) the "Materials

Treatment Agreement" between Phenomenex and RCT dated August 25, 1992; and (b) the

"Evaluation License and Right of First Refusal" between Phenomenex and RCT, dated August

29, 1993 (the "Evaluation License").  These agreements were discussed and paraphrased at

length in the Complaint; they are attached to this brief (see supra fn 1), and are summarized

below.

1.   The Materials Treatment Agreement

RCT and Phenomenex entered into the Materials Treatment Agreement as of August 28,

1992. (Complaint ¶ 18.)  The agreement, which is less than one and a half pages, is

straightforward and limited in scope.  See Ex. A.  According to the agreement, the INVENTORS

had assigned the INVENTION that was the subject of U.S. Patent Application No. 900,215 to

RCT.  It states that Phenomenex would provide to the INVENTORS a sample of materials to be

treated according to the method of the alleged invention, and that RCT would request the

INVENTORS to treat such materials for Phenomenex.  Thereafter, the treated materials were to

be returned to Phenomenex for research and testing.  (Ex. A, §§ 2, 3, & 4.)  The contract

provided that Phenomenex would "[u]se the treated materials solely for noncommercial research

purposes" and that "[u]pon completion of its research, [would] destroy or return to INVENTORS

any unused portions of the treated materials, including derivatives, fragments or modifications."

Id. at ¶ 3(a)(iii).  It further provided that Phenomenex would not (i) use the treated materials "in

any study other than those in direct furtherance of its research under this Agreement"; (ii)

"[t]ransfer the treated materials from its facility to any other site owned or controlled by another

person"; or "[u]se the treated materials for any commercial or nonacademic purposes." Id. at ¶ 3(b).

The Materials Treatment Agreement did not confer upon Phenomenex any obligations related to confidentiality. Nor did it reference any third-party beneficiaries. [2]

        2.    The Evaluation License

The Evaluation License was entered into between Phenomenex and RCT as of March 29, 1993, defined in the agreement as "the "EFFECTIVE DATE." (Ex. B, Introductory ¶.) This agreement was an exclusive license for Phenomenex "to make and use LICENSED PRODUCTS for evaluation of the INVENTION; and to practice LICENSED PROCESSES for evaluation of the INVENTION," in exchange for a license issue fee of $2,000. (Ex. B, § 2.1.) The agreement conferred Phenomenex with "a right of first negotiation and an evaluation license to evaluate the INVENTION free from suit by LICENSOR for infringement of the PATENT CLAIMS. . ." (Ex. B, § 1.4.) The agreement defined INVENTION as products described in U.S. Patent Application Number 900,215. (Ex. B, §§ 8.2, 8.5.)

The terms of the license provided that it was to "expire and have no further effect on the date six (6) months after the EFFECTIVE DATE." (Ex. B, § 2.4.) Therefore, the Evaluation License expired by its terms on September 29, 1993.

The Evaluation License included an express contractual description of Phenomenex's obligations vis-à-vis information provided to Phenomenex during the life of the license. In this regard, the agreement provided, in pertinent part:

---

[2]    The Materials Treatment Agreement did not contain a choice of law provision. However, that contract would likely be interpreted under Arizona law like the Evaluation License: it was entered into between the same parties as the Evaluation License, addresses the same subject matter and was executed less than a year prior to that agreement.

> SECTION 4.2. Non-Use and Non-Disclosure. LICENSEE [Phenomenex] agrees that, for a period of five (5) years after the date of LICENSEE's receipt of PROPRIETARY INFORMATION, it shall not: (i) commercially use any PROPRIETARY INFORMATION; or (ii) disclose to any third party any PROPRIETARY INFORMATION disclosed to it under this Agreement. . . .

Section 4.2 clearly and unambiguously restricted Phenomenex's ability to use and disclose allegedly proprietary information for only five years after receipt of the information. Section 4.2 is a commonly used form of contractual statute of limitations that is understood by reasonable contracting parties to place a time limit on the receiving party's confidentiality obligations and as a necessary tool to cut-off stale claims of trade secret theft. See, e.g. 2 Jacob Rabkin & Mark H. Johnson, Current Legal Forms, 3-1007, Form 3.01 (Matthew Bender & Co. 2003) rel. 146-8/03) ( describing purpose of similar provision to be limiting the obligation of confidentiality "to a defined period of time").

The Evaluation License did not contain any provision barring use of the alleged invention or confidential information or extending Phenomenex's obligations after the five-year period expired.

The Evaluation License expressly and unambiguously provided that there were no third party beneficiaries to the obligations provided therein and that no third parties were permitted to enforce the terms of the contract:

> SECTION 7.4. No Third-Party Beneficiaries. None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third-party.

The agreement further provided that it was to be "construed and enforced under the laws of the State of Arizona." (Ex. B, § 7.8.)

G.    The Complaint

In addition to its allegation that Phenomenex has infringed, induced others to infringe, and contributorily infringed the '625 patent by selling and offering for sale Phenomenex's

"Jupiter" HPLC column, UDTC alleges that Phenomenex has breached express covenants contained in the Materials Treatment Agreement and the Evaluation License, as well as implied covenants of the duty of good faith and fair dealing. In addition, attempting to circumvent the time-limited confidentiality provisions of the Evaluation License, which set forth Phenomenex's specific responsibilities with respect to confidential information obtained from RCT, UDTC alleges trade secret misappropriation under Arizona and Delaware law, and violation of Delaware's version of the Uniform Deceptive Trade Practices Act. Finally, UDTC alleges unjust enrichment, conversion, and requests an accounting of all financial gains from the alleged wrongs. As set forth herein, UDTC cannot prevail on its claims.

## ARGUMENT

## I.    THIS COURT MUST DISMISS THE COMPLAINT UNDER APPLICABLE LAW

UDTC's Complaint fails to state a claim upon which relief can be granted and therefore must be dismissed by this Court. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also In re Student Finance Corp., No. 03-507-JJF, 2004 U.S. Dist. LEXIS 4952, at *15 (D. Del. Mar. 23, 2004) (dismissing complaint where plaintiff "could prove no set of facts" that would entitle him to relief). Even accepting as true the Complaint's factual allegations, and drawing all reasonable inferences in the light most favorable to UDTC, the allegations in the Complaint do not state claims against Phenomenex.

When considering a motion to dismiss, the Court need not credit "[c]onclusory allegations or legal conclusions." Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001) (affirming the district court's dismissal of claim for breach of implied covenant based on conclusory legal allegations). It is well-settled that:

> Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions. The plaintiff need not include evidentiary detail, but must allege a factual predicate concrete enough to warrant further proceedings.

2-12 James Wm. Moore, et al., Moore's Federal Practice §12.34[1][b] at 12-61 - 12-63 (Matthew Bender Co. 2005) (rel. 134-6/02 Pub. 410). (footnote, internal quotations and citations omitted).

This Court is entitled to consider documents integral to or explicitly relied upon in the Complaint without converting the motion to dismiss into one for summary judgment. See supra fn. 1. The following documents are integral to UDTC's Complaint and therefore are attached to this motion to dismiss: (i) The Materials Treatment Agreement (attached hereto as Ex. A); (ii) The Evaluation License (attached hereto as Ex. B); AND (iii) The 1991 Assignment Agreement (attached hereto as Ex. C).

As set forth below, consideration of the pleadings and exhibits attached to this motion demonstrates conclusively that UDTC is not entitled to any of the relief which it seeks.

## II.    PLAINTIFF DOES NOT ALLEGE WHEN IT ACQUIRED RIGHTS TO THE '625 PATENT; ITS CLAIM FOR PATENT INFRINGEMENT MUST THEREFORE BE DISMISSED AT LEAST IN PART FOR FAILURE OF SUBJECT MATTER JURISDICTION

UDTC's allegation that Phenomenex infringed the '625 patent must be dismissed, at least in part, under Rule 12(b)(1), for lack of subject matter jurisdiction insofar as Plaintiff does not have standing to sue for any alleged infringement that occurred prior to the time it gained legal rights in the patent at issue. It is well-settled that "one seeking to recover money damages for infringement of a United States patent (an action "at law") must have held the legal title to the patent during the time of the infringement." Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed. Cir. 1991) (internal citation omitted) (emphasis added); See also Heidelberg Harris,

Inc. v. Loebach, 145 F.3d 1454, 1458 (Fed. Cir. 1998) (plaintiff lacked standing to sue for patent infringement that occurred prior to date upon which it obtained legal title to the patent at issue).

The Complaint alleges that the '625 patent issued on February 4, 1997. (Complaint ¶ 27.)  RCT was named as the assignee on the face of the patent.  The Complaint does not allege when (or pursuant to what instrument) UDTC allegedly obtained legal rights to the '625 patent— only that it obtained such rights from the University of Delaware, which in turn obtained such rights from RCT.  (Complaint ¶¶ 8, 30.)  In particular, the Complaint alleges that RCT granted the University rights to the '625 patent on July 24, 2001.  (Complaint ¶ 30.)  Therefore, even assuming that the University granted UDTC rights to the '625 patent on July 24, 2001, contemporaneous with its receipt of such rights from RCT, UDTC cannot state a claim based on any alleged infringement that occurred before July 24, 2001.

Nor does UDTC allege that it acquired the right to bring a claim for past infringement of the '625 patent.  The law is clear that absent a provision in a patent assignment which expressly confers the right to sue for past infringement, no such right is transferred.  Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("[T]he right to sue for prior infringement is not transferred unless the assignment agreement manifests an intent to transfer this right.").  To the extent UDTC tries to allege that it received a broad grant of rights from the University (see Complaint ¶ 8) (alleging broad assignment from the University to UDTC which included, inter alia, "all of its past, present and/or future right . . . associated with the '625 patent"), such allegation is not supported by the pleadings.  Compare Complaint ¶ 8 with Complaint ¶ 30 (alleging mere transfer of "right, title and interest" to the '625 patent from RCT to the University).  See also Ex. C (assignment of rights from RCT to University)./

Therefore, to the extent UDTC's patent infringement claim is based on conduct predating July 24, 2001, Plaintiff has failed to meet the jurisdictional standing requirement, and this Court should grant Phenomenex's motion for partial dismissal pursuant to Fed. R. Civ. P. 12(b)(1). See Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883-84 (Fed. Cir. 1985) (noting that lack of subject matter jurisdiction should be raised under Fed. R. Civ. P. 12(b)(1)).

### III.   UDTC LACKS STANDING TO ASSERT CLAIMS UNDER EITHER THE EVALUATION LICENSE OR THE MATERIALS TREATMENT AGREEMENT

Nor has UDTC adequately pled standing to assert claims for breaches of the Evaluation License or Materials Treatment Agreement.  UDTC proffers only the vague and conclusory assertion that it "has certain rights under the Materials and Evaluation Agreements."  (Complaint ¶ 43.)  This allegation lacks any basis in the pleadings and should not be given any weight for purposes of this motion to dismiss.  See Gen. Motors, 263 F.3d at 333 (affirming district court's dismissal of claim for breach of claim for breach of implied covenant based on conclusory allegations).

The law is well-settled in both Arizona (which explicitly governs the Evaluation License) and Delaware that, to properly bring a claim on a contract, a party must either be (i) a party to the contract; (ii) an intended third-party beneficiary of the contract; or (iii) an assignee of the contract.  See, e.g., Madison Realty Partners 7, LLC v. AG ISA, LLC, No. 18094, 2001 Del.Ch. LEXIS 37, at *14 (Del. Ch. Apr. 17, 2001) (dismissing breach of contract claims brought by non-signatory plaintiffs under Rule 12(b)(6); "As a general matter, only a party to a contract has enforceable rights under, and may sue for breach of that contract.") (citing Insituform of N. Am., Inc. v. Chandler, 534 A.2d 257, 270 (Del. Ch.1987)); Fobes v. Blue Cross and Blue Shield of Arizona, Inc., 861 P.2d 692, 695 (Ariz. Ct. App. 1993) (dismissing complaint for breach of

contract where plaintiff was not a party to contract at issue). UDTC does not fall—and has not alleged that it falls—into any of these categories. For this reason alone, all of UDTC's claims based explicitly or implicitly on breaches of these agreements (Counts II, III, IV, V, VII, VIII, XI, and XII) must be dismissed on the face of the pleadings.

As the Complaint recognizes (see Complaint ¶¶ 18-20), and the plain language of the contracts confirms (see Ex. A at 1; Ex. B at 1), the only parties to the Materials Treatment Agreement and the Evaluation License were Phenomenex and RCT, co-defendants in this action. Therefore, UDTC is not a proper plaintiff for the alleged breaches of these agreements.

Further, UDTC has failed to plead that it was an intended third-party beneficiary of the contracts at issue. Indeed, Section 7.4 of the Evaluation License, entitled "No Third-Party Beneficiaries," specifically provides that "None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third-party." Ex. B at § 7.4 (emphasis added).[3]

Finally, UDTC, does not allege that rights under the contracts were ever assigned to it. While it alleges that it was granted certain rights from the University relating to the '625 patent (Complaint ¶ 8), and that the University received those rights from RCT (see id. at ¶ 30), the Complaint does not allege that RCT ever assigned any contractual rights to the University or to

_____

[3]    Nor would the pleadings support an inference that UDTC was a third-party beneficiary of the contracts at issue. UDTC does not, for example, allege that RCT and Phenomenex specifically intended it to be a beneficiary of the contracts at issue at the time such contracts were entered into. See Madison Realty, at *14-15 (dismissing contract claims where plaintiffs had not alleged facts showing that [plaintiffs] occupied any status other than as incidental beneficiaries of th[e] agreement); Guardian Construction Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378, 1386-87 (Del. 1990) (requiring that beneficiaries under a contract must be intended in order for party to qualify as a third-party beneficiary); Norton v. First Federal Savings, 624 P.2d 854, 856 (Ariz. 1981) (holding that intention to benefit third party must be indicated in contract itself; contemplated benefit must be both intentional and direct; it must appear that parties intend to recognize third party as primary party in interest). Again, the plain language of the contracts confirms this conclusion. See Ex. A at 1; Ex. B at § 7.4.

UDTC. The conclusory allegation set forth in paragraph 43 of the Complaint is insufficient in this respect. Therefore, the pleadings themselves do not support the conclusory allegation that the University could somehow have assigned contractual rights related to the '625 Patent and inventions described therein to UDTC. See id. at ¶¶ 8, 43. See also Gen. Motors, 263 F.3d at 333 (conclusory allegation did not clear 12(b)(6) hurdle.)

UDTC, accordingly, has not and cannot state claims for contractual breaches of the Evaluation License or Materials Treatment Agreement.

## IV.    UDTC'S ALLEGATION THAT PHENOMENEX VIOLATED THE EVALUATION LICENSE IS TIME-BARRED

UDTC's claim that Phenomenex violated the Evaluation License is time-barred and must be dismissed on that basis. Statute of limitations claims are appropriately addressed on motions to dismiss. Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989) (affirming dismissal on Rule 12(b)(6) motion where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.") (internal citations omitted).

The plain language of the Evaluation License and the statutory limitations period demonstrate that any claim under that agreement is time-barred. Under Arizona law, which governs the agreement, "[t]he construction of a contract is a question of law where the terms of the agreement are plain and unambiguous." Smith v. Melson, Inc., 659 P.2d 1264, 1266 (Ariz. 1983) (directing the trial court to order specific performance of an unambiguous contract). Arizona law on this point is the same as Delaware law—to determine whether contract language is plain and unambiguous, a court should read the language in question "in light of the parties' intentions as reflected by their language and in view of all the circumstances." Id. accord Demetree v. Commonwealth Trust Co., 1996 Del. Ch. LEXIS 112, at *11 (Del. Ch. Aug. 27,

1996) ("Where parties have entered into an unambiguous integrated contract, the contract's construction should be that which would be understood by an objective reasonable third party"); "[i]f the intention of the parties is clear from such a reading, there is no ambiguity."). See also GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd., 270 F. Supp. 2d 476, 481 (D. Del. 2003) ("Disputes involving the interpretation of unambiguous contracts are resolvable as matter of law;" "the use of extrinsic evidence to interpret 'clear and unambiguous' language in a contract is not permitted; rather such language is to be construed in accordance with how it would be understood by an objective reasonable third party.") (internal quotations omitted).[4]

The Evaluation License provided that it would expire by its terms as of September 29, 1993, which was six months after the agreement's Effective Date of March 29, 1993. See, e.g. Ex. B, § 2.4 ("The Evaluation License shall expire and have no further effect on the date six (6) months after the EFFECTIVE DATE.") The confidentiality provision in the Evaluation License placed a plain and unambiguous limitation on the time period—five years—during which Phenomenex was restricted from using or disclosing any allegedly proprietary information shared under the license. That provision provided:

> SECTION 4.2. Non-Use and Non-Disclosure. LICENSEE [Phenomenex] agrees that, for a period of five (5) years after the date of LICENSEE's receipt of PRO-PRIETARY INFORMATION, it shall not: (i) commercially use any PROPRIETARY INFORMATION; or (ii) disclose to any third party any PROPRIETARY INFORMATION disclosed to it under this Agreement. . . (emphasis added).

---

[4] "The mere fact that parties disagree as to its meaning does not establish an ambiguity," Chandler Med. Bldg. Partners v. Chandler Dental Group, 855 P.2d 787, 791 (Ariz. Ct. App. 1993), and "[i]t is only where a contract is ambiguous or equivocal that extrinsic evidence may be resorted to for the purpose of determining the real meaning of the contract," Fovargue v. Singer, 270 P.2d 1090, 1093 (Ariz. 1954) (quoting Valentine v. Shepard, 168 P. 643, 644 (Ariz. 1917)).

Section 4.2 clearly and unambiguously restricted Phenomenex's ability to use and disclose allegedly proprietary information for only five years after receipt of the information. Section 4.2 is a commonly used form of contractual statutes of limitations that is understood by reasonable contracting parties to place a time limit on the receiving party's confidentiality obligations and as a necessary tool to cut-off stale claims of trade secret theft. See supra Statement of Facts (subpart F). Neither Section 4.2 nor any other section of the agreement imposed any confidentiality (or other) restriction on Phenomenex after the five year period terminated, e.g., on (or before) September 29, 1998.

Therefore, at the very latest (assuming that Phenomenex did not receive any proprietary information until the last effective date of the agreement), Phenomenex's confidentiality obligations pursuant to the Evaluation License expired as of September 29, 1998 – over seven years before UDTC filed this action against Phenomenex.

To determine when UDTC's claim for alleged violation of the confidentiality provisions of the Evaluation License should have been properly brought, one must look to the applicable statute of limitations. "[A] federal court sitting in diversity is required to apply Delaware's borrowing statute, 10 Del. C. § 8121, when the cause of action arises outside of Delaware" even in cases including contracts with choice of law provisions specifying a state's law other than Delaware. Am. Energy Techs., Inc. v. Colley & McGoy, Inc., No. 98-398 MMS, 1999 U.S. Dist. LEXIS 7097, at *9, *7 (D. Del. Apr. 15, 1999) (Schwartz, J.).

The Delaware borrowing statute provides, in pertinent part:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. ...

10 Del. C. § 8121.

The Complaint alleges, and the Evaluation License confirms, that UDTC's breach of

contract claim arose outside of Delaware. For example, the Complaint alleges Phenomenex is a

California corporation, (Complaint ¶ 2), RCT is an Arizona corporation, (id. ¶ 6), and that the

Evaluation Agreement was to be governed by Arizona law.

Here, because Delaware's three-year state of limitations for contractual claims is shorter

than those of the other states where the cause of action potentially occurred, the three year statute

governs.[5]  Under Delaware law, an action for a breach of contract accrues at the time of the

alleged breach, regardless of whether the plaintiff was then aware of the injury.  VLIW Tech.

LLC v. Hewlett-Packard Co., No. 20069, 2005 Del. Ch. Lexis 59, at *41 (Del. Ch. May 4, 2005).

Therefore, because the latest date upon which a breach of the confidentiality provisions of the

Evaluation License could have occurred was on September 29, 1998, and because, under

Delaware's three-year statute of limitations, any claims should have been asserted before

September 29, 2001, UDTC's claim, which was not asserted until December 2005, is time-

barred.

## V.    PLAINTIFF DOES NOT ADEQUATELY ALLEGE ANY BREACH OF THE MATERIALS AGREEMENT BASED UPON THE COVENANTS CONTAINED IN THAT AGREEMENT

Even assuming that UDTC had standing to assert the breach of contract claims under the

Materials Treatment Agreement, UDTC has not adequately alleged breaches of the covenants

contained in that agreement.  The Complaint alleges that Phenomenex breached the Materials

Treatment Agreement in two ways, e.g., by:

---

[5]      See 10 Del. C. § 8106 (setting forth three-year statute of limitations).  Statutory limitations periods for contractual breaches in Arizona and California are six years and four years, respectively.  See Ariz. Rev. Stat. § 12-548 (LexisNexis 2005); Cal. Civ. Code Section 337 (Deering 2005).

  a.  Employing the material that is the subject of the Patent Application and thereafter, the Licensed Technology, for a purpose other than research or evaluation;

  b.  Sharing the material that is the subject of the Patent Application and thereafter, the Licensed Technology, with third parties, and profiting thereby.

(Complaint ¶ 46(a)-(b).)[6] These are not, however, obligations imposed upon Phenomenex in the contract.

  The Materials Treatment Agreement is silent as to Phenomenex's contractual obligations – if any – vis-à-vis products covered by the alleged invention and/or that utilize alleged trade secrets or know how related to the invention <u>except with regard to materials actually treated and provided to Phenomenex</u> as contemplated by the express and unambiguous terms of the Materials Treatment Agreement.  Accordingly, Plaintiff has failed to state a claim for breach of the Materials Treatment Agreement.

## VI. UDTC DOES NOT ADEQUATELY ALLEGE A BREACH OF THE CONTRACTUAL COVENANT OF GOOD FAITH AND FAIR DEALING

  UDTC alleges in Count III of the Complaint that Phenomenex breached the covenant of good faith and fair dealing implied in both the Evaluation License and the Materials Treatment Agreement.  In support, it proffers only the conclusory assertion that Phenomenex did so by acting to "evade the letter and spirit of the bargain between the owner of the Licensed

---

[6] The Complaint defines the phrase "Licensed Technology" as "meaning all technology associated with the '625 Patent and any trade secrets and/or know how associated therewith, as well as any technology, including any trade secrets and/or know how associated therewith, that is encompassed by any of the Marketing Agreement [to which Phenomenex is not a party], the Materials Treatment Agreement and the Evaluation License, including the Licensed [P]roducts and Licensed Processes as defined in those Agreements."  (Complaint ¶ 35.)

Technology and Phenomenex". See Complaint ¶ 52. As set forth below, this claim is insufficient as pled.

As a preliminary matter, UDTC cannot assert breach of this covenant under either agreement because it has failed to allege that it was a party to, an intended third party beneficiary, or an assignee of either contract. See supra Part IV. See also Suntex Indus. Corp. v. Cit Group/BBC, Inc., No. 99-81-RRM, 2001 U.S. Dist. LEXIS 17656, at *19 (D. Del. Sept. 28, 2001) ("While a contracting party or an intended beneficiary to a contract can raise claims for breach of contract founded in the common law and statutory duties of good faith and fair dealing, the plaintiffs, as unintended third party beneficiaries do not have the standing to assert such claims.") In addition, as set forth above, any alleged claims relating to the Evaluation License are time-barred. See supra Part V.

Because the covenant of good faith and fair dealing has its origins in the parties' contract, Arizona law applies to UDTC's claim that the covenant was breached.[7] Rawlings v. Apodaca, 726 P.2d 565, 569-70 (Ariz. 1986) (Arizona law implies a covenant of good faith and fair dealing in every contract) (citations omitted). Under Arizona law, the implied covenant of good faith and fair dealing is a narrow concept. The implied covenant cannot alter the contracting parties' clear and unambiguous expectations as memorialized in their written agreement. According to the Arizona Court of Appeals:

> the duty to act in good faith does not alter the specific obligations
> of the parties under the contract . . . . Acts in accord with the terms
> of one's contract cannot *without more* be equated with bad faith. . .
> If contracting parties cannot profitably use their contractual powers
> without fear that a jury will second-guess them under a vague
> standard of good faith, the law will impair the predictability that an
> orderly commerce requires.

---

[7]     Both agreements are likely governed by Arizona law. See supra fn 2.

Southwest Savings & Loan Assoc. v. Sunamp Sys., Inc., 838 P.2d 1314, 1319-20 (Ariz. Ct. App. 1992) (citations omitted in part) (footnote omitted) (emphasis in original).  "A contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range – a reason beyond the risks assumed by the party claiming a breach." Id.  Other Arizona cases are in accord.  See, e.g., Villegas v. Transamerica Fin. Services, Inc., 708 P.2d 781, 784 (Ariz. Ct. App. 1985) ("Courts have no right to remake contracts to comport with some unspecified notion of fairness nor to refuse enforcement on that ground.") (affirming defendant's motion for summary judgment).

The law of Delaware is consistent with that of Arizona.  In Cincinnati SMSA Ltd. P'ship. v. Cincinnati Bell Cellular, 708 A.2d 989 (Del. 1998), the Supreme Court affirmed the Chancery Court's dismissal under Rule 12(b)(6) of a claim for a breach of the contractual duty of good faith and fair dealing.  The Supreme Court stated its conclusion that "[a]fter reviewing the unambiguous terms of the Agreement, we conclude that, regardless of any set of facts that may be inferred from the pleadings, no restriction on the [parties abilities] may be implied."  Id. at 994.  See also Aspen Advisors LLC v. United Artists Theatre Co., 861 A.2d 1251, 1259 (Del. 2004) (upholding Chancery Court's dismissal of alleged breach of implied duty of good faith and fair dealing; "'implying obligations based on the covenant . . . is a cautious enterprise . . . those cases should be rare.'") (quoting Cincinnati, 708 A.2d at 992); In re Student Finance Corporation, at *18-19 (dismissing claim for breach of duty of good faith and fair dealing for failure to state a claim; under Delaware law, claim requires party to "act reasonably to fulfill the intent of the parties to the agreement.") (internal citations omitted).

Therefore, where, as here, the covenants set forth in an agreement are clear and unambiguous, Rule 12(b)(6) dismissal of alleged breaches of the duty of good faith and fair

dealing is appropriate. Here, UDTC's sole allegation made to support its claim of breach of the covenant of good faith and fair dealing is that Phenomenex "evade[ed] the letter and spirit of the bargain between the owner of the Licensed Technology and Phenomenex". See Complaint ¶ 52. The crux of the Complaint is that Phenomenex misused certain licensed technology and trade secrets provided to it under the Evaluation License and the Materials Treatment Agreement. These are precisely the kinds of assertions that will not support a claim for the breach of good faith and fair dealing.

Here Phenomenex and RCT clearly and unambiguously bargained for a 5-year non-use and non-disclosure period in Section 4.2 of the Evaluation License. Contracts allowing for the exchange of confidential information include such time-limitation periods to cut out stale and spurious claims. The disclosing parties to the Evaluation License expressly assumed the risk that Phenomenex might use RCT's confidential information, and UDTC should not now be permitted to raise claims "under a vague standard of good faith" where such claims were "expressly rejected at the time of contracting," as evidenced by the clear and unambiguous language of the Evaluation License. Southwest Savings, 838 P.2d at 1319. See also Cincinnati SMSA, 708 A.2d at 994; Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. v. Pima County, 88 P.3d 169, 176 (Ariz. Ct. App. 2004) ("contracts are designed to memorialize and enforce the intentions of the parties, the express terms of a contract remain the best evidence in assessing the parties reasonable expectations under that contract") (citing Southwest Savings standard). See generally Gen. Motors Corp. v. New A.C., 263 F.3d at 332 (claim for breach of duty of good faith and fair dealing was properly dismissed on the pleadings). Therefore, UDTC has not asserted any alleged conduct by Phenomenex that went beyond the risks assumed by RCT in agreeing to the Evaluation License.

UDTC's claim for breach of the duty of good faith and fair dealing implied in the Materials Treatment Agreement fares no better because the Complaint does not allege any conduct that meets the standard of <u>Southwest Savings</u> in connection with that agreement. <u>See</u> Complaint ¶ 52.

Finally, courts in Arizona have recognized a claim for the breach of a duty of good faith and fair dealing grounded in tort.[8]  UDTC has not alleged tort claims for breaches of this duty. Even if it had, however, the law of Arizona is clear that, to arise under tort principles, claims for breaches of the duty of good faith and fair dealing must arise in the context of a special relationship, such as where there exist fiduciary duties, contracts for the public interest, or where the object of a contract is service, professional help, security or other intangibles.  <u>Leal v. Allstate Ins. Co.</u>, 17 P.3d 95, 98 (Ariz. Ct. App. 2000).  UDTC alleges no such special relationship.  UDTC therefore cannot salvage this count by relying on tort law.

## VII.    COUNTS VI, VII, VIII, XI, AND XII ARE PREEMPTED BY UDTC'S TRADE SECRET MISAPPROPRIATION CLAIMS

Five of the counts UDTC alleges in the Complaint are preempted by UDTC's trade secret misappropriation claims.  Count VI (violation of Delaware's Deceptive Trade Practices Act), Count VII (unjust enrichment), Count VIII (conversion), Count XI (accounting), Count XII (equitable or resulting trust), and Count III (good faith and fair dealing to the extent UDTC claims this count sounds in tort) are preempted as a matter of law by the express terms of the Delaware and Arizona trade secret statutes, which UDTC attempts to plead in Counts IV and V.

---

[8]    <u>See, e.g.</u>, <u>Burkons v. Ticor Title Ins. Co. of Cal.</u>, 813 P.2d 710, 720 (Ariz. 1991); <u>Wagenseller v. Scottsdale Memorial Hospital</u>, 710 P.2d 1025, 1038 (Ariz. 1985) ("breach of contract, including breach of the covenant of good faith and fair dealing, may provide the basis for a tort claim").

Preemption is a matter that may be addressed on a Rule 12(b)(6) motion to dismiss.

Ethypharm S.A. v. Bentley Pharm., Inc., 388 F. Supp. 2d 426, 433 (D. Del. 2005) (dismissing

fraud and unjust enrichment claims on the basis of preemption on a motion to dismiss under R.

12(b)(6)). The preemption sections of the Delaware and Arizona trade secret statutes, 6 Del. C.

§ 2007, and Ariz. Rev. Stat. § 44-407, are identical.[9] The statutes provide:

> (a)    Except as provided in subsection (b) of this section, this chapter displaces
>        conflicting tort, restitutionary and other law of this State providing civil
>        remedies for misappropriation of a trade secret.
>
> (b)    This chapter does not affect:
>
>> (1)    Contractual remedies, whether or not based upon misappropriation
>>        of a trade secret;
>>
>> (2)    Other civil remedies that are not based upon misappropriation of a
>>        trade secret; or
>>
>> (3)    Criminal remedies, whether or not based upon misappropriation of
>>        a trade secret.

6 Del. C. § 2007 (2006); Ariz. Rev. Stat. § 44-407 (2006).

To determine preemption of claims under trade secret statutes, the court determines

whether the potentially preempted cause of action is "founded on allegations of trade secret

misappropriation," and therefore preempted. Ethypharm S.A., 388 F. Supp. 2d at 433 (citation

omitted). Put another way, the court looks to whether the claims overlap to the extent that

"failure of the misappropriation claim would [also] doom" the potentially preempted claim. Id.

(citation omitted).

As set forth below, Counts VI, VII, VIII, XI, and XII each fail this test:

---

[9]    Because the statutes are identical in this respect, there is no need to decide which statute
       governs to decide whether these counts are preempted.

**Count VI (Alleged Deceptive Trade Practices)**.  In Count VI of the Complaint, UDTC

alleges in relevant part that Phenomenex has:

> engage[d] in a persistent course of conduct to deceive the public to
> whom Phenomenex markets such that it represents [sic] expertise,
> experience and product design that are the result of secret
> misappropriation of the Licensed Technology and the '625 Patent.

(Complaint ¶ 73.)  The Federal Circuit Court of Appeals in <u>On-Line Techs., Inc. v.</u>

<u>Bodenseewerk Perkin-Elmer GmbH</u>, 386 F.3d 1133, 1146 (Fed. Cir. 2004), held that a very

similar allegation was preempted under the Connecticut version of the trade secret statutes.[10]  In

that case, the plaintiff alleged the defendant "had improperly used trade secrets obtained from

[plaintiff] to make its own products and <u>had represented to a variety of parties that [plaintiff's]</u>

<u>trade secrets were its own</u>." <u>Id.</u> at 1146 (emphasis added).  The Court of Appeals held that this

allegation was prempted:

> All of [plaintiff's] allegations relate to the misappropriation of
> trade secrets, as is clear from [plaintiff's] complaint, which relies
> upon [defendant's] alleged acquisition and use of [plaintiff's]
> confidential information.  As a result, we agree with the trial court
> that CUTSA preempts [plaintiff's] unfair trade practices claims.

<u>Id.</u>

**Count VII, Alleged Unjust Enrichment**.  In Count VII of the Complaint, UDTC alleges

that Phenomenex has "benefited" from unauthorized use of UDTC's "Licensed Technology"

(which it defined in the Complaint ¶ 20 as constituting its trade secrets and information conveyed

to Phenomenex under the Materials Treatment Agreement and Evaluation License) and the '625

patent.  (Complaint ¶ 79.)  This allegation is founded on the same facts required to show trade

secret misappropriation, e.g., that Phenomenex was unjustly enriched by using UDTC's alleged

---

[10]    The Connecticut preemption statute, while not identical to the Delaware and Arizona
statutes, is the same as the Delaware and Arizona statutes in relevant part.

trade secret without authorization. This allegation would fail in its entirety if UDTC's trade secret claim were to fail, because the count is dependent on finding unauthorized use of UDTC's trade secrets. Count VII therefore should be dismissed. See, e.g., Ethypharm S.A., 388 F. Supp. 2d 426, 434 (D. Del. 2005) (dismissing unjust enrichment claim under Rule 12(b)(6)) (applying Delaware law); Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 318 F. Supp. 2d 216, 219 (D. Del. 2004) (granting judgment as a matter of law on unjust enrichment claim) (applying California law); Penalty Kick Management Ltd. v. Coca Cola Co., 318 F.3d 1284, 1297-98 (11th Cir. 2003) (affirming dismissal of state law claim for unjust enrichment) (applying Georgia law); Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Calif. 2005) (dismissing claim for unjust enrichment because the claim is based on the "same nucleus of facts as the misappropriation of trade secrets claim") (applying California law).

**Count VIII, Alleged Conversion**.  Count VIII, conversion, is also preempted. To support this claim, UDTC alleges that it owns the "Licensed Technology" and that Phenomenex is improperly using it. (Complaint ¶¶ 82-84.) As with the unjust enrichment count, this allegation is founded on the same facts required to show trade secret misappropriation, and it also would fail in its entirety if UDTC's trade secret claim were to fail. As a result Count VIII should be dismissed. See, e.g., Callaway Golf Co., 318 F. Supp. 2d at 219 (granting judgment as a matter of law) (applying California law); Penalty Kick, 318 F.3d at 1297-98 (holding that the Georgia Trade Secret Act ("GTSA") preempted state law claims for conversion, breach of confidential relationship and duty of good faith, and unjust enrichment, finding that all are "clearly based upon a trade secret" and "on the same facts that comprise the trade secret misappropriation," covered under the GTSA); Opteum Financial Services, LLC v. Spain, No. 1:05-CV-02073-MHS, 2005 U.S. Dist. LEXIS 34444, at *9 (N.D. Ga. Dec. 8, 2005) (dismissing

plaintiff's state law claims for conversion, misappropriation and unjust enrichment as being "clearly based upon a trade secret," and therefore preempted by the GTSA).

### Counts XI and XII, Request for Accounting and Equitable or Resulting Trust.

To support its claim that it is entitled to these remedies, UDTC again references the alleged trade secret misappropriation. (Complaint ¶¶ 101, 106.) Count XI alleges that UDTC has suffered "damages and losses" from Phenomenex's "secret actions or otherwise in the misappropriation and permitted [sic] use of the Licensed Technology and the '625 Patent." (Complaint ¶ 101.) Count XII similarly alleges that Phenomenex "systematically misappropriated, pilfered, stole or otherwise converted the Licensed Technologies and the '625 Patent." Id. at ¶ 106.

Once again, these allegations are founded on the same facts required to show trade secret misappropriation, and they would also fail in their entirety if UDTC's trade secret claim were to fail. These counts should therefore be dismissed.

### Count III, Alleged Breach of the Duty of Good Faith and Fair Dealing, to the Extent Such is Grounded in Tort.

UDTC alleges that Phenomenex has "breached the covenant of good faith and fair dealing by acting to evade the letter and spirit of the bargain between the owner of the Licensed Technology and Phenomenex." (Complaint ¶ 52.) This allegation appears to be predicated on Phenomenex's alleged obligation of non-disclosure and, therefore, also is preempted to the extent UDTC alleges this count is grounded in tort.

Finally, we note that Counts VI (violation of Delaware's Deceptive Trade Practices Act), Count VII (unjust enrichment), Count VIII (conversion), Count XI (accounting), Count XII (equitable or resulting trust) suggest that they are grounded in the alleged patent infringement, in addition to alleged trade secret misappropriation. These counts therefore also are preempted by the patent laws. See, e.g., Bonito Boats, Inc. v. Thundercraft Boats, Inc., 489 U.S. 141, 149

(1989) ("[T]he federal patent scheme creates a limited opportunity to obtain a property right in an idea.  Once an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large."); id. at 166 (stating that state laws can co-exist with the patent laws when the "state protection was not aimed exclusively at the promotion of invention itself"); Waner v. Ford Motor Co., 331 F.3d 851, 856 (Fed. Cir. 2003) ("Absent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights.") (citing Bonito Boats, 489 U.S. at 149).  These counts simply seek damages for Phenomenex's alleged use of the '625 patent and are therefore preempted as well.

## VIII.  THE TRADE SECRET MISAPPROPRIATION COUNTS MUST BE DISMISSED BECAUSE UDTC CANNOT ASSERT ANY CLAIM BASED ON ALLEGED MISAPPROPRIATIONS THAT OCCURRED BEFORE THE UNIVERSITY ASSIGNED ITS CLAIMS TO UDTC

The Complaint asserts two nearly identical trade secret claims—one under the Arizona trade secret misappropriation statute (Count IV) and the other under the Delaware trade secret misappropriation statute (Count V).  (Complaint ¶¶ 60, 68) (alleging under both counts that "[b]y [Phenomenex's] performances, defaults, acts, omissions, conduct, assent, ratification, or acquiescence . . . Phenomenex has willfully misappropriated" UDTC's trade secrets).  UDTC does not have standing to bring either of these two claims because (a) RCT was the entity with the right to sue when the claims arose, and (b) the Complaint is devoid of any allegation that RCT transferred to UDTC (or to the University of Delaware) the right to sue for claims of trade secret misappropriation arising on or before September 29, 1998.  Because UDTC does not have standing, these claims should be dismissed.

### A.  Because of RCT's and Phenomenex's Clear and Unambiguous Agreement, Set Forth in the Evaluation License, UDTC Cannot

### State a Claim for Misappropriation or Misuse of Confidential Information Under the Delaware and Arizona Statutes

When contracting parties agree on the metes and bounds of their duty of confidentiality, state trade secret law uses such agreement to define the scope of activities that fall within those bounds and are therefore actionable under the trade secret statutes. Conversely, parties' agreement as to what information is not confidential, or when information is no longer confidential, will govern. The language of the trade secret statutes underscores the fact that consent and agreement of parties is at the center of defining the scope of trade secrets in a particular situation:

> (2) "Misappropriation" means:
>
> \*       \*       \*
>
> > (ii) [D]isclosure or use of a trade secret of another <u>without express or implied consent</u> by a person who:
> >
> > > (A) used improper means to acquire knowledge of the trade secret, or
> > >
> > > (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
> > > (I) derived from or through a person who had utilized improper means to acquire it;
> > >
> > > (II) <u>acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use</u>; or
> > >
> > > (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . .

Uniform Trade Secrets Act § 1.(2)(ii), Uniform Laws Annotated (West 2005) (emphasis added); 6 <u>Del. C.</u> § 2001 (2005); Ariz. Rev. Stat. § 44-401(b) (LexisNexis 2005). Thus, where the parties have reached an agreement as to the metes and bounds of their duty of confidentiality, state trade secret statutes – including those of Arizona and Delaware – will respect that decision.

The case law demonstrates the application of this principle.  In <u>Union Pacific R.R. Co. v. Mower</u>, 219 F.3d 1069 (9th Cir. 2000), the court addressed a situation where an agreement "limited its protection of [confidential] information to a distinct period of time, ending December 31, 1995." <u>Id.</u> at 1075.  Concluding that parties "may alter by negotiation duties that would otherwise be governed by state law," the court held that, pursuant to the unambiguous meaning of the agreement, the agreement's nondisclosure requirements did not apply after December 31, 1995 and that the plaintiff could not state a statutory trade secret claim after that time. <u>Id.</u> at 1076.  <u>See</u> <u>also</u> <u>Marketel Int'l, Inc. v. Priceline.com, Inc.</u>, 36 Fed. Appx. 423, 425 (Fed. Cir. 2002) (holding that no implied obligation of confidentiality existed under California version of Uniform Trade Secrets Act because alleged misappropriation occurred after the four year contractual confidentiality period established in the parties' agreement; "the written non-disclosure agreement supplanted any implied duty of confidentiality that may have existed"); <u>All West Pet Supply Co. v. Hill's Pets Products Div.</u>, 840 F. Supp. 1433, 1439 (D. Kan. 1993) (holding that the defendant's duty to maintain confidentiality expired at the end of an agreement, pursuant to the agreement's express expiration date).[11]  <u>See</u> <u>generally</u> <u>Nilssen v. Motorola, Inc.</u>, 963 F. Supp. 664, 680 (N.D. Ill. 1997):

> It must be recognized that the Illinois [Trade Secret] Act does not purport to limit or override an express contractual arrangement governing the confidential exchange of proprietary information (see Act § 8(b)(1)). . . . Illinois law precludes the finding of any implied duty of nondisclosure that would directly contradict the express agreement of the parties...

(internal citations omitted.)

---

[11]    The trade secret statutes at issue in <u>Marketel</u> and <u>All West Pet Supply Co.</u> are the same as the trade secret statutes in Arizona and Delaware.  All of these statutes are copied from the Uniform Trade Secrets Act.

As set forth above at pages 10-11, Section 4.2 of the Evaluation License clearly and unambiguously defined the breadth and scope of Phenomenex's duties as to information disclosed "by or on behalf of [RCT]." This would include information relating to the '625 patent. Most importantly, the Evaluation License limited Phenomenex's confidentiality obligations to five years after the termination of the Evaluation License, e.g., until September 29, 1998. See supra Statement of Facts (subpart F). See also Marketel, 36 F. Fed. Appx. at 425 (limiting a confidentiality provision to a four year period expressed in the same contract); All West Pet Supply Co., 840 F. Supp. at 1439 (limiting a confidentiality provision to the express date of termination in the same contract). Assuming that the alleged misappropriation occurred on the very last possible day of Phenomenex's confidentiality obligation under the Evaluation License,  September 29, 1998, (see supra Statement of Facts (subpart F), RCT was the only party to whom Phenomenex owed the duty of confidentiality for any of the information conveyed to Phenomenex under the agreement.

### B.    UDTC Does Not Allege That It Has Standing to Sue for Misappropriations Occuring Before the University Assigned Its Rights to UDTC

As set forth above, according to the terms of the Evaluation License, the confidentiality obligations of Phenomenex with respect to the alleged technology at issue would have expired in September 1998. UDTC does not allege that it has standing to sue for alleged misappropriations by Phenomenex occurring before RCT assigned the patent rights to the University, which in turn assigned them to UDTC. At the earliest, the assignment of rights in the patent to UDTC occurred on July 24, 2001. See supra Statement of Facts (subpart E). Putting aside the fact that UDTC was never assigned any contractual rights see supra Statement of Facts (subpart E), the assignment did not contain the right to bring claims for prior misappropriations. See, e.g. Ex. C (underlying assigment from RCT to University.) UDTC does not even allege that it was granted

the right to sue for prior misappropriations.  This is fatal to UDTC's statutory trade secret claims

because the same rule that applies to the right to sue for past infringement of patents also applies

to trade secrets.  See supra Part II.[12]

---

[12]   Although research did not uncover any case addressing this precise subject, the patent law rule requiring express transfer of the right to sue for past infringement has been widely acknowledged to apply to every other form of intellectual property.  See, e.g., H & J Foods, Inc. v. Reeder, 477 F.2d 1053, 1056 (9th Cir. 1973) (holding that "pre-assignment [trademark] damages are disfavored, and they are allowed only when the right to sue is clearly spelled out in a valid assignment."); George W. Luft Co. v. Zande Cosmetic Co., 142 F.2d 536, 541 (2d Cir. 1944) (stating the rule that "the assignment of a trade-mark, like the assignment of a patent, carries no right to sue for past infringements."); ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991) (holding that "a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.").  As a matter of logic and public policy, there is no reason to treat trade secrets differently; in fact, greater economic certainty is provided if the same rule – the right to sue for past infringement/misappropriation must be expressly transferred – applies to trade secrets along with patents, copyrights, and state and federal trademarks.

## CONCLUSION

For the reasons set forth above, Phenomenex respectfully requests that this Court grant the relief requested in the attached motion to dismiss.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

John W. Shaw (No. 3362)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

Attorneys for Defendant Phenomenex, Inc.

Dated: February 6, 2006

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on February 6, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Michael P. Kelly, Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
P.O. Box 111
Wilmington, DE  19899

Benjamin J. Schladweiler, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Elena C. Norman (No. 4780)
*enorman@ycst.com*
Monté T. Squire (No. 4764)
*msquire@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600