# EXHIBIT B

Case 1:05-cv-00842-GMS    Document 23-3    Filed 02/07/2006    Page 1 of 6

SMS:mjr        Evaluation License Agreement between RCT and Phenomenex, Inc.
LiAg364        RCT Project Number 243-1611; Wirth & Fatunmbi; 3/29/93.

# EVALUATION LICENSE AGREEMENT
## and RIGHT OF FIRST NEGOTIATION

Effective _March 29_, 1993 ("EFFECTIVE DATE"), RESEARCH CORPORATION TECHNOLOGIES, INC., 101 North Wilmot Road, Suite 600, Tucson, Arizona 85711-3335 ("LICENSOR") and PHENOMENEX, INC., 2320 West 205th Street, Torrance, California 90501 ("LICENSEE") agree as follows:

## ARTICLE I
## RECITALS

SECTION 1.1. The INVENTORS made the INVENTION described in the LICENSED PATENTS. LICENSOR represents that the INVENTORS have assigned the INVENTION and LICENSED PATENTS to LICENSOR.

SECTION 1.2. LICENSOR would like to enter into agreements for the further development of INVENTION so that it might be utilized in the public interest.

SECTION 1.3. LICENSEE desires to obtain a license under the LICENSED PATENTS to evaluate the INVENTION for possible commercialization. LICENSEE would also like a right of first negotiation with LICENSOR for a license under the LICENSED PATENTS in the LICENSED FIELD during the term of the Evaluation License.

SECTION 1.4. LICENSOR is willing to grant to LICENSEE a right of first negotiation and an evaluation license to evaluate the INVENTION free from suit by LICENSOR for infringement of the PATENT CLAIMS, pursuant to the terms and conditions of this Agreement.

## ARTICLE II
## EVALUATION LICENSE

SECTION 2.1. <u>Grant of Evaluation License</u>. LICENSOR hereby grants to LICENSEE a license to do the following in the United States, in the LICENSED FIELD free from suit by LICENSOR for infringement of the PATENT CLAIMS: to make and use LICENSED PRODUCTS for evaluation of the INVENTION; and to practice LICENSED PROCESSES for evaluation of the INVENTION ("Evaluation License"). No other license or right is granted or implied under this Agreement. The Evaluation License does <u>not</u> give LICENSEE the right to sell LICENSED PRODUCTS or to use LICENSED PRODUCTS or LICENSED PROCESSES for any purpose other than evaluation of the INVENTION.

SECTION 2.2. <u>Exclusivity</u>. The Evalution License shall be exclusive to LICENSEE in that, during the term of the Evalutaion License, LICENSOR shall not grant to any third party a concurrently effective license under the LICENSED PATENTS to make, use or SELL LICENSED PRODUCTS or to practice LICENSED PROCESSES, in the LICENSED FIELD. However, LICENSOR may grant INSTITUTION a nonexclusive license under the LICENSED PATENTS for educational and noncommercial research purposes.

SECTION 2.3. <u>License Issue Fee</u>. LICENSEE shall pay to LICENSOR a license issue fee of Two Thousand Dollars ($2,000), payable upon execution and delivery of this Agreement. The license issue fee is nonrefundable, but may credited against future license issue fees negotiated under SECTION 3.2.

SECTION 2.4. <u>Expiration</u>. The Evaluation License shall expire and have no further effect on the date six (6) months after the EFFECTIVE DATE.

1

SMS:mjr    Evaluation License Agreement between RCT and Phenomenex, Inc.
LiAg364    RCT Project Number 243-1611; Wirth & Fatunmbi; 3/29/93.

SECTION 2.5. Progress Reports. To keep LICENSOR apprised of LICENSEE's evaluation efforts, LICENSEE shall submit progress reports on its activities. The first report shall be due on the date one month after the EFFECTIVE DATE. Subsequent reports shall be due each month thereafter. A final report shall be due within ten (10) days after expiration or termination of this Agreement. Each such report shall include summaries of tests conducted, specifically including test conditions, results and data, and interpretation of results, and identification of the next step in the development process. LICENSEE shall direct each report to the attention of Joseph S. Stumpf, Director, Physical Sciences Group.

## ARTICLE III
## RIGHT OF FIRST NEGOTIATION

SECTION 3.1. Grant of Right. During the term of the Evaluation License, the parties shall negotiate in good faith the terms of an agreement under which LICENSOR would license LICENSEE to make, use and sell LICENSED PRODUCTS under the LICENSED PATENTS in the LICENSED FIELD ("Commercial License"). LICENSOR agrees that during the term of the Evaluation License, LICENSOR shall not negotiate with any other party regarding a commercial license under the LICENSED PATENTS in the LICENSED FIELD.

SECTION 3.2. Elements of Commercial License. The Commercial License shall include: a license issue fee, royalties based on net sales value of licensed products, annual minimum royalty payments, diligence requirements by LICENSEE, exclusivity protection in the LICENSED FIELD.

## ARTICLE IV
## PROPRIETARY INFORMATION

SECTION 4.1. Disclosure to LICENSEE. LICENSEE acknowledges that certain PROPRIETARY INFORMATION belonging to LICENSOR will be disclosed to LICENSEE pursuant to this Agreement.

SECTION 4.2. Non-Use and Non-Disclosure. LICENSEE agrees that, for a period of five (5) years after the date of LICENSEE's receipt of PROPRIETARY INFORMATION, it shall not: (i) commercially use any PROPRIETARY INFORMATION; or (ii) disclose to any third party any PROPRIETARY INFORMATION disclosed to it under this Agreement. The foregoing restrictions on use and disclosure shall not apply to any PROPRIETARY INFORMATION that:

(a) RCT, in its sole discretion, has granted written consent for LICENSEE to use or disclose;

(b) at the time of such receipt by LICENSEE was independently known by LICENSEE;

(c) at the time of such disclosure or use by LICENSEE is generally known to the public through no fault of LICENSEE; or

(d) at the time of such disclosure or use by LICENSEE has been made available to LICENSEE by a person, other than LICENSOR or anyone acting on behalf of LICENSOR having the right to do so without breaching any obligation of nonuse or confidentiality.

SECTION 4.3. Limited Access. LICENSEE shall limit access to PROPRIETARY INFORMATION solely to those of its employees who have a need to know for evaluation of the INVENTION, and who, as employees of LICENSEE, are aware of, and are bound by, this Agreement.

SECTION 4.4. Return of Material. Upon expiration of this Agreement, and upon request by LICENSOR, LICENSEE shall return to LICENSOR all PROPRIETARY INFORMATION disclosed in writing, or reduced to writing, although LICENSEE shall be entitled to retain one copy of such written PROPRIETARY INFORMATION in its legal files for archival purposes only.

2

Case 1:05-cv-00842-GMS   Document 23-3   Filed 02/07/2006   Page 4 of 6

SMS:mjr        Evaluation License Agreement between RCT and Phenomenex, Inc.
LiAg364        RCT Project Number 243-1611; Wirth & Fatunmbi; 3/29/93.

## ARTICLE V
## TERMINATION

SECTION 5.1. <u>At LICENSEE's Election</u>. LICENSEE may terminate the Evaluation License and this Agreement at any time by giving LICENSOR written notice of LICENSEE's election to so terminate.

SECTION 5.2. <u>LICENSEE's Breach of Agreement</u>.

Subsection 5.2.1. <u>Curable Breach</u>. LICENSEE's failure to submit any monthly report due under SECTION 2.5 shall be considered a curable breach of this Agreement. Upon such breach by LICENSEE, LICENSOR may elect to terminate this Agreement by giving LICENSEE written notice of LICENSOR's election to terminate this Agreement. Unless LICENSEE cures such breach by ten (10) days after receipt of LICENSOR's notice, this Agreement shall terminate immediately.

Subsection 5.2.2. <u>Non-Curable Breach</u>. If LICENSEE uses the INVENTION for any purposes except those provided under this Agreement (<u>e.g.</u>, use of LICENSED PROCESSES for LICENSEE's internal operations, commercial use, or commercial sale), such use by LICENSEE shall be a non-curable breach and LICENSOR may terminate this Agreement immediately by giving LICENSEE written notice of termination of Agreement. Such termination shall be effective as of the date of LICENSOR's notice.

SECTION 5.3. <u>Survival of Obligation.</u> LICENSEE's obligations under SECTION 2.5 to submit progress reports shall survive expiration or termination of this Agreement.

## ARTICLE VI
## GOVERNMENT RIGHTS

SECTION 6.1. <u>Prior Rights</u>. This Agreement is subject to the rights of the U.S. Government in and to the LICENSED PATENTS, including those derived through the National Science Foundation pursuant to Grant No. CHE-8814602, and through the Department of Energy pursuant to Grant No. DE FG02-91ER-14187. Such rights include a nonexclusive, nontransferable, royalty-free, irrevocable license to the U.S. Government for governmental purposes and on behalf of any foreign government pursuant to any treaty or agreement with the U.S. Such license to the U.S. Government shall remain unaffected by this Agreement.

SECTION 6.2. <u>License to Conform</u>. Any inconsistency between this Agreement and the pertinent provisions of any law, regulation, or executive order by the U.S. Government shall be resolved by conforming this Agreement to such provisions of any such law, regulation, or executive order. This Agreement shall be subject to applicable governmental laws relating to compulsory licensing.

## ARTICLE VII
## GENERAL

SECTION 7.1. <u>Compliance with Law; Severability</u>. Nothing in this Agreement shall be construed to require the commission of any act contrary to law. If this Agreement conflicts with any statute, law, ordinance or treaty, the latter shall prevail. In such event, the affected provisions of this Agreement shall be limited to the extent necessary to bring it within the applicable legal requirements and the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected thereby.

SECTION 7.2. <u>No Representations</u>. Nothing in this Agreement shall be construed as a representation (a) as to the scope or validity of any LICENSED PATENT; or (b) that any performance, or practice under any LICENSED PATENT is not an infringement of any patent of others.

SMS:mjr   Evaluation License Agreement between RCT and Phenomenex, Inc.
LiAg364   RCT Project Number 243-1611; Wirth & Fatunmbi; 3/29/93.

SECTION 7.3. Independent Contractor. In its performance under this Agreement, each party shall be an independent contractor and neither party (nor any employee or agent thereof) shall be an agent or partner of the other party.

SECTION 7.4. No Third-Party Beneficiaries. None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third-party.

SECTION 7.5. Assignment. This Agreement shall not be assigned by LICENSEE except as part of a sale of all of LICENSEE's business and, in such event, only in its entirety, upon prior written notice to LICENSOR, and upon LICENSEE'S assignee's agreement to abide by the terms of this Agreement and assume all of LICENSEE's obligations under this Agreement. Upon such assignment, the term "LICENSEE" as used in this Agreement shall thereafter mean the assignee of LICENSEE.

SECTION 7.6. Non-Use of Names. LICENSEE shall not use the names of INVENTORS, INSTITUTION, LICENSOR, or any adaptation of any of them, in any advertising, promotional or sales literature, without prior written consent obtained from INVENTORS, INSTITUTION or LICENSOR, as applicable.

SECTION 7.7. Authority and Binding Agreement. Each party represents to the other that this Agreement constitutes a valid and binding agreement of the representing party, that execution, delivery and performance of this Agreement by the representing party are within the representing party's corporate power, and have been duly authorized by all necessary corporate action.

SECTION 7.8. Arizona Law. This Agreement shall be construed and enforced under the laws of the State of Arizona.

## ARTICLE VIII
## DEFINITIONS

SECTION 8.1. "INSTITUTION" means the University of Delaware.

SECTION 8.2. "INVENTION" means "Products Having Multiple-Substituted Polysiloxane Monolayer" as described in the LICENSED PATENTS.

SECTION 8.3. "INVENTORS" means Mary J. Wirth and Hafeez O. Fatunmbi.

SECTION 8.4. "LICENSED FIELD" means column chromatography, for analytical applications, using silica particles having a particle size of less than ten (10) microns.

SECTION 8.5. "LICENSED PATENTS" means:

(a) U.S. Patent Application Number 900,215, filed June 17, 1992;

(b) all divisional or continuation applications based on U.S. Patent Application Number 900,215;

(c) all issued, unexpired patents resulting from any of the applications described in paragraphs (a) or (b); and

(c) all reissue or reexamination patents that may be based on any of the patents described in paragraph (c).

SECTION 8.6. "LICENSED PROCESS" means a method or process, the practice of which directly infringes, contributorily infringes or induces the infringement, literally or by the doctrine of equivalents, of a PATENT CLAIM but for this License Agreement.

4

SMS:mjr        Evaluation License Agreement between RCT and Phenomenex, Inc.
LiAg364        RCT Project Number 243-1611; Wirth & Fatunmbi; 3/29/93.

SECTION 8.7. "LICENSED PRODUCT" means a product, the manufacture, use, or sale of which directly infringes, contributorily infringes or induces the infringement, literally or by the doctrine of equivalents, of a PATENT CLAIM, but for this License Agreement.

SECTION 8.8. "PATENT CLAIM" means a claim in a LICENSED PATENT. A PATENT CLAIM shall be presumed to be valid unless and until it has been held to be invalid by a final judgment of a court of competent jurisdiction from which no appeal can be or is taken. Any claim in a pending patent application shall be deemed to be the equivalent of a valid claim of an issued, unexpired patent.

SECTION 8.9. "PROPRIETARY INFORMATION" means: the content of the LICENSED PATENTS; all written information and data relating to the INVENTION disclosed to LICENSEE by or on behalf of LICENSOR, whether or not documents containing such information and data are marked as confidential or proprietary; and all information, data or know-how relating to the INVENTION communicated orally or visually to LICENSEE by or on behalf of LICENSOR.

RESEARCH CORPORATION TECHNOLOGIES, INC.

_/s/ Gary M. Munsinger_
Gary M. Munsinger
President

_March 29, 1993_
Date Signed


PHENOMENEX, INC.

_/s/ [signature]_
Name

_PRESIDENT_
Title

_APR. 6, 93_
Date Signed

Page 5 of a 5-page Evaluation License Agreement between
Research Corporation Technologies, Inc. and Phenomenex, Inc.