# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UD TECHNOLOGY CORPORATION,<br>A non-profit organization of the<br>UNIVERSITY OF DELAWARE<br><br>Plaintiff,<br><br>v.<br><br>PHENOMENEX, INC., and<br>RESEARCH CORPORATION<br>TECHNOLOGIES | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No.    05-842-GMS<br><br><br>**TRIAL BY JURY OF<br>TWELVE DEMANDED** |

**PLAINTIFF UD TECHNOLOGY CORPORATION'S MEMORANDUM
OF LAW IN OPPOSITION TO PHENOMENEX, INC.'S
<u>MOTION TO DISMISS</u>**

**McCARTER & ENGLISH, LLP**

Michael P. Kelly, Esq. (#2295)
A. Richard Winchester, Esq. (#2641)
James J. Freebery, Esq. (#3498)
Christopher A. Selzer, Esq. (#4305)
919 North Market Street, Suite 1800
Wilmington, DE 19899
(302) 984.6300 telephone
**Attorneys for Plaintiff**

Dated: February 21, 2006

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS..................................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

COUNTER STATEMENT OF FACTS ........................................................................ 1

SUMMARY OF ARGUMENT....................................................................................... 4

STANDARD OF REVIEW............................................................................................. 7

ARGUMENT ................................................................................................................... 9

I.     PHENOMENEX'S MOTION TO DISMISS DOES NOT
       CHALLENGE UDTC'S POST-JULY 2001 CLAIMS FOR DAMAGES............. 9

II.    UDTC POSSESS THE REQUISITE RIGHT, TITLE AND INTEREST
       IN THE INTELLECTUAL PROPERTY AS TO ITS PRE-JULY 2001
       CLAIMS................................................................................................................. 9

       A.     UDTC's Complaint Meets the Requirements of Rule ............................. 9

       B.     UDTC Possesses the Requisite Standing to Sue Phenomenex
              for Past Infringement.............................................................................. 10

       C.     A Hypothetical Ownership Issue Between UDTC and RCT
              is No Defense to Phenomenex's Liability for Past Infringement
              and Other Damages ................................................................................. 13

       D.     Subject Matter Jurisdiction Exists in this Court Over all Claims
              Presented.................................................................................................. 14

III.   UDTC'S CLAIMS ARE TIMELY.................................................................... 15

       A.     The So-Called Contractual Period of Limitations Does Not Bar
              UDTC's Claims........................................................................................ 15

       B.     No Statute of Limitations Bars UDTC's Claims ..................................... 17

       C.     Equitable Tolling, The Doctrine of Laches and Lack of Prejudice
              Also Defeat this Defense ......................................................................... 19

IV.    PHENOMENEX BREACHED THE LETTER, SPIRIT AND PURPOSE
       OF THE MATERIALS TREATMENT AGREEMENT ................................... 19

V.     UDTC'S BREACH OF COVENANT OF GOOD FAITH AND
       FAIR DEALING CLAIMS ARE SUPPORTED BY THE PLEADINGS AND
       ARIZONA CONTRACT LAW ....................................................................... 21

       A.    Arizona Law Requires Each Party to Effect the Intent and
             Purpose of Their Agreement .................................................................. 21

       B.    Phenomenex is Not Protected as "An Actor in Good Faith" .................... 22

       C.    Requiring Phenomenex to Honor the Intent and Purpose of the
             Agreement is Not a Reformation of Contract .......................................... 23

VI.    UDTC'S CLAIMS ARE NOT PREEMPTED BY A STATUTORY TRADE
       SECRET CLAIM ............................................................................................. 25

       A.    Distinguishing an Equitable Remedy From Equitable Right ................. 26

             i.    The Federal Courts Recognize the Important Distinction
                   Between Equitable Rights and Equitable Remedies ................... 28

             ii.   Preemption Fails When A Party Contests The Application
                   Of a Preemptive Statute ............................................................... 29

       B.    The Unfair Trade Practices Claim ........................................................... 30

       C.    UDTC's Unjust Enrichment And Conversion Claims Are Not
             Preempted ............................................................................................... 32

       D.    Both An Accounting And Prayers For the Breach of Good Faith
             And Fair Dealing Demand a Right in Equity ........................................... 32

CONCLUSION ................................................................................................................. 34

# TABLE OF CITATIONS

## FEDERAL CASES

Page

*AutoMed Technologies, Inc. v. Eller,*
160 F. Supp. 2d 915 (N.D. Ill. 2001) ............................................................... 30

*Conley v. Gibson, 355* U.S. 41 (1957) ................................................................. 7

*Does I through III v. District of Columbia,*
238 F. Supp. 2d *212* (D.D.C., 2002) ................................................................... 7

*Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.,*
388 F. Supp. 2d 426 (D.Del. 2005) ............................................................ 25, 27

*Iduim Corp. v Semi-Alloys, Inc.,* 781 F.2d 879 (Fed. Cir. 1985) ................................. 15

*Jacobsen v. Oliver,* 201 F. Supp. 2d 93 (D.D.C., 2002) ............................................ 7

*Magruder v. Drury, 235 U.S. 106 (1914)* ............................................................ 28

*Minco, Inc. v. Combustion Engineering, Inc., 95 F.3d 1109 (Fed. Cir. 1996)* ...................... 11, 12

*Polygram, S.A. v. 32-03 Enterprises, Inc.,*
697 F. Supp. 132 (E.D. N.Y. 1988)* ................................................................. 28

*Rodgers v. Roulette Records, Inc., 677 F. Supp. 731 (S.D. N.Y. 1988)* ............................ 27

*Security Sav. Bank v. Green Tree Acceptance, Inc.,*
739 F. Supp. 1342 (D. Minn. 1990)* ................................................................. 29

*Triad Associates Inc. v. Chicago Housing Authority,*
892 F.2d 583 (7th Cir.1989), cert. denied, 498 U.S. 845 (1990)* ................................... 7

*Valdes v. Larrinaga, 233 U.S. 705 (1914)* ..................................................... 27, 28

## STATE CASES

*Block v. Lea, 688 P.2d 724 (1984)* ................................................................ 28

*Acierno v. Worthy Brothers Pipeline Corp., 656 A.2d 1085 (Del.1995)* ............................. 31

*Ariz. Board of Regents ex rel. University of Ariz. v. Ariz. Public Safety Retirement Fund*
*Manager Administrator, 160 Ariz. 150, 771 P.2d 880 (App.1989)* ................................... 31

*Ariz. Health Care Cost Containment System v. Bentley,*
  *187 Ariz. 229, 928 P.2d 653 (App.1996)* ............................................................................. 31

*Arnold v. Society for Sav. Bancorp, Inc., 678 A.2d 533 (Del.1996)* ............................................. 32

*Ashemimry v. Ba Nafa, 778 So. 2d 495 (Fla. Dist. Ct. App. 5th Dist. 2001)* ................................ 33

*Azurix Corp. v. Synagro Technologies, Inc., 2000 WL. 193117*
  *(Del. Ch. Feb. 3, 2000), appeal denied, 748 A.2d 406 (Del.2000)* ........................................ 26

*Barnes v. Barnes, 282 Ill. 593, 118 N.E. 1004, 4 A.L.R. 4 (1918)* .............................................. 29

*Beaudry v. Insurance Co. of the West,* 203 Ariz. 86, 50 P.3d 836 (App.2002) ........................... 21

*Bell Atlantic Meridian System v. Octel Communications Corp.,*
  *1995 WL. 707916 (Del.Ch. Nov.28, 1995)* .......................................................................... 12

*Director of Revenue v. CNA Holdings, Inc.,*
  *818 A.2d 953 (Del. 2003)* .................................................................................................... 31

*Christiana Town Center, LLC v. New Castle Center, 2003 WL. 21314499 (Del.Ch. 2003)* ........ 26

*Cincinnati SMSA, L.P. v. Cincinnati Bell Cellular System Co.,*
  *708 A.2d 989 (Del.1998)* ..................................................................................................... 12

*Coastal Barge Corp. v. Coastal Zone Industrial Control Board,*
  *492 A.2d 1242 (Del.1985)* ................................................................................................... 31

*Comrie v. Enterasys Networks, Inc., 837 A.2d 1 (Del. Ch. 2003)* ............................................... 12

*Council of Dorset Condominium Apartments v. Gordon,*
  *801 A.2d 1 (Del.2002)* ........................................................................................................ 12

*Data General Corp. v. Digital Computer Controls, Inc.,*
  *357 A.2d 105 (Del. Ch. 1975)* ............................................................................................. 27

*DiStefano v. Watson, 566 A.2d 1 (Del.1989)* ............................................................................. 31

*Enyart v. Transamerica Insurance Co., 195 Ariz. 71, 985 P.2d 556 (App.1998)* ....................... 21

*In re Explorer Pipeline Co., 781 A.2d 705 (Del.Ch.2001)* ......................................................... 12

*Facciolo Construction Co. v. Bank of Del., 514 A.2d 413 (Del.1986)* ....................................... 32

*Fike v. Ruger, 754 A.2d 254 (Del. Ch. 1999)* ........................................................................... 18

*Glanding v. Industrial Trust Co.*, 45 A.2d 553 (Del. Ch. 1945)..................................................26

*Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200 (Del. Ch.1988) .........................................32

*Hamberlin v. Townsend*, 261 P.2d 1003 (AZ 1953) ....................................................................12

*Jackson National Live Insurance Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch.1999).................................................................................................32

*Kastle v. Steibel*, 120 A.D.2d 868, 502 N.Y.S.2d 538 (3d Dep't 1986).........................................29

*Legacy Homes Partnership v. General Electric Capital Corp.*,
    50 S.W.3d 346 (Mo. Ct. App. E.D. 2001) .............................................................................29

*Luchanski v. Congrove*, 193 Ariz. 176, 971 P.2d 636 (App.1998)..............................................31

*Lustgarten v. Jones*, 220 Neb. 585, 371 N.W.2d 668 (1985)........................................................29

*Maull v. Stokes*, 68 A.2d 200 (Del. Ch. 1949) ...........................................................................29

*McGowan v. Ferro*, 2004 WL. 2423570 (Del. Ch.) ....................................................................32

*Miller v. Miller*, 88 A.2d 784 (PA 1952) ....................................................................................27

*Miller v. United States Casualty Co.*, 61 N.J. Eq. 110, 47 A. 509..............................................27

*Newtowne Village Serv. Corp. v. Newtowne Road Development Co.*,
    772 A.2d 172 (Del.2001) ......................................................................................................31

*PHP Liquidating, LLC v. Robbins*, 2003 WL. 1053531 (D.Del.)..................................................7

*P.V. Properties, Inc. v. Rock Creek Village Associates Ltd. Partnership*,
    77 Md. App. 77, 549 A.2d 403 (1988)...................................................................................28

*Patterson v. Getz*, 166 Or. 245, 111 P.2d 842 (1941)...................................................................29

*People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498,
    103 Ill. Dec. 167, 501 N.E.2d 188 (1st Dist. 1986) ..............................................................28

*Potter v. U.S. Specialty Inc. Co.*, 98 P.3d 557 (Ariz. App. Div. 2004) .......................................12

*Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986) ........................................................21

*Rhone-Poulenc Basic Chemicals Co. v. America Motorists Insurance Co.*,
    616 A.2d 1192 (Del.1992) .....................................................................................................12

*Ritter, Laber and Associates, Inc. v. Koch Oil, Inc.,*
   2004 ND 117, 680 N.W.2d 634 (N.D. 2004) ....................................................... 29

*Rogers v. Salisbury Brick Corp.,* 299 S.C. 141, 382 S.E.2d 915 (1989) ..................................... 29

*Snyder v. Andrews,* 708 A.2d 237 (Del.1998) .......................................................... 31

*Southwest Savings & Loan Associate v. Sunamp System, Inc.,*
   838 P.2d 1314 (Ariz. Ct. App. 1992) ................................................................ 22

*State v. Gonzales,* 206 Ariz. 469, 80 P.3d 276 (Ariz. App. Div. 2003) ........................................ 31

*State v. Reynolds,* 669 A.2d 90 (Del.1995) ................................................................... 31

*Sweeny v. Williams,* 36 N.J. Eq. 627 (N.J. Err. & App. 1883),
   *affirming Sweeney v. Williams,* 36 N.J.Eq. 459 (N.J. Ch. Feb. Term 1883) .......................... 26

*Tafeen v. Homestore, Inc.,* 2004 WL. 556733 (Del. Ch.) ........................................................... 19

*Tharp v. St. Georges Trust Co.,* 34 A.2d 253 (Del. Ch. 1943) ..................................................... 29

*Theisen, Administrator v. Hoey et al.,* 51 A.2d 61 (Del. Ch. 1947) ............................................. 28

*United Dairymen of Arizona v. Schugg,*
   --- P.3d ----, 2006 WL. 301883 (Ariz.App. Div. 1,2006) ...................................... 21

*University Nursing Associates, PLLC v. Phillips,*
   842 So. 2d 1270, 176 Ed. Law Rep. 470 (Miss. 2003) .......................................... 28

*Villegas v. Transamerica Finance Services, Inc.,*
   708 P.2d 781 (Ariz. Ct. App. 1985) ................................................................ 22

*Wagon Seller v. Scottsdale Memorial Hospital,* 710 P.2d 1025 (AZ. 1985) ............................... 25

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395*
   *Pension Trust Fund,* 201 Ariz. 474, 38 P.3d 12 (2002) ........................................ 21

*Whittle v. Ellis,* 122 So. 2d 237, 81 A.L.R.2d 1415
   (Fla. Dist. Ct. App. 2d Dist. 1960) .................................................................. 29

*Wolf v. Globe Liquor Co.,* 59 A.2d 276 (Del. Ch. 1948 ) ........................................................... 29

*Wright v. Dumizo,* 2002 WL. 31357891 (Del. Super.) .............................................................. 17

*Zamora v. Reinstein,* 185 Ariz. 272, 915 P.2d 1227 (1996) ....................................................... 31

# FEDERAL RULES AND STATUTES

*Federal Rule of Civil Procedure 9(a)* ........................................................................ *9*

*28 U.S.C. §1331* ....................................................................................................... *14*

*28 U.S.C. §1332(c)(1)* ............................................................................................. *15*

*28 U.S.C. §1338* ....................................................................................................... *14*

*28 U.S.C. §1367* ....................................................................................................... *14*

*28 U.S.C. §1367*(a) ................................................................................................. 14

# STATE RULES AND STATUTES

*6 Del. C. §2001* ................................................................................................. *25, 30*

*6 Del. C. §2007(a)* ................................................................................................... *30*

*6 Del. C. §2531* ....................................................................................................... *30*

*6 Del. C. §2532* ....................................................................................................... *30*

*6 Del. C. §2534* ....................................................................................................... *30*

*10 Del. C. §8121* ..................................................................................................... *17*

*Ariz. Rev. Stat. §§44-401* ....................................................................................... 25

# MISCELLANEOUS

*Wolfe & Pittenger, § 2-3[b]* ..................................................................................... *27*

*1 Am.Jur.2d §55* ................................................................................................. *29, 33*

*1 Pomeroy 5th Edition* ............................................................................................. 26

*4 Pomeroy Eq.Jur., 5th ed., §1420* ......................................................................... *29*

*4 Pomeroy Eq.Jur., 5th ed., §1421* ......................................................................... *29*

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff UD Technology Corporation (with its parent and predecessor University of Delaware, collectively "UDTC"), filed its Complaint on December 5, 2005 against Defendants Research Technologies Corporation ("RCT") and Phenomenex, Inc. ("Phenomenex"). RCT and Phenomenex requested and were granted by stipulation an extension of time to file a pleading responsive to UDTC's Complaint. Both RCT and Phenomenex filed an Answer to the Complaint and a Motion to Dismiss. This is UDTC's Memorandum of Law in Opposition to Phenomenex's Motion to Dismiss. UDTC's Memorandum of Law in Opposition to RCT's Motion to Dismiss is filed contemporaneously herewith.

## COUNTER STATEMENT OF FACTS

In 1990, UDTC and RCT entered into a contract ("Contract")(*See* attached as Ex. A). The Contract required RCT to manage UDTC's intellectual property by securing patents and protecting UDTC's trade secrets, including those that led to a certain product by process (the "Process") and the eventual issuance of U.S. Patent 5,599,625 (the "'625 patent"). (D.I. 1-Compl. ¶¶15-17, 27). For purposes of this Memorandum, the term "Process" shall include the '625 patent.

The Process was a new method of coating silica for use as filtration material within HPLC columns that enables a far more efficient sorting of proteins than prior technologies; the product of this Process is highly useful to pharmaceutical manufacturers and many others. (D.I. 1-Compl. ¶¶17, 27). RCT was required under the Contract to market the Process. to secure any and all revenues from third party use of UDTC's trade secrets and Process, to deliver to UDTC the bulk of all such revenues and to patent the Process. (D.I. 1-Compl. at ¶7). On UDTC's

behalf RCT therefore filed U.S. patent applications (D.I. 1-Compl. ¶15), which ultimately lead to the issuance of the '625 patent. (D.I. 1-Compl. ¶27).

Phenomenex, a leading global manufacturer of HPLC columns, signaled to RCT and the University an interest in the trade secrets and Process, which would allow Phenomenex to make products unsurpassed in the industry. (D.I. 1-Compl. ¶¶3,5, 18-26,29). In 1993 Phenomenex entered into a Materials Treatment Agreement and an Evaluation Agreement (*see* attached Exs. B and C)(collectively the "Agreements") with RCT, as the marketing manager of UDTC's intellectual property. (*Id.*). With respect to such Agreements UDTC was (i) the disclosed principal, (ii) the acknowledged beneficial owner, and (iii) the assignor and ultimate re-assignee.[1] (D.I. 1-Compl. ¶¶ 1,7-8,15-17,30).

Pursuant to the Agreements, Phenomenex was provided access to the trade secrets and the Process for evaluation purposes only. (D.I. 1-Compl. ¶¶18-26). By its own admission, Phenomenex was bound to absolute confidentiality of all trade secrets and the Process until at least September of 1998, which necessarily prohibited the employment and use of UDTC's trade secrets or the Process in any of its products. (*Id;* see also D.I. 23-Phenomenex Motion to Dismiss, "MTD" at p. 17, ¶2.). Thereafter, Phenomenex was precluded from infringing upon the '625 patent. At all times relevant—either by the plain language of the Agreements or by way of

---

[1] Much has been made by Phenomenex (as discussed *infra* herein) regarding the specifics of the ownership arrangement between RCT and UDTC, the only two possible parties able to recover patent infringement and other damages from Phenomenex. UDTC asserts in the Complaint, and continues to assert here, that it has the right to pursue Phenomenex for past, present and future infringement. RCT has not challenged UDTC's claim to such right, nor has RCT itself filed a compulsory counterclaim against Phenomenex for the recovery of such infringement damages. Further, because all potential parties with accrued damages are present in this litigation, Phenomenex does not face a multiplicity of suits; *res judicata* protects it. Phenomenex's concerns here are an attempt to intervene between RCT and UDTC regarding a matter which is undisputed as between them, and does not give rise to a cognizable defense for Phenomenex past patent infringement.

the '625 patent—Phenomenex thus was precluded from using or selling the process for its own commercial gain.

Phenomenex, however, admits that in 1997 it began selling its "Jupiter" products which illicitly employed the information, trade secrets and Process owned by UDTC and which infringe upon the '625 patent. (*See* Letter of Lowell Andersen, p.3, January 3, 2006, attached as Ex. D; "Moreover, the Jupiter product accused of infringement and of misusing trade secrets was introduced in 1997..."). Phenomenex in fact has used the stolen trade secrets, '625 patent and Process to make millions of dollars selling unlicensed product. (D.I. 1-Compl. ¶¶27-29). Phenomenex's unlawful activities and infringement continue to this very day and have been instrumental in its achievement of a leading position in the HPLC market.

In July 2001 RCT, through an Agreement to Assign and Deed of Assignment with the University, renounced all its right, title and interest in the '625 patent, the Process or the invention. (D.I. 1-Compl. ¶30). UDTC at that time and thereafter was wholly unaware of Phenomenex's and RCT's improper actions. Such actions came to light only when one of the Inventors, no longer associated with UDTC, on her own in 2003 discovered Phenomenex's theft. (D.I. 1-Compl. ¶28). Based on a rumor circulating through the industry, she tested Phenomenex's Jupiter product and found it to be identical to that produced by the patented Process. Shortly thereafter, she notified UDTC. As soon as an independent laboratory confirmed that Phenomenex could have produced its product only by stealing the Process and using the '625 patent, UDTC filed this action.

## SUMMARY OF ARGUMENT

1.  Phenomenex's Motion to Dismiss does not attack any of UDTC's post-July 2001 damage claims. *A fortiori*, Phenomenex's post-July 2001 infringement claims must continue.

2.  As to Phenomenex's asserted defenses to UDTC's pre-July 2001 claims, the relevant standard of review requires the Court to accept as true all factual allegations in the Complaint and to draw all reasonable favorable inferences in Plaintiff's favor. Application of this standard dooms Phenomenex's Motion.

3.  UDTC has properly plead the essential elements of its causes of action; Phenomenex's Motion therefore is inappropriate. Phenomenex's assertions of uncertainties between the only two possible owners of the '625 patent regarding the specifics and timing of such ownership do not convert UDTC's factual allegations into legal conclusions this Court may ignore. Such allegations must be accepted as true.

4.  UDTC has sufficiently plead its rights, title and interest in the '625 patent – UDTC can assert claims against Phenomenex for patent infringement during the '625 patent's entire lifetime. Ancillary jurisdiction exists for the various state law claims associated with Phenomenex's patent infringement.

5.  UDTC's has sufficiently plead standing to assert claims for Phenomenex's patent infringement prior to April 2001. UDTC avers that it possesses all right title and interest to past, present and future infringement, contract and common law claims and actions. It also has alleged that it was a party to the contracts, possessed patent rights via agency, was an intended third party beneficiary of the contract and/or patent rights, and that it has contract or patent rights as an assignee in total. The assignment and RCT's actions in this litigation support these

4

conclusions. At worst, there exists factual issues that cannot be resolved without further discovery.

6.      UDTC's claims are not time barred. The applicable statutes of limitation (i) have not run, (ii) were tolled either by Phenomenex's fraudulent concealment or by UDTC's reasonable actions once Phenomenex's actions were discovered, or (iii) are ripe as a matter of equity because Phenomenex as the wrongdoer has suffered no prejudice from the delay.

7.      UDTC has adequately plead a breach of the Materials Treatment Agreement. Phenomenex admits that it used UDTC's intellectual property to make commercial profits or otherwise shared such property with third parties by selling the infringing Jupiter products in 1997 (see Ex. D at 3), prior even to the expiration of the "confidentiality period" in September 1998 it posits.

8.      Phenomenex's sale of products manufactured using UDTC's intellectual property was a clear violation of the Agreements under which UDTC had rights. UDTC has alleged that "Phenomenex acted to evade the letter and spirit of the bargain..." by concealing in bad faith its infringement activities. The intent and purpose of the Agreements was to prevent precisely the type of infringement and theft Phenomenex committed; to now claim that its own actions to evade liability were not prohibited because an interpretation prohibiting such actions would "read into" the contract additional terms is incorrect.

9.      UDTC's other claims are not pre-empted by Arizona trade secret statutes. UDTC has plead its common law claims in the alternative and recognizes well settled law that it may not recover twice for the same act under separate causes of action. Phenomenex, however, asserts that UDTC's Arizona trade secrets claims have no merit and are inapplicable, thus

conceding that other of UDTC's common law and equitable claims are necessary as an alternative theory of recovery and precluding dismissal of such claims.

      10.    The Trade Secret misappropriation claims against Phenomenex are valid and enforceable.  UDTC asserts rights to its intellectual property for all damages and for the entire period of Phenomenex's infringement.  Phenomenex's claim that these claims must be dismissed as a result of some confusion between the timing and extent of rights as between the two possible parties who may have ownership is untenable.  First, no such confusion exists.  Second, any such dispute between RCT and UDTC, both parties to the litigation and the only parties possibly having a stake in the damages Phenomenex must ultimately pay for its willful infringement, even if one existed, would not warrant dismissal.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *PHP Liquidating, LLC v. Robbins*, 2003 WL 1053531 at * 2 (D.Del.). "In reviewing a motion to dismiss for failure to state a claim, 'all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party.'" *Id.* (*quoting Strum v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987)). A court therefore may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.* Thus, dismissal is only appropriate where a defendant has shown that the plaintiff "can prove no set of facts in support of his claim which will entitle him to relief," viz., that the legal elements of the complaint are entirely insufficient. *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 (D.D.C., 2002).[2] In order to have a claim dismissed under Rule 12(b)(6), the moving party must therefore meet a very high standard.[3]

Phenomenex has utterly failed to demonstrate the *factual* inadequacy of UDTC's Complaint. Phenomenex's Motion in fact tacitly concedes it cannot meet its heavy burden,

---

[2] Rule 12(b)(6) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment" under Rule 56. However, as to what constitutes matters "outside the pleadings," "it is well established that courts are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation without triggering the conversion requirement." *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 216 (D.D.C., 2002) (*internal quotations omitted*). UDTC does not assert that Phenomenex's motion is one for summary judgment. Rather, UDTC demonstrates that Phenomenex incorrectly attempts to apply a Rule 56 standard to its Motion.

[3] The purpose of a motion to dismiss is to test the sufficiency of a complaint, not its merits. *Triad Associates Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845 (1990). A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

when it challenges the legal sufficiency of claims made in Plaintiff's Complaint by pointing to hypothetical uncertainties between the only two entities who might possibly have any interest in the '625 patent. In so doing, Phenomenex attempts to distort the Rule 12(b)(6) standard by demanding that this Court mischaracterize and then ignore all of the Complaint's factual allegations regarding the specifics and timing of ownership as between UDTC and RCT, although such facts are properly pled, as perfunctory legal conclusions. Phenomenex's Motion thus rests on an improper attempt to apply a summary judgment standard to a Motion to Dismiss, and a wholly unsupportable claim that the Complaint contains no set of provable facts. Phenomenex's hyper technical reading of pleading demands is nowhere found in the Federal Rules. The factual allegations of UDTC's Complaint more than meet Rule 12(b)(6)'s generous standard. There is no basis in fact or law for Phenomenex's Motion, and Plaintiff therefore respectfully requests that such Motion be denied.

## ARGUMENT

### I.    PHENOMENEX'S MOTION TO DISMISS DOES NOT CHALLENGE UDTC'S POST-JULY 2001 CLAIMS FOR DAMAGES

Phenomenex in its Motion to Dismiss does not challenge UDTC's patent and common law claims for damages incurred after RCT assigned to UDTC all of its rights under the '625 patent. (D.I. 23-MTD at ¶¶1-2). As alleged in its Complaint, UDTC was assigned all of the rights, title and interest in and to the '625 patent as of July 24, 2001. (D.I. 1-Compl. ¶¶8, 30).[4] All of UDTC's post-July 2001 claims thus survive Phenomenex's Motion.

### II.    UDTC POSSESS THE REQUISITE RIGHT, TITLE AND INTEREST IN THE INTELLECTUAL PROPERTY AS TO ITS PRE-JULY 2001 CLAIMS

*A.    UDTC's Complaint Meets the Requirements of Rule 9*

UDTC also has sufficiently pled its rights, title and interest in the '625 Patent, trade secrets and the Process as to its pre-July 2001 claims. By its Complaint, UDTC has placed Phenomenex on notice that it claims an interest in the '625 patent throughout the lifetime of the patent. (D.I. 1-Compl., ¶¶7,8, 30, *inference passim*)[5]. UDTC alternatively asserts that it is the owner in entirety of all the rights it claims, the actual party to all contracts and the rightful owner of all intellectual property as the disclosed principal, and that RCT acted as its agent. This Court unquestionably has subject matter jurisdiction over all such claims.

Federal Rule of Civil Procedure 9(a) permits pleading without specifics as to capacity; thus whether UDTC has rights against Phenomenex for infringement as the complete holder of such rights, as the principal through its agent RCT, through assignment or otherwise, is irrelevant

---

[4] At such time as it becomes necessary (because it is not now in the context of a motion to dismiss), UDTC will adequately evidence the assignment from the University to UDTC.

[5] UDTC alleges, as it believes, that it has right, title and interest in the intellectual property at issue in this case for the entire period of Phenomenex's infringement. (*See* D.I. 1-Compl. ¶¶7 & 8; *see also* D.I. 16-RCT's Answer, ¶16).

for purposes of Phenomenex's liability. Rather, Rule 9(a) states that "when a party desires to raise issues as to the authority of a party to sue or be sued… the party desiring to raise the issue shall do so by negative averment…" Rule 9 thus confirms that UDTC can generally plead such authority without pleading all facts as to standing or capacity. In the event Phenomenex wishes to raise as an issue the authority of UDTC to bring this action, it may do so by a negative pleading denying an allegation of such authority. Regardless of the specifics of ownership and timing of UDTC's interest in the '625 patent, ancillary jurisdiction exists for the various state law claims associated with Phenomenex's patent infringement.

UDTC's legal right, title and interest to pursue all of its claims, past, present and future, moreover, is supported by the facts and circumstances of this case, the Agreement to Assign and Deed of Assignment (*see* attached Ex. E), and the case authority relied upon by Phenomenex. An improbable (and still unasserted) dispute regarding the recovery of past infringement damages between the only two possible owners of the intellectual property, does not exonerate Phenomenex for its past wrongful activities or its accrued liabilities. Indeed, Phenomenex's concerns regarding the proper party are in fact irrelevant; all possible owners of the rights to the intellectual property are litigants herein and all issues will be resolved finally in this Court. Thus, Phenomenex faces no danger of future suits, a split cause of action or a multiplicity of suits. Finally, by alleging in its Answer and Motion that UDTC lacks authority to pursue past infringement damages, Phenomenex admits that unresolved issues of fact as to such claims exist which preclude the dismissal it seeks.

B.    *UDTC Possesses the Requisite Standing to Sue Phenomenex for Past Infringement*

By the Agreement to Assign and Deed of Assignment (D.I. 1-Compl. ¶30), RCT named the University as assignee of the '625 patent and all other interests associated therewith,

10

including any and all claims in contract and common law. UDTC has alleged it was assigned such rights, and RCT has admitted this is true. (D.I. 1-Compl. ¶30; *see also* D.I.16- RCT's Answer, ¶16). In this action, RCT in fact asserts no rights under the '625 patent. Thus, UDTC's complete interest in the '625 patent, including all claims past, present and future, not only is properly pled, it also is confirmed by the only other party that could have an interest in such patent, RCT.

Phenomenex pins its hope for dismissal on an assertion that "[t]he law is clear that absent a provision in a patent assignment which expressly confers the right to sue for past infringement, no such right is transferred." (D.I. 23-MTD at p. 12) (*citing Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). Phenomenex claims that because such language does not exist in the 2001 "re-assignment" of the intellectual property to the University, UDTC has been "assigned" greater rights than the University was given by RCT. (*Id.* at p.12, ¶2). Phenomenex thus asserts that because UDTC "does [not] allege that it acquired the right to bring a claim for past infringement of the '625 patent" (*Id.*), its suit for such damages must be dismissed. The factual premise of this argument is, first of all, incorrect. UDTC has alleged and does in fact possess such a right. (*See* D.I. 1-Compl. ¶¶8, 30; D.I. 16-RCT's Answer ¶16). As to the law, *Minco* held no such thing.

In *Minco*, "[t]he patent assignment agreements...[did] not explicitly state that they include the right to sue for past infringement." *Minco,* 95 F.3d at 1116. Notwithstanding this fact, the Federal Circuit upheld the trial court's decision allowing Minco—a downstream assignee—to recover damages for infringement occurring before the date of assignment of the patent to Minco. *Id.* The Federal Circuit's reason for this decision is clearly stated: (1) determining whether the right to sue for prior infringement has been transferred turns on the

11

proper construction of the assignment agreements, which is a matter of state law; and (2)

application of such state law to the totality of the circumstances established that the right to

pursue such damages was conveyed to Minco. *Minco*, at 1117-18. An effective assignment of a

right to sue for past infringement thus does not "require[ ] a particular formula of set prescription

of words to express that conveyance...; [no] so-called 'magic words'..." are in fact required. *Id.*

Rather, the intent of the parties controls. *Id.*

Both Delaware and Arizona law regarding assignment are clear; an assignment

uncontested as between the parties may be deemed a complete assignment and extrinsic evidence

is permissible to resolve a third party's confusion regarding such agreement.[6] The totality of the

circumstances surrounding the assignment thus will be used to fix the scope and breadth of any

such assignment. Here, the Complaint alleges and the facts indicate there was a clear intent

---

[6] Under Delaware law, when a contract is "reasonably or fairly susceptible of different
interpretations or may have two or more different meanings," *Rhone-Poulenc Basic Chems. Co.
v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992), an ambiguity may exist and the
Court must resort to extrinsic evidence to divine the "reasonable shared expectations of the
parties at the time of contracting ." *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch.
2003). Such extrinsic evidence often includes the "overt statements and acts of the parties, the
business context, prior dealings between the parties, and other business customs and usage in the
industry." *In re Explorer Pipeline Co.*, 781 A.2d 705, 714 (Del.Ch.2001) (*quoting Bell Atl.
Meridian Sys. v. Octel Communications Corp.*, 1995 WL 707916, at *6 (Del.Ch. Nov.28, 1995));
*see also Cincinnati SMSA, L.P. v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 993
(Del.1998). Ultimately, the Court will endeavor to "interpret contractual provisions in a way that
gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions
of the instrument when read as a whole..." in a way in which the parties to the agreement
reasonably could have intended. *Council of Dorset Condominium Apartments v. Gordon,* 801
A.2d 1, 7 (Del.2002). Similarly, the Arizona Supreme Court has held that "[t]he predominant
and all essential rule is to ascertain the intent of the parties, and within the limit of legal
principles to give effect to it. To perform that office, all of the clauses must be considered...[w]e
do not believe the rule of strict construction should be used to render express provisions of a
contract nugatory where there is a reasonable alternative." *Hamberlin v. Townsend*, 261 P.2d
1003 (AZ 1953). Ultimately, under Arizona law, "with any question of contract interpretation,
our goal is to effectuate the parties' intent, giving effect to the contract in its entirety. In doing
so, we consider the language of the contract in view of the surrounding circumstances." *Potter v.
U.S. Specialty Inc. Co.*, 98 P.3d 557, 559 (Ariz. App. Div. 2004)).

between UDTC and RCT to convey such rights.  Under the governing law, this dooms Phenomenex's Motion.

UDTC has alleged that a complete assignment from RCT occurred.  (D.I. 1-Compl. ¶¶7,8,30, (*passim*)).  RCT's conduct in this action is consistent with such allegation.  RCT has not filed a mandatory cross-claim against Phenomenex for pre-2001 damages (either in contract, trade secret or patent).  RCT has not filed a mandatory counter-claim or otherwise asserted an affirmative defense that directly or impliedly asserts that UDTC lacks standing to recover for past infringement.  The totality of the circumstances thus undisputedly indicates that RCT conveyed to the University any rights it had to sue for past infringement, and that it intended to walk away from the '625 Patent.  (*See* D.I. 1-Compl. ¶ 30; D.I. 16-RCT's Answer, ¶16; *see also* Ex. E).  Indeed, should RCT now lay claim to any such rights, it would be required to convey them to the University.  (*See* Ex. E).  A refusal by RCT to do so could subject it to yet additional damage claims for breach of contract.

C.    *A Hypothetical Ownership Issue Between UDTC and RCT is No Defense to Phenomenex's Liability for Past Infringement and Other Damages*

The University's assignment to UDTC has been sufficiently plead and has no impact upon the rights of Phenomenex.  All potential liability threats arising from or related to Phenomenex's theft of intellectual property and its patent infringement are presented in this litigation.  It is not a defense for Phenomenex's theft that as between the only two possible owners, both of which are parties to this lawsuit, that hypothetically there could in the future be questions of ownership.  The extent of Phenomenex's infringement and contract liability remains the same, regardless of the extent to which each of those two parties ultimately recovers.  UDTC has adequately alleged that it possessed rights to pursue its claims as (i) a party (either as a principal to its agent RCT or directly), (ii) as a disclosed and intended third party beneficiary

13

thereto, and (iii) as previously stated, via total assignment of rights. (D.I. 1-Compl. ¶¶7-8). Phenomenex has not alleged that UDTC has failed to join a necessary party pursuant to Rule 19. There is no threat of a split cause of action against Phenomenex, the existence of a multiplicity of lawsuits or the specter of future actions against it elsewhere. All parties having a possible interest herein are parties to this litigation.

D.    *Subject Matter Jurisdiction Exists in this Court Over all Claims Presented*

Phenomenex's last argument on standing is that UDTC's alleged failure to demonstrate standing to pursue past infringement deprives this Court of subject matter jurisdiction for any claims that UDTC has against Phenomenex predating July 24, 2001. Phenomenex is incorrect as a matter of law.

28 U.S.C. §§1331 and 1338 read respectively that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the united States..." including "original jurisdiction of any civil action arising under any Act of Congress relating to patents..." 28 U.S.C. §§1331 and 1338(a). As a result, 28 U.S.C. §1367(a) provides in relevant part that "in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action...that they form part of the same case or controversy."

All of UDTC's claims arise from, relate to and are otherwise inextricably intertwined with Phenomenex's theft of intellectual property and the '625 patent, over which this Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1338. As tacitly admitted by Phenomenex in its arguments regarding the contractual relationships and ownership issues in this infringement prosecution (D.I. 23-MTD at 11-14), all issues presented by UDTC are inextricably intertwined. Further, this claim does not raise novel or complex issues of state law. The other claims do not

substantially dominate over the federal claims conferring jurisdiction; they are merely intertwined. Phenomenex has offered no compelling reason for this Court to decline supplemental jurisdiction, and UDTC respectfully suggest it need not do so.

Further, diversity jurisdiction permits all causes of action herein notwithstanding this Court's application of supplemental jurisdiction pursuant to 28 U.S.C. §1367. The amount in controversy exceeds $75,000.00. (D.I. 1-Compl. ¶9). Phenomenex is a California corporation having its principle place of business in California. (D.I. 1-Compl. ¶2; D.I. 23-MTD at 3). Thus, Phenomenex is a citizen of California pursuant to 28 U.S.C. §1332(c)(1). Diversity jurisdiction clearly exists and Phenomenex's citation to *Iduim Corp. v Semi-Alloys, Inc.*, 781 F.2d 879, 883-84 (Fed. Cir. 1985) for the unique proposition that jurisdiction can be raised in a motion to dismiss, offers no support for the naked assertion that this Court's jurisdiction fails.

## III.    UDTC'S CLAIMS ARE TIMELY

Phenomenex next attempts to sidestep liability under statutes of limitations on the ground that UDTC somehow failed to stumble onto Phenomenex's theft. Perhaps questioning the veracity of its own argument, Phenomenex also surmises that even if UDTC's claims are not barred by an applicable limitations period, express terms in the Agreement required only that Phenomenex keep trade secrets and the Process confidential through September 29, 1998. Phenomenex is wrong on both counts. Phenomenex admittedly breached the express terms of the Agreement. Further, the applicable statutes of limitations tolled as both a matter of law and as a matter of equity.

A.    *The So-Called Contractual Period of Limitations Does Not Bar UDTC's Claims*

Phenomenex argues that the terms of the supposed September 29, 1998 confidentiality extinction date are clear, unambiguous and must be construed by this Court as a matter of law.

(D.I. 23-MTD at p. 15, ¶3). To that end, it suggests the "clear and unambiguous" terms of the confidentiality provision of the Agreement act as a "contractual statute of limitations" which prevents UDTC's claims. (*Id.* at p. 16, ¶2-p.17, ¶1). Thus, says Phenomenex, the clear and unambiguous language of the Agreement permitted it to disclose and use at will the trade secrets and Process after September 29, 1998. (*Id.* at p. 17, ¶2). As a result, Phenomenex contends that it is absolved from all liability for actions prior to the award of the '625 patent. Phenomenex is way wide of the mark.

Even Phenomenex concedes it was required to not use for commercial purposes and keep all information confidential under the Agreements until at least September 29. 1998. (D.I. 23-MTD at 17, ¶2). Phenomenex concedes, however, that "the Jupiter product accused of infringement and of misusing trade secrets was introduced in 1997…" (*See* Ex. D). Phenomenex thus admits that it breached this "contractual limitations period," by using such confidential information and releasing its Jupiter products long before this contract period had expired.

The Evaluation Agreement in fact contained no provision or escape clause that allowed Phenomenex to disclose proprietary information merely because the patent application had been filed. Phenomenex did not simply disclose a formula, process or confidential information by producing and selling its Jupiter line of columns in 1997; it also disclosed trade secrets (the confidential information coupled with the know how gained as a result of Dr. Fatumbi's visit that gave Phenomenex the information necessary to create a product having a competitive advantage) (*See* D.I. 1-Compl. ¶¶13, 25, before its confidentiality obligations under the Evaluation Agreement expired. Thus, regardless of how Phenomenex hopes to couch the launch of its 1997 Jupiter products, it unquestionably violated that Agreement by disclosing and using information that the parties intended to be confidential and not used for commercial gain.

B.    *No Statute of Limitations Bars UDTC's Claims*

Phenomenex next argues that pursuant to 10 Del. C. §8121, Delaware's borrowing

statute, Delaware's three year statute of limitations accrued the day of the breach, has run and

bars UDTC's claims. Phenomenex asserts that the latest date of breach was September 19, 1998,

and UDTC had three years from then to bring suit. Phenomenex, however, fails to acknowledge

well-accepted principles of applicable law that act to toll the Delaware statute of limitations. Not

only is this law implicated in the instant case, its application rebuts Phenomenex's implications

that UDTC's time to pursue Phenomenex has run, and any action now is unfair.

In Delaware, two significant legal doctrines apply to toll the statute of limitations in an

action for breach of contract. First, the statute of limitations will toll if the breaching party has

fraudulently concealed the breach. *Wright v. Dumizo*, 2002 WL 31357891, *3 (Del. Super.).

Thus, the limitations period on any contract action begins to run only after the breach is

discoverable by the exercise of reasonable diligence, following defendants attempt to conceal

such breach. *Id.* Second, the time of discovery tolls when "there are no observable objective

factors which put laymen on notice of a problem..." *Wright v. Dumizo*, 2002 WL 31357891, *4

(Del. Super.). Therefore, "no cause of action accrues if the breach is inherently unknowable and

plaintiff was blamelessly ignorant that the cause of action existed." *Id.* (internal quotations and

citations omitted).

In the case at bar, both the first rule of fraudulent concealment and the second rule

extending the time of discovery apply to save UDTC's claims as timely. UDTC has alleged

Phenomenex hid its activities. It announced to RCT, following expiration of its rights under the

evaluation period, that it had no interest in the Process and would not be purchasing or otherwise

using the intellectual property that was the subject of the Agreements. These statements, in view

17

of its intent to develop products specifically employing the intellectual property, were affirmative acts of concealment. At a minimum discovery of the extent of Phenomenex's surreptitious activities is essential.

Additionally, UDTC was not on notice from Phenomenex of its now admitted 1997 breach of the confidentiality provision of the Evaluation Agreement. Phenomenex knew that it was not entitled to employ the intellectual property, and admitted such by notifying RCT that it intended not to do so. Phenomenex then used such information while taking affirmative steps to conceal its use. With such active steps employed by Phenomenex, and RCT and UDTC taking Phenomenex at its word that it had no use or interest in employing the intellectual property, UDTC was lured into believing that Phenomenex was not in breach of its obligations under the Agreements. Phenomenex's active concealment of its theft of the intellectual property, moreover, precluded UDTC from learning of the breach and foreclosed any observable objective factors which would have put UDTC on notice of Phenomenex's breach. UDTC thus remained blamelessly ignorant of such breach until after reasonably following up when it first received notice of Phenomenex's illicit activities, it conducted an investigation and immediately thereafter brought this suit. (D.I. 1-Compl. ¶¶26,28). Once again, at minimum, further discovery is necessary to determine the facts regarding the scope and breadth of Phenomenex's actions to secret its employment of the intellectual property in its Jupiter Products.

Phenomenex has not been prejudiced by the delay of this action, and if anything, as a result of the application of a limitations period in the Federal patent statutes, has been permitted to profit from its illegal activities without interference for a longer period. Phenomenex cannot now hide behind its own actions to bar UDTC's claims as time barred. The applicable statute of limitations tolled, permitting UDTC to properly assert the claims in its Complaint.

C.    *Equitable Tolling, The Doctrine of Laches and Lack of Prejudice Also Defeat this Defense*

As a matter of equity, any limitations period for the bringing of a contract action "is tolled until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury. " *Fike v. Ruger*, 754 A.2d 254, 261 (Del. Ch. 1999). Here, when UDTC heard from Dr. Wirth that Phenomenex potentially had stolen UDTC's intellectual property, it began an immediate inquiry. This lawsuit soon followed. UDTC had no earlier notice of Phenomenex's actions and took action as soon as it became aware of facts sufficient to trigger further inquiry.

Finally, laches states that an action is timely if it has been brought without unreasonable delay following the accrual of such action as ripe. The time period in which this action accrued was at or before the Complaint was filed, i.e. when UDTC had facts sufficient to believe that a cause of action existed. *See e.g. Tafeen v. Homestore, Inc.*, 2004 WL 556733 (Del. Ch.). UDTC did everything in its power to expeditiously investigate and pursue Phenomenex after it was put on notice of a potential problem. No unreasonable delay resulted and Phenomenex has not been prejudiced by any perceived delay. The applicable limitations period thus equitably tolled.

IV.    **PHENOMENEX BREACHED THE LETTER, SPIRIT AND PURPOSE OF THE MATERIALS TREATMENT AGREEMENT**

Phenomenex also asserts that UDTC lacks standing to assert a breach of the Materials Treatment Agreement. (D.I. 23-MTD at p. 18, ¶3, 19, ¶1-2). Specifically, Phenomenex argues that UDTC's allegations of breach do not implicate protected activities under the Materials Agreement. (*Id.*). Phenomenex thus claims that because the Materials Treatment Agreement allegedly is silent as to any obligations related to trade secrets or the Process "except with regard to materials actually treated and provided to Phenomenex..." the disclosure and production of

19

materials made by Phenomenex itself is not specifically prohibited under the Materials

Treatment Agreement. (*Id.*). Phenomenex, however, is wrong.

First, without discovery it cannot be ruled out that Phenomenex did not in fact improperly

use such materials. Second, notice pleading is also the standard in this District. (*See infra*

"Standard of Review," n.2,3). UDTC has adequately plead breach of the Materials Treatment

Agreement in that Phenomenex used or otherwise shared trade secrets and intellectual property

(i) for purposes other than research and evaluation, and (ii) that Phenomenex profited therefrom.

(D.I. 1-Comp. ¶¶28, 29, 31-33, 37-41 46-47, *passim*).  The Materials Treatment Agreement

contains no integration clause.  It clearly was just one part of a documented plan between parties

intent on securing UDTC's trade secrets and other intellectual property from disclosure to

unauthorized third-parties and to preclude any party from employing such trade secrets and other

intellectual property for purposes other than evaluation.  The purpose and intent of the Materials

Treatment Agreement would be entirely frustrated if Phenomenex's selective reading of that

Agreement allowed it to profit from sharing/selling material created as a result of Phenomenex's

clandestine use of protected trade secrets, materials and intellectual property merely because, as

Phenomenex claims, such materials were secretly manufactured by Phenomenex and "not

supplied to Phenomenex..." by UDTC.  Phenomenex's "we secretly made the materials after

stealing the technology" argument cannot withstand scrutiny.  Phenomenex's assertion that the

Materials Treatment Agreement is silent as to the treatment of trade secrets, even if ultimately

shown to be true, does not by negative implication permit Phenomenex to steal such materials

and to sidestep the purpose and intent of the Agreement by manufacturing the materials itself.

UDTC has stated a claim for breach of the Materials Treatment Agreement.

V.    **UDTC'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
      CLAIMS ARE SUPPORTED BY THE PLEADINGS AND ARIZONA
      CONTRACT LAW**

Phenomenex next claims that UDTC's allegation that it breached the covenant of good

faith and fair dealing should be dismissed (i) for failure to plead such cause with particularity,

and (ii) because, once again, UDTC lacks standing to assert such claim against Phenomenex.

(D.I. 23-MTD at 19, ¶3). Phenomenex's admission that the Complaint alleges that "Phenomenex

acted to evade the letter and spirit of the bargain…" dooms this argument. (D.I. 23-MTD at 20,

¶1). UDTC, moreover, clearly alleges that it possesses rights, title and interest to the trade

secrets, intellectual property, patents and agreements. (D.I. 1-Compl. ¶¶7,8 and 30; *see also*

*supra*, §II).[7] This assertion therefore fails.

A.    *Arizona Law Requires Each Party to Effect the Intent and Purpose of Their Agreement*

"All contracts as a matter of law include the implied duties of good faith and fair dealing,

and contract damages are available for their breach." *See United Dairymen of Arizona v. Schugg*

*--- P.3d ----, 2006 WL 301883, \*4  (Ariz.App. Div. 1,2006)(citing e.g., Wells Fargo Bank v. Ariz.*

*Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490-

91, ¶¶ 59-60, 38 P.3d 12, 28-29 (2002); *Rawlings v. Apodaca,* 151 Ariz. 149, 153-54, 726 P.2d

565, 569-70 (1986); *Enyart v. Transamerica Ins. Co.,* 195 Ariz. 71, 76, 985 P.2d 556, 561

(App.1998)). Pursuant to Arizona law, "[a] party can breach the implied covenant of good faith

and fair dealing without breaching an express provision of the underlying contract." *See*

*Beaudry v. Ins. Co. of the West,* 203 Ariz. 86, 91, ¶ 18, 50 P.3d 836, 841 (App.2002) (*quoting*

---

[7] There is some question as to why Phenomenex asserts the application of Arizona law but then
only cites Delaware authority. Additionally, as previously stated, *supra* § III, UDTC's claims
are not time barred either under the applicable statute of limitations, equitable tolling or the
doctrine of laches.

*Wells Fargo Bank*, 201 Ariz. at 491, ¶ 64, 38 P.3d at 29). Express contract provisions governing remedies or damages are generally binding on the parties." *United Dairymen of Arizona v. Schugg*, --- P.3d ----, 2006 WL 301883, *4 (Ariz.App. Div. 1, 2006) (citing *Dixon v. City of Phoenix*, 173 Ariz. 612, 618, 845 P.2d 1107, 1113 (App.1992). Thus, "[a] party can breach the implied covenant of good faith and fair dealing by acting in ways not expressly included in the contract but which nonetheless bear adversely on the other party's reasonably expected benefits of the bargain." *Id.* at *4 (citing *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, ¶ 14, 46 P.3d 431, 435 (App.2002); *accord Wells Fargo Bank*, 201 Ariz. at 491-92, ¶¶ 65-66, 38 P.3d at 29-30; *Southwest Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 558-59, 838 P.2d 1314, 1319-20 (App.1992)). Arizona law thus demands that all parties to a contract act to effect the intent and purposes of the agreement such that each party receives the benefit of its bargain. Here, UDTC alleges Phenomenex failed to meets this duty. At this stage, that is enough.

B.    *Phenomenex is Not Protected as "An Actor in Good Faith"*

Phenomenex correctly states that Arizona law requires that "acts in accord with the terms of one's contract cannot, without more, be equated with bad faith..." (D.I. 23-MTD at 20, ¶3)(citing *Southwest Savings & Loan Assoc. v. Sunamp Sys., Inc.*, 838 P.2d 1314, 1319 (Ariz. Ct. App. 1992). "A contract, thus, would be breached by a failure to perform in good faith if a party, *in good faith* uses its discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming a breach" (D.I. 23-MTD at 21, ¶1)(citing *id.*)(*emphasis added*). Phenomenex's assertion that "[c]ourts have no right to remake contracts to comport with some unspecified notion of fairness..." thus misses the point. *See Villegas v. Transamerica Fin. Services, Inc.*, 708 P.2d 781, 784 (Ariz. Ct. App. 1985).

UDTC alleges that the Agreements on their face expressly prohibit Phenomenex from stealing the trade secrets and intellectual property in the very manner that it did. (D.I. 1-Compl. ¶¶18-24, 27-29, 31-32, 36-88, 98-111). But even if the controlling Agreements did not contain express provisions prohibiting such activities, that would not by implication permit such actions by Phenomenex. Using Phenomenex's own argument, such a result would constitute an impermissible rewriting of the Agreements to permit something outside the contemplated range of such agreements. Phenomenex knew it was employing UDTC's intellectual property and trade secrets without permission; to cite case law that analogizes its clandestine theft and exploitation of UDTC"s intellectual property and trade secrets as a "good faith use[ ] of its discretion for a reason outside the contemplated range..." of the intents and purposes of the Agreements is ludicrous on its face.

C.    *Requiring Phenomenex to Honor the Intent and Purpose of the Agreement is Not a Reformation of Contract*

The intent and purpose of the Agreements contemplated that Phenomenex would do no more than evaluate UDTC's Process, intellectual property and trade secrets. Any further use – particularly the commercial employment of such infringement – required the purchase of the right to do so by Phenomenex. UDTC has not asked this Court to remake a contract to comport with some previously unspecified notion of fairness later implied by one of the parties. But here, the Agreements cannot be interpreted to permit Phenomenex to secretly exploit the knowledge and trade secrets gained during evaluation and then later circumvent liability based upon allegations that the Agreements were simple and contained no express terms prohibiting such theft. Any action by Phenomenex to frustrate the intent and purpose of the Agreements, or to misappropriate the trade secrets and intellectual property protected thereunder, violated the covenant of good faith and fair dealing implied in such contracts.

The Agreements and the arrangements they contemplate thus do not reveal, as Phenomenex claims, that it "act[ed] reasonably to fulfill the intent of the parties to the agreement..."(D.I. 23-MTD at 21, ¶2), when it sold Jupiter products developed as a direct result of the information and trade secrets disclosed to it in confidence. UDTC respectfully submits that Phenomenex's actions in fact are not reasonable under any standard, especially in light of the years of secret misappropriation by Phenomenex.

Even if, as Phenomenex impliedly argues, its actions are to be judged by the "reasonableness" standard (D.I. 23-MTD at 22, ¶2), then such decision is one for a fact finder after full and fair discovery. And even if, as Phenomenex alleges, the "unambiguously bargained for..." five year "non-use and non-disclosure period..." ended in September of 1998 (D.I. 23-MTD at 22, ¶2), Phenomenex itself admits that its Jupiter products where marketed and sold starting in 1997, thus demonstrating improper use of the confidential information long before 1998. The inconsistency in Phenomenex's argument that the parties "expressly rejected at the time for contracting..." an extension of the disclosure period beyond five years because UDTC "assumed the risk that Phenomenex might use [UDTC's] confidential information..." (D.I. 23-MTD at 22, ¶2), therefore is manifest. Phenomenex admittedly violated the Agreements in fact, in letter and under any standard of good faith and fair dealing. Certainly, it cannot at this preliminary stage be determined as a matter of law that Phenomenex's actions were a good faith use of the confidential information which Phenomenex employed reasonably, rather than a usage outside of the range and scope of the contemplated agreements. UDTC in fact did not assume any risk by sharing with Phenomenex the confidential information, trade secrets and Process; indeed this was the very risk that the Agreements existed to prevent.

24

Finally, Phenomenex claims that Arizona law has "recognized a claim for the breach of a duty of good faith and fair dealing grounded in tort...", that UDTC "has not alleged tort claims for breaches of this duty..." which " must arise in the context of a special relationship," and that "breach of contract, including breach of the covenant of good faith and fair dealing, may provide the basis for a tort claim." (D.I. 23-MTD at 23, ¶1 23, ¶2, fn. 8)(*citing Wagon Seller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1038 (AZ. 1985)). This argument is specious. UDTC directly pled statutory claims, and no special relationship is required. The implication that good faith and fair dealing in Arizona require a special relationship, is a misrepresentation of the law. Moreover, to the extent that any of UDTC's claims sound in tort, UDTC has adequately alleged that Phenomenex owed it a duty as a fiduciary, either by directly marketing for profit information disclosed under the Agreements, as a disclosed and intended third party beneficiary to the Agreements, or otherwise.

Phenomenex's sale of products manufactured by secretly employing UDTC's process and intellectual property was a clear violation of the Agreements to which UDTC was (i) a party via agency, (ii) a disclosed, necessary and intended third party beneficiary, and (iii) an assignee. UDTC has alleged that "Phenomenex acted to evade the letter and spirit of the bargain..." by concealing in bad faith its wrongful activities, and that the intent and purpose of the Agreements was to prevent precisely this type of infringement. Such allegations more than adequately state a claim for breach of the covenant of good faith and fair dealing.

## VI.    UDTC'S CLAIMS ARE NOT PREEMPTED BY A STATUTORY TRADE SECRET CLAIM

Phenomenex argues that UDTC's allegation that Phenomenex misappropriated trade secrets under 6 Del. C. §2001, *et seq.* and Ariz. Rev. Stat. §§44-401 *et seq.* usurps (i) a statutory claim of deceptive trade practices; (ii) the equitable remedy of unjust enrichment; (iii) the

25

equitable claim of conversion; (iv) the equitable right to an accounting; (v) the equitable right of a resulting or constructive trust; and (vi) the equitable right sounding in tort for the breach of the covenant of good faith and fair dealing. In support of these positions, Phenomenex cites the recent opinion in *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426, 433 (D.Del. 2005). Phenomenex's position, however, is not supported by the *Ethypharm* opinion, applicable statutory language or other Federal or state case law.

UDTC's equity claims are not pre-empted by trade secret claims. First, to the extent that a trade secret statute grants a legal remedy, it only displaces equitable claims that exist as a matter of remedy, not those that exist as a matter of equitable right. Second, the Unfair Trade Practices statute works in concert with and does not exclude the relevant Trade Secrets statute, to preclude the very type of activities Phenomenex has been sued for. Third, a point implicit in the *Ethypharm* opinion is that the Court may dismiss claims that exist as a matter of equitable remedy on the basis of pre-emption only if the parties concede the mandatory application of a trade secret statute which grants the previously unavailable legal remedy. Phenomenex has not conceded that the principles of the trade secrets statutes are controlling here. UDTC's claims for equitable remedies thus continue as viable theories of recovery.

A.    *Distinguishing an Equitable Remedy From Equitable Right*

"[T]he effect of the statute creating the legal remedy depends upon the legislative intent, and unless the statute shows a clear and certain intent that the equitable jurisdiction is no longer to be exercised under the matters within the scope of the statute, then the equitable jurisdiction has not been abrogated." *Glanding v. Industrial Trust Co.*, 45 A.2d 553, 559 (Del. Ch. 1945)(*citing* 1 Pomeroy, 5th Edition, 260; *Sweeny v. Williams*, 36 N.J.Eq. 627 (N.J. Err. & App. 1883), *affirming Sweeney v. Williams*, 36 N.J.Eq. 459 (N.J. Ch. Feb. Term 1883); *Miller v.*

26

*United States Casualty Co.*, 61 N.J.Eq. 110, 47 A. 509). It therefore is critical to determine in

which manner equity has been invoked: (i) as an equitable right; or (ii) as a solution when there

is no adequate remedy at law. *Christiana Town Center, LLC v. New Castle Center*, 2003 WL

21314499, *3 (Del.Ch. 2003)(*citing Azurix Corp. v. Synagro Technologies, Inc.,* 2000 WL

193117, at *2 (Del. Ch. Feb. 3, 2000), *appeal denied,* 748 A.2d 406 (Del.2000)). Equitable

rights are those rights that have traditionally been recognized at common law implicating

fiduciary duties which arise in the context of trusts, corporations, business arrangements and

guardianships. *See Christiana Town Center, LLC v. New Castle Center*, 2003 WL 21314499, *3

(Del.Ch. 2003)(*citing Wolfe & Pittenger,* § 2-3[b]). "Equitable remedies, by contrast, may be

applied even where the right sued upon "is essentially legal in nature, but with respect to which

the available remedy at law is not fully sufficient to protect or redress the resulting injury under

the circumstances." *Christiana Town Center, LLC v. New Castle Center*, 2003 WL 21314499, *3

(Del.Ch. 2003). It has long been held that a right in equity exists between known parties to

business arrangements and agreements.[8] For example, the equitable remedy of injunction may

be invoked to prevent ongoing theft of a trade secret notwithstanding a statutorily imposed

monetary remedy. *See e.g. Data General Corp. v. Digital Computer Controls, Inc.*, 357 A.2d

105, 111-12 (Del. Ch. 1975)( the legal framework in trade practice statutes is actionable in the

Court of Chancery because the court itself retains jurisdiction over equitable rights, even those

associated with statutory remedies). "Moreover, if equity once had jurisdiction in such cases and

it has not been taken away by statute in clear and unequivocal terms, or by necessary implication,

the adequacy of a legal remedy is not a factor in determining whether an action [with its basis in

_____

[8] *Valdes v. Larrinaga*, 233 U.S. 705 (1914); *Miller v. Miller*, 88 A.2d 784 (PA 1952); *Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731 (S.D. N.Y. 1988).

equity, i.e.] for an accounting will lie." *Id.* (citing *Glanding v. Industrial Trust Co.*, 45 A.2d 553 (Del. Ch. 1945); *Theisen, Admr. v. Hoey et al.*, 51 A.2d 61 (Del. Ch. 1947).

Phenomenex wrongly suggests the holding in *Ethypharm* permits such preemption as a matter of course, but clear state and Federal precedent contradicts this premise.  As it clearly was not the intent of the Delaware General Assembly by enacting the trade secret and unfair trade practices statues to circumvent the equitable jurisdiction of the Court of Chancery, invoking a statutory trade claim as a matter of state law cannot usurp all claims in equity.

       i.     *The Federal Courts Recognize the Important Distinction Between Equitable Rights and Equitable Remedies*

Phenomenex argues that "[a]ll claims stemming from the same acts as the alleged misappropriation are intended to be displaced [by the trade secret statutes], [and] a claim can be displaced even if the information at issue is not a trade secret…" *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426, 433 (D.Del. 2005).  However, a claim that can stand on its own *regardless* of whether the misappropriation claim succeeds, is not foreclosed. *Ethypharm*, at 433.  In fact, a long line of Federal and state precedent requires this Court to distinguish between claims that exist in equity as a matter of right, and claims that exist as a matter of remedy for a legal inadequacy  This is so because traditionally, courts of equity have had original jurisdiction to compel an accounting in such contexts between business parties, and the defendant has a duty to render an account.[9]  Thus, before this Court can dismiss UDTC's

---

[9] *See e.g. Magruder v. Drury*, 235 U.S. 106 *(1914); Valdes v. Larrinaga*, 233 U.S. 705, *(1914); Polygram, S.A. v. 32-03 Enterprises, Inc.*, 697 F. Supp. 132, (E.D. N.Y. 1988; *Block v. Lea*, 688 P.2d 724 (1984); *People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 103 Ill. Dec. 167, 501 N.E.2d 188 (1st Dist. 1986); *P.V. Properties, Inc. v. Rock Creek Village Associates Ltd. Partnership*, 77 Md. App. 77, 549 A.2d 403 (1988); *University Nursing Associates, PLLC v. Phillips*, 842 So. 2d 1270, 176 Ed. Law Rep. 470 (Miss. 2003); *Legacy Homes Partnership v. General Elec. Capital Corp.*, 50 S.W.3d 346 (Mo. Ct. App. E.D. 2001); *Lustgarten v. Jones*, 220

equitable claims as allegedly preempted by a trade secret statute, it must at a minimum first characterize each of those claims.

As previously stated, one of the key places a right in equity exists is between parties to a business agreement. For instance "[t]he right to compel an account in equity exists not only in the case of those relationships which are traditionally regarded as those of trust and confidence, but also in those informal relations which exist whenever one person trusts in, and relies upon, another."[10]  "Because of the inadequacy of the old legal remedy of account… a bill for an accounting has long since become an established branch of equity jurisdiction in appropriate cases."[11]  Thus a demand for an accounting is a basic right in equity, not merely a remedy which exists as a result of a legal failure.  Similarly, claims arising in the fiduciary context created as a result contract or other business dealings by definition arise as matter of equitable right.  At this stage, there is no valid basis for dismissing such claims in the Complaint.

        *ii.*     *Preemption Fails When a Party Contests the Application of a Preemptive Statute*

Equity claims that exist as a matter of remedy also are properly alternatively plead when, as here, a party argues that the trade secret statute is inapplicable.  Phenomenex has asked this Court to determine that the trade secret statutes are inapplicable (*See generally D.I. 21*-Phen.

---

Neb. 585, 371 N.W.2d 668 (1985); *Kastle v. Steibel,* 120 A.D.2d 868, 502 N.Y.S.2d 538 (3d Dep't 1986); *Ritter, Laber and Associates, Inc. v. Koch Oil, Inc.,* 2004 ND 117, 680 N.W.2d 634 (N.D. 2004).; *Security Sav. Bank v. Green Tree Acceptance, Inc.,* 739 F. Supp. 1342 (D. Minn. 1990); *Rogers v. Salisbury Brick Corp.,* 299 S.C. 141, 382 S.E.2d 915 (1989).

[10] 1 Am.Jur.2d §55 (*citing* Patterson v. Getz, 166 Or. 245, 111 P.2d 842 (1941)(the relation and duties involved need not be legal; they may be moral, social, domestic, or personal. Whittle v. Ellis, 122 So. 2d 237, 81 A.L.R.2d 1415 (Fla. Dist. Ct. App. 2d Dist. 1960); *Barnes v. Barnes*, 282 Ill. 593, 118 N.E. 1004, 4 A.L.R. 4 (1918)).

[11] *See Maull v. Stokes,* 68 A.2d 200, 201-02 (Del. Ch. 1949)(*citing Tharp v. St. Georges Trust Co.,* 34 A.2d 253 (Del. Ch. 1943 ); *Wolf v. Globe Liquor Co.,* 59 A.2d 276 (Del. Ch. 1948); 4 Pomeroy Eq.Jur., 5th ed., §§ 1420, 1421.

Answer), while concurrently demanding the dismissal of common law claims as preempted under such statutes. (D.I. 23-MTD at 28).  This contradictory stance indicates that UDTC's common law claims cannot now be dismissed.  Phenomenex's invocation of *AutoMed Technologies, Inc. v. Eller*, 160 F.Supp.2d 915, 921-22 (N.D. Ill. 2001), does not alter this conclusion.  The *AutoMed* court was faced with determining whether alternative common law pleadings survived as a matter of law, when a defendant *conceded* the application of a trade secret statute that expressly subsumed such claims.  Critically, the *AutoMed* Court upheld all claims sounding in fiduciary duty, including claims that the directors had breached implied covenants in employment contracts.

B.      *The Unfair Trade Practices Claim*

        Phenomenex argues that 6 Del. C. §2531, *et seq.* is preempted by the applicable Trade Secret statutes.  The Unfair Trade Practices Act and the Trade Secrets Act, however, are not mutually exclusive remedies, either by a plain ready of the preemption statutory language or by a fair reading of their purposes.  Unfair trade practices pursuant to the Deceptive Trade Practices Act are, *inter alia*, (1) the passing off of the goods of another as ones own, and (2) causing likelihood of confusion as to origin of such goods.  6 Del. C. §2532.  Conversely, "disclosure" under the Trade Secrets Act means "disclosure or use of a trade secret without express or implied consent..."  6 Del. C. §2001.  Thus, unfair trade practices provide a party with a legal remedy when its property has been appropriated as that of another, for profit.  On the other hand, the Trade Secret Act precludes a party from using trade secrets of another for financial gain.

        Each statute has a preemptive preamble, but neither preamble forecloses an action under the other as an exclusive remedy.  *Compare* 6 Del. C. §§2007(a) and (b). *with* 6 Del. C. §2534.  Nowhere does 6 Del. C. §2534's preclusive preamble reference the trade secret statute or state

30

the preclusion Phenomenex now argues. A plain reading of the relevant statutory language in fact demonstrates that each statute is not an exclusive remedy to any claims arising under the other statute. Phenomenex ostensibly argues that because the same facts and activities have been plead in support of the trade secrets claims and the unfair trade practices claim, that the trade secret claim controls. (D.I. 23-MTD 28-31), Yet, a plain reading contradicts this point and Phenomenex cites no case law in Delaware or Arizona for this anomalous conclusion.

If two chapters within the same title of the Delaware code were meant to be mutually exclusive, the Delaware General Assembly would have stated as much by plain language.[12] The same conclusion is warranted in application of the Arizona trade secret statute. As admitted by Phenomenex, the preemptive preamble of the Arizona trade secret statute is identical to Delaware's, as are Arizona's rules of statutory interpretation.[13] UDTC's Unfair Trade Practices claim is valid and is not preempted by its Trade Secrets allegations.

---

[12] *Snyder v. Andrews*, 708 A.2d 237, 241 (Del.1998); *State v. Reynolds*, 669 A.2d 90, 93 (Del.1995). *Director of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953t 957 (Del. 2003); a*ccord Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del.2001); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del.1985); *DiStefano v. Watson*, 566 A.2d 1, 4 (Del.1989); *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1088 (Del.1995).

[13] "The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature." *Luchanski v. Congrove*, 193 Ariz. 176, 177, ¶ 14, 971 P.2d 636, 638 (App.1998) (*citing Ariz. Bd. of Regents ex rel. Univ. of Ariz. v. Ariz. Pub. Safety Ret. Fund Manager Adm'r*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989)). *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (App.1996). "Although we look first to the language in question to determine its meaning, '[w]hen the statute's language is not clear, we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *State v. Gonzales*, 206 Ariz. 469, 80 P.3d 276, 279 (Ariz. App. Div. 2003)(*quoting Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

C.    *UDTC's Unjust Enrichment And Conversion Claims Are Not Preempted*

In Delaware, the equitable claim of unjust enrichment requires a showing of (1) an

enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment;

(4) the absence of justification; and (5) the absence of a remedy at law. *See e.g. Jackson Nat'l.*

*Live Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch.1999). Conversion is the "act of dominion

wrongfully exerted over the property of another, in denial of his right, or inconsistent with it ."

*McGowan v. Ferro*, 2004 WL 2423570, at *19 (Del. Ch.) (*citing Arnold v. Soc'y for Sav.*

*Bancorp, Inc.*, 678 A.2d 533, 536 (Del.1996)). The necessary elements for conversion are that

(i) UDTC has a property interest in the confidential information, trade secrets and patents; (ii)

that UDTC had right to prevent others from using such information, trade secrets and patents;

and (iii) that UDTC has sustained damages. *See Facciolo Constr. Co. v. Bank of Del.*, 514 A.2d

413 (Del.1986); *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch.1988).

Although Judge Robinson in *Ethypharm* concluded that unjust enrichment and

conversion existed only as an equitable remedy and dismissed such claims, this Court cannot

now dismiss UDTC's claim. In *Ethypharm,* because the defendant conceded the application of

the trade secret statute, it was with both claims subjected to duplicate liability for a wrong which

had been statutorily remedied. That is not the situation in the case at bar. Phenomenex in fact

argues as a matter of law that the trade secret statute is inapplicable (not that UDTC cannot prove

a claim under the trade secret statute), and therefore it cannot assert that this equitable remedy

has been replaced by a statutory right of recovery.

D.    *Both an Accounting and Prayers For the Breach of Good Faith and Fair Dealing*
      *Demand a Right in Equity*

A demand for an accounting exists as a matter of equitable right which cannot be

displaced by the mere invocation of a legal remedy. In the context of the business relationship

between the parties and the equitable claims arising in the fiduciary context, UDTC's action for an accounting constitutes an equitable right without regard to other considerations. *Ashemimry v. Ba Nafa*, 778 So. 2d 495 (Fla. Dist. Ct. App. 5th Dist. 2001); *see also* 1 Am.Jur.2d, §55. Furthermore, an alleged breach of the covenant of good faith an fair dealing arising in this context also plainly sound as an equitable right.

Because both exist as a matter of equitable right arising between parties in which a fiduciary relationship is implied, they are rights that cannot be displaced by a trade secret statute. Courts of equity traditionally have had original jurisdiction to compel an accounting and force a party to account for action taken in the context of a contractual relationship. Phenomenex therefore has a duty to render an account both in action and in sales and this Honorable Court may legally enter such an order. Ultimately, no mutuality of remedy exists between the any statutory trade secret claim against Phenomenex and UDTC's demand for both an accounting and an answer for Phenomenex's actions which are the basis for the fair dealing allegations. As a result, these demands cannot possibly be foreclosed as a duplicative equitable remedy.

## CONCLUSION

Phenomenex's Motion to Dismiss is limited to UDTC's pre-July 2001 claims for damages. It does not challenge UDTC's right to recover for post July-2001 infringement. Phenomenex's shotgun attack of UDTC's *pre*-2001 damage claims is not supported by fact or law. All of Phenomenex's arguments run afoul of the allegations in UDTC's Complaint under Delaware or Arizona law. Such arguments are untenable and must be rejected. Phenomenex's Motion to Dismiss, therefore, should be denied.

**McCARTER & ENGLISH, LLP**

By: _____
          Michael P. Kelly, Esq. (#2295)
          A. Richard Winchester, Esq. (#2641)
          James J. Freebery, Esq. (#3498)
          Christopher A. Selzer, Esq. (#4305)
          919 North Market Street, Suite 1800
          Wilmington, DE 19899
          (302) 984.6300 telephone
February 21, 2006          **Attorneys for Plaintiff**

5486366.1

34

## CERTIFICATE OF SERVICE

I, Michael P. Kelly, hereby certify that on the 21st day of February, 2006, I caused to be served a copy of the foregoing pleading upon the following counsel of record via electronic filing:

> John W. Shaw, Esquire
> Young, Conaway, Stargatt & Taylor
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19899-0391
>
> Chad Michael Shandler, Esquire
> Richards Layton & Finger
> One Rodney Square
> Wilmington, DE  19899
>
> Benjamin J. Schladweiler, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE  19899

McCARTER & ENGLISH, LLP

/s/ Michael P. Kelly

MICHAEL P. KELLY (DE ID# 4305)
919 North Market Street, Suite #1800
P. O. Box 111
Wilmington, DE  19899
(302) 984-6300
Attorneys for Plaintiff

MEI\5456299.1