# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UD TECHNOLOGY CORPORATION,<br>A non-profit organization of the<br>UNIVERSITY OF DELAWARE | §<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§ | C.A. No.      05-842-GMS |
| v. | §<br>§ | |
| | §<br>§ | **TRIAL BY JURY OF**<br>**TWELVE DEMANDED** |
| PHENOMENEX, INC., and<br>RESEARCH CORPORATION<br>TECHNOLOGIES | §<br>§<br>§<br>§<br>§ | |

## PLAINTIFF UD TECHNOLOGY CORPORATION'S
## MEMORANDUM OF LAW IN OPPOSTION TO
## RESEARCH CORPORATION TECHNOLOGIES' MOTION TO DISMISS

**McCARTER & ENGLISH, LLP**

Michael P. Kelly, Esq. (#2295)
A. Richard Winchester, Esq. (#2641)
James J. Freebery, Esq. (#3498)
Christopher A. Selzer, Esq. (#4305)
Andrew S. Dupre, Esq. (#4621)
919 North Market Street, Suite 1800
Wilmington, DE  19899
(302) 984.6300 telephone
**Attorneys for Plaintiff**

February 21, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

COUNTER STATEMENT OF FACTS ......................................................................... 1

SUMMARY OF ARGUMENT........................................................................................3

STANDARD OF REVIEW..............................................................................................5

ARGUMENT ....................................................................................................................6

I.      RCT's Motion Should Be Denied Because It Is A Mandatory Party
        To This Action......................................................................................................6

II.     The Time Of Discovery Rule Tolled The Statute Of Limitations........................... 8

        A.      Time Of Discovery Is Designed To Defeat Fraud Of The
                Type Alleged In This Action ................................................................... 9

        B.      RCT's Acts Lulled UDTC Away From Protecting Its Rights To The
                Process..................................................................................................... 11

        C.      Laches Does Not Bar Claims Brought With Reasonable Diligence And
                Without Prejudice To The Other Party..................................................... 12

        D.      At Minimum, RCT's Statute Of Limitations Defense Is Not Ripe........... 13

III.    The Contract Imposed A Duty On RCT To Act Reasonably................................ 15

        A.      The Contract Bounds RCT's "Discretion" To Reasonable,
                Diligent, Good Faith Actions.................................................................. 15

        B.      Determining Scope Of Damages Is Part Of RCT's Duty To Act
                Reasonably.............................................................................................. 17

        C.      The Confidentiality Provision Is Not Surplusage ..................................... 19

IV.     RCT Acted As A Fiduciary, And Therefore Owed Equitable
        And Good Faith Duties ....................................................................................... 21

i

A.    The Contract Created Fiduciary Duties...................................................21

B.    RCT Is Liable For Breach Of The Covenant Of Good Faith And
      Fair Dealing Both On The Contract And In Tort......................................23

      1.    RCT Breached Its Contractual Duty To Act In Good Faith .........24

      2.    RCT's Actions Constitute Tortious Bad Faith .............................24

C.    RCT's Breach of Fiduciary Entrustment Creates A Duty To
      Account....................................................................................................25

D.    RCT's Breach of Fiduciary Entrustment Creates The Right to
      An Equitable Trust ..................................................................................28

V.    In The Alternative, RCT Is Liable As A *De Facto* Fiduciary Agent ...................29

CONCLUSION .......................................................................................................32

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3rd Cir. 1994) ........................................ 5, 13, 14

*Conley v. Gibson*, 355 U.S. 41 (1957)............................................................................. 6

*Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387 (D. Del. 1989)....................................... 7

*Pfizer Inc. v. Elan Pharmaceutical Research Corp.*,
    812 F. Supp. 1352 (D. Del. 1989) ............................................................................ 7

*In re Rockefeller Center Properties, Inc. Securitites Litigation*,
    184 F.3d 280 (3rd Cir. 1999) ................................................................................ 15

*Standard Chlorine of Delaware, Inc. v. Sinibaldi*,
    821 F. Supp. 232 (D.Del. 1992) ............................................................................ 25

*Triad Associates Inc. v. Chicago Housing Authority*,
    892 F.2d 583 (7th Cir.1989), <u>cert. denied</u>, 498 U.S. 845 (1990) ................................ 6

## STATE CASES

*Adams v. Jankouskas*, 452 A.2d 148 (1982).................................................................. 12

*Associates Finance Corp. v. Walters*, 470 P.2d 689 (Ariz.App. 1970)...................... 18, 26

*Barlage v. Valentine*, 110 P.3d 371 (Ariz. App. Div. 2 2005)........................................ 31

*Boxer v. Husky Oil Co.*, 429 A.2d 995 (Del. Ch. 1981) ................................................ 25

*Burch & Cracchiol, P.A. v. Pugliani*, 697 A.2d 674 (Ariz. 1985)................................... 28

*Carroll v. Lee*, 712 P.2d 923 (Ariz.1986)................................................................. 15, 30

*Cheese Shop Int'l, Inc. v. Steele*, Del. Ch., 303 A.2d 689,
    *rev'd on other grounds*, 311 A.2d 870 (1973).................................................... 21, 25

*Deese v. State Farm Mutual Automobile Insurance Co.*,
    838 P.2d 1265 (Ariz. 1992)................................................................................... 23

*Descano v. Walters*, 1992 WL. 9078 (Del. Super.)........................................................ 10

*Divizio v. Kewin Enterprises, Inc.*, 666 P.2d 1085 (Ariz.App. 1983)........................ 18, 26

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) .................................................................. 5, 13

*East v. Tansey*, 1993 WL. 487807 (Del. Ch.) ................................................................ 12

*Gates v. Arizona Brewing Co.*, 95 P.2d 49 (Ariz.1939) ............................................ 16, 30

*Hamberlin v. Townsend*, 261 P.2d 1003 (Ariz. 1953) ................................................... 16

*Haymes v. Rogers*, 222 P.2d 789 (Ariz. 1950) ........................................................... 22, 27

*Kahn v. Seaboard Corp.*, 625 A.2d 269 (Del. Ch. 1993) ........................................ 12, 13

*Kent County Motor Sales Co., v. O.A. Newton & Sons Co.*,
    1991 WL. 215909 (Del. Super.) ................................................................................. 10

*Layton v. Allen*, 264 A.2d 794 (Del. 1968) ................................................................... 10

*McMahon v. New Castle Associate*, 532 A.2d 601 (Del. Ch. 1987) .................... 18, 25, 28

*Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.*,
    1995 WL. 409015 (Del. Ch.) ...................................................................... 21, 22, 27

*Mollohan v. Christy*, 294 P.2d 375 (Ariz. 1956) ............................................ 18, 25, 26, 27

*Morton v. Sky Nails*, 884 A.2d 480 (Del. 2005) ........................................................... 10

*Musselman v. Southwinds Realty, Inc.*,
    704 P.2d 814 (Ariz. App. 1985) ................................................................................ 22

*Pan American Trade.*, 94 A.2d 700 (Del. Ch. 1953) ................................................... 27

*Pioneer Annuity Life Insurance Co. by Childers v. National Equity Life Insurance
    Co.*, 765 P.2d 550 (Ariz. App. 1988) ...................................................................... 27

*Rawlings v. Apadoca*, 726 P.2d 565 (Ariz. 1986) ........................................................ 23

*Sertich v. Moorman*, 783 P.2d 1199 (Ariz. 1989) ................................................... 25, 26

*Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332 (Ariz. 1977) ........................... 15, 30

*Standard Chartered PLC v. Price Waterhouse*,
    945 P.2d 317 (Ariz. App. Div. 1. 1996) ................................................................... 21

*Tafeen v. Homestore, Inc.*, 2004 WL. 556733 (Del. Ch.) ........................................ 13, 14

*Thorpe v. Cerbco*, 1993 WL. 443406 (Del. Ch.) ...........................................................28

*Tucson Estates Residents Association v. Mobilife Corp.*,
    546 P.2d 352 (Ariz. App.1976)......................................................................28

*U.S. Cellular Co. of Allentown v. Bell Atlantic Mobile Systems, Inc.*,
    677 A.2d 497 (Del. 1996) ..........................................................................12

*Walmart Stores v. AIG Life Insurance Co.*, 860 A.2d 312 (Del. 2004) ...........................10

*Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No.*
    *395*, 38 P.3d 12 (Ariz. 2002)..............................................................23, 24

*Wright v. Dumizo*, 2002 WL. 31357891 (Del. Super.)...............................................10, 12

## FEDERAL RULES & STATUTES

Fed. R. of Civ. Pro. 8.........................................................................................25

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................4

Fed. R. Civ. Pro. 11(b) ...............................................................................10, 11

Fed. R. Civ. Pro. 13(a)......................................................................................27

Fed. R. of Civ. Pro. 19(a) .................................................................................4, 7

## MISCELLANEOUS

Am. Jur. 2d Trusts § 138 ...................................................................................28

Breach of Contract and the Common Law Duty to Perform in Good Faith, 94
    HARV. L.REV. 369, 385-86 (1980) ...........................................................24

Donald J. Wolfe, Jr. & Michael A. Pittenger,
    Corporate and Commercial Practice in the Delaware Court of Chancery
    § 12-6[a]............................................................................................27

Restatement (Second) of Contracts § 205 cmt. a (1981)................................................24

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff UD Technology Corporation ("UDTC")[1], filed its complaint on December 5,

2005 against Defendants Research Technologies Corporation ("RCT"), and Phenomenex, Inc.

("Phenomenex"). RCT and Phenomenex were served at the same time and in the same manner.

Both RCT and Phenomenex requested, and were granted by stipulation, an extension of time to

file a pleading responsive to UDTC's Complaint. RCT and Phenomenex filed both an Answer to

the Complaint and Motion to Dismiss. This is UDTC's Memorandum of Law in Support of its

Response to RCT's Motion to Dismiss. UDTC's Memorandum of Law in Support of its

Response to Phenomenex's Motion to Dismiss is filed contemporaneously herewith.

## COUNTER STATEMENT OF FACTS

In 1990, UDTC entered a contract ("Contract")(See attached as Ex. A) with RCT. The

Contract required RCT to manage UDTC's intellectual property by securing a Patent for and

marketing certain highly confidential information that led to a product by process ("Process")

(Compl. ¶¶15-17). For purposes of this brief, the term "Process" shall include both the

confidential information and trade secrets that underlie the Process, and the patent that embodies

it: United States Letters Number 5,599,625 ("Patent"). The Process was a new method of

coating silica for use as filtration material within HPLC columns that enables a far more efficient

sorting of proteins than prior technologies; the product of this Process is highly useful to

pharmaceutical manufacturers and many others (Compl. ¶¶17,27). The Contract expressly

required RCT to market and secure any and all revenues from third party use of the Process, to

deliver the bulk of those revenues to UDTC, and to obtain the Patent (Compl. ¶¶7,15,27).

Phenomenex, a leading global manufacturer of HPLC columns, signaled to RCT and

---

[1] For purposes of this brief, "UDTC" includes that company's predecessors in interest.

1

UDTC an interest in the Process, which would allow Phenomenex to make products unsurpassed in the industry (Compl. ¶¶3,5, 18-26,29). Well aware of UDTC's ownership interest in the Process, Phenomenex entered into an agreement ("Evaluation Agreement")(See attached Exhibit B) with RCT, as the marketing manager of UDTC's intellectual property (and necessarily with UDTC as (i) the disclosed principal; (ii) the acknowledged beneficial owner; or (iii) the assignor and ultimate re-assignee).[2]

RCT permitted Phenomenex access to the Process ("Evaluation"). To assist Phenomenex in the Evaluation and to teach Phenomenex how to employ the Process, RCT engaged, with permission from UDTC, one of the Inventors to travel from UDTC's Delaware lab to Phenomenex's lab in California (Compl. ¶25). UDTC permitted this activity based upon RCT's assurances that RCT had made the requisite legal arrangements to secure the confidentiality and protection of the Process. Following the Evaluation, Phenomenex notified RCT that it had no further interest in the Process (Compl. ¶26). RCT, however, failed to secure the timely return of all samples and confidential information delivered to Phenomenex during the Evaluation. RCT also failed to assure that Phenomenex had destroyed all confidential information regarding the Process as required under the Evaluation Agreement. Such activities, UDTC contends, were mandatory in order to carry out the intent and purpose of the Contract.

Pursuant to the Evaluation Agreement, Phenomenex was bound to absolute confidentiality of the Process until September 1998, which necessarily included a prohibition of the employment and use of the Process in any of its products (Compl. ¶24). Thereafter,

---

[2] Much has been made by Phenomenex regarding the ownership arrangement between RCT and UDTC, the only two possible parties able to recover Patent infringement and other damages from Phenomenex. These claims are discussed at length in Plaintiff's Memorandum of Law in Opposition to Phenomenex's Motion To Dismiss.

Phenomenex was precluded from infringing upon the Process as a result of the applicable Patent (Compl. ¶27). However, Phenomenex (by its own counsel's admission – See attached Exhibit C, Letter of Lowell Andersen, January 3, 2006) in 1997 began selling its Jupiter products which illicitly employed the Process and infringed upon UDTC's Patent (Compl. ¶27-29).

RCT was either complicit with Phenomenex's violative use of the Process, or sat on its hands (Compl. ¶33-35). RCT failed to make even a cursory check of Phenomenex's products or to achieve any revenue under the Contract. Id. Phenomenex meanwhile used the stolen Process to make millions of dollars selling unlicensed product. RCT did nothing to stop this theft. RCT finally ended its long-running charade of actively managing the Process in 2001 by assigning all of its rights therein back to UDTC ("Reassignment")(See attached Exhibit D).

UDTC was wholly unaware of Phenomenex's and RCT's improper actions, which came to light only when one of the Inventors, no longer associated with UDTC, discovered the theft in 2003 (Compl. ¶28). Based on a rumor circulating through the industry, she tested Phenomenex's Jupiter product and found it to incorporate the Process's Patented technology. Shortly thereafter, she notified UDTC. As soon as an independent lab confirmed that Phenomenex could only have produced its product by stealing the Process and infringing on the Patent, UDTC filed this action.

## SUMMARY OF ARGUMENT

1.      RCT is a necessary party to this action. It is the only other possible owner of the Process during the period of infringement. A variety of Phenomenex's arguments attempt to play the two possible owners against each other, suggesting that it is willing to pay RCT for the theft during certain periods but not UDTC, or vice versa. Without including RCT in this action, Phenomenex might be placed in a position of inconsistent obligations, especially because RCT has demanded some payment in this action. There also is no way to resolve fact issues regarding the

infringement without also establishing the breach of contract and equitable duties with which RCT is charged in this action. RCT therefore is a mandatory party for both of the reasons described in Fed. R. Civ. Pro. 19(a).

2.      Procedurally, the statute of limitations cannot serve as a basis for a motion to dismiss, because the inquiry required by Delaware law is intensively fact-based. Statutes of limitations in Delaware begin to run only when the injury becomes detectible by reasonable diligence. RCT's breach of the Contract was to allow, either complicity or recklessly, Phenomenex's theft to occur. Both the time at which the theft could have become known, and the reasonableness of UDTC's inquiry, are questions of fact. The Complaint, read in a light most favorable to UDTC, alleges that Phenomenex secreted its theft such that UDTC was not able to discover it through reasonable diligence until very recently. These allegations must be accepted as true, and a dismissal therefore is improper.

3.      For similar procedural reasons, UDTC's breach of contract claim cannot be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6), again because the applicable standard requires a fact inquiry. The Complaint alleges that RCT breached its contractual duty to act with reasonableness, due diligence, and good faith in marketing the Process. The extent of RCT's conduct with regards to the Process is yet unknown, and it is necessary to conduct discovery to determine both: (1) the standard of conduct intended by the parties, and (2) that RCT did not meet this standard. The breach of contract is primarily a question of fact, which UDTC has adequately plead and that must, for the moment, be accepted as stated in the Complaint. Dismissal therefore is improper.

4.      UDTC's equitable and good faith claims also must survive a Fed. R. Civ. Pro. 12(b)(6) challenge because RCT's defenses to those claims are based entirely upon yet unknown

4

questions of fact. The Complaint alleges that RCT breached its fiduciary duty to UDTC, owed by virtue of RCT's contractual position as a technology manager and the entrustment of the confidential Process, by acting unreasonably, without due diligence, and in bad faith. Again, the full extent of RCT's actions are yet unknown, and discovery is necessary to fairly address these issues. A motion to dismiss therefore is improper.

5.      To the extent the Court believes that sufficient facts are currently known to decide any of the issues RCT presents in its motion, all counts of this motion should be denied. The express language of the Contract required RCT to act reasonably, diligently, and in good faith. Duties of care and good faith also are implied by the fiduciary capacity that RCT assumed under the Contract – the manager of a highly confidential, extremely valuable technology whose entire economic value depended upon protecting its confidentiality and policing its Patent. UDTC relied entirely upon its fiduciary, RCT. The mere fact that Phenomenex has been widely marketing products made from the stolen Process at least since 1997, and that RCT did not take (and still has not taken) any steps to stop it, shows that RCT is not entitled to the relief it seeks.

## STANDARD OF REVIEW

> [T]he threshold for the showing a plaintiff must make to survive a motion to dismiss is low. Delaware is a notice pleading jurisdiction. Thus, for a complaint to survive a motion to dismiss, it need only give general notice of the claim asserted. A court can dismiss for failure to state a claim on which relief can be granted only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief. On a motion to dismiss, a court's review is limited to the well-pleaded allegations in the complaint. An allegation, though vague or lacking in detail can still be well-pleaded so long as it puts the opposing party on notice of the claim brought against it. Finally, in ruling on a motion to dismiss under Rule 12(b)(6), a trial court must draw all reasonable factual inferences in favor of the party opposing the motion.

Doe v. Cahill, 884 A.2d 451, 458 (Del. 2005)(internal citations omitted); Accord ALA, Inc. v. CCAIR, Inc., 29 F.3d 855 (3rd Cir. 1994) (Unreported decisions are contained within a Compendium of Unreported Opinions). The purpose of a motion to dismiss is to test the

5

sufficiency of a complaint, not it merits. <u>Triad Associates Inc. v. Chicago Housing Authority,</u>

892 F.2d 583, 586 (7th Cir.1989), <u>cert. denied,</u> 498 U.S. 845 (1990). A complaint should not be

dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

<u>Conley v. Gibson,</u> 355 U.S. 41, 45-46 (1957).

## **ARGUMENT**

RCT's arguments generally fall into two categories.  First, RCT argues that, though it

tacitly acknowledges that UDTC had no way of knowing until 2003 that RCT caused the Process

to be stolen, the statute of limitations nevertheless ran.  Second, RCT argues that the Contract

imposed no real duties upon RCT because (a) it permits RCT to use its own discretion in how

best to market the Process, and (b) it does not specifically say, "RCT, act such that you do not

entirely frustrate the Contract by causing the Process's economic value to be destroyed."  Neither

argument is supported by either Arizona or Delaware law.

I.     **RCT's Motion Should Be Denied Because It Is A Mandatory Party To This Action.**

RCT's Answer to the Complaint demands that this Court order UDTC to pay it 42.5% of

any eventual judgment, i.e. to enforce the Contract between UDTC and RCT (Ans. ¶58(B)).[3]

Phenomenex's Motion To Dismiss also argues that RCT owned the Process from 1990 to 2001.

The fact that RCT is demanding nearly half of, and Phenomenex seeks to escape paying, an

award that will likely be worth tens of millions of dollars based on an unclear, purported

---

[3] Although RCT demands 42.5% of any recovery, it has failed to file a mandatory counter-claim
in this action that raises any breach of contract claim against UDTC, or a mandatory crossclaim
against Phenomenex to protect any interest it supposedly holds.  RCT apparently wishes to sit
idly by while UDTC spends millions of dollars protecting itself from a theft occasioned by
RCT's acts, only to then demand with unclean hands an award it did nothing to procure, and
indeed took active steps, such as this motion, to prevent.

historical interest in the Process belies RCT's claim that it has no interest in this dispute and

should not have been joined.

Fed. R. of Civ. Pro. 19(a) requires that,

> A person who is subject to service of process and whose joinder will not deprive the court
> of jurisdiction over the subject matter of the action shall be joined as a party in the action
> if (1) in the person's absence complete relief cannot be accorded among those already
> parties, or (2) the person claims an interest relating to the disposition of the action and is
> so situated that the disposition of the action in the person's absence may (i) as a practical
> matter impair or impede the person's ability to protect that interest or (ii) leave any of the
> persons already parties subject to substantial risk of incurring double, multiple, or
> otherwise inconsistent obligations by reason of the claimed interest. If the person has not
> been so joined, the court shall order that the person be made a party. If the person should
> join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a
> proper case, an involuntary plaintiff.

Rule 19(a) alone precludes the dismissal from this action that RCT seeks.

RCT's claim of interest in 42.5% of any eventual judgment in this action is also a *de
facto* assertion that it at one time possessed certain rights in the Process during a period of

Phenomenex's infringement. "A patent owner should be viewed as a necessary party if it retains

any interest in the patent." <u>Pfizer Inc. v. Elan Pharmaceutical Research Corp.</u>, 812 F.Supp 1352,

1370 (D. Del. 1989); <u>Accord</u> <u>Erbamont Inc. v. Cetus Corp.</u>, 720 F.Supp. 387, 390-393 (D. Del.

1989). Phenomenex's infringement will be established or disproven in this action. RCT

therefore is a necessary party both because this action cannot be resolved without it, and because

it claims an interest that, when UDTC proves its case, could subject Phenomenex to inconsistent

obligations.[4]

---

[4] RCT failed to assert a mandatory crossclaim against Phenomenex for any pre-2001 period.
First, this evidences RCT's admission that the transfer of interest in the intellectual property was
entire and UDTC's claim against Phenomenex is appropriate. Second, RCT's presumption that
such action demonstrates that it is not a proper party ignores the fact that UDTC is pursuing RCT
for breach of contract, the breach of which can only be confirmed following the Patent
infringement claims against Phenomenex.

Other portions of RCT's Answer tacitly deny that it ever owned the Process. For example, RCT failed to file a mandatory crossclaim against Phenomenex to recoup losses from the infringement during the period that it ostensibly possessed an interest in the Process. RCT also argues in this motion that it had no duties under the Contract because it was granted discretion to market the Process as it saw fit (Op. Br. at 15). As is further argued *post*, a contract that imposes no obligation on one party fails for lack of consideration and mutuality of obligation, and thus is void *ab initio*. RCT nominally had rights in the Process from 1990 to 2001, and was supposed to be marketing and protecting it for both RCT and UDTC's benefit (Compl. ¶¶7, 15-17, 33-34). If, as RCT seems to suggest, the Contract was void, UDTC never relinquished ownership of the Process, and Phenomenex was stealing directly from UDTC. This question has serious implications for UDTC's claims against Phenomenex. RCT therefore is unquestionably an essential party.

II.    **The Time Of Discovery Rule Tolled The Statute Of Limitations**

RCT's Opening Brief argues at great length that Delaware's three year statute of limitations for contract claims applies to actions brought in the Federal District Court for the District of Delaware unless the contract at issue expressly states otherwise (Op. Br. at 9-12). This point is superfluous because UDTC does not now and has not ever contested the applicability of Delaware practice on this topic.

The remainder of RCT's argument centers on the fact that, after doing nothing with the Process for ten years except recklessly allowing Phenomenex to steal it, RCT assigned its interest in the Process back to UDTC in 2001. RCT argues that, because the statute of limitations in a contract action generally starts on the date of the breach, and because all dealings between RCT and UDTC ceased upon reassignment of the Process, the latest possible date for

the statute to have begun running was July 24, 2001 (Op. Br. at 13). RCT's argument reflects a basic misunderstanding of Delaware law.

A.    Time Of Discovery Is Designed To Defeat Fraud Of The Type Alleged In This Action.

Delaware courts have repeatedly rejected mechanical application of statutes of limitations divorced from the facts, particularly in cases of malfeasance. See e.g. Wright v. Dumizo, 2002 WL 31357891 (Del. Super.)(fraudulent concealment of fact that defendant was not actually a C.P.A.); Descano v. Walters, 1992 WL 9078 (Del. Super.)(fraudulent concealment of structural defects in property); Kent County Motor Sales Co., v. O.A. Newton & Sons Co., 1991 WL 215909 (Del. Super.)(same).   The "time of discovery" rule, first elucidated by the Delaware Supreme Court in Layton v. Allen, 264 A.2d 794, 797-98 (Del. 1968), holds that the statute of limitations does not begin to run until the aggrieved party could discover its injury through reasonable diligence:

> It is unreasonable, we think, to assume that the General Assembly intended to grant a remedy for a wrong but to bar the remedy before the wrong was physically ascertainable by due diligence. ... Upon the bases of reason and justice, we hold that when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is 'sustained' ... when the harmful effect first manifests itself.

The Rule applies equally to actions in tort or contract. See Walmart Stores v. AIG Life Ins. Co., 860 A.2d 312 (Del. 2004); Wright, 2002 WL 31357891; Descano, 1992 WL 9078; Kent County Motor Sales, 1991 WL 215909.   The Delaware Supreme Court recently reaffirmed the Rule's validity in Morton v. Sky Nails, 884 A.2d 480, 482 (Del. 2005), which held that "time of discovery" applies even if the aggrieved party discovered its injury with sufficient time to file its action within the standard statute of limitations, but failed to do so for any reason, even

negligence. Thus, the statute of limitations did not even begin to run until UDTC was able to discover the harm that Phenomenex and RCT caused.

UDTC's claims against Phenomenex amount to "theft." UDTC alleges that Phenomenex represented to RCT and UDTC that it wanted to evaluate the Process solely to consider purchasing a valid license. Phenomenex then used the Evaluation to secure enough information to steal the Process. Once Phenomenex realized that RCT either would intentionally disregard such theft or was so asleep-at-the-wheel that the theft would go undetected, Phenomenex did in fact steal the Process, producing an unlicensed product line worth millions of dollars. The entire Complaint alleges that Phenomenex kept its theft secret, and that UDTC was therefore unable to discover it through reasonable diligence. UDTC's injury therefore was "inherently unknowable," at least until it was alerted to the potential theft. Thereafter, UDTC had to de-engineer a Phenomenex product to match it to the Process, and verify with the relevant scientific community that the only way to produce such a product was by using the stolen Process, thereby infringing on the Patent (Compl. ¶28). The "time of discovery" rule manifestly applies to UDTC's claims against Phenomenex, making them timely.[5]

The "time of discovery" rule applies equally to UDTC's claims against RCT. These claims are derivative in nature; RCT breached the Contract by recklessly or intentionally permitting Phenomenex to steal the process during an evaluation that RCT had a duty to vigilantly regulate (Compl. ¶¶15-17, 33-34). The Contract, both through its express terms and

---

[5] UDTC's verification that the Jupiter column could be produced only by stealing the Process was necessary to confirm that Phenomenex infringed on the Patent, and therefore was required before filing this action by Fed. R. Civ. Pro. 11(b). The time spent confirming the theft should therefore not count against the statute of limitations. Even assuming, however, that the statute of limitations began to run the very moment the Inventor informed UDTC of the possible theft, this action was still filed within three years.

impliedly, required RCT to "make reasonable efforts" to "secure reasonable revenue" from the Process (Contract at §3.1). RCT was further required to "exercise due diligence and good faith in performing all acts required or contemplated by [the Contract]" (Contract at §5.6). Because these duties involved RCT's oversight over those parties it had permitted to access the Process, there was no way for UDTC to discover RCT's breach until it confirmed Phenomenex's theft. UDTC filed this action well within three years of that confirmation, which occurred, at the very earliest, in 2003.

Most tellingly, RCT's Answer does not deny that UDTC first became aware of the theft in 2003, nor does it assert that UDTC could have discovered the theft earlier through reasonable diligence. Instead, the Answer and this Motion simply assert that, because UDTC reobtained rights to the Process in 2001, it has no recourse for recovery of the years of stolen profits caused by RCT's breach of the Contract. In other words, because Phenomenex secreted its theft and RCT's oversight was reckless (or worse), Phenomenex keeps the fruits of its fraud, RCT escapes any liability for breach of the Contract, and UDTC is left with nothing. This is the precise result that the time of discovery rule was adopted to avoid.

B.      RCT's Acts Lulled UDTC Away From Protecting Its Rights To The Process

Time of discovery is especially applicable on these facts because RCT's intentional or reckless conduct lulled UDTC away from acting sooner to defend its rights in the Process. By the Contract's express terms, UDTC was entitled to rely on RCT's representation that it would conduct its activities as a reasonable technology manager (Contract at §§3.1 and 5.6). This is particularly true because the Contract required RCT to take specific steps to decline or abandon an invention placed in its charge (Contract §§ 1.3 and 2.2). If RCT had followed those requirements, UDTC would then have had to "protect and commercialize" the Process itself. Id.

11

RCT, however, again chose the path of least resistance, and pretended that it was actively marketing and protecting the Process for ten years, when in reality it did neither. That failure caused UDTC to take action to protect the Process later than it otherwise would have.

The 2001 reassignment further confirms this point. The reassignment states that, "RCT shall have no **further** obligation with respect to the Patenting of the [Process], including the filing, prosecution, and maintenance of PATENT RIGHTS." (Reassignment at § 2.2(a), emphasis added). Inclusion of the term "further" in the 2001 assignment implies that RCT had a duty to defend the Patent (at minimum on UDTC's behalf) from 1990 to 2001, and that it did in fact protect those rights. Although UDTC now recognizes this inaccuracy, at the earlier time UDTC had no reason to know of the longstanding Patent violation that occurred on RCT's watch, or reason to believe that it was required to investigate Phenomenex to reveal its theft.

C.    Laches Does Not Bar Claims Brought With Reasonable Diligence And Without Prejudice To The Other Party.

RCT's Opening Brief incorrectly argues that UDTC's equitable claims are barred by Delaware's three year statute of limitations for contract actions (Op. Br. at 14). "The statute of limitations applicable in an action at law is not controlling in equity; the equitable doctrine of laches is applied instead. However, 'absent unusual circumstances, the analogous statute of limitations will be given great weight in deciding whether the plaintiff's claim is barred by laches.'" East v. Tansey, 1993 WL 487807 (Del. Ch.); citing Adams v. Jankouskas, 452 A.2d 148, 157 (1982). The Delaware Supreme Court has stated that an analogous statute of limitations is presumptively applicable unless the plaintiff pleads "unusual circumstances" as "justification for its delay in filing suit." U.S. Cellular Co. of Allentown v. Bell Atlantic Mobile Systems, Inc., 677 A.2d 497, 502 (Del. 1996). Fraudulent concealment and the time of discovery rule are recognized "unusual circumstances" that prevent application, by analogy, of the legal

statute of limitations. Wright, 2002 WL 31357891 at *3-4; East, 1993 WL 487807 at *2; Kahn v. Seaboard Corp., 625 A.2d 269, 276 (Del. Ch. 1993)("[O]ne of the types of fraud that falls within the exception of the rule [of application of statutes of limitations by analogy] is fraud perpetuated by one who, because he has legal power over the property of others, has fiduciary obligations to those others.")(internal citation omitted).

Because UDTC has pled both fraud and the time of discovery rule, its equitable claims are governed by the doctrine of laches. Id. A laches analysis considers: (1) reasonableness of the delay, and (2) prejudice. Tafeen v. Homestore, Inc., 2004 WL 556733 (Del. Ch.) at *7. As already noted, RCT does not and cannot argue that UDTC's delay in filing this case was unreasonable; UDTC had no notice, inquiry or otherwise, of Phenomenex's theft until 2003. There has also been no showing of prejudice to RCT; the Contract is the same now as it would have been had UDTC filed this action in 2001, and will require the same legal interpretation from this Court. Indeed, it appears that the only result of the unavoidable delay in filing was that Phenomenex enjoyed the fruits of its misconduct for a longer period, and RCT unwittingly postponed the day of reckoning for a few years. Neither of these conditions constitute prejudice, and the doctrine of laches does not bar this suit.

D.    At Minimum, RCT's Statute Of Limitations Defense Is Not Ripe

> [T]he threshold for the showing a plaintiff must make to survive a motion to dismiss is low. Delaware is a notice pleading jurisdiction. Thus, for a complaint to survive a motion to dismiss, it need only give general notice of the claim asserted. A court can dismiss for failure to state a claim on which relief can be granted only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief. On a motion to dismiss, a court's review is limited to the well-pleaded allegations in the complaint. An allegation, though vague or lacking in detail can still be well-pleaded so long as it puts the opposing party on notice of the claim brought against it. Finally, in ruling on a motion to dismiss under Rule 12(b)(6), a trial court must draw all reasonable factual inferences in favor of the party opposing the motion.

13

Doe v. Cahill, 884 A.2d 451, 458 (Del. 2005)(internal citations omitted); Accord ALA, Inc. v. CCAIR, Inc., 29 F.3d 855 (3rd Cir. 1994).  Not only is RCT not entitled to a dismissal under this liberal, notice pleading standard, the facts so far known show that UDTC will prevail in this action.

RCT has repeatedly and incorrectly attempted to apply the summary judgment standard to this Motion to Dismiss.  An overarching theme of RCT's Motion is that, because UDTC is not yet able to specifically allege all the reckless or intentional acts that RCT must have done to allow Phenomenex to steal the Process, the Complaint is deficient.  However, notice pleading, and not specific allegation, is the standard for a motion to dismiss.  Id.  RCT also conveniently ignores that UDTC is presently unable to specifically state the exact nature of the malfeasance because (1) Phenomenex acted secretly, and (2) it was RCT's duty, and not UDTC's, to monitor the Process.

Generally, the Complaint alleges that Phenomenex stole the Process while RCT had a duty to guard it.  The Complaint also alleges that RCT's failure to protect the Process breached contractual, equitable, and good faith duties.  Finally, the Complaint alleges that UDTC acted with reasonable diligence and could not have discovered the theft any earlier than it did.  RCT is aware of the claims and conduct at issue here, and there are a wide variety of facts that could, and will, emerge to prove RCT liable.  At minimum, discovery must be had regarding all these issues.

RCT's argument is especially weak on the equitable claims, because "[w]hether or not [laches] exist is generally determined by a fact-based inquiry, and therefore summary judgment is rarely granted on a laches defense."  Tafeen, 2004 WL 556733 at * 8.  UDTC's equitable claims are governed by the doctrine of laches, and are intensely fact-based.  Legal defenses to

14

UDTC's breach of contract claim also depend upon when UDTC could have discovered RCT's reckless disregard of the Process.

Dismissal at this stage is not appropriate under Delaware law, which RCT admits applies to its statute of limitations defense, or federal practice. See e.g. In re Rockefeller Center Properties, Inc. Securitites Litigation, 184 F.3d 280 (3rd Cir. 1999)(improper conversion by District Court of a motion to dismiss into a summary judgment required reversal).

III.    **The Contract Imposed A Duty On RCT To Act Reasonably**

The remainder of the Opening Brief is devoted to arguments that the Contract imposed no duty on RCT to take reasonable measures to insure that the economic value of the highly confidential information that it was supposed to be marketing on behalf of itself and UDTC was not destroyed by RCT's lack of oversight. These arguments fail for many reasons, including the language of the Contract, universally accepted principles of contract interpretation, equity, and common sense.

A.    The Contract Bounds RCT's "Discretion" To Reasonable, Diligent, Good Faith Actions

RCT's opening salvo is that the Contract states that, "RCT shall expend reasonable efforts to commercialize [the Process] and secure reasonable revenue from such commercialization, in the manner RCT deems appropriate." (Contract at §3.1). RCT argues that Section 3.1 not only permitted it infinite marketing discretion (including no marketing at all), but also the absolute right to ignore the Process for ten years and to bury its head in the sand while one of its prospects violated an Evaluation Agreement (Op. Br. at 15). RCT is incorrect. In fact, the Complaint alleges that, but for RCT's reckless or intentional disregard of the Process, Phenomenex would not have had or taken advantage of an opportunity for thievery.

15

No American court, including the Supreme Court of Arizona, accepts the validity of contracts without mutuality of obligation, or contracts that are based upon illusory consideration. See Carroll v. Lee, 712 P.2d 923 (Ariz.1986); Shattuck v. Precision-Toyota, Inc., 566 P.2d 1332 (Ariz. 1977); Gates v. Arizona Brewing Co., 95 P.2d 49 (Ariz.1939). This argument is discussed further Supra V, but, for the moment, it is enough to point out that if RCT were factually and legally correct on this point, the Contract was void. Id.

Assuming for the moment that the Contract is not void, RCT's argument is belied by its express terms. The Contract specifically requires RCT to make "reasonable efforts" to "secure reasonable revenue" for the Process (Contract at §3.1). Even if the term "reasonable efforts" could be stretched to include ignoring the Process for ten years and allowing it to be stolen out from under RCT's nose, the term "reasonable revenue" cannot logically mean "nothing" for a Process that is now in use by the very company to which RCT shopped it, and which now has a proven worth of millions of dollars. RCT's proposed interpretation of the "discretion" clause contradicts the remainder of Contract's requirements that RCT act reasonably.

Even more on point is the Contract's express requirement that RCT pursue the commercialization of the Process "exercise[ing] due diligence and good faith." (Contract at §5.6). These obligations serve to bind RCT's discretion to the realm of reasonableness. RCT's asleep-at-the-wheel course of conduct, as alleged in the Complaint, does not meet either of these requirements. What is more, the full scope of RCT's malfeasance is yet unknown; UDTC will be able to determine how badly RCT managed the Process only by conducting discovery.

The Arizona Supreme Court in Hamberlin v. Townsend, 261 P.2d 1003 (Ariz. 1953), rejected the piecemeal style of contract interpretation that RCT's motion advocates:

> The predominant and all essential rule is to ascertain the intent of the parties, and within the limit of legal principles to give effect to it. To perform that office all of the clauses

> must be considered, none ignored; no clause may be given effect as though it stood by itself, disjointed from every other, but all must be scanned; each must be given effect, but all in relation to each other, to bring harmony, if possible, between all parts of the writing. We do not believe the rule of strict construction should be used to render express provisions of a contract nugatory where there is any reasonable alternative.

In the context of this Contract, it is, frankly, absurd to argue that RCT and UDTC meant the word "discretion" to mean that RCT was free to do anything it wished with the Process, including ignore it or recklessly permit it to be stolen. The only logical interpretation of the Contract, given the nature and purpose of the relationship, is that inclusion of the terms "reasonable," "due diligence" and "good faith" means that the parties intended the Contract to require RCT to act as a reasonable technology manager.

At minimum, the Complaint pleads fact issues that cannot be resolved on a motion to dismiss. The whole point of UDTC's outsourcing of this technology management, and the only reason for the existence of companies like RCT, is that universities generally do not have the time or the experience in managing in the marketplace technology that they have invented. That is why RCT gets paid, and its relationship with UDTC was no exception. UDTC will prove, through discovery and at trial, that reasonable managers monitor the technology in their charge to insure that their marketing prospects do not abuse the evaluation system to purloin a client's patents and other confidential proprietary information. RCT's Motion is therefore both legally incorrect and, at the very least, premature.

B.    Determining Scope Of Damages Is Part Of RCT's Duty To Act Reasonably

RCT's next tack, a refrain repeated throughout the Opening Brief, is that the Contract imposed no duty on RCT to police the entire technology market in search of usurpation of the Process in its charge. This argument is a "straw man" that confuses RCT's obligations under the Contract with UDTC's demand that it account for the damages caused by its reckless breach of

17

the Contract. As is discussed <u>Supra IV,</u> UDTC has every right to demand an accounting from RCT because the Contract placed RCT in position of trust over UDTC's interest in the Process. The necessary impositions of good faith and fair dealing create both legal and fiduciary obligations to UDTC. Alternatively, as RCT suggests, RCT was at all relevant times acting as UDTC's agent, which implicated significant fiduciary duties to the principal, UDTC.

When a fiduciary violates an entrustment, the burden of quantifying damages shifts to the violator. <u>See e.g. McMahon v. New Castle Assoc.</u>, 532 A.2d 601, 605 (Del. Ch. 1987) ("Fiduciaries, because they hold property or exercise power for another, are required to account in chancery for their stewardship."); <u>Mollohan v. Christy</u>, 294 P.2d 375, 376 (Ariz. 1956) ("Transactions between parties, which will warrant one in holding the other accountable for his acts, must possess the elements of agency and of a trust reposed, with respect to moneys or other property received."); <u>Associates Finance Corp. v. Walters</u>, 470 P.2d 689 (Ariz.App. 1970) ("The burden of showing that an accounting is necessary is on the party requesting the accounting. However, after the necessity of an accounting has been shown the burden shifts to the party holding the funds to prove by competent evidence the validity of each charge made on these funds."); <u>Divizio v. Kewin Enterprises, Inc.</u>, 666 P.2d 1085, 1088 (Ariz.App. 1983).

UDTC has not alleged that RCT had an initial duty under the Contract to generally police the entire market, but rather that it had a duty to at least cursorily monitor those companies –like Phenomenex- to whom it had disclosed UDTC's confidential information. However, once RCT breached its contractual duty to act reasonably by recklessly permitting the Process to be stolen, it violated a fiduciary entrustment, and brought on itself the burden of an accounting for the damages caused by that breach. RCT also owes a continuing fiduciary duty to prevent further damages by discovering how far the trade secrets have disseminated.

18

UDTC's allegation that RCT breached the Contract by failing to discover, or even to take cursory steps to be in a position to discover, Phenomenex's misconduct is not akin to an argument that the Contract generally required RCT to "police the market." Instead, UDTC simply alleges that the Contract required RCT to act "reasonably," and that a reasonable technology manager would not have so recklessly jeopardized valuable confidential information. This argument therefore fails on both the Contract and as a matter of law.

C.    The Confidentiality Provision Is Not Surplusage

RCT next argues that the Contract's Confidentiality Provision implies no duty to protect technology that was Patented or for which a Patent application had been submitted (Op. Br. at 16). Section 1.2 of the Contract reads,

> RCT shall treat any Invention disclosed to it under 1.1. above, that has not been published or which is not the subject of an issued Patent or a Pending Patent Application, as proprietary and with the requisite degree of confidentiality necessary to preclude jeopardizing the Patentability of such Invention. **If RCT discloses any Invention to any third party, RCT shall require such third party to exercise its best efforts to hold the same confidential.** (emphasis added).

RCT's Opening Brief repeatedly cites the first sentence of this provision, but uniformly ignores the second sentence, which protects "any" entrusted invention regardless of patent position. Under the Contract, RCT had a duty to "require" its marketing prospects to keep the Process "confidential." At the very least, RCT's actions are yet unknown and must be explored in discovery.

RCT's Evaluation Agreement with Phenomenex shows that RCT interpreted "confidential," to mean, at minimum, refraining from using the Process for any commercial purpose. UDTC will prove, through discovery and at trial, that the "reasonable efforts" contemplated by the Contract could not possibly have led to the result presently before the Court – Phenomenex reaping millions of dollars by marketing the Process as its own while RCT does

nothing. UDTC will further show that the parties intended the term "require" to incorporate the other express contractual terms of "reasonableness," "due diligence" and "good faith" (Contract at §§3.1 and 5.6). RCT did not meet this minimal standard, and thereby breached the Contract.

RCT implies that UDTC was somehow complicit in Phenomenex's theft because the Inventors assisted with the Evaluation (Ans. ¶53; Op. Br. at 17). This argument ignores the relationship between UDTC and RCT. UDCT engaged RCT to commercialize the Process as a division of labor: UDTC provided the science and RCT supposedly provided legal, marketing and management expertise. UDTC was not involved and had no experience in the relevant technology market, and entirely depended on RCT to manage the commercialization. The Inventors assisted the Evaluation because RCT asked them to, and because UDTC reasonably relied upon RCT's representations that it had taken appropriate steps to protect the Process (Contract at §§3.1 and 5.6). The Contract entitled UDTC to that reliance, and required RCT not to abuse it through reckless disregard of UDTC's rights. Phenomenex's theft is not the Inventors' fault.

RCT's final argument on this point is that its recklessness did not jeopardize "patentability" of the Process because the Process ultimately was Patented, and that the Contract imposed upon RCT no other confidentiality duties (Op. Br. at 18). That is not correct. First, the Contract imposes upon RCT a duty, both express and implied, to act as a reasonable technology manager, with due diligence and in good faith, and therefore to take appropriate action to ensure that the confidential information in its charge was not usurped by its marketing prospects. Second, the Contract requires RCT to protect "Inventions" and not just "patentability" (Contract at §1.2). Finally, even if RCT were correct that "patentability" was the Contract's sole concern, that term necessarily implies a modicum of confidentiality, because public knowledge is

generally unpatentable. A commercial contract solely concerned with public knowledge that has no economic potential would make no sense.[6] Instead, the only reasonable purpose of the Contract was for RCT to market the Process in such a way that UDTC could reap commercial benefit, and so that RCT would be compensated for its efforts. Indeed, the Contract expressly states that RCT must "expend reasonable efforts" to "secure reasonable revenue" for "each" of the inventions with which it was entrusted, regardless of their "patentability" (Contract at §3.1). As previously stated, "reasonableness," "due diligence" and "good faith" demanded by the Contract, in the context of this industry, required RCT to take active steps to protect the Process from thievery by Phenomenex. UDTC has adequately plead and is entitled to go forward with its claims to determine what, if anything, RCT did to meet its contractual duties.

## IV.    **RCT Acted As A Fiduciary, And Therefore Owed Equitable And Good Faith Duties**

The Opening Brief only cursorily addresses UDTC's equitable claims and claim for breach of the covenant of good faith and fair dealing (Op. Br. at 19-23). Nowhere in this hasty discussion does RCT acknowledge or dispute the fundamental element of these three claims: that the Contract entrusted RCT with UDTC's interest and thereby created a fiduciary duty. RCT's arguments on this topic therefore miss the point.

A.    The Contract Created Fiduciary Duties

"A fiduciary relationship is a situation where one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another. The relationship connotes a dependence." Metro Ambulance,

---

[6] See cf. Phenomenex's Answer to the Complaint in which it raises as an affirmative defense to infringement that the information contained in the Patent was public or otherwise not appropriately presented to the U.S. Patent Office, and therefore tacitly arguing that RCT's failure to keep the Process confidential also did not legally protect the Patent.

Inc. v. Eastern Medical Billing, Inc., 1995 WL 409015 at *3; citing Cheese Shop Int'l, Inc. v.

Steele, Del. Ch., 303 A.2d 689, 690, rev'd on other grounds, 311 A.2d 870 (1973); Accord

Standard Chartered PLC v. Price Waterhouse, 945 P.2d 317, 334 (Ariz. App. Div. 1. 1996)("A

fiduciary relationship is a confidential relationship whose attributes include great intimacy,

disclosure of secrets, or intrusting of power. In a fiduciary relationship, the fiduciary holds

superiority of position over the beneficiary.")(internal citations and quotation marks omitted).

      The Contract specifically contemplated forming exactly this type of fiduciary

relationship. UDTC entered the Contract because it lacked the legal and specialist expertise

necessary to commercialize a trade secret while simultaneously protecting it from theft. UDTC

therefore disclosed its secret to RCT and entrusted it with the Process, depending upon RCT to

take the legal and marketing steps necessary to secure a revenue stream. The Contract represents

"disclosure of secrets," "entrustment of power," a "confidential relationship," and "dependence"

that created a fiduciary duty under both Arizona and Delaware law. In essence, RCT's

contractual obligations included the functions of a marketing manager, which are universally

recognized as creating fiduciary duties. See Haymes v. Rogers, 222 P.2d 789, 790 (Ariz. 1950)

("[A] broker or salesman owes the utmost good faith to his principal as does any other person

acting as agent or in a fiduciary capacity.").

      RCT's equivocation about its interest in the Process from 1990 to 2001 is irrelevant to

this analysis. No matter how RCT now wishes to spin itself, it was at least acting as an agent

marketing UDTC's Process. "A fiduciary relationship will arise when there is an element of

confidentiality or a joint undertaking between the principal and agent. The hallmark of this form

of special principal/agent relationship is when matters are peculiarly within the knowledge of the

agent." Metro Ambulance, Inc., 1999 WL 409015 at *3; Accord Musselman v. Southwinds

Realty, Inc., 704 P.2d 814, 816 (Ariz. App. 1985) ("[A]n agency relationship imposes on an
agent the duty of utmost good faith, integrity, honesty, and loyalty in her transactions with the
principal, it [is] a question for the finder of fact to determine whether such duty was breached.").
RCT's obligation to act in a specialist capacity, and its repeated representations that it did so,
created fiduciary duties. This argument is discussed further Supra V.

B.    RCT Is Liable For Breach Of The Covenant Of Good Faith And Fair Dealing Both On
      The Contract And In Tort.

    RCT's Opening Brief acknowledges that Arizona law permits recovery for a breach of
the covenant of good faith and fair dealing inherent in all contracts (Op. Br. at 20). This
recovery may proceed both on the contract and in tort. Id. The basis for tort recovery for a good
faith claim is a "special relationship" between the parties, such as a fiduciary bond, an unequal
bargaining position, or adhesion. Id.

    RCT argues that UDTC's claim for breach of the covenant of good faith and fair dealing
inherent in all contracts is the same as an allegation that RCT breached the Contract (Op. Br. at
19). The argument then switches gears to claim that the Complaint does not show a special
relationship (Op. Br. at 20). RCT therefore believes that UDTC cannot make a good faith claim
in either contract or tort. RCT is incorrect.

    A claim for breach of contract and one for breach of the covenant of good faith and fair
dealing are not the same. The former claim looks to the letter of the contract to determine a
technical breach. A good faith claim, on the other hand, looks to the intent of the parties,
alleging that one side took some action that, while perhaps not a technical breach, deprived the
other party of the benefit of its bargain, frustrating the contract. See Wells Fargo Bank v.
Arizona Laborers, Teamsters and Cement Masons Local No. 395, 38 P.3d 12, 28-29 (Ariz.
2002); Rawlings v. Apadoca, 726 P.2d 565, 569 (Ariz. 1986). The scope of the duty of good

faith is therefore wider than the technical terms of the Contract, and a breach of good faith often occurs without a breach of a contract's nominal provisions. Wells Fargo Bank, 38 P.3d at 29; citing Deese v. State Farm Mut. Auto. Ins. Co., 838 P.2d 1265, 1268 (Ariz. 1992).

    1.    RCT Breached Its Contractual Duty To Act In Good Faith

UDTC's first bad faith claim is contractual. No allegation of a "special relationship" is necessary to support this claim. Wells Fargo Bank, 38 P.3d at 29. UDTC alleges that RCT's reckless or intentional decision (discovery will show which) to abandon the Process was a violation of the "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party" that comprises the duty of good faith. Wells Fargo Bank, 38 P.3d at 30; citing Restatement (Second) of Contracts § 205 cmt. a (1981). Phrased another way,

> The good faith performance doctrine may be said to permit the exercise of discretion for any purpose--including ordinary business purposes--reasonably within the contemplation of the parties. A contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range--a reason beyond the risks assumed by the party claiming a breach.

Wells Fargo Bank, 38 P.3d at 30; citing Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 HARV. L.REV. 369, 385-86 (1980).

It is clear from the Contract's express terms that UDTC believed RCT would act reasonably to market and protect the Process (Contract §§ 3.1 and 5.6). RCT's reckless or intentional indifference, which led to the Process being stolen, was far "beyond the risks" that UDTC assumed by signing the Contract. RCT therefore breached the Contract's implied covenant of good faith and fair dealing under Arizona law.

    2.    RCT's Actions Constitute Tortious Bad Faith

UDTC's second claim on this issue is tortious bad faith. RCT correctly points out that a "special relationship" is an essential element of this claim under Arizona law. Op. Br. at 20; Wells Fargo Bank, 38 P.3d at 29. UDTC has pled facts and brought claims showing that RCT

was UDTC's fiduciary in regards to the Process. RCT concedes that a fiduciary duty is a

"special relationship" that can support a tortious bad faith claim (Op. Br. at 20).

RCT's argument on this point seems to be solely based upon the fact that the Complaint

does not individually enumerate a claim for "breach of fiduciary duty." According to RCT, all

the allegations in the Complaint regarding RCT's wanton disregard for protecting the technology

placed in its charge and thereby destroying the interest of the party that granted the entrustment

are for naught without some sort of formalized pleading. That is simply not true. The federal

courts have long since rejected the form-over-substance argument that RCT makes here by

establishing the notice pleading standard embodied in Fed. R. of Civ. Pro. 8:

> We need cite no authority for the proposition that the Federal Rules of Civil Procedure
> were designed to eliminate the vagaries of technical pleading that once plagued
> complainants, and to replace them with the considerably more liberal requirements of so-
> called "notice" pleading. Under the modern federal rules, it is enough that a complaint
> put the defendant on notice of the claims against him. It is the function of discovery to fill
> in the details, and of trial to establish fully each element of the cause of action.

Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F.Supp. 232, 241-2 (D.Del. 1992).

RCT's argument on this point is empty formality. UDTC has very clearly alleged that

RCT violated the trust placed in it, and RCT is fully aware that UDTC wishes to hold it liable for

that breach. It is particularly important to note this argument comes before UDTC has had a

chance to conduct "discovery to fill in the details" of the course of conduct between RCT and

Phenomenex, which are presently obscured by RCT's intransigence and Phenomenex's fraud. Id.

The argument therefore finds no support in modern jurisprudence.

C.    RCT's Breach Of Fiduciary Entrustment Creates A Duty To Account

An accounting is an equitable right that arises from fiduciary relationship. See McMahon

v. New Castle Assoc., 532 A.2d at 605; Cheese Shop Int'l, Inc., Del. Ch., 303 A.2d at 690, rev'd

on other grounds, 311 A.2d 870 (1973); Mollohan, 294 P.2d at 376; See also e.g. Sertich v.

Moorman, 783 P.2d 1199 (Ariz. 1989). The trust inherent in fiduciary relationships creates equitable rights that are enforceable regardless of the adequacy of a legal remedy. Boxer v. Husky Oil Co., 429 A.2d 995, 998 (Del. Ch. 1981) ("Where the relationship between the parties imposes an equitable obligation to account, equity has always taken jurisdiction over the controversy, even where there may be an adequate remedy at law."); Accord Mollohan, 294 P.2d at 376; Sertich, 783 P.2d 1204. In such a special relationship, the fiduciary is likely to possess a far greater ability than the defrauded, injured party to determine the scope of damages arising from the wrong it occasioned, and the doctrine of accounting acknowledges that the injured party does not have adequate legal means to secure a proper remedy. Id. Equity therefore shifts the burden of quantifying damages to the fiduciary.[7] Mollohan v. Christy, 294 P.2d at 376; Associates Finance Corp., 470 P.2d at 689 (Ariz.App. 1970) ("The burden of showing that an accounting is necessary is on the party requesting the accounting. However, after the necessity of an accounting has been shown the burden shifts to the party holding the funds to prove by competent evidence the validity of each charge made on these funds."); Divizio, 666 P.2d at 1088.

RCT presents two arguments in its effort to escape its duty to provide an accounting. First, RCT claims that, since it reassigned all of its rights, whatever those were, to UDTC in 2001, UDTC owes RCT an accounting as the present owner of the Process, and not vice versa (Op. Br. at 21). Second, RCT argues that UDTC's right to an equitable accounting is destroyed by the inclusion of a "books and records" clause in the Contract (Op. Br. at 22). Both arguments are specious.

---

[7] Again, RCT's Answer contradictorily asserts that it did and did not own the Process during the relevant period. This distinction is meaningless because RCT acted as a fiduciary agent. Supra V.

UDTC's purported duty to account has nothing to do with whether or not RCT owes a duty to account. RCT presents no reason why the two duties would be mutually exclusive, and indeed such co-existent duties are common. See Donald J. Wolfe, Jr. & Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery (hereinafter "Wolfe & Pittenger"), § 12-6[a]; citing Pan American Trade., 94 A.2d 700, 702 (Del. Ch. 1953). Moreover, fiduciary agents are always required to account to their principals, but principals only must account to agents under very limited circumstances. Wolfe & Pittenger at §12.6(a); Metro Ambulance, Inc., 1999 WL 409015 at *3; Accord Mollohan, 294 P.2d at 376; Haymes, 222 P.2d at 790. RCT in any event waived this argument by failing to file a mandatory counterclaim against UDTC when it filed its Answer. See Fed. R. Civ. Pro. 13(a).

RCT also argues that it is absolved of its duty to account for stolen profits related to the Process because the Contract contains a standard "books and records" clause (Op. Br. at 21). Inspection of books and records is not the same as an accounting, particularly in this case. A records inspection cannot adequately compensate UDTC because RCT has recklessly or intentionally failed to obtain the profits called for under the Contract, and therefore has not entered them into its records. UDTC therefore demands, as is its fiduciary right, that RCT determine how badly its breach of the Contract injured UDTC. This accounting will require RCT to, for once, make active inquiries about the Process, and not merely to look to its recklessly mismanaged, functionally worthless records. RCT has not cited, nor has UDTC found, a single case in which a party that breached a fiduciary duty was entitled to use its inaccurate records as a shield to an otherwise valid demand for an accounting.

27

D.    RCT's Breach Of Fiduciary Entrustment Creates The Right To An Equitable Trust

"Where a fiduciary obtains property or money by means of an agreement or promise which he does not realistically intend to perform, a constructive trust may be imposed." Pioneer Annuity Life Ins. Co. by Childers v. National Equity Life Ins. Co., 765 P.2d 550, 555 (Ariz. App. 1988). "It is, of course, fundamental that a fiduciary who breaches his duty is liable for any loss suffered by the beneficiary of his trust ... [and] any profit made through breach of trust may be disgorged through the device of constructive trust." Thorpe v. Cerbco, 1993 WL 443406 at *12 (Del. Ch.). "A resulting trust arises or may be judicially imposed on one holding legal title to property if it was obtained under facts and circumstances disclosing an intention that the beneficial interest was not to be enjoyed by the legal titleholder; in such instances, the courts infer that the holder of title holds it in trust for the beneficial owner, although there is no express intention to create a trust." 76 Am. Jur. 2d Trusts § 138.

The Opening Brief cites Burch & Cracchiol, P.A. v. Pugliani, 697 A.2d 674, 679 (Ariz. 1985) for the proposition that "Under Arizona law, a constructive trust may **only** be imposed where there is a wrongful holding of property which unjustly enriches the defendant at the expense of the plaintiff." (Op. Br. at 22, emphasis added). What Burch actually says, however, is, "A constructive trust is **typically** imposed when there is a wrongful holding of property...". Burch, 697 A.2d at 679 (emphasis added). Contrary to RCT's misleading citing, the basis for a constructive trust need not be real property, but may also be funds that are tied to wrongful transaction involving any specific property, including personalty. See McMahon, 532 A.2d at 608; Tucson Estates Residents Ass'n v. Mobilife Corp., 546 P.2d 352, 353-4 (Ariz. App.1976)("A constructive trust will arise whenever circumstances make it inequitable that the

28

property should be retained by the one who holds legal title" and was therefore applicable to cash held in a maintenance account.).

UDTC's claim for a constructive trust is necessary because at this point in the case it is disputed both who held what rights to the Process from 1990 to 2001, and what happened to the money that Phenomenex surreptitiously accrued. Again, RCT has contradictorily asserted in its Answer both that it did and did not own the Process. Phenomenex has also challenged some of UDTC's rights to the Process. If it remains RCT's duty to collect infringement damages from Phenomenex related to the 1990 to 2001 period, at least a portion of those proceeds belong to UDTC and must be held in trust.

Similarly, UDTC's claim for a resulting trust seeks to enforce the parties' intent that RCT would act reasonably to secure reasonable revenue from the Process, and that UDTC would receive the lion's share of that revenue. Because of Phenomenex's concealment and RCT's recklessness and hostility to UDTC's attempt to recoup its losses, the relationship between Phenomenex and RCT is yet unclear. Only discovery can reveal whether RCT was merely preposterously reckless, or if it colluded with Phenomenex in its theft of the Process. The claim for a resulting trust simply seeks to protect UDTC's interest in any funds related to the theft that discovery may make known.

## V.    In The Alternative, RCT Is Liable As A *De Facto* Fiduciary Agent

RCT's first affirmative defense to this action is that UDTC's claims are barred for "failure of consideration." While not explained in the Opening Brief, this defense suggests that RCT believes the Contract was void *ab initio*. This contradictory argument holds no water; it implies that RCT is willing to forgo any royalties stemming from the years 1990 to 2001 to

escape further association with this action, when at the same time RCT's prayer for relief demands such monies.

The Contract certainly is not void because UDTC failed to supply consideration. UDTC assigned RCT rights to an extremely valuable Process, including rights to share in the royalties RCT could generate. Any "failure of consideration" was therefore on the part of RCT. Presumably, the "failure of consideration" to which RCT refers is its total failure to reap any benefit from the Process for ten years, and therefore to provide UDTC with anything of value in exchange for rights to the Process. This defense may also include RCT's argument that the discretion afforded to it by the Contract was so broad that it was free to do absolutely nothing with the Process, and even to stand idly by while it was stolen (Op. Br. at 15). Such discretion amounts to the classic law school example of, "I'll paint your house if I feel like it," and is therefore illusory consideration that cannot support the Contract. See Carroll, 712 P.2d 923; Shattuck, 566 P.2d 1332; Gates, 95 P.2d 49.

If RCT's claim is correct, UDTC in fact never relinquished any rights to the Process. The question then becomes how to classify RCT's actions. RCT admits that it acted on behalf of UDTC to market the Process to Phenomenex, even if the Contract did not govern those actions and even if RCT held no interest in the Process (Op. Br. at 6-7). The law provides rules for this type of conduct: the law of agency. If the express Contract did not govern this relationship, and RCT took positive steps to market a Process it did not own, the only other explanation is that that RCT acted as agent for UDTC through operation of a unspoken contract implied by course of conduct.[8] "[T]wo parties may by their course of conduct express their agreement, though no

---

[8] Otherwise, RCT would have been marketing a product that it did not own without permission of the rightful owner, i.e. RCT would have been a thief. RCT does not seem to be making this argument.

words are ever spoken. From their conduct alone the finder of fact can determine the existence of an agreement ... An implied contract is one not created or evidenced by explicit agreement, but inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding their transaction." Carroll, 712 P.2d at 926.

This purported change in legal status from contracting party to *de facto* agent, however, does not provide an escape route from this action for RCT. "An essential element of the principal-agent relationship which carries a fiduciary responsibility is the ability of the agent to act on behalf of his principal with third parties." Barlage v. Valentine, 110 P.3d 371, 376 (Ariz. App. Div. 2 2005). RCT therefore cannot shake off its fiduciary duties on this basis. The Contract, even if not valid for its intended purpose, still provides valuable evidence of the scope of RCT's duties as an agent. Again, the Contract expressly requires RCT to "expend reasonable efforts" to "secure reasonable compensation," and to "require such third party [marketing prospects] to exercise their best efforts" not to usurp or destroy the Process. These duties carry through to the agency relationship.

To the extent the agency relationship cannot be defined by the Contract, it is governed by the reasonable expectations of the parties. UDTC will prove, through discovery and at trial, that it is reasonable for universities to expect technology managers to protect the rights of their principals by taking active steps to prevent the theft of the technology in their charge. RCT did not meet this standard, and therefore violated its duties as a *de facto* fiduciary agent.

Applying this reasoning to the Complaint, all three of UDTC's claims against RCT survive. If RCT did not breach the express Contract because that Contract was void, then RCT breached an implied, *de facto* agency contract based on the same terms. Agency is one type of

31

"special" relationship that can support both an accounting and a constructive or resulting trust. The defense of "failure of consideration" therefore cannot support RCT's Motion To Dismiss.

## CONCLUSION

For all of these reasons, Plaintiff UD Technology Corporation prays that Defendant Research Corporation Technologies, Inc.'s Motion To Dismiss be denied.

**MCCARTER & ENGLISH, LLP**

/s/ Michael P. Kelly

_____

Michael P. Kelly (DE Bar No. 2295)
A. Richard Winchester (DE Bar No. 2589)
James J. Freebery (DE Bar No. 3498)
Christopher A. Selzer (DE Bar No. 4305)
Andrew S. Dupre (DE Bar No. 4621)
919 N. Market Street, 18th Floor
Wilmington, DE 19801
(302) 984-6300
(302) 984-6399

Dated: February 21, 2006

32

## CERTIFICATE OF SERVICE

I, Michael P. Kelly, hereby certify that on the 21st day of February, 2006, I caused to be served a copy of the foregoing pleading upon the following counsel of record via electronic filing:

John W. Shaw, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

Chad Michael Shandler, Esquire
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

Benjamin J. Schladweiler, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899

McCARTER & ENGLISH, LLP

/s/ Michael P. Kelly

MICHAEL P. KELLY (DE ID# 4305)
919 North Market Street, Suite #1800
P. O. Box 111
Wilmington, DE 19899
(302) 984-6300
Attorneys for Plaintiff