IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UD TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 05-842-GMS |
| | ) | |
| PHENOMENEX, INC., and RESEARCH | ) | |
| CORPORATION TECHNOLOGIES, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PHENOMENEX, INC.'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
<u>AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP
John W. Shaw (No. 3362)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600
jshaw@ycst.com
Attorneys for Defendant Phenomenex, Inc.

Dated:  March 3, 2006

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...........................................................................................................1

I. UDTC DOES NOT HAVE STANDING TO BRING A
CLAIM FOR ANY ALLEGED PATENT INFRINGEMENT
BEFORE JULY 2001 .................................................................................. 2

II. UDTC'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED .................. 5

A. UDTC Lacks Standing To Assert the Claims for Breach
of the Materials Treatment Agreement and Evaluation
License Agreement. ........................................................................... 5

B. The Face of the Pleadings Demonstrate that UDTC's
Claim for Breach of the Evaluation License Agreement
Is Time-Barred. .................................................................................. 7

1. UDTC's Argument that Phenomenex Conceded
Tthat It Breached the Evaluation License Agreement
in 1997 Is Factually Inaccurate and Legally Irrelevant. ........................ 7

2. UDTC's Argument That The Three Year Statute
of Limitations Was Tolled Is Not Supported by the
Allegations in the Complaint. ................................................................ 8

3. The Doctrine of Laches Does Not Salvage UDTC's Claim. ............... 10

C. UDTC Has Not Adequately Alleged a Breach of the
Covenants of the Materials Treatment Agreement. ......................................... 11

D. UDTC Wrongly Asserts that any Allegation of "Bad Faith"
is Sufficient to State a Claim for Breach of the Contractual
Duty of Good Faith and Fair Dealing ............................................................. 11

1. Arizona's Covenant of Good Faith & Fair Dealing
Does Not Turn on Whether the Parties' Actions Were
in Good or Bad Faith........................................................................... 12

2. A Reasonableness Standard is Not Relevant Here .............................. 14

i

# TABLE OF CONTENTS

III.  UDTC'S PREEMPTION ARGUMENTS FAIL AS A MATTER OF LAW............ 15

    A.  UDTC's Discussion Of Equitable Rights And Remedies
       Misses The Mark....................................................................................... 15

    B. Trade Secret and Deceptive Trade Practices Claims
       Can Exist in One Litigation Except where a Plaintiff's
       Deceptive Trade Practices Claim Is Based Solely on
       Theft of Trade Secrets.................................................................... 17

    C. UDTC's Reliance On Ethypharm Is Misplaced............................................. 18

    D. UDTC Does Not Contest Preemption of any State
       Law Claims Based on Alleged Patent Infringement........................................ 19

IV.  UDTC'S BRIEF CONCEDES THAT IT HAS NO CLAIMS
    UNDER THE TRADE SECRET STATUTES........................................................ 19

CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

Ash/Ramunno Assoc., Inc. v. Branner,
    No. 12389, 1993 Del. Ch. LEXIS 78 (Del. Ch. May 21, 1992) ................................................ 6

AutoMed Techs., Inc. v. Eller,
    160 F. Supp. 2d 915 (N. D. Ill. 2001) ………………………...…………………………………18

Certainteed Corp. v. Celotex Corp.,
    No. 471, 2005 Del. Ch. LEXIS 11 (Del. Ch. Jan. 24, 2005) ........................................... 8, 9, 10

Cincinnati SMSA Ltd. Pshp. v. Cincinnati Bell Cellular Sys. Co.,
    708 A.2d 989 (Del. 1998) ....................................................................................................... 14

In re Dean Witter Partnership Litigation,
    No. 14816, 1998 Del. Ch. LEXIS 133 (Del. Ch. Jul. 1998) …..…………………….…………9

E.I. DuPont de Nemours & Co. v. Millenium Chems., Inc.,
    No. 97-237-SLR, 1999 U.S. Dist. LEXIS 12447 (D. Del. Aug. 2, 1999) ............................... 10

Eames v. Nationwide Mutual Ins. Co.,
    No. 04-1324-KAJ, 2006 U.S. Dist. LEXIS 3814 (D. Del. Feb. 2, 2006) ................................... 1

In re Elonex Phase II Power Mgmt. Litig.,
    No. 01-082-GMS, 2002 U.S. Dist. LEXIS 19952 (D. Del. OCt. 15, 2005) …..………………..3

Ethypharm S.A. v. Bentley Pharm., Inc.,
    388 F. Supp. 2d 426  (D. Del. 2005)................................................................................... 15-18

Halpern v. Barran,
    313 A.2d 139 (Del. Ch. 1973) …………………………………………………………………9

Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.,
    248 F.3d 1333 (Fed. Cir. 2001) ……………………………………………………………….4

Learning Curve Toys L.P. v. Playwood Toys, Inc.,
    1999 U.S. Dist. LEXIS 11262 (N.D. Ill. 2001) …..………………………………………...18

Lory v. Federal Insurance Co.,
    122 Fed. Appx. 314 (9th Cir. 2005)...................................................................................... 11

Madison Realty Partners,
    No. 18094, 2001 Del. Ch. LEXIS 37 (Del. Ch. Apr. 17, 2001) …..……………..……………6

# TABLE OF AUTHORITIES

Minco Inc. v. Combustion Eng'g, Inc.,
    95 F.3d 1109 (Fed. Cir. 1996)............................................................................ 3, 4, 5

Moore v. Marsh,
    74 U.S. (7 Wall.) 515 (1868)………………………………………………………...3

Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.,
    361 F. Supp. 2d 1244 (E.D. Wash. 2004)………………………………………...2, 3

On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,
    386 F.3d 1133 (Fed. Cir. 2004) ...………………………………………...……………17

Polyclad Laminates, Inc. v. MacDermid, Inc.,
    No. 99-162-M, 2001 U.S. Dist. LEXIS 1741 (D. N.H. Feb. 13, 2001)...………………………..3

In re Rockefeller Ctr. Properties, Inc.,
    184 F.3d 280 (3d Cir. 1999)............................................................................... 1

Savor, Inc. v. FMR Corp.,
    812 A.2d 894 (Del. 2002) ............................................................................ 16, 18

Sicom Sys. Ltd. v. Agilent Technologies, Inc.,
    427 F.3d 971 (Fed. C. 2005) ........................................................................... 2

Sicom Sys. Ltd. v. Agilent Technologies, Inc.,
    No. 03-1171-JJF, 2004 U.S. Dist. LEXIS 19966 (D. Del. Oct. 5, 2004)...………………….......4

Southwest Sav. & Loan Ass'n v. SunAmp Sys.,
    838 P.2d 1314 (Ariz. Ct. App. 1992) ...................................................... 12, 13, 14

Tuckman v. Aerosonic Corp.,
    No. 4094, 1975 Del. Ch. LEXIS 220 (Del. Ch. Oct. 21, 1975)................................. 9

Villegas v. Transamerica Fin. Servs., Inc.,
    708 P.2d 781 (Ariz. Ct. App. 1985)........................................................................ 15

Wanlass, Energystics, Inc., et al. v. General Electric Co.,
    148 F.3d 1334 (Fed. Cir. 1998)........................................................................... 10

In re Warfarin Sodium Antitrust Litig.,
    214 F.3d 395 (3d Cir. 2000)................................................................................. 1

## TABLE OF AUTHORITIES

Weiss v. Rockwell Int'l Corp.,
    No. 8811, 1989 Del. Ch. LEXIS 94 (Del. Ch. July 19, 1989) .................................................... 1

**Statutes and Rules**

6 Del. C. § 2008 ............................................................................................................... 16

Rule 12(b)(6).…………………………………………………………………………….…11

**Other Authorities**

Chisum on Patents § 19.05 at 19-542 ........................................................................................ 10

## PRELIMINARY STATEMENT

Except for a narrow claim alleging post-2001 infringement of the '625 patent, UDTC's complaint fails to state any claims upon which relief can be granted. UDTC's argument that it has rights to bring a claim for pre-2001 patent infringement is foreclosed by the July 24, 2001 Agreement to Assign between RCT and the University of Delaware.[1] Neither the Agreement to Assign nor the accompanying Deed of Assignment executed on August 10, 2001, in any way evidence an intent to transfer the right to sue for infringement occurring before 2001.

UDTC's state law claims are also inadequately pled. UDTC attempts to remedy these pleading deficiencies by asserting multiple new facts in its brief. These new facts, however, cannot be considered with respect to this motion because they are not pled in the complaint.[2] Even so, these new facts are nothing more than conclusory allegations of fraud and misconduct which do not meet the Rule 9(b) pleading standard and therefore cannot, as a matter of law, salvage any of UDTC's claims.

---

[1]    Consideration of the contracts incorporated into the complaint by reference and attached to Phenomenex's opening brief and/or UDTC's opposition brief does not convert this motion to dismiss into one for summary judgment. In re Rockefeller Ctr. Properties, Inc., 184 F.3d 280, 287 (3d Cir. 1999) (holding that district court improperly converted motion to dismiss into motion for summary judgment; court can properly consider "document integral to or explicitly relied upon in the complaint" without converting motion into one for summary judgment) (internal citation omitted); Eames v. Nationwide Mutual Ins. Co., No. 04-1324-KAJ, 2006 U.S. Dist. LEXIS 3814, at *4 (D. Del. Feb. 2, 2006) (granting motion to dismiss pursuant to Rule 12(b)(6); motion to dismiss should not be treated as motion for summary judgment where defendants attached and relied upon contracts upon which plaintiff's claims were based); see also Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss (hereinafter "Ans. Br.") at 7 n.2 (D.I. 26).

[2]    See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 398 (3d Cir. 2000) (reversing district court's decision on motion to dismiss which improperly considered facts not alleged in complaint); Weiss v. Rockwell Int'l Corp., No. 8811, 1989 Del. Ch. LEXIS 94, at *12 (Del. Ch. July 19, 1989) (dismissing complaint; "plaintiff, having not seen fit to embody his contentions in his complaint, cannot now be heard to interpose those contentions, in the form of arguments advanced in his brief, as a basis to defeat a Rule 12(b)(6) motion to dismiss").

**ARGUMENT**

I.    **UDTC DOES NOT HAVE STANDING TO BRING A CLAIM FOR ANY ALLEGED PATENT INFRINGEMENT BEFORE JULY 2001.**

UDTC does not challenge the well-settled legal principle central to Phenomenex's motion relating to patent standing – if an assignee desires to sue for infringement pre-dating the assignment, the assignment must have specifically conveyed both legal title to the patent and the right to sue for past infringement. See Defendant's Opening Brief in Support of Motion to Dismiss (hereinafter "Op. Br.") at 12-13 (D.I. 23). UDTC disagrees with Phenomenex, however, that it needs to demonstrate patent standing at this stage of the case. Ans. Br. at 10 (D.I. 26). It further claims that its complaint adequately alleges patent standing (id. at 11), and that the assignment of patent rights from RCT to the University in 2001 conveyed the right to sue for past infringement. Ans. Br. at 9-13 (D.I. 26). UDTC is wrong.

First, it is well-settled that a plaintiff's standing to sue is a threshold jurisdictional requirement. Sicom Sys. Ltd. v. Agilent Technologies, Inc., 427 F.3d 971, 975 (Fed. Cir. 2005) (affirming motion to dismiss complaint before discovery where clear and unambiguous contract language established that patent licensee did not have standing to sue). A party suing for patent infringement must demonstrate that it has patent standing when it files the complaint. Id.; Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244, 1248 (E.D. Wash. 2004) ("it is appropriate to address the question of standing in deciding a motion to dismiss because 'the elements of standing are an indispensable part of the plaintiff's case, and accordingly must be supported at each stage of litigation in the same manner as any other essential element of the case'") (citation omitted).

Standing, moreover, "cannot be 'inferred argumentatively from averments in the pleadings for purposes of a 12(b)(1) motion.'" Id. (citation omitted). Thus, even at this stage of the case, to

survive on a 12(b)(1) motion, a plaintiff "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Polyclad Laminates, Inc. v. MacDermid, Inc., No. 99-162-M, 2001 U.S. Dist. LEXIS 1741, at *5 (D. N.H. Feb. 13, 2001) (dismissing complaint for lack of jurisdiction on motion to dismiss because plaintiff did not meet burden of showing right to sue for past infringement). UDTC's Rule 9(a) cases, Ans. Br. at 9-10 (D.I. 26), completely ignore this well-settled precedent and do not arise in a jurisdictional context. Moreover, UDTC fails to address how its Rule 9 theories could call into question the precedent requiring proof of standing.

Second, UDTC's complaint is deficient because it fails to allege that RCT assigned the right to sue for past infringement when it assigned legal title to the patent to the University. Complaint ¶ 30 alleges only that "RCT assigned all of its right, title and interest in and to the '625 Patent and the inventions described therein to the University." That allegation does not mention assignment of the right to sue for past infringement,[3] and it is well-settled that "[t]he bare reference to 'all right, title and interest' does not normally transfer the right to sue for past infringement." In re Elonex Phase II Power Mgmt. Litig., No. 01-082-GMS, 2002 U.S. Dist. LEXIS 19552, at *9 (D. Del. Oct. 15, 2002) (citing Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1117 (Fed. Cir. 1996)). Indeed, according to the Federal Circuit:

> As the Supreme Court stated, it is a "great mistake" to "suppose" that the assignment of the patent carries with it the right to sue for past infringement. Moore v. Marsh, 74 U.S. (7 Wall.) 515, 522, 19 L. Ed. 37 (1868). These cases establish a general rule that the right to sue for prior infringement is not transferred unless the assignment agreement manifests an intent to transfer this right.

---

[3]    Cf. Complaint ¶ 8 (alleging that the University assigned to UDTC "past, present and/or future right title and interest in and to . . . causes of action"). Without an adequate underlying transfer from RCT, the University could not transfer the broad rights alleged in ¶ 8 to UDTC. Op. Br. at 14-15 (D.I. 23). Reliance on ¶ 30 is nothing more than improperly "infer[ing] argumentatively from averments in the pleadings." National Licensing, 361 F. Supp. 2d at 1248 (citation omitted).

Minco Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1117 (Fed. Cir. 1996).

Third, UDTC attempts to find an assignment of prior rights in the July 2001 Agreement to Assign between RCT and the University. Again, however, the bare reference to "all right, title and interest" in the assignment – without more – does not demonstrate that "the assignment agreement manifests an intent to transfer this right [to sue for past infringement]." Minco, 95 F.3d at 1117. Thus, while it is accurate for UDTC to say that no magic words are required to transfer the right to sue for past infringement, UDTC points to no language in the RCT assignment to suggest that such assignment did anything more than transfer legal title to the patent. This is in sharp contrast to the assignment in Minco, the only case cited by UDTC. There, the assignment expressly transferred "all rights and damages for past infringement," and contained other unambiguous textual language demonstrating that "the entirety of the agreements establishes that the . . . assignment clearly conveyed the right to sue for past infringement." Id. at 1117-18.

Indeed, the plain and unambiguous language of the RCT assignment and accompanying deed confirm that RCT conveyed only legal title to the patent. See Op. Br. Ex. C (D.I. 23). Section 2.2(b) of the assignment requires RCT to pay moneys "received or to be received by RCT . . . as a consequence of RCT's ownership of the '625 patent."[4] This provision would be meaningless if, as UDTC claims, RCT transferred all rights relating to the patent. Moreover, the assignment on its face states that it will not become effective until July 24, 2001, and does not mention retroactive application. See Sicom Sys. Ltd. v. Agilent Technologies, Inc., No. 03-1171-JJF, 2004 U.S. Dist. LEXIS 19966, at *6 (D. Del. Oct. 5, 2004) (fact that contract "was only effective as of date it was assigned" was one of bases for court's ruling that contract did not transfer rights to sue for prior

---

[4]     See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc., 248 F.3d 1333, 1342 (Fed. Cir. 2001) ("In making such a determination [about standing to sue], it is helpful to consider the rights retained by the grantor in addition to the rights transferred to the grantee.") (addressing licensee standing).

patent infringement). Similarly, Section 1(c) of the Deed of Assignment assigns various rights beyond legal title to the patent; the right to sue for past infringement is not among mentioned. Op. Br. Ex. C, Deed of Assignment, ¶ 1(c) (D.I. 23) (assigning RCT's entire right, title and interest in reissues, extensions, renewals and reexaminations of the patent ).[5]

Finally, the standing issue is not one that can be swept aside simply because UDTC has named RCT as a codefendant in this litigation. Nor can standing be created by the conclusory statement in UDTC's brief – unsupported in the pleadings – that RCT acted as UDTC's agent in obtaining the patent rights. See supra note 2.

## II.    UDTC'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED.

### A.    UDTC Lacks Standing To Assert the Claims for Breach of the Materials Treatment Agreement and Evaluation License Agreement.

UDTC asserts in its brief (without foundation in its complaint) that it has the right to pursue the breach of contract claims as (i) a party (either as a principal to its agent RCT or directly); (ii) a disclosed and intended third party beneficiary; and/or (iii) via a total assignment of rights. Ans. Br. at 9-10, 13-14 (D.I. 26). These arguments cannot be supported.

First, it is evident that UDTC was not a party to either of the agreements allegedly breached. The only parties to the agreements were RCT and Phenomenex; UDTC is not even mentioned. As to whether UDTC was "a principal to its agent RCT" (Ans. Br. at 13), agency was not pled in the complaint, and thus cannot be considered for purposes of this motion. See supra note 2.

---

[5]    UDTC's argument that, with regard to an "assignment uncontested as between the parties," extrinsic evidence can be used (Ans. Br. at 12) is unsupported by any case law. In any event, this argument does not address the fact that the patent law requires an assignment, properly construed, to "manifest an intent to transfer this right," because the "general rule" is "that the right to sue for past infringement is not transferred." Minco, 95 F.3d at 1117. UDTC also does nothing to demonstrate that the RCT assignment is ambiguous – a requirement under Arizona law to permit consideration of extrinsic evidence, Op. Br. at 15 (D.I. 23) – and, in any event, UDTC does not point to any extrinsic evidence that would support its argument.

Similarly, UDTC's claim that it was a "disclosed and intended" third party beneficiary of the contracts at issue (Ans. Br. at 13) does not appear in the complaint. See Madison Realty Partners, No. 18094, 2001 Del. Ch. LEXIS 37, at *13 (Del. Ch. Apr. 17, 2001) (granting motion to dismiss contract claims on pleadings where plaintiffs were not signatories to contracts at issue and had not pled third-party beneficiary status). The Evaluation License Agreement, moreover, states in clear and unequivocal terms that there will be "No Third Party Beneficiaries" and that "None of the provisions of this Agreement shall be for the benefit of, or be enforceable by, any third-party." Finally, the fact that the language of the contracts does not mention UDTC as an intended third-party beneficiary is controlling. See Ash/Ramunno Assoc., Inc. v. Branner, No. 12389, 1993 Del. Ch. LEXIS 78, at *6 (Del. Ch. May 21, 1992) (dismissing complaint because nothing in the language of the contract indicated that the contractual parties intended to compensate individuals such as plaintiff; plaintiff also failed to allege any specific facts related to the circumstances surrounding the formation of the contract that would support contention that it was intended beneficiary of contract).

UDTC also has failed to carry its burden to plead that it was assigned any contract rights. As set forth in Phenomenex's opening brief, the complaint does not allege that RCT assigned any contracts to the University. See Complaint ¶ 30 (D.I. 1). The fact that the University, and thus UDTC, do not possess the right to assert an action for breach of either contract is confirmed by the unequivocal language of the July 2001 Agreement to Assign and the accompanying Deed of Assignment, which make no mention of anything related to transfer of contractual rights. In fact, the unambiguous language of the Agreement to Assign demonstrates that the parties expected RCT to retain responsibility for contracts with third parties, an expectation that is inconsistent with an intent to transfer contractual rights from RCT to the University. Op. Br. Ex. C, Section 2.2 (D.I. 23) (emphasis added). Similarly, the Deed of Assignment specifically lists categories of rights that are

being transferred; contractual rights are not among those categories. Finally, the complaint itself alleges that RCT retained third-party contractual rights. See Complaint ¶ 33 ("Pursuant to the Marketing Agreement, RCT was and is responsible for monitoring the Licensed Technology. . .") (emphasis added).

### B. The Face of the Pleadings Demonstrate that UDTC's Claim for Breach of the Evaluation License Agreement Is Time-Barred.

The allegations of the complaint and the clear and unambiguous language of the Evaluation License Agreement incorporated therein make plain that UDTC's contract claim was asserted more than three years after any alleged contractual breach could have occurred.[6] UDTC raises three primary arguments in response. Each argument fails.

#### 1. UDTC's Argument that Phenomenex Conceded that It Breached the Evaluation License Agreement in 1997 Is Factually Inaccurate and Legally Irrelevant.

According to UDTC, the five year contractual confidentiality provision contained in the Evaluation License Agreement is irrelevant because Phenomenex "concedes . . . that 'the Jupiter product accused of infringement and of misusing trade secrets was introduced in 1997.'" Even if it were proper for the Court to consider this extrinsic evidence, Phenomenex does not – and has never – "admitted" that it breached obligations of confidentiality (or any other obligations) under the Evaluation License Agreement. The letter states only that the accused Jupiter product was introduced in 1997, which is in no way an admission that the Jupiter product in fact infringed any patents or improperly incorporated trade secrets or proprietary information.

---

[6] UDTC does not dispute that Delaware's three-year statute of limitations applies. Ans. Br. at 16 (D.I. 26). Nor does UDTC contest Phenomenex's showing in its opening brief that its confidentiality obligations pursuant to the Evaluation License Agreement expired as of September 29, 1998. Op. Br. At 17 (D.I. 23).

Even assuming, arguendo, however, that Phenomenex did admit a breach of the Evaluation License Agreement occurred when the Jupiter product was introduced in 1997, that would in no way salvage UDTC's timeliness argument. Rather the reverse is true: if a breach occurred in 1997, then an action for breach of contract should have been brought sometime in 2000.

> **2.    UDTC's Argument That The Three Year Statute of Limitations Was Tolled Is Not Supported by the Allegations in the Complaint.**

UDTC argues that the applicable three-year statute of limitations was "tolled" by (a) UDTC's alleged fraudulent concealment of the alleged contractual breach, and (b) the fact that the alleged contractual breach was "inherently unknowable." Neither exception to the "accrual" rule of actions under Delaware law applies here. First, it is well-settled that "[a] party asserting that tolling applies bears the burden of pleading specific facts to demonstrate that the statute of limitations is, in fact, tolled." Certainteed Corp. v. Celotex Corp., No. 471, 2005 Del. Ch. LEXIS 11, at *21 (Del. Ch. Jan. 24, 2005) (emphasis added). Therefore, despite the usual "plaintiff-friendly" principles of a motion to dismiss, "when a plaintiff seeks to excuse a late filing by invoking a tolling exception to the statute of limitations, the plaintiff bears the burden to plead facts demonstrating the applicability of the exception. When that burden is not met, the court must dismiss the complaint if filed after expiration of the limitations period." Id. at *21.

Here, UDTC did not allege any fraud or fraudulent concealment of the alleged contractual breaches, much less allege any fraud with the specificity required by Rule 9(b).[7] In its brief, plaintiff points only to ¶ 26 of the complaint to support its argument of fraudulent concealment: "At the expiration of the Evaluation Agreement, Phenomenex notified RCT and the Inventors that it was not interested in further use of the Licensed Technology." Ans. Br. at 17 (D.I. 26). This paragraph does

---

[7]    For purposes of ruling on Phenomenex's motion to dismiss, this Court should not credit the argumentative statements contained in UDTC's opposition brief. See supra note 2.

not allege "fraudulent concealment" or any particulars of the purported fraudulent conduct.  See Tuckman v. Aerosonic Corp., No. 4094, 1975 Del. Ch. LEXIS 220, at *7 (Del. Ch. Oct. 21, 1975) (granting motion to dismiss on grounds of statute of limitations, and denying plaintiff's argument that fraudulent concealment tolled statute; "Initially, there does not appear to be any express allegation of fraudulent concealment.  That would seem dispositive. . .").

Moreover, the complaint does not allege an affirmative act of concealment or misrepresentation by Phenomenex which was intended to put UDTC "off the trail of inquiry." Halpern v. Barran, 313 A.2d 139, 143-44 (Del. Ch. 1973) (dismissing certain claims as barred by statute of limitations on 12(b)(6) motion) (emphasis added).  Nor does it allege that Phenomenex knowingly made statements to prevent inquiry by UDTC.  See Certainteed, 2005 Del. Ch. LEXIS 11, at *30.  UDTC did not even allege that the purported breaches of the contract by Phenomenex were "knowing," much less that Phenomenex took knowing and active steps to conceal such breaches.  UDTC's fraudulent concealment assertions are also inconsistent with its allegation that "Phenomenex has been selling Jupiter HLPC columns around the globe, as though it owned the technology disclosed and claimed in the '625 Patent."  Complaint ¶ 28 (D.I. 1).

Further, UDTC fails to allege in its complaint that the alleged breach was "inherently unknowable."  See In re Dean Witter Partnership Litigation, No. 14816, 1998 Del. Ch. LEXIS 133 (Del. Ch. Jul. 17, 1998) at *19-*20, *40 (dismissing claims as time-barred on motion to dismiss, despite plaintiff's argument that wrongs were inherently unknowable and fraudulently concealed by defendants).  It therefore does not meet its burden of establishing this exception to the statute of limitations for purposes of this motion to dismiss.  See Certainteed at *21 (holding that plaintiff bears the burden to plead facts demonstrating the applicability of a tolling exception).  Even if UDTC had alleged that the contractual breach was unknowable, however, this exception applies only

to situations where a contractual breach, in essence, cannot be known absent some type of malfunction or injury.  See e.g., Certainteed at *26-27, 32; E.I. DuPont de Nemours & Co. v. Millenium Chems., Inc., No. 97-237-SLR, 1999 U.S. Dist. LEXIS 12447, at *15-16 (D. Del. Aug. 2, 1999) (misleading product brochure was not an "inherently unknowable injury," when the brochure in question was distributed to "potential customers" in a highly competitive market).  A product allegedly incorporating proprietary information would not constitute an "inherently unknowable" situation, particularly where (i) UDTC alleges that the Jupiter product was available on the marketplace (Complaint ¶ 74); and (ii) UDTC alleges that, prior to bringing this lawsuit, it was able to conduct an "investigation" and conclude that there had in fact been an alleged breach of contract. (Id. at ¶ 28).  Plaintiff has failed to meet its burden to demonstrate a tolling exception.

### 3.      The Doctrine of Laches Does Not Salvage UDTC's Claim.

UDTC argues that "laches states that an action is timely if it has been brought without unreasonable delay following the accrual of such action as ripe." Ans. Br. at 19 (D.I. 26).  Laches, however, is an equitable defense that protects defendants from stale claims when defendants have reasonably relied upon the failure to institute suit.  See 6 Donald S. Chisum, Chisum on Patents § 19.05 at 19-542 (Matthew Bender 2005).  UDTC's attempt to use laches as a sword – to say that even if barred by law, the case can proceed because it is not barred by equity – is illogical. Moreover, UDTC's unique laches argument is not supported by the allegations of the complaint, which do not state (i) when UDTC discovered the purported breach of contract; (ii) how long UDTC waited to bring this action after it discovered the purported breach; (iii) that Phenomenex would not be prejudiced by the action at this late date. See, e.g., Wanlass, Energystics, Inc., et al. v. General Electric Co., 148 F.3d 1334, 1337 (Fed. Cir. 1998).

**C.    UDTC Has Not Adequately Alleged a Breach of the Covenants of the Materials Treatment Agreement.**

As demonstrated in Phenomenex's opening brief, UDTC does not adequately allege a breach of the covenants of the Materials Treatment Agreement. UDTC's only response is the legal conclusion that "UDTC has adequately plead [sic] breach of the Materials Treatment Agreement in that Phenomenex [allegedly] used or otherwise shared trade secrets and intellectual property [for improper purposes]." See Ans. Br. at 20 (D.I. 26). This legal conclusion fails to acknowledge that the Materials Treatment Agreement is a narrow contract, which on its face only discusses use of the "treated materials." To expand this language, UDTC must allege or show some ambiguity or some textual clue that the agreement goes further. UDTC's legal conclusion does neither.

**D.    UDTC Wrongly Asserts that any Allegation of "Bad Faith" is Sufficient to State a Claim for Breach of the Contractual Duty of Good Faith and Fair Dealing.**

As set forth in Phenomenex's opening brief, UDTC has not adequately pled claims for breaches of the contractual duty of good faith and fair dealing.[8] Those claims should be dismissed because, as demonstrated above, UDTC lacks standing for its contract claims, and, with respect to the Evaluation License Agreement, those claims are time-barred as a matter of law. See supra Part II; see, e.g., Lory v. Federal Insurance Co., 122 Fed. Appx. 314, 318 (9th Cir. 2005) (affirming dismissal of good faith and fair dealing claims pursuant to Rule 12(b)(6) where claims were time-barred and plaintiff did not have standing because it was not a third-party beneficiary of contract).

To the extent the claims are not time-barred, UDTC mischaracterizes Phenomenex's statement of the governing law; according to UDTC, Phenomenex argued in its opening brief that it is not liable for a breach of the duty of good faith and fair dealing because the alleged conduct was a

---

[8]    UDTC does not dispute in its answering brief that contract-based claims for breach of the covenant of good faith and fair dealing may be dismissed as a matter of law under Rule 12(b)(6). See Op. Br. at 21 (D.I. 23).

"good faith use . . . of its discretion for a reason outside of the contemplated range" of the intents and purposes of the Agreements. See Ans. Br. at 20 (D.I. 26). That was not Phenomenex's argument. Indeed, Phenomenex's argument did not focus at all on whether its product sales using alleged trade secrets was allegedly in good or bad faith. Rather, consistent with controlling law, Phenomenex focused on whether, regardless of whether the alleged conduct was in good or bad faith, the alleged conduct (i.e., product sales using the alleged trade secrets) fell within the range of risks contemplated by the contracting parties. In short, Phenomenex's position, consistent with controlling precedent, is that the defendant's scienter is not the crux of the analysis.

UDTC additionally attempts to rewrite the well-settled legal standard so that any allegation of "bad faith" suffices to state a claim. That is simply not the law.

### 1.    Arizona's Covenant of Good Faith & Fair Dealing Does Not Turn on Whether the Parties' Actions Were in Good or Bad Faith

Phenomenex's opening brief quoted the good faith and fair dealing discussion in Southwest Sav. & Loan Ass'n v. SunAmp Sys., 838 P.2d 1314, 1320 (Ariz. Ct. App. 1992), which was itself quoting an article from the Harvard Law Review:

> A contract thus would be breached by a failure to perform in good faith
> if a party uses its discretion for a reason outside the contemplated range
> – a reason beyond the risks assumed by the party claiming a breach.

Op. Br. at 21 (D.I. 23). UDTC's brief purported to quote the same language but inserted additional words to the quote – bracketed and in bold in the text below – to create a new legal standard which puts the defendant's state of mind directly at issue:

> A contract thus would be breached by a failure to perform in good
> faith if a party[, *in good faith*] uses its discretion for a reason outside
> the contemplated range – a reason beyond the risks assumed by the
> party claiming a breach." (D.I. 23-MTD at 21, ¶1) (citing *id.* [e.g.,
> citing Southwest Sav. & Loan]) (*emphasis added*).

Ans. Br. at 22 (D.I. 26).

UDTC thus attempts to place the legal focus on intent – because it has alleged bad faith – rather than (as the correct legal standard directs) on obligations that are unambiguously set forth in the parties' contract.  Under the correct rule, the covenant of good faith and fair dealing does not inject a subjective element of good or bad faith into the analysis.  As the court emphasized in Southwest Sav. & Loan, the policy behind this well-settled rule is clear:

> If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires.

Southwest Sav. & Loan, 838 P.2d at 1319.

Phenomenex demonstrated in its opening brief that Section 4.2 of the Evaluation License Agreement is clear and unambiguous; UDTC does not disagree.  Section 4.2 sets a five-year time limit on non-use and non-disclosure of any allegedly confidential information transferred under the Evaluation License.  UDTC does not dispute that reasonable objective persons in the position of the contracting parties would understand the Section 4.2 five year limitations period of non-use and non-disclosure to have an important role in the Evaluation License transaction.  Indeed, the policy reasons behind enforcing this rule are straightforward:  trade secret litigation is very expensive, and reasonable contracting parties therefore negotiate contractual limitations periods to balance (i) legitimate protection of the disclosed information during the time the information is likely to have value, with (ii) the receiving party's need to protect its legitimate future business operations and technology developments from claims of trade secret theft claims long after the disclosed information is likely to have any value.  See Op. Br. at 17 (D.I. 23).  Without the protections of provisions like Section 4.2, reasonable objective parties who have contracted to receive confidential information – like Phenomenex – would be very reluctant to accept confidential information at all.

Given this express and unambiguous contractual assumption of risks (i.e. for Phenomenex, that independent discovery of the allegedly confidential information before five years might create the impression of a contract breach; and for UDTC, that the disclosed information might remain confidential but be used after five years), it is improper for the Court to imply a contrary obligation. Thus, because the alleged breach asserted by UDTC is the very "risk[] assumed by" UDTC in Section 4.2 (as UDTC concedes), UDTC has not stated a claim for breach of the covenant of good faith and fair dealing.[9] <u>Southwest Savings & Loan</u>, 838 P.2d at 1320.

As stated in Phenomenex's opening brief, UDTC's claim for breach of the duty of good faith and fair dealing implied in the Materials Treatment Agreement fares no better because the Complaint does not allege any conduct that meets the standard of <u>Southwest Savings & Loan</u> in connection with that agreement.

### 2. A Reasonableness Standard is Not Relevant Here

UDTC's second argument seems to be that Phenomenex wrongly argued it "act[ed] reasonably to fulfill the intent of the parties . . . when it sold Jupiter products." Ans. Br. at 24 (D.I. 26). Phenomenex did not assert that the covenant of good faith and fair dealing is tied to a reasonableness standard. "Reasonableness" is a tort concept, and gauging contractual conduct under

---

[9] The Delaware cases cited in Phenomenex's opening brief apply an almost identical standard and vividly illustrate the propriety of dismissing good faith and fair dealing claims that would otherwise vitiate the parties' reasonable expectations at the time of contracting. In <u>Cincinnati SMSA Ltd. Pshp. v. Cincinnati Bell Cellular Sys. Co.</u>, 708 A.2d 989 (Del. 1998) (Op. Br. at 20-23 (D.I. 23)), similar to UDTC's arguments here, the plaintiff "articulate[d] a policy argument, which is cogent at first blush, in support of implying an additional noncompete obligation" related to PCS technology. <u>Id.</u> at 993. The Delaware Supreme Court rejected this argument as a matter of law, however, because the parties had expressly addressed noncompete obligations in their contract, and there was no reason to believe the parties would have extended those obligations to include PCS technology had the parties thought to discuss the subject. <u>Id.</u> Here, similarly, the parties expressly addressed the appropriate period of non-use and non-disclosure in their contract, and established the five year period as appropriate for their transaction.

a reasonableness standard is exactly the opposite of the standard dictated by Arizona law, as stated in Phenomenex's opening brief. <u>See</u> Op. Br. at 21 (D.I. 23) ("[c]ourts have no right to remake contracts to comport with some unspecified notion of fairness") (quoting <u>Villegas v. Transamerica Fin. Servs., Inc.</u>, 708 P.2d 781, 784 (Ariz. Ct. App. 1985)).

### III.    UDTC'S PREEMPTION ARGUMENTS FAIL AS A MATTER OF LAW.

Phenomenex demonstrated in its opening brief that Counts VI, VII, VIII, XI, and XII are preempted insofar as these counts are (a) "founded on allegations of trade secret misappropriation" or (b) overlap with UDTC's trade secret misappropriation claims such that "'failure of the misappropriation claim would [also] doom' the potentially preempted claim." <u>See</u> Op. Br. at 24 (D.I. 23) (quoting <u>Ethypharm S.A. v. Bentley Pharm., Inc.</u>, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (granting 12(b)(6) motion to dismiss fraud and unjust enrichment claims as preempted)).

UDTC does not directly address Phenomenex's arguments, and UDTC's answering brief candidly admits that Counts VI, VII, VIII, XI, and XII are founded on its trade secret allegations. <u>See</u> Ans. Br. at 14 (D.I. 26) ("All of UDTC's claims arise from, relate to <u>and</u> are otherwise inextricably intertwined with Phenomenex's [alleged] theft of intellectual property and the '625 patent."); <u>see also</u> D.I. 29 at 10 ("UDTC's claims against Phenomenex allegedly amount to 'theft.'"). Instead, UDTC seeks to avoid preemption by arguing that: (i) equity claims cannot be preempted; (ii) the existence of Delaware's uniform deceptive trade practices statute defeats preemption; and (iii) UDTC misinterprets the <u>Ethypharm</u> case. Each of these positions is untenable.

### A.    UDTC's Discussion Of Equitable Rights And Remedies Misses The Mark.

UDTC's argument that its "equity claims" are not preempted is legally unsupportable. The Delaware and Arizona legislatures – and the Uniform Law Commissioners that drafted the Uniform Trade Secret Act – did not base their statutory preemption provisions on any distinction between

equitable rights and remedies. Instead, the statutes are plain and straightforward – any claim for relief is preempted if it satisfies the test described in described in <u>Ethypharm</u>.

Indeed, the Delaware Supreme Court has expressly confirmed that the "only exceptions to [the preemption section of the Uniform Trade Secrets Act] are claims for criminal remedies, contract remedies, and other civil remedies that are not based on misappropriation of a trade secret." <u>Savor, Inc. v. FMR Corp.</u>, 812 A.2d 894, 898 (Del. 2002) (internal quotations omitted). <u>Savor</u> did not distinguish between equitable rights and remedies, and it did not exempt alleged equitable rights. Nor would one expect a uniform statute to do so – the Uniform Trade Secret Act was designed to bring certainty and predictability to trade secret law, regardless of which state's law applied to the claim. <u>See</u>, <u>e.g.</u>, 6 Del. C. § 2008 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."); <u>see generally</u> 14 Uniform Laws Annotated, Preface at III ("The National Conference of Commissioner on Uniform State Laws was organized in 1892 to promote uniformity in state law, on all subjects where uniformity is desirable and practicable[.]").

In any event, the equitable right/remedy caselaw cited by UDTC does not address the question of trade secret preemption. Such caselaw addresses whether equitable jurisdiction over various other types of claims was eliminated by statute. <u>See</u>, <u>e.g.</u>, Ans. Br. at 26 (D.I. 26). But preemption of other <u>remedies</u> for trade secret misappropriation – not equitable jurisdiction – is the issue here. Moreover, UDTC's equitable jurisdiction cases addressed displacement of equitable jurisdiction by implication <u>where a statute at issue itself did not directly address the issue of displacement</u>. The Arizona and Delaware Uniform Trade Secrets Acts, in contrast, both directly and unambiguously state that they "displace" all other law.

**B.    Trade Secret and Deceptive Trade Practices Claims Can Exist in One Litigation Except where a Plaintiff's Deceptive Trade Practices Claim Is Based Solely on Theft of Trade Secrets.**

UDTC next asserts that its deceptive trade practices claim cannot be preempted because Delaware has enacted both a uniform deceptive trade practices statute and a uniform trade secret misappropriation statute. See Ans. Br. at 30-31 (D.I. 26). UDTC fails to explain, however, why this theory did not prevent the Federal Circuit from finding that a statutory unfair trade practices claim brought under Connecticut law was preempted by the Connecticut Uniform Trade Secrets Act, as noted in Phenomenex's opening brief. See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1146 (Fed. Cir. 2004). If, as UDTC suggests, the mere existence of the two statutes is all that is required to prevent preemption of a claim, then the Federal Circuit's decision in On-Line Techs. was wrong.

UDTC is also wrong because Phenomenex does not assert that a claim for deceptive trade practices can never co-exist with a claim for trade secret misappropriation. Indeed, it is not difficult to imagine a case where the two claims could co-exist. For example, assume a complaint that alleges defendant A violated the trade secret statute through misuse of trade secrets for manufacturing widgets and violated the deceptive trade practices statute by different conduct, such as falsely claiming that its widgets were made in the United States when, in fact, they were made in Canada. In such a case, the deceptive trade practice allegations are not "'founded on allegations of trade secret misappropriation'" and "'failure of the misappropriation claim would [not] doom' the potentially preempted claim." Ethypharm, 388 F. Supp. 2d at 433. Under such circumstances, the deceptive trade practice allegations would not be preempted. In contrast, UDTC's allegations are "founded on allegations of trade secret misappropriation" and are materially indistinguishable from the preempted allegations in On-Line Techs., a fact that UDTC never denies. Thus, preemption is proper.

UDTC cites no cases to support its position. The cases UDTC does cite deal with statutory interpretation generally. The fact that forty four states (and the District of Columbia) have adopted the Uniform Trade Secrets Act, and not one judicial decision adopts – or even mentions – UDTC's analysis, is telling.

### C.     UDTC's Reliance On Ethypharm Is Misplaced.

UDTC finally claims that no preemption can occur because Phenomenex (in UDTC's view) is arguing "that the trade secret statute is inapplicable" which purportedly allows UDTC to alternatively plead its other claims. Ans. Br. at 29, 32 (D.I. 26). This assertion is wrong.

First, the case UDTC cites – Ethypharm – does not hold that a party cannot both contest applicability of the trade secret statute and assert that a common law claim is preempted. In fact, Ethypharm directly refutes UDTC's claim:

> Because all claims stemming from the same acts as the alleged mis-
> appropriation are intended to be displaced, a claim can be displaced
> even if the information at issue is not a trade secret.

Ethypharm, 388 F. Supp. 2d at 433. One of the cases cited in Ethypharm states the rule even more succinctly:

> The ITSA did not establish a parallel statutory regime to complement
> the common law; rather, it "abolished common law theories of
> misuse of such [secret] information. . . . Unless defendants
> misappropriate[] a statutory trade secret, they do no legal wrong."

AutoMed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001) (quoting Learning Curve Toys L.P. v. Playwood Toys, Inc., 1999 U.S. Dist. LEXIS 11262, at *3 (N.D. Ill. July 20, 1999).).

See also Savor, Inc. v. FMR Corp., 812 A.2d 894, 898 (Del. 2002) (holding unjust enrichment claim preempted over plaintiff's assertion that it "should be allowed to proceed with its alternative common law claims" if it "fails in its statutory trade secret claims").

Second, UDTC is wrong as a matter of fact. Phenomenex is not asserting "that the trade secret statute is inapplicable," Ans. Br. at 32 (D.I. 26), but rather (in Argument VIII of its Opening Brief) that the only viable trade secret claims arose before September 29, 1998, that UDTC never acquired (or alleges that it acquired) the right to bring those claims, and that the claims are time-barred. That is far different than asserting that trade secret law cannot touch the conduct cited in the complaint, which is how UDTC characterizes Phenomenex's argument.

### D.    UDTC Does Not Contest Preemption of any State Law Claims Based on Alleged Patent Infringement.

At pages 27-28 of Phenomenex's brief, it explained that, to the extent UDTC's state law claims turn on patent infringement, they are preempted. UDTC's brief confirms the concern that the complaint did make such allegations, see Ans. Br. at 32 (D.I. 26), but UDTC never responds to this patent preemption argument. UDTC's state law claims should therefore be dismissed to the extent they are predicated on patent infringement.

### IV.    UDTC'S BRIEF CONCEDES THAT IT HAS NO CLAIMS UNDER THE TRADE SECRET STATUTES.

In Phenomenex's opening brief it explained how the contract between Phenomenex and RCT established the metes and bounds of Phenomenex's obligations under the Arizona and Delaware Uniform Trade Secrets Acts. Op. Br. at 29-30 (D.I. 23). It further explained how Phenomenex's only duties under the trade secret statutes were to RCT and how those duties expired no later than September 29, 1998. Id. at 31. UDTC never responds to this discussion and, therefore, has conceded these points. At a minimum, therefore, even putting aside Phenomenex's statute of limitations argument, any claims for trade secret misappropriation that arose after September 29, 1998, should be dismissed.

For trade secret claims arising before September 29, 1998, Phenomenex pointed out that the right to sue for past trade secret misappropriation must be expressly conveyed – just as is the case for patent law. Op. Br. at 31-32 (D.I. 23). UDTC does not contest this point either. That the right to sue for past misappropriation was not transferred is even more clear than past patent infringement, because complaint ¶¶ 57 and 65, and the RCT assignment and accompanying deed, do not mention trade secrets, know-how, or the transfer of the right to sue for past misappropriations.

## CONCLUSION

WHEREFORE, defendant Phenomenex, Inc. respectfully requests this Court to grant its motion and to enter an order in the form attached hereto.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
   Attorneys for Defendant Phenomenex, Inc.

Dated: March 3, 2006

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on March 3, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Michael P. Kelly, Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
P.O. Box 111
Wilmington, DE 19899

Benjamin J. Schladweiler, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
jshaw@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Monté T. Squire (No. 4764)
msquire@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

064951.1001