# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE



UD TECHNOLOGY CORPORATION §
§
        Plaintiff, §    C.A. No.
§
  v. §
§    **TRIAL BY JURY OF**
§    **TWELVE DEMANDED**
PHENOMENEX, INC., ~~and~~ §
~~RESEARCH CORPORATION~~ §
~~TECHNOLOGIES~~ §
§
      Defendant. §
§

## AMENDED COMPLAINT

COMES NOW, Plaintiff UD Technology Corporation, a Delaware non-profit

corporation, within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as

amended ("UDTC"), by and through undersigned counsel, McCarter & English, LLP, against

Defendants Phenomenex, Inc. ("Phenomenex"), ~~and Research Corporation Technologies~~

~~("RCT"),~~ and avers as follows:

### *The Parties*

1.    Plaintiff UDTC owns and manages intellectual property developed through the

University of Delaware's (the "University") comprehensive scientific research and doctorate

programs. UDTC is incorporated in the State of Delaware. UDTC has its principal place of

business at 15 Innovation Way, Suite 103, Newark, Delaware, 19711.

2.    Defendant Phenomenex is a California corporation having its corporate headquarters

located at 411 Madrid Avenue, Torrance, California, 90501-1430. Phenomenex may be served

by serving the Delaware Secretary of State.

3.     Phenomenex was founded over two decades ago by Fasha Mahjoor ("Mahjoor"), who is still the acting director and president of the company.  Phenomenex now has a global presence, and sells products in the United States, Australia, Canada, Germany, New Zealand and the United Kingdom.  Phenomenex develops, manufactures and supplies laboratory columns and accessories for the separation, analysis and purification of chemicals, biochemicals and medical grade proteins.  Specifically, Phenomenex develops, manufactures and supplies High Pressure Liquid Chromatography ("HPLC") columns and supplies, including Phenomenex's Jupiter brand column.

4.     Phenomenex maintains the leading position in the North Eastern United States market for HPLC columns specifically designed for the analysis of basic drugs, polymers, carbohydrates, enantiomers, proteins and environmental pollutants.

5.     Phenomenex markets and sells its HPLC columns nationwide and directly markets and sells such columns to customers in the State of Delaware.

6.     ~~Defendant RCT~~Research Corporation Technologies ("RCT") is a technology investment, development and marketing company which partners with affiliated institutions in an effort to license patentable and patented processes, products and procedures to third parties such as Phenomenex.  ~~RCT has its principal place of business at 101 North Wilmot Road, Suite 600, Tucson, Arizona 85711-3365.  RCT may be served by serving the Delaware Secretary of State.~~

7.     RCT ~~agreed with the~~on behalf of University ~~to~~ marketed protected intellectual property to third parties like Phenomenex, and to cultivate, manage and monitor third party usage of such intellectual property developed by the University in exchange or a fee, while paying the University a royalty for any and all such third party usage.

8.    On July 24, 2001, RCT assigned all of its right, title and interest in and to the United States Letters Patent Number 5,599,625 (" '625 Patent") and the inventions described therein to the University.

9.    At all times relevant, University was the owner of the intellectual property at issue herein, including the right to sue for past, present and future infringement, and to pursue contract damages pursuant to the contracts identified herein, between RCT and Phenomenex.

10.8.    University subsequently assigned all of its right, title and interest in and to the '625 Patent and the inventions described therein to UDTC, and thereafter assigned all of its past, present and/or future right, title and interest in and to the technology and any agreements, causes of action and/or third party beneficiary rights associated with the '625 Patent to UDTC.

### Jurisdiction, Venue and Service of Process

11. 9.    Jurisdiction in this Honorable Court is proper pursuant to 28 U.S.C. §§1331, 1332, 1338(a)-(b), and 1367. The issues and controversy herein present a federal question, seek damages in excess of $75,000.00 exclusive of attorneys' fees and costs, and are between diverse citizens. Other issues and controversies herein are also inextricably intertwined with a federal questions so as to create pendant and ancillary jurisdiction.

12.10.    Venue is proper before this Honorable Court pursuant to 28 U.S.C. §§1391 and 1400(b).

13.11.    The statutory predicate for the Federal relief requested arises under the patent laws of the United States, Title 35 of the United States Code. The statutory predicate for the ancillary state claims is 6 Del. C. §2001 *et seq.*, 6 Del. C. §2531, *et seq.*, and Ariz. Rev. Stat. §44-401, *et seq.* UDTC prays for various other legal and equitable relief available pursuant to both Federal statute, Federal common law and the common law of the State of Delaware. Consistent with 10

Del.C. §3104, Defendants may be served with process pursuant to 10 Del.C. §3111, and 8 Del.

C. §321.

### *The Discovery and the Patent*

14.12. In or around 1991, Dr. Mary Wirth ("Dr. Wirth"), was working in the Department of

Chemistry and Biochemistry of the University. Dr. Wirth left the employ of the University in

2004.

15.13. In or around 1991, Dr. Hafeez O. Fatunmbi ("Dr. Fatunmbi"), was working as a

graduate student (and was later awarded his Ph.D.), in the Department of Chemistry and Bio-

Chemistry of the University (Wirth and Fatunmbi are both collectively referred to as the

"Inventors"). Dr. Fatunmbi left the employ of the University in 1992.

16.14. In or around 1991, Drs. Wirth and Fatunmbi were deeply entrenched in the study of

surface chemistries relating to substrates such as silica beads used in chromatographic processes,

the end result of this research being the discovery of an invention worthy of a patent. No such

invention could have been achieved without Dr. Wirth's unique expertise that had been garnered

over many years of bioanalytical research that gained her recognition as a pioneer in emerging

spectroscopic techniques associated with chemical separations. The depth of Dr. Wirth's

knowledge and expertise in the separations field was critical to the Inventors' discoveries that

resulted in the technology that is now the subject of this complaint.

### *The Marketing Agreement*

17.15. On April 1, 1990, the University agreed to grant RCT certain rights to market and

promote the University's proprietary technologies developed by the Inventors, wherein the

University allowed RCT to permit interested third parties to review and evaluate such

technologies (the "Marketing Agreement"). Pursuant to the Marketing Agreement, on June 17,

4

1992, RCT filed U.S. Patent Application Serial Number 07/900,215 (the "Patent Application"), to protect the Inventors' research.

16.    Pursuant to the Marketing Agreement, RCT agreed to expend all reasonable efforts to commercialize each accepted Invention (as defined in the Marketing Agreement) and corresponding Patent Applications and Patents (as defined in the Marketing Agreement) and to secure reasonable revenue from such commercialization.

17.    Also pursuant to the Marketing Agreement, RCT agreed to pay the University fifty-seven and one-half percent (57.5%) of the gross income received from the marketing and use of the University's proprietary technology pursuant to the Marketing Agreement including, Patent Applications, Patents and the subject matter of same.

### *The Materials Agreement*

18.    Following both execution of the Marketing Agreement and filing of the Patent Application, Phenomenex contacted RCT and the University to request a sample of the product that was the subject of the Patent Application. To that end, on August 28, 1992, RCT and Phenomenex entered into a Materials Treatment Agreement ("Materials Agreement"), whereby the Inventors would manufacture a sample of the product that was the subject of the Patent Application, and send it to Phenomenex for evaluation.

19.    Phenomenex expressly agreed in the Materials Agreement that it was granted access to the licensed technology and trade secrets "solely for research purposes," and that Phenomenex would never use the proprietary technology "for any commercial or non-academic purpose."

### *The Evaluation Agreement*

20.    Thereafter, on March 29, 1993, RCT and Phenomenex entered into an Evaluation License Agreement and Right of First Refusal (the "Evaluation Agreement"), as licensor and

licensee respectively, for the evaluation of the technology which is the subject of the Patent

Application (the "Licensed Technology"). The Evaluation Agreement was a limited license of

short duration which expired by its terms six months from its effective date.

21.     Phenomenex expressly agreed in the Evaluation Agreement that "[t]he Evaluation

License does not give Licensee the right to sell Licensed Products or to use Licensed Products or

Licensed Processes for any purpose other than evaluation of the Invention." (*emphasis in*

*original*).

22.     The Evaluation Agreement further expressly provided that "Licensee acknowledges

that certain proprietary information belonging to Licensor will be disclosed to Licensee pursuant

to this Agreement."

23.     Phenomenex also expressly agreed in the Evaluation Agreement that it would

maintain in confidence all proprietary information regarding the Licensed Technology, that it

would return such proprietary information at the end of the six month evaluation period,  and that

it would maintain all such information it learned or received as strictly confidential.

24.     The Evaluation Agreement defines as a non-curable breach of that Agreement

Phenomenex's use of the Licensed Technology for any purpose other than research and

evaluation, such as for use in internal operations, commercial use and/or commercial sale.

25.     After their execution of the Evaluation Agreement, Mahjoor and Phenomenex

contacted Dr. Fatunmbi to request his assistance in the evaluation of the Licensed Technology.

Dr. Fatunmbi, while still in the employ of the University, then spent approximately three weeks

in the Phenomenex laboratory teaching Phenomenex and its employees/agents the use and

application of the Licensed Technology. As a result of this visit, Phenomenex obtained access to

6

the University's confidential information, as well as trade secrets and know-how associated with the Licensed Technology.

26.    At the expiration of the Evaluation Agreement, Phenomenex notified RCT and the Inventors that it was not interested in further use of the Licensed Technology. On September 29, 1993, the Evaluation Agreement expired by its terms and Phenomenex declined to enter into a commercialization agreement. Phenomenex thereafter had no further right to the Licensed Technology or tape secrets for any purpose whatsoever.

### *The Infringement*

27.    On February 4, 1997, the '625 Patent, entitled "Products Having Multiple-Substituted Polysiloxane Monolayer", issued in the name of the Inventors from U.S. Patent Application Number 07/900,215 (see Exhibit A). The '625 Patent is directed to the research performed by the Inventors specifically relating to the formation of specialized siloxane monolayers on substrates, such as silica beads, which are susceptible to damage upon exposure to acidic or basic environments when used, for example, in chromatography processes.

28.    The University and UDTC's subsequent investigation revealed that the performance of Phenomenex's HPLC Jupiter columns is not possible absent employment of the technology disclosed and claimed in the '625 Patent, and that Phenomenex has been selling Jupiter HLPC columns around the globe, as though it owned the technology disclosed and claimed in the '625 Patent.

29.    According to independent research, Phenomenex and Mahjoor now control 19 percent of the estimated $213 million HPLC column business in the United States alone. According to the Phenomenex website, the Jupiter is a leading name in HPLC columns;

Phenomenex and Mahjoor could not have achieved their present market positions without, at least in part, their misappropriation of the Licensed Technology.

30.    On July 24, 2001, RCT assigned all of its right, title and interest in and to the '625 Patent and the inventions described therein to the University.

30.31.  On June 1, 2005, UDTC sent Phenomenex a letter demanding that Phenomenex cease and desist its wrongful use of the '625 Patent.  Phenomenex has yet todid not respond to UDTC's demand, and has not stopped using, marketing or selling HPLC columns that violate UDTC's intellectual property rights, including specifically, the '625 Patent.

31.32.  As a direct and proximate result of its prior, current and continuing use, marketing and sale of UDTC's patented technology, Phenomenex was and is infringing upon the '625 Patent causing UDTC irreparable harm and monetary damages.

32.33.  Pursuant to the Marketing Agreement, RCT was and is responsible for monitoring the Licensed Technology and third parties with whom RCT shares the Licensed Technology and trade secrets associated therewith, and to collect all reasonable revenue from third parties for the use of the Licensed Technology and trade secrets.  To date,  neither the University nor UDTC has received any payments under the Marketing Agreement for Phenomenex's use of the Licensed Technology and trade secrets.

33.34.  As a direct and proximate result of RCT's failure to police and monitor all third party use of the Licensed Technology and associated trade secrets pursuant to the Marketing Agreement or otherwise, UDTC has suffered and continues to suffer irreparable harm in the form of lost licensing revenues, technology infringements and continued unknown potential losses.

34.35.  Hereinafter, the term "Licensed Technology" is used as an all encompassing term meaning all technology associated with the '625 Patent and any trade secrets and/or know how

associated therewith, as well as any other technology, including any trade secrets and/or know how associated therewith, that is encompassed by any of the Marketing Agreement, the Materials Agreement and the Evaluation Agreement, including Licensed products and Licensed Processes as defined in those Agreements.

**COUNT I—UDTC v. Phenomenex**
**WILLFUL AND WANTON INFRINGEMENT**
**UPON PATENT PURSUANT TO 35 U.S.C.§§284, *et seq.***

35.36. Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 3435, inclusive, of this complaint.

36.37. Upon information and belief, and it is therefore upon that basis alleged, Phenomenex has infringed and continues to infringe one or more claims of the '625 Patent by its manufacture, use, offer for sale and/or sale of certain Phenomenex HPLC columns, including, but not limited to Phenomenex's "Jupiter" Column and/or products manufactured, used, offered for sale and/or sold under a Phenomenex owned or licensed name.

37.38. Upon information and belief, and it is therefore upon that basis alleged, Phenomenex has actively induced and currently is actively inducing others to infringe one or more claims of the '625 Patent through the sale of certain of Phenomenex's HPLC column products, including, *inter alia*, the "Jupiter" Column, including other products marketed under a Phenomenex owned or licensed name.

38.39. Upon information and belief, Phenomenex has contributorily infringed the '625 Patent by its offer of sale and sale of certain HPLC columns, including HPLC columns marketed under the name Jupiter.

39.40.—Upon information and belief, Phenomenex's infringement, inducement of infringement and contributory infringement have and continue to be willful.

40.41.—As a result of Phenomenex's actions, UDTC has suffered and continues to suffer substantial injury, including irreparable injury, and such actions have and will continue to result in damages to UDTC, including loss of sales, revenues and profits, which UDTC would have made but for the infringement by Phenomenex unless Phenomenex is enjoined by this Honorable Court.

WHEREFORE, UDTC prays for judgment against Phenomenex as follows:

A.    That a judgment be entered that Phenomenex has infringed the '625 Patent United States Letters Patent No. 5,599,625;

B.    That a judgment be entered that Phenomenex has actively induced others to infringe, and/or contributorily infringed the '625 Patent United States Letters Patent No. 5,599,625;

C.    That Phenomenex, its agents, sales representatives, distributors, servants and employees, attorneys, affiliates, subsidiaries, successors and assigns, and any and all persons acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily during the pendency of this action, and thereafter permanently, from infringing, actively inducing others to infringe, and/or contributorily infringing the '625 Patent United States Letters Patent No. 5,599,625;

D.    That an accounting for all uses and damages resulting from Phenomenex's infringement, inducement and/or contributory infringement be ordered;

10

E.    That judgment be entered that Phenomenex be required to pay over to UDTC all
      damages sustained by UDTC due to such patent infringement and that such damages
      be trebled pursuant to 35 U.S.C. §284 for willful acts of infringement complained
      herein;

F.    That this case be adjudged and decreed exceptional under 35 U.S.C. §285, entitling
      UDTC to an award of its reasonable attorneys' fees and that such reasonable
      attorneys' fees be awarded;

G.    That UDTC be awarded its costs and prejudgment interest on all damages;

H.    That Phenomenex be required to file with the Court within 30 days after entry of final
      judgment of this cause, a written statement under oath setting forth the manner in
      which Phenomenex has complied with the final judgment;

I.    That UDTC be awarded such other and further relief as this Honorable Court deems
      equitable and just.

**COUNT II— UDTC v. Phenomenex**
**BREACH OF CONTRACT**

41.42.—Plaintiff hereby repeats, repleads and incorporates herein by reference as though
fully set forth herein each and every allegation contained in paragraphs 1 through 4041,
inclusive, of this complaint.

42.43.—UDTC has certain rights under the Materials and Evaluation Agreements.

43.44.—Under the Materials Agreement, Phenomenex agreed it would evaluate the Licensed
Technology only for research purposes, and would not use the Licensed Technology for any
commercial or non-academic purpose.

11

44.45.—Under the Evaluation Agreement, Phenomenex agreed to hold and maintain the Licensed Technology in confidence, to not reveal the Licensed Technology to any third-parties and to not use the Licensed Technology for any purpose following the six month review period. Specifically, Phenomenex agreed that: (i) the Evaluation License does not give Licensee the right to sell Licensed Products or to use Licensed Products or Licensed Processes for any purpose other than evaluation of the Invention, §2.1; (ii) certain proprietary information belonging to Licensor would be disclosed to Licensee pursuant to this Agreement, §4.1; (iii) Phenomenex would maintain all proprietary information regarding the Licensed Technology in confidence, and return same at the end of the six month evaluation period and maintain all such learned information as strictly confidential, §4.4; (iv) a non-curable breach of the agreements Phenomenex's use of the Licensed Technology for any purpose other than research and evaluation, such as for use in internal operations, commercial use and/or commercial sale, would constitute a non-curable breach of the agreements. §5.2.2.

45.46.—Phenomenex has breached the Materials Agreement by:

    a.    Employing the material that is the subject of the Patent Application and thereafter, the Licensed Technology, for a purpose other than research or evaluation;

    b.    Sharing the material that is the subject of the Patent Application and thereafter, the Licensed Technology, with third parties, and profiting thereby.

46.47.—Phenomenex has breached the Evaluation Agreement by:

    a.    Employing the Licensed Technology in the commercial manufacture of its HPLC products following the expiration of the six month review period;

    b.    Sharing the Licensed Technology with various third parties to commercially employ the Licensed Technology, and profiting thereby;

c.   Using the Licensed Technology for purposes not permitted in the Evaluation
Agreement.

47.48.—As a direct and proximate result of Phenomenex's breach of its promises, duties and

obligations under the terms of both the Materials Agreement and the Evaluation Agreement,

UDTC has suffered significant damages, the exact amount to be proven at trial.

48.49.—As a further, direct and proximate result of Phenomenex's breach of its promises,

duties and obligations under  both the Materials Agreement and the Evaluation Agreement,

UDTC has suffered consequential damages, including, without limitation, expenditures of time

and money, the interruption of UDTC's business, lost profits, loss of business, loss of customers,

loss of goodwill in its technology management marketing efforts, diminution in the value of

UDTC's business, the loss of income, attorney's fess and costs, and other damages, in an amount

to be proven at trial.  Such consequential losses could not be prevented by any conduct on behalf

of UDTC or otherwise.

WHEREFORE, UDTC prays for damages in an amount to be proven at trial, plus costs,

attorneys' fees, and prejudgment interest beginning from the date of breach, post judgment

interest, and any and all other relief that this Court deems equitable and just.

### COUNT III— UDTC v. Phenomenex
### VIOLATION OF THE COVENANT OF GOOD FAITH
### AND FAIR DEALING

49.50.—Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully

set forth herein each and every allegation contained in paragraphs 1 through 4849, inclusive, of

this complaint.

50.51.—There is implied in the Materials Agreement and Evaluation Agreement a covenant of

good faith and fair dealing whereby Phenomenex agreed that it would in good faith and in the

exercise of fair dealing, deal with the owner of the Licensed Technology fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure the owner of the Licensed Technology rights or benefits under the Materials Agreement and Evaluation Agreement, or otherwise.

51.52. As alleged herein, Phenomenex breached the covenant of good faith and fair dealing by acting to evade the letter and the spirit of the bargain between the owner of the Licensed Technology and Phenomenex.

52.53. Except for those promises, performances, duties and obligations which have been excused by the owner of the Licensed Technology, failure to perform or Phenomenex's misconduct, the owner of the Licensed Technology has performed all its duties, obligations, conditions and covenants under the terms of the Materials Agreement and Evaluation Agreement.

53.54. As a direct and proximate result of Phenomenex's breach of the covenant of good faith and fair dealing as alleged herein, UDTC has suffered damages, the exact amount to be proven at the time of trial.

54.55. As a further, direct and proximate result of Phenomenex's breach of the implied covenant of good faith and fair dealing, UDTC has suffered consequential damages, including, without limitation, expenditures of time and money, the interruption of UDTC's business, lost profits, loss of business, loss of customers, loss of goodwill in the '625 Patent and trade secrets associated therewith, diminution in the value of the '625 Patent and trade secrets associated therewith, the loss of income, attorney's fess and costs and other damages in an amount according to proof at trial. Such consequential losses could not be prevented by any conduct on behalf of UDTC or otherwise.

14

WHEREFORE, UDTC prays for damages in an amount in an amount to be proven at trial, plus costs, attorneys' fees, and prejudgment interest beginning from the date of breach and post judgment interest, and any and all other relief that this Court deems equitable and just.

## COUNT IV— UDTC v. Phenomenex
## MISAPPROPRIATION OF TRADE SECRETS
## IN VIOLATION OF ARIZ. REV. STAT. §§44-401 *et seq.*

55.56. Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 5455, inclusive, of this complaint.

56.57. UDTC owns or is otherwise entitled to the enforcement of rights in and to the University's Trade Secrets, including information, formulae, patterns, compilations, programs, devices, methods, techniques and/or processes associated with, related to and/or required for the implementation and application of the patented technology (the "Trade Secrets").

57.58. The Trade Secrets derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from the disclosure and use of such Trade Secrets.

58.59. The University and UDTC have taken the strictest of precautions to preclude the public disclosure of the Trade Secrets which Phenomenex was aware of or should have been aware of.

59.60. Phenomenex became privy to the Trade Secrets under cover of secrecy and agreement to not disclose such Trade Secrets unless Phenomenex acquired the appropriate licenses and permissions to use the '625 Patent and the Trade Secrets. By its performances, defaults, acts,

15

omissions, conduct, assent, ratification, or acquiescence or otherwise, Phenomenex has willfully

misappropriated the Trade Secrets, and taken great measures to secret such misappropriations.

60.61. Phenomenex must cease and desist all present and future misappropriation of the

Trade Secrets for its own benefit or for the benefit of any party other than UDTC.

61.62. Phenomenex must pay UDTC damages for the misappropriation of the Trade Secrets,

including the actual losses suffered by UDTC resulting from the misappropriation and any and

all unjust enrichment caused by the misappropriation which is not accounted for with a

calculation of actual losses, including, but not limited to the payment by Phenomenex to UDTC

of a royalty for the period of misappropriation.

62.63. As a result of Phenomenex's willful and malicious misappropriation as evidenced by

its secret activities and conduct, UDTC is entitled to exemplary damages pursuant to Ariz. Rev.

Stat. §44-403(b), in an amount of twice the misappropriation damages as demanded herein.

WHEREFORE, UDTC prays for damages, the exact amount to be proven at trial, plus

costs, attorneys' fees, and prejudgment interest beginning from the date of breach and post

judgment interest, and any and all other relief that this Court deems equitable and just.

### COUNT V— UDTC v. Phenomenex
### MISAPPROPRIATION OF TRADE SECRETS
### IN VIOLATION OF 6 DEL. C. §2001, *et seq.*

63.64. Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully

set forth herein each and every allegation contained in paragraphs 1 through 6263, inclusive, of

this complaint.

64.65. UDTC owns or is otherwise entitled to the enforcement of rights in and to the

University's Trade Secrets, including information, formulae, patterns, compilations, programs,

devices, methods, techniques and/or processes associated with, related to and/or required for the implementation and application of the patented technology (the "Trade Secrets").

65.66. The Trade Secrets derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from the disclosure and use of such Trade Secrets.

66.67. The University and UDTC have taken the strictest of precautions to preclude the public disclosure of the Trade Secrets of which Phenomenex was aware.

67.68. Phenomenex, became privy to the Trade Secrets under cover of secrecy and agreement to not disclose such Trade Secrets unless Phenomenex acquired the appropriate licenses and permissions to use the '625 Patent and the Trade Secrets. By its performances, defaults, acts, omissions, conduct, assent, ratification, or acquiescence or otherwise, Phenomenex has willfully misappropriated the Trade Secrets, and taken great measures to secret such misappropriations.

68.69. Phenomenex must cease and desist all present and future misappropriation of the Trade Secrets for its own benefit or for the benefit of any party other than UDTC.

69.70. Phenomenex must pay UDTC damages for the misappropriation of the Trade Secrets, including the actual losses suffered by UDTC resulting from the misappropriation and any and all unjust enrichment cause by the misappropriation which is not accounted for with a calculation of actual losses, including, but not limited to the payment by Phenomenex to UDTC of a royalty for the period of misappropriation.

70.71. As a result of Phenomenex's willful and malicious misappropriation as evidenced by its secret activities and conduct, UDTC is entitled to exemplary damages pursuant to 6 Del. C. §2003(b), in an amount of twice the misappropriation damages as demanded herein.

17

WHEREFORE, UDTC prays for damages, the exact amount to be proven at trial, plus costs, attorneys' fees, and prejudgment interest beginning from the date of breach and post judgment interest, and any and all other relief that this Court deems equitable and just.

### COUNT VI— UDTC v. Phenomenex
### VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES
### PURSUANT TO 6 DEL. C. §2531, et .seq.

71.72. Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 70.71, inclusive, of this complaint.

72.73. Phenomenex, by its acts, omissions, representations, trade practices, business practices and otherwise, willfully and wantonly, knowingly and/or recklessly engaged in, and continues to engage in a persistent course of conduct to deceive the public to whom Phenomenex markets such that it represents expertise, experience and product design that are the result of secret misappropriation of the Licensed Technology and the '625 Patent.

73.74. Phenomenex's willful, wanton, knowing and/or reckless representations regarding its skill, experience and expertise in the manufacture and development of HPLC columns derived from Phenomenex's misappropriation of the Licensed Technology and the '625 Patent and has created, and continues to create, a significant likelihood of confusion and or misunderstanding in the marketplace such that UDTC cannot:

(i)    Properly market the Licensed Technology and/or the '625 Patent to third parties who improperly view Phenomenex as the industry leader of such Licensed Technologies, including the Trade Secrets;

18

(ii)    Recover for the period in which RCT and the University were unable to secure licensing arrangements with respect to the Licensed Technology and the '625 Patent as to which Phenomenex was secretly misappropriating and representing as its own.

74.75.    Phenomenex must cease and desist all present and future misappropriation of UDTC's Trade Secrets for its own benefit or for the benefit of any party other than UDTC.

75.76.    To the extent that Phenomenex must pay UDTC damages for the Violation of Unfair Trade Practices associated with UDTC's Trade Secrets, including the actual losses suffered by UDTC resulting from the Unfair Trade Practices and any and all unjust enrichment cause by the Unfair Trade Practices which is not accounted for with a calculation of actual losses, including, but not limited to the payment by Phenomenex to UDTC of a Royalty for the period of the Unfair Trade Practices.

76.77.    As a result of Phenomenex's willful and malicious Unfair Trade Practices as evidenced by its secreting activities and conduct, UDTC is entitled to treble damages pursuant to 6 Del. C. §2533(c) in an amount of three times the Unfair Trade Practices damages as demanded herein.

WHEREFORE, UDTC prays for damages, the exact amount to be proven at trial, plus costs, attorneys' fees, and prejudgment interest beginning from the date of breach and post judgment interest, and any and all other relief that this Court deems equitable and just.

### COUNT VII— UDTC v. Phenomenex
### <u>UNJUST ENRICHMENT</u>

77.78.    Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 7677, inclusive, of this complaint.

19

78.79. UDTC owns and/or otherwise has rights to the '625 Patent and the Licensed Technology. Phenomenex's unauthorized use of the Licensed Technology and '625 Patent have benefited Phenomenex.

79.80. As a result of this benefit to Phenomenex, UDTC has been denied what it rightfully owns and is entitled to compensation from Phenomenex in an amount equal to the royalty associated with Phenomenex's unauthorized use of the '625 Patent and Licensed Technology.

WHEREFORE, UDTC prays for damages, the exact amount to be proven at trial, plus costs, attorneys' fees, and prejudgment interest beginning from the date of breach and post judgment interest, and any and all other relief that this Court deems equitable and just.

## COUNT VIII— UDTC v. Phenomenex
## CONVERSION

80.81. Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 79.80, inclusive, of this complaint.

81.82. Phenomenex, by exercising control and dominion over the Licensed Technologies and the '625 Patent and other property in an unauthorized manner, systematically and secretly deprived UDTC of its interest in its intellectual property.

82.83. Phenomenex intended to deprive UDTC of the Licensed Technologies and the '625 Patent permanently, and did so permanently deprive UDTC of its interest in its intellectual property.

83.84. Neither the University nor UDTC granted Phenomenex authority to use, possess, move, remove or otherwise exercise control and/or dominion over of the Licensed Technologies or the '625 Patent.

84.85. Neither the University nor UDTC relinquished any rights to the Licensed Technologies or the '625 Patent and maintains a right to immediate repossession of all funds, knowingly, intentionally and wrongfully misappropriated from UDTC, the University or from a predecessor in interest to University.

85.86. As a result of the conversion UDTC has suffered significant losses in the form of *inter alia*, income, market name and growth, and market goodwill.

86.87. The Licensed Technologies and the '625 Patent converted from the University, are now presently employed by Phenomenex.

87.88. By Phenomenex's actions, UDTC continues to suffer significant losses resulting from Phenomenex's conversion of the Licensed Technologies and the '625 Patent.

WHEREFORE, UDTC is entitled to a judgment, in an amount to be determined at the time of trial, plus lost interest income, plus pre-judgment and post-judgment interest, and an award of costs, and attorney's fees from the Phenomenex.

### ~~COUNT IX — UDTC v. RCT~~
### ~~BREACH OF CONTRACT~~

89. ~~Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 though 88, inclusive, of this complaint.~~

90. ~~On April 1, 1990, University and RCT entered into the Marketing Agreement which required RCT to pay University fifty-seven and one-half percent (57.5%) of all Gross Income generated as a result of third-party use of the Licensed Technology and the '625 Patent.~~

91. ~~RCT has breached the Marketing Agreement by:~~

a. ~~Failing to expend reasonable efforts to secure revenues from third parties commercially or otherwise employing the Licensed Technology and the '625 Patent;~~

b. ~~Knowingly and/or recklessly sharing the material that is the subject of the Patent Application and thereafter, the '625 Patent, as well as the Licensed Technology, with third parties without paying University the percentage of Gross Revenue that it did or should have collected.~~

c. ~~Knowingly, recklessly, negligently or otherwise permitting Phenomenex to employ the Licensed Technology in the commercial manufacture of HPLC products following the expiration of the six month review period without paying University or UDTC its percentage of Gross Revenues that it did or should have collected.~~

~~92.    As a direct and proximate result of RCT's breach of its promises, duties and obligations under the terms of the Marketing Agreement, UDTC has suffered significant damages, the exact amount to be proven at trial.~~

~~93.    As a further, direct and proximate result of RCT's breach of its promises, duties and obligations under the Marketing Agreement, UDTC has suffered consequential damages, including, without limitation, expenditures of time and money, the interruption of UDTC's business, lost profits, loss of business, loss of customers, loss of goodwill in its technology management marketing efforts, diminution in the value of UDTC's business, the loss of income, attorney's fess and costs, and other damages, in an amount to be proven at trial. Such consequential losses could not be prevented by any conduct on behalf of UDTC or otherwise.~~

22

WHEREFORE, UDTC prays for damages in an amount in an amount to be proven at trial, plus costs, attorneys' fees, and prejudgment interest beginning from the date of breach, post judgment interest, and any and all other relief that this Court deems equitable and just.

COUNT X — UDTC v. RCT
VIOLATION OF THE COVENANT OF GOOD FAITH
AND FAIR DEALING

94.    Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 though 93, inclusive, of this complaint.

95.    There is implied in the Marketing Agreement a covenant of good faith and fair dealing whereby RCT agreed that it would in good faith and in the exercise of fair dealing, deal with University fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure the University's rights or benefits under the Marketing Agreement, or otherwise.

96.    As alleged herein, RCT breached the covenant of good faith and fair dealing by acting to evade the letter and the spirit of the bargain between the University and RCT by failing to faithfully monitor and police usage of the Licensed Technology and Trade Secrets after sharing such technology with third parties.

97.    Except for those promises, performances, duties and obligations which have been excused by the University, failure to perform or RCT's misconduct, University has performed all its duties, obligations, conditions and covenants under the terms of the Marketing Agreement.

98.    As a direct and proximate result of RCT's breach of the covenant of good faith and fair dealing as alleged herein, UDTC has suffered damages, the exact amount to be proven at the time of trial.

99. ~~As a further, direct and proximate result of RCT's breach of the implied covenant of good faith and fair dealing, UDTC has suffered consequential damages, including, without limitation, expenditures of time and money, the interruption of UDTC's business, lost profits, loss of business, loss of customers, loss of goodwill in the Licensed Technologies and the '625 Patent, diminution in the value of the Licensed Technologies and the '625 Patent, the loss of income, attorney's fees and costs and other damages in an amount according to proof at trial. Such consequential losses could not be prevented by any conduct on behalf of UDTC or otherwise.~~

~~WHEREFORE, UDTC prays for damages in an amount in an amount to be proven at trial, plus costs, attorneys' fees, and prejudgment interest beginning from the date of breach and post judgment interest, and any and all other relief that this Court deems equitable and just.~~

### COUNT XI—UDTC v. Phenomenex ~~and RCT~~
### DEMAND FOR AN ACCOUNTING

88.~~100.~~ Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 87~~99~~, inclusive, of this complaint.

89.~~101.~~ Through Phenomenex's ~~Defendant's~~ secret actions or otherwise in the misappropriation and permitted use of the Licensed Technology and the '625 Patent, UDTC has suffered damages and losses which it cannot completely characterize, quantify and/or further investigate.

90.~~102.~~ As a direct and proximate result of the aforementioned, UDTC stands at a disadvantage with respect to its ability and knowledge to pursue such infringement and use of the Licensed Technology and the '625 Patent.

24

91.~~103.~~—In order to be made whole, UDTC demands that Phenomenex provide to it an accounting of the all past, present and future uses of the Licensed Technology and the '625 Patent and account for all revenues, benefits or otherwise accrued from such use.

~~104.   In order to be made whole, UDTC demands that RCT actively investigate the global market and provide to UDTC an accounting of the all past, present and future uses of the Licensed Technology and the '625 Patent and account for all revenues, benefits or otherwise accrued, or that should have accrued from such use.~~

WHEREFORE, UDTC prays for an accounting and other damages related thereto in an amount to be proven at trial, plus costs, attorneys' fees, and any and all other relief that this Court deems equitable and just.

## COUNT XII— UDTC v. Phenomenex ~~and RCT~~
## IMPOSITION OF AN EQUITABLE
## OR RESULTING TRUST IN FAVOR OF UDTC

92.~~105.~~—Plaintiff hereby repeats, repleads and incorporates herein by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 91~~104~~, inclusive, of this complaint.

93.~~106.~~—Phenomenex, through its fraudulent, calculated, deceitful and secret actions systematically misappropriated, pilfered, stole or otherwise converted the Licensed Technologies and the '625 Patent, all the while employing Unfair Trade Practices to hide its activities from UDTC while simultaneously foreclosing UDTC from the sales and licensing of same.

~~107.   Pursuant to the Marketing Agreement, RCT did or otherwise should have collected certain sums and fees from Phenomenex and/or other third parties for the use of the Licensed Technology and the '625 Patent.  RCT either has or should have revenues from same.~~

94.~~108.~~—The money, goodwill and any and all benefit inuring to Phenomenex as a result of the aforementioned fraudulent, calculated, deceitful and secret actions of misappropriation of, and Unfair Trade Practices related to, the Licensed Technologies and the '625 Patent, Unfair Trade Practices have benefited and continue to benefit Phenomenex to the detriment of UDTC.

~~109.    The money, goodwill and any and all benefit inuring to RCT as a result of the aforementioned Marketing Agreement, to the extent that RCT has not paid UDTC for various uses of the Licensed Technology and the '625 Patent, RCT continues to benefit from the Licensed Technologies and '625 Patent to the detriment of UDTC.~~

95.~~110.~~—Neither ~~RCT nor~~ Phenomenex has <u>not</u> returned or otherwise compensated UDTC for the ill-kept and/or ill-gotten bounty though it remains in the possession of ~~RCT and/or~~ Phenomenex or those over whom ~~RCT and/or~~ Phenomenex may exercise control.

96.~~111.~~—Therefore, a constructive trust (or resulting trust) for the benefit of UDTC should be imposed upon RCT and/or Phenomenex and all of its property as a whole, and specifically upon the real assets, as a result of the fraudulent and unfair manner by unconscionable conduct that caused Phenomenex to be unjustly enriched at the expense of UDTC.

WHEREFORE, plaintiff prays that this Honorable Court impose a Constructive Trust (or a Resulting Trust) upon ~~RCT and/or~~ Phenomenex in an amount to be determined at the time of trial, plus lost interest income, prejudgment and post judgment interest, costs and attorney's fees, in favor of plaintiff UDTC, until such time as all damages are actually recovered from ~~RCT and/or~~ Phenomenex.

WHEREFORE, because the ongoing unauthorized use of the Licensed Technology and the '625 Patent by Phenomenex ~~and the ratification of and/or acquiescence in Phenomenex's activities by RCT~~ has in the past and continues to irreparably harm UDTC, and because unless

26

~~RCT and/or~~ Phenomenex ~~is~~are preliminarily and thereafter permanently enjoined from the unauthorized use of the Licensed Technology and the '625 Patent, UDTC will suffer irreparable, irreversible harm for which a monetary award may not adequately remedy or for which UDTC cannot be made whole, UDTC prays that this Honorable Court will ~~(1)~~ preliminarily and thereafter permanently enjoin ~~RCT and/or~~ Phenomenex from further permitting the use or using the Licensed Technology and the '625 Patent.~~, by issuing a mandatory injunction against RCT ordering it to identify all additional infringers and provide an accounting of such infringement and to pursue and collect any and all royalties, profits or otherwise due for such use and infringement and promptly pay UDTC under the terms and conditions of the Marketing Agreement and, (2) preliminary and thereafter permanently enjoin RCT and Phenomenex from using the Licensed Technology and the '625 Patent.~~

WHEREFORE, UDTC additionally prays for Judgment against the Defendants as follows:

A.      For compensatory damages in an amount according to proof at trial;

B.      For any and all consequential damages due to, without limitation, UDTC's expenditures of time and money, the interruption of UDTC's business, lost profits, loss of business, loss of customers and licensees, loss of goodwill, diminution in the value of UDTC's business efforts, the loss of income, and other damages in an amount according to proof at trial;

C.      For pre-judgment interest at the legal rate from the time of infringement and post judgment interest at the legal rate to the time of payment;

D.      For costs of this suit incurred, including attorneys' fees as provided by applicable law;

27

E.    For the imposition of a constructive or resulting trust upon the assets of

Phenomenex ~~and RCT~~ until such time as judgments be satisfied;

F.    For an accounting from ~~RCT and~~ Phenomenex for all past present and future uses

and violations as outlined in the Counts herein; and the payment of all damages resulting

therefrom;

G.    For all other damages proven at trial, plus costs, attorneys' fees and all such other

relief as the Court deems just and proper.

Dated: December _____, 2005.

**McCARTER & ENGLISH, LLP**


_____
Michael P. Kelly, Esq. (#2295)
A. Richard Winchester, Esq. (#2641)
James J. Freebery, Esq. (#3498)
Christopher A. Selzer, Esq. (#4305)
919 North Market Street, Suite 1800
Wilmington, DE 19899
(302) 984.6300 telephone
**Attorneys for Plaintiff**

MEI\5720018.1