IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UD TECHNOLOGY CORPORATION,    )
    )
        Plaintiff,    )
    )
      v.    )    Civil Action No.:  05-842-GMS
    )
PHENOMENEX, INC.,    )
    )
        Defendant.    )

**DEFENDANT PHENOMENEX, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Elena C. Norman (No. 4780)
*enorman@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Defendant Phenomenex, Inc.*

Dated:  August 21, 2006

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ……………………………………………..1

SUMMARY OF ARGUMENT…………………………………………………………………...3

STATEMENT OF FACTS………………………………………………………………………..4

 A. UDTC………………………………………………………………………………..4

 B. Phenomenex……………………………………………………………………………..5

 C. RCT………………………………………………………………………………..5

 D. The Alleged Patent Infringement…………………………………………………5

 E. The Agreements………………………………………………………………………...6

  1. The Materials Treatment Agreement……………………………………...6

  2. The Evaluation License……………………………………………………7

 F. The Assignments Referenced in the Proposed Amended Complaint……………..9

 G. The Proposed Amended Complaint……………………………………………...10

ARGUMENT……………………………………………………………………………………11

 I. UDTC'S MOTION TO AMEND SHOULD BE DENIED
  BECAUSE THE PROPOSED AMENDED COMPLAINT
  FAILS TO STATE A CLAIM UNDER RULE 12(B);
  AMENDMENT WOULD THEREFORE BE FUTILE…………………………11

 II. THE PROPOSED AMENDED COMPLAINT DOES NOT
  STATE A CLAIM FOR BREACH OF THE MATERIALS
  TREATMENT AGREEMENT OR THE EVALUATION LICENSE;
  AMENDMENT WITH RESPECT TO THESE CLAIMS WOULD
  THEREFORE BE FUTILE………………………………………………………12

  A. UDTC's Claim for Breach of the Evaluation License is
   Time-Barred…………………………………………………………...12

  B. The Proposed Amended Complaint Does Not Adequately
   Allege a Breach of the Express Covenants of the Materials
   Treatment Agreement……………………………………………………17

C.      UDTC's Claim for Breach of the Implied Covenant
of Good Faith and Fair Dealing Has No Basis in Law;
Amendment With Respect to this Claim Should Be
Denied As Futile……………………………………………………18

III.    THE PROPOSED AMENDED COMPLAINT DOES NOT
STATE CLAIMS FOR MISUSE OR MISAPPROPRIATION
OF CONFIDENTIAL INFORMATION PURSUANT TO
THE ARIZONA OR DELAWARE STATUTES; AMENDMENT
WITH RESPECT TO THESE CLAIMS SHOULD THEREFORE
BE DENIED AS FUTILE……………………………………………….22

IV.     FIVE COUNTS OF THE PROPOSED AMENDED COMPLAINT
ARE PREEMPTED BY TRADE SECRET AND PATENT LAW…………..25

V.      AMENDMENT OF UDTC'S COMPLAINT WITH RESPECT TO
ITS DEMAND FOR AN ACCOUNTING AND THE IMPOSITION
OF AN EQUITABLE OR RESULTING TRUST SHOULD BE
DENIED AS FUTILE……………………………………………………29

VI.     UDTC DOES NOT HAVE STANDING FOR ITS CLAIMS EXCEPT
FOR A POST 2001 PATENT LAW CLAIM…………………………………30

A.      UDTC Lacks Standing to Assert Contract Claims Under
Either the Materials Treatment Agreement or the
Evaluation License……………………………………………………30

B.      UDTC Lacks Standing to Assert A Trade Secret
Misappropriation Claims……………………………………………...33

C.      UDTC Lacks Standing to Assert A Claim For Patent
Infringement Arising Prior to 2001………………………………………34

CONCLUSION……………………………………………………………………..36

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

<u>ABKCO Music, Inc. v. Harrisongs Music, Ltd.</u>,
   944 F.2d 971 (2d Cir. 1991) ........................................................................... 34

<u>All West Pet Supply Co. v. Hill's Pet Products Div.</u>,
   840 F. Supp. 1433 (D. Kan. 1993) ............................................................ 24, 25

<u>Allergan, Inc. v. Alcon, Inc.</u>,
   C.A. No. 04-968-GMS (D. Del. Jan. 17, 2006) ........................................... 3

<u>Am. Energy Techs., Inc. v. Colley & McCoy, Inc.</u>,
   C.A. No. 98-398-MMS, 1999 U.S. Dist. LEXIS 7097 (D. Del. Apr. 15, 1999) ...................... 14

<u>Balthazar v. Atlantic City Medical Center</u>,
   137 Fed. Appx. 482 (3d Cir. 2005) .......................................................... 11, 25

<u>Bike v. Kramer</u>,
   46 P.3d 431 (Ariz. Ct. App. 2002) ................................................................ 19

<u>Boerger v. Commerce Ins. Serv.</u>,
   C.A. No. 04-1337, 2005 U.S. Dist. LEXIS 30239 (D.N.J. Nov. 28, 2005) ........................ 11, 12

<u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>,
   489 U.S. 141 (1989) ....................................................................................... 29

<u>Burkons v. Ticor Title Ins. Co. of Cal.</u>,
   813 P.2d 710 (Ariz. 1991) ............................................................................. 22

<u>Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.</u>,
   318 F. Supp. 2d 216 (D. Del. 2004) .............................................................. 28

<u>CertainTeed Corp. v. Celotex Corp.</u>,
   C.A. No. 471, 2005 Del. Ch. LEXIS 11 (Jan. 24, 2005) ........................... 16, 17

<u>Chandler Med. Bldg. Partners v. Chandler Dental Group</u>,
   855 P.2d 787 (Ariz. Ct. App. 1993) .............................................................. 13

<u>Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys.</u>,
   708 A.2d 989 (Del. 1998) .............................................................................. 22

<u>Cito v. Bridgewater Twp. Police Dept.</u>,
   892 F.2d 23 (3d Cir. 1989) ............................................................................ 12

<u>Cypress Associates, LLC, v. Sunnyside Cogeneration. Assoc. Project</u>,
   C.A. No. 1607-N, 2006 Del. Ch. LEXIS 61 (Mar. 8, 2006) ........................ 19

<u>Demetree v. Commonwealth Trust Co.</u>,
   C.A. No. 14354, 1996 Del. Ch. LEXIS 112 (Aug. 27, 1996) ...................... 13

<u>Digital Envoy, Inc. v. Google, Inc.</u>,
   370 F. Supp. 2d 1025 (N.D. Calif. 2005) ...................................................... 28

Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,
    213 F.3d 175 (4th Cir. 2000) ................................................................. 18

Ethypharm S.A. v. Bentley Pharm., Inc.,
    388 F. Supp. 2d 426 (D. Del. 2005).......................................... 25, 26, 28

Fovargue v. Singer,
    270 P.2d 1090 (Ariz. 1954) .................................................................. 13

Gen. Motors Corp. v. New A.C. Chevrolet, Inc.,
    263 F.3d 296 (3d Cir. 2001) ...................................................... 21, 31, 32

George W. Luft Co. Inc., v. Zande Cosmetic Co., Inc.,
    142 F.2d 536 (2d Cir. 1944) .................................................................. 33

H & J Foods, Inc. v. Reeder,
    477 F.2d 1053 (9th Cir. 1973) .............................................................. 33

Halpern v. Barran,
    313 A.2d 139 (Del. Ch. 1973) ............................................................... 16

In re Dean Witter P'ship Litigation,
    C.A. No. 14816, 1998 Del. Ch. LEXIS 133 (July 17, 1998).................. 16

In re NAHC, Inc., Sec. Litig.,
    306 F.3d 1314 (3d Cir. 2002) ............................................................... 12

In re Rockefeller Ctr. Properties, Inc.,
    184 F.3d 280 (3d Cir. 1999) ................................................................... 6

Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.,
    248 F.3d 1333 (Fed. Cir. 2001) ............................................................ 35

Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.,
    336 F.3d 1308 (Fed. Cir. 2003) ............................................................ 35

Johannes R. Krahmer v. Christie's Inc.,
    C.A. No. 606-N (Del. Ch. June 2, 2006) .........................................15, 17

Leal v. Allstate Ins. Co.,
    17 P.3d 95 (Ariz. Ct. App. 2000)........................................................... 23

Marketel Int'l, Inc. v. Priceline.com, Inc.,
    36 Fed. Appx. 423 (Fed. Cir. 2002)....................................................... 24

Minco, Inc. v. Combustion Eng'g, Inc.,
    95 F.3d 1109 (Fed. Cir. 1996) .............................................................. 34

Moore Business Forms, Inc. v. Cordant Holdings Corp.,
    C.A. No. 13911, 1995 Del. Ch. LEXIS 134 (Nov. 2, 1995).................... 20

Nilssen v. Motorola, Inc.,
    963 F. Supp. 664 (N.D. Ill. 1997) ......................................................... 24

Oatway v. Am. Int'l Group, Inc.,
    2002 U.S. Dist. LEXIS 1771 (D. Del. 2002) ........................................... 6

On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,
   386 F.3d 1133 (Fed. Cir. 2004) ................................................................................... 26

Opteum Financial Services, LLC v. Spain,
   406 F. Supp. 2d 1378 (N.D. Ga. 2005) ............................................................... 27, 29

Palese v. Delaware State Lottery Office,
   C.A. No. 1546-N, 2006 Del. Ch. LEXIS 126 (June 29, 2006) ................................. 20

Penalty Kick Mgmt. Ltd. v. Coca Cola Co.,
   318 F.3d 1284 (11th Cir. 2003) ..................................................................... 27, 28, 29

Pension Benefit Gty. Corp. v. White Cons. Indus. Inc.,
   998 F.2d 1192 (3d Cir. 1993) ...................................................................................... 6

Rawlings v. Apodaca,
   726 P.2d 565 (Ariz. 1986) ......................................................................................... 20

Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.,
   C.A. No. 00-589-GMS, 2002 U.S. Dist. LEXIS 5180 (D. Del. Mar. 26, 2002)........................ 6

Savor Inc. v. FMR Corp.,
   C.A. No. 00C-10-249-JRS, 2001 WL 541484 (Del. Super. 2001) ........................... 26

Sicom Sys. Ltd. v. Agilent Techs., Inc.,
   C. A. No. 03-1171-JJF, 2004 U.S. Dist. LEXIS 19966 (D. Del. Oct. 5, 2004) ....................... 35

Smith v. Melson, Inc.,
   659 P.2d 1264 (Ariz. 1983) ....................................................................................... 13

Southwest Sav. and Loan Assoc. v. SunAmp Sys., Inc.,
   838 P.2d 1314 (Ariz. Ct. App. 1992)................................................................ 19, 20, 22

Teachers' Retirement System of Louisiana v. AIG,
   C.A. 20106 (Del. Ch. May 21, 2006) ........................................................................ 30

Tuckman v. Aerosonic Corp.,
   C.A. No. 4094, 1975 Del. Ch. LEXIS 220 (Oct. 21, 1975)...................................... 16

Ultra-Precision Mfg. Ltd., v. Ford Motor Co.,
   411 F.3d 1369 (Fed. Cir. 2005) ................................................................................. 29

Union Pacific R.R. Co. v. Mower,
   219 F.3d 1069 (9th Cir. 2000),............................................................................ 23, 24

Valentine v. Shepard,
   168 P. 643 (Ariz. 1917) ............................................................................................. 13

VLIW Tech. LLC v. Hewlett-Packard Co.,
   C.A. No. 20069, 2005 Del. Ch. LEXIS 59 (May 4, 2005) ....................................... 15

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. v. Pima County,
   88 P.3d 169 (Ariz. Ct. App. 2004)...................................................................... 19, 20

Wells Fargo Bank v. Ariz. Laborers,
   38 P.3d 12 (Ariz. 2002)..............................................................................................20

**Statutes**

10 Del. C. § 8106 ................................................................................................ 15

10 Del. C. § 8121 ........................................................................................... 14, 15

6 Del. C. § 2001 (2005) ...................................................................................... 23

6 Del. C. § 2007 ................................................................................................. 26

Ariz. Rev. Stat. § 12-548 (LexisNexis 2005) .................................................... 15

Ariz. Rev. Stat. § 44-401(b) (LexisNexis 2005) ............................................... 23

Ariz. Rev. Stat. § 44-407 .................................................................................... 26

Cal. Civ. Code Section 337 (Deering 2005) ...................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... passim

**Other Authorities**

Donald J. Wolfe, Jr. & Michael A. Pittenger, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, § 12-7[b] ......................................... 30

MOORE'S FEDERAL PRACTICE § 12.34[1][b] ................................................ 31, 32, 34

Uniform Trade Secrets Act § 1.(2)(ii), Uniform Laws Annotated (West 2005) .......................... 23

Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1487 (2d ed.1990) ...................... 11

## NATURE AND STAGE OF THE PROCEEDINGS

This action arises out of Plaintiff UD Technology Corporation's ("UDTC") claims that

Phenomenex, Inc., a market leader in the manufacture of high-performance liquid

chromatography (HPLC), infringed a patent for the manufacture of HPLC and breached certain

contractual and statutory obligations.  UDTC filed its initial Complaint against Phenomenex and

third-party RCT in December 2005. [1]  Phenomenex and RCT both moved to dismiss the

Complaint.  Phenomenex explained that dismissal was warranted because:  (i) UDTC's claim

under the Evaluation License was time-barred; (ii) UDTC had not alleged a breach of the

Materials Treatment Agreement; (iii) UDTC had not alleged breaches of the implied covenant of

good faith and fair dealing under either agreement; (iv) UDTC's claims for deceptive trade

practices and equitable relief were preempted by state statutes of trade secret misappropriation;

(v) UDTC had not stated claims for violation of the Arizona or Delaware trade secret statutes in

any event; and (vi) UDTC lacked standing for any of its claims, other than a narrow claim for

patent infringement post-dating 2001.  (D.I. 23 and 32)  Briefing on the motions to dismiss was

completed on March 3, 2006.[2]

On July 21, 2006 UDTC filed a Stipulation of Dismissal against RCT and a Motion to

Amend the Complaint.  (D.I. 37 & 38)  UDTC did not meet and confer or otherwise consult with

Phenomenex prior to filing the Motion to Amend, as it was required to do pursuant to Local Rule

7.1.1.  Had UDTC followed Rule 7.1.1, Phenomenex would have consented to the Motion to

Amend, subject to preserving its right to move to dismiss the Amended Complaint to the extent

---

[1]   References to "Complaint" in this brief refer to the original Complaint in this action. (D.I. 1)  References to the "Proposed Amended Complaint" are to the proposed complaint appended to UDTC's Motion to Amend the Complaint (D.I. 38) as Exhibit B.

[2]   Discovery in the case was stayed pending resolution of the motions to dismiss, pursuant to stipulation.  (D.I. 24)

1

the new allegations fail cure the original's Complaints deficiencies. In fact, after UDTC filed its Motion to Amend, Phenomenex contacted UDTC and informed it that it would not oppose the Motion to Amend, provided that UDTC agreed that the stipulation would not waive Phenomenex's right to raise defenses under Rule 12(b). UDTC refused. Phenomenex therefore has no choice but to oppose to UDTC's motion.

UDTC's Proposed Amended Complaint suffers from the same legal deficiencies as did the original Complaint. While the Proposed Amended Complaint removes the allegations against RCT, it adds just one new paragraph pertaining to UDTC. This new paragraph proffers a conclusory allegation that appears to relate to standing (Proposed Amended Complaint ¶ 9) but does not solve any of the pleading problems of the original Complaint. UDTC's Motion to Amend – which consists of only five numbered paragraphs and barely exceeds one page – fails to discuss in any way how the Proposed Amended Complaint solves any of the pleading problems of the original Complaint. Rather, the Motion to Amend asserts only that the motion should be granted because RCT and UDTC settled the issues between them and that the settlement "made extraneous certain allegations of the Complaint [which] should be amended in the interest of judicial economy." (D.I. 38 ¶ 4) UDTC's Motion to Amend has itself not furthered judicial economy, where UDTC filed the motion in breach of Local Rule 7.1.1, rejected Phenomenex's attempt to agree to amendment of the Complaint, and failed to explain how its amendments cured the pleading problems of the original Complaint.

Because the majority of the claims alleged in the Proposed Amended Complaint would not survive dismissal pursuant to Rule 12(b), UDTC's Motion to Amend should be denied on the

2

basis of futility, and the only claim that should remain in this case is UDTC's narrow claim for patent infringement post-dating 2001.[3]

## SUMMARY OF ARGUMENT

The claims set forth in UDTC's Proposed Amended Complaint (except for the narrow claim of patent-infringement post-dating 2001) are insufficient as pleaded and therefore would not survive a motion to dismiss under Rule 12(b). Accordingly, except with respect to the post-2001 infringement claim, UDTC's Motion to Amend should be denied on the basis of futility. In particular, the Proposed Amended Complaint does not cure the deficiencies in its claims based on breaches of either the Materials Treatment Agreement or the Evaluation License. The claim for breach of the Evaluation License is time-barred because it was not asserted before September 29, 2001, and the claims for breach of the Materials Treatment Agreement would fail because the Proposed Amended Complaint does not allege a breach of the express covenants of that agreement. UDTC has also failed to state a claim for breach of the implied covenant of good faith and fair dealing under either agreement. This is because the plain and unequivocal language of those contracts defines the clear boundaries of Phenomenex's confidentiality obligations and thus forecloses UDTC's claims for breach of the implied covenants, on allegations of misuse of confidential or proprietary information with respect to materials provided under the contracts.

---

[3]    In light of UDTC's failure in its Motion to Amend to even address the issue of why the Proposed Amended Complaint corrects the pleading deficiencies of the original Complaint – much less to submit a "full and fair" brief containing its position on this issue – UDTC should be precluded from briefing this issue in its Reply Brief on the Motion to Amend. Such would violate Local Rule 7.1.3(c)(2) (directing that "[t]he party filing the opening brief shall not reserve material . . . which should have been included in a full and fair opening brief."). Allergan, Inc. v. Alcon, Inc., C.A. No. 04-968-GMS, slip op. at 4 (D. Del. January 17, 2006) (refusing to consider arguments made for first time in reply brief in support of motion to amend).

In addition, the Proposed Amended Complaint does not cure the deficiencies in UDTC's statutory claims (under either Delaware or Arizona law) for misappropriation of confidential information. RCT and Phenomenex's specific contractual agreements with respect to the metes and bounds of the duty of confidentiality, again, define the scope of the parties' obligations – not the statutory law that UDTC attempts to rely on. Moreover, the Delaware and Arizona trade secret statutes displace five of the counts UDTC attempts to allege in the Proposed Amended Complaint (the counts for alleged violation of Delaware's Deceptive Trade Practices Act (Count VI); Unjust Enrichment (Count VII); Conversion (Count VIII); Accounting (Count XI); and an Equitable or Resulting Trust (Count XII).) Separately, UDTC cannot state claims for a Demand for Accounting or the Imposition of an Equitable or Resulting Trust, because those are not stand-alone claims, but remedies for substantive causes of action.

Finally, aside from patent infringement post-dating 2001, UDTC does not have standing for any of the claims it attempts to allege in the Proposed Amended Complaint. UDTC's Proposed Amended Complaint still fails to adequately allege claims pursuant to the contracts at issue or the trade secret statutes of Arizona or Delaware. With regard to the claims for pre-2001 patent infringement, UDTC has failed to allege that UDTC was assigned rights to bring suit retroactively for the alleged patent infringement. Accordingly, except for the claim for post-2001 patent infringement, UDTC's Motion to Amend should be denied on the basis of futility.

## STATEMENT OF FACTS

### A.    UDTC

Plaintiff UDTC is a non-profit Delaware corporation which was founded in 2002. It is separate from the University of Delaware. Its purpose is to own and manage intellectual property developed through certain of the University of Delaware's research and doctoral

4

programs. (Proposed Amended Complaint ¶ 1.) According to its website, UDTC "aids in bringing new technologies into the market to compete with colleges and universities which currently have a separate technology transfer arm."

B.    Phenomenex

Phenomenex is a California corporation engaged in the business of developing, manufacturing and supplying columns and accessories for the separation, analysis and purification of chemicals and biochemicals. Phenomenex's current product lines are primarily in the areas of liquid chromatography (HPLC), gas chromatography, solid phase extraction, and gel extraction.

C.    RCT

Third-party RCT, who was named as a defendant in UDTC's original Complaint, is a non-profit Delaware corporation engaged in the development of technology investment, development and marketing. (Complaint ¶ 6.) RCT's business is to partner with affiliated institutions to license patentable and patented processes, products and procedures to third parties. (Id.) RCT, not UDTC or the University of Delaware, entered into the contracts with Phenomenex that form the basis of UDTC's claims in this case. RCT has been dismissed from this action. (D.I. 37)

D.    The Alleged Patent Infringement

The Proposed Amended Complaint asserts that Phenomenex willfully infringes United States Patent No. 5,599,625 (the "'625 patent"), which addresses certain aspects of high pressure liquid chromatography (HPLC) materials containing trichlorosilanes. The Proposed Amended Complaint alleges generally that Phenomenex's Jupiter brand HPLC products and other of Phenomenex's HPLC column products infringe the '625 patent. (Proposed Amended Complaint

¶ 36.) Certain (but not all) of the products in Phenomenex's Jupiter line are HPLC materials containing trichlorosilanes. The inventors of the '625 patent (the "Inventors") are not parties to this lawsuit.

    E.    <u>The Agreements</u>

The Proposed Amended Complaint alleges breaches of two long-expired agreements to which Phenomenex and third-party RCT were parties: (a) a "Materials Treatment Agreement" between Phenomenex and RCT dated August 25, 1992; and (b) an "Evaluation License and Right of First Refusal" between Phenomenex and RCT, dated August 29, 1993 (the "Evaluation License"). These agreements are attached to this motion (<u>see</u> footnote 4, infra), and are summarized below. (<u>See</u> Exs. A & B.)[4]

    1.    <u>The Materials Treatment Agreement</u>

RCT and Phenomenex entered into the Materials Treatment Agreement as of August 28, 1992. (Proposed Amended Complaint ¶ 18.) The agreement, which is less than one and a half

---

[4]    This Court is permitted to review the agreements referenced by UDTC in the Proposed Amended Complaint as part of the determination of whether UDTC's Motion to Amend should be denied on the basis of futility, insofar as determination of whether the Proposed Amended Complaint would be futile turns upon the same legal standard used to assess a motion to dismiss under Rule 12(b). Consideration of the attached agreements is appropriate on a motion to dismiss under Rule 12(b), and does not convert such motion into one for summary judgment. <u>See</u> In re Rockefeller Ctr. Properties, Inc., 184 F.3d 280, 287 (3d Cir. 1999); <u>Oatway v. Am. Int'l Group, Inc.</u>, 2002 U.S. Dist. LEXIS 1771, at *2 (D. Del. 2002) (Sleet, J.) (considering agreements referenced in complaint for purposes of motion to dismiss; granting motion). In addition, "a district court may examine an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Pension Benefit Guar. Corp. White Cons. Inds. Inc.</u>, 998 F.2d 1192 (3d Cir. 1993)(in evaluating 12(b)(6) motion district court properly considered a contract upon which allegations of complaint relied.) In the <u>Pension Benefit</u> case, the Third Circuit explained that the policy behind this rule is to prevent plaintiffs from surviving motions to dismiss by deliberately omitting from a complaint documents upon which their claims are based. <u>Id</u>. at 1196 ("Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.")

pages, is straightforward and narrow in scope. (See Ex. A.) According to the agreement, the

INVENTORS had assigned the INVENTION that was the subject of U.S. Patent Application No.

900,215 to RCT. It states that Phenomenex would provide to the INVENTORS a sample of

materials to be treated according to the method of the alleged invention, and that RCT would

request INVENTORS to treat such materials for Phenomenex. Thereafter, the treated materials

were to be returned to Phenomenex for research and testing. (Ex. A, ¶¶ 2, 3, & 4.) The contract

provided that Phenomenex would "[u]se the treated materials solely for noncommercial research

purposes" and that "[u]pon completion of its research, [would] destroy or return to INVENTORS

any unused portions of the treated materials, including derivatives, fragments or modifications."

(Id. at ¶ 3(a)(iii).) It further provided that Phenomenex would not (i) use the treated materials "in

any study other than those in direct furtherance of its research under this Agreement";

(ii) [t]ransfer the treated materials from its facility to any other site owned or controlled by

another person; or "[u]se the treated materials for any commercial or nonacademic purposes."

(Id. at ¶ 3(b).)

    The Materials Treatment Agreement did not confer upon Phenomenex any obligations

related to confidentiality. Nor did it reference any third-party beneficiaries.[5]

        2.     The Evaluation License

    The Evaluation License was entered into between Phenomenex and RCT as of March 29,

1993, defined in the agreement as "the "Effective Date." (Ex. B, Introductory ¶.) This

agreement was an exclusive license for Phenomenex "to make and use LICENSED PRODUCTS

for evaluation of the INVENTION; and to practice LICENSED PROCESSES for evaluation of

the INVENTION," in exchange for a license issue fee of $2,000. (Ex. #B, § 2.1.) The

---

[5]     The Materials Treatment Agreement did not contain a choice of law provision.

                                              

agreement conferred Phenomenex with "a right of first negotiation and an Evaluation License to evaluate the INVENTION free from suit by LICENSOR for infringement of the PATENT CLAIMS. . ." (Ex. B, § 1.4.) The agreement defined INVENTION as products described in U.S. Patent Application Number 900,215. (Ex. B, §§ 8.2, 8.5.) The terms of the license provided that it was to "expire and have no further effect on the date six (6) months after the EFFECTIVE DATE." (Ex. B, § 2.4.) Therefore, the Evaluation License expired by its terms on September 29, 1993.

The Evaluation License included an express contractual description of Phenomenex's obligations vis-à-vis information provided to Phenomenex during the life of the license. In this regard, the agreement provided, in pertinent part:

> SECTION 4.2.  Non-Use and Non-Disclosure.  LICENSEE [Phenomenex] agrees that, for a period of five (5) years after the date of LICENSEE's receipt of PROPRIETARY INFORMATION, it shall not: (i) commercially use any PROPRIETARY INFORMATION; or (ii) disclose to any third party any PROPRIETARY INFORMATION disclosed to it under this Agreement. . . .

(Ex. B.) Apart from this confidentiality provision, the Evaluation License did not contain any provision barring use of the alleged invention or confidential information.

The Evaluation License expressly and unambiguously provided that there were no third-party beneficiaries to the obligations provided therein and that no third-parties were permitted to enforce the terms of the contract:

> SECTION 7.4.  No Third-Party Beneficiaries.  None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third-party.

The agreement further provided that it was to be "construed and enforced under the laws of the State of Arizona." (Ex. B, § 7.8.)

8

F.    The Assignments Referenced in the Proposed Amended Complaint

The Proposed Amended Complaint references a vague series of assignments – none of which it attaches – pursuant to which Plaintiff UDTC purportedly acquired the rights to bring this lawsuit.  As set forth herein, those assignments do not constitute an adequate basis to confer standing upon UDTC to bring the instant claims.  In sum, the chain of assignments alleged is as follows:

(a)    Inventors of the '625 patent were Dr. Mary Wirth and Dr. Hafeez O. Fatunmbi, both of whom were employed by the University of Delaware in or around 1991 when the research allegedly giving rise to the '625 patent was conducted.  (Proposed Amended Complaint ¶¶ 14-16.)

(b)    On April 1, 1990, the University granted to RCT certain rights, title and interest in certain University technologies, including those developed by the Inventors, and corresponding patent rights (foreign and domestic) in such technologies, based on a Marketing Agreement between RCT and the University. (See Proposed Amended Complaint ¶ 17.)  Pursuant to that agreement, on June 17, 1992, RCT filed U.S. Patent Application 07/900,215.  (Id.)  As a result of that application, U.S. Patent No. 5,599,625 issued on February 4, 1997 in the name of the Inventors. (Proposed Amended Complaint ¶ 27; Ex. D.)   Based on the Marketing Agreement, RCT became the licensee of the '625 patent upon its issuance. (See id.)

(c)    The Proposed Amended Complaint alleges that on July 24, 2001, RCT assigned its rights to the patent-at-issue back to the University of

9

Delaware.  The underlying instrument by which such assignment was effected is not referenced in, or attached to, the Proposed Amended Complaint or the original Complaint.  A copy of the agreement and the accompanying deed of assignment (collectively, the "2001 Assignment Agreement") is attached to this motion at Exhibit C.  That agreement and the deed demonstrate that the rights transferred from RCT to the University were RCT's "entire right, title and interest in" the '625 patent and the invention described in the patent.  (See Ex. C.)

UDTC alleges that at some unspecified point in time after July 24, 2001, the University of Delaware assigned to Plaintiff UDTC "all of its past, present and/or future right, title and interest in and to the technology and any agreements, causes of action and/or third party beneficiary rights associated with the '625 patent." (Proposed Amended Complaint ¶ 10.)  The underlying instrument by which such assignment was effected is not referenced in nor attached to the Proposed Amended Complaint.

G.     The Proposed Amended Complaint

The Proposed Amended Complaint is virtually identical to the original Complaint except insofar as UDTC has removed the allegations that it originally attempted to state against RCT, and added one conclusory paragraph apparently related to UDTC's standing to bring this action. Specifically, UDTC has added the following paragraph:

> At all times relevant, [the University of Delaware] was the owner of the intellectual property at issue herein, including the right to sue for past, present and future infringement, and to pursue contract damages pursuant to the contracts identified herein, between RCT and Phenomenex.  (Proposed Amended Complaint ¶ 9.)

UDTC does not explain how this new allegation cures any of the pleading deficiencies of the original Complaint.

As set forth herein, with or without ¶ 9, the claims UDTC attempts to allege would not withstand a Rule 12 motion to dismiss. The Motion to Amend should therefore be denied as futile in pertinent part.

## ARGUMENT

I.    UDTC'S MOTION TO AMEND SHOULD BE DENIED BECAUSE THE PROPOSED AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(B); AMENDMENT WOULD THEREFORE BE FUTILE

The District Court must deny a motion to amend a complaint where such amendment would be futile. See Balthazar v. Atlantic City Medical Center, 137 Fed. Appx. 482, 488, 490 (3d Cir. 2005) (affirming district court's denial of motion to amend complaint based on futility of proposed amendment). See also Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE, § 1487, 15 637 (2d ed. 1990) (Court may deny leave to amend where proposed amendment is "frivolous or advances a claim or defense that is legally insufficient on its face."). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. . . .In assessing futility, a district court must apply the same standard of legal sufficiency that applies under Fed. R. Civ. P. 12(b)(6)." Boerger v. Commerce Ins. Serv., C.A. No. 04-1337, 2005 U.S. Dist. LEXIS 30239, at *7 (D.N.J. Nov. 28, 2005) (denying motion to amend complaint, in part, on the basis of futility where claim against new defendant was time-barred) (internal citation omitted). Here, as set forth below, amendment with respect to the claims set forth in the Proposed Amended Complaint (except for a narrow claim for patent infringement post-dating 2001) would be futile. Accordingly, the Motion to Amend should be denied with respect to each of those claims.

II.    THE PROPOSED AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR
       BREACH OF THE MATERIALS TREATMENT AGREEMENT OR THE
       EVALUATION LICENSE; AMENDMENT WITH RESPECT TO THESE CLAIMS
       WOULD THEREFORE BE FUTILE

The Proposed Amended Complaint – like the original Complaint – purports to allege

claims for breach of the express and implied covenants of both the Materials Treatment

Agreement and the Evaluation License.  Phenomenex argued in its Motion to Dismiss the

original Complaint that these claims warranted dismissal because (i) UDTC's claims under the

Evaluation License Agreement were time-barred; (ii) the Complaint did not adequately allege a

breach of any express covenant of the Evaluation License; and (iii) the Complaint did not allege

any fact that would constitute a breach of the implied covenant of good faith and fair dealing

with respect to either contract.

UDTC's Motion to Amend does not even attempt to explain how its proposed pleading

cures any of these fatal deficiencies.[6]  As set forth below, UDTC's Proposed Amended

Complaint suffers from the same fatal problems as did the original Complaint.

A.    UDTC's Claim for Breach of the Evaluation License is Time-Barred

UDTC's claim that Phenomenex violated the Evaluation License is time-barred, based on

the face of the Proposed Amended Complaint.  Accordingly, UDTC should not be permitted to

amend its Complaint with respect to this claim.  In re NAHC, Inc., Sec. Litig., 306 F.3d 1314,

1332 (3d Cir. 2002) (amendment of complaint was futile where the claims were time-barred

under statute of limitations); Boerger, 2005 U.S. Dist. LEXIS 30239.  See also Cito v.

Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989) (statute of limitations defense can

be resolved on basis of pleadings; affirming dismissal on Rule 12(b)(6) motion where "the time

---

[6]    As set forth above, this Court should strike any attempt by UDTC to address this issue for
       the first time in its reply brief on the Motion to Amend.  See footnote 3 supra.

alleged <u>in the statement of a claim</u> shows that the cause of action has not been brought within the statute of limitations.") (internal citations omitted) (emphasis in original).

Statute of limitations questions involve two related inquiries:  identifying when the action arose and ascertaining the applicable limitations period.  Here, the plain language of the Evaluation License and the statutory limitations period demonstrate that any claim under that agreement would be time-barred.  Under Arizona law[7] "[t]he construction of a contract is a question of law where the terms of the agreement are plain and unambiguous." <u>Smith v. Melson, Inc.</u>, 659 P.2d 1264, 1266 (Ariz. 1983) (directing the trial court to order specific performance of an unambiguous contract).[8]

The confidentiality provision in the Evaluation License placed a plain and unambiguous limit on the time period – five years – during which Phenomenex was obligated to refrain from using any allegedly proprietary information shared under the license.  That provision provides:

---

[7]    RCT and Phenomenex agreed in Section 7.8 of the Evaluation License that Arizona law governed that contractual relationship.

[8]    Arizona law on this point is the same as Delaware law:  to determine whether contract language is plain and unambiguous, a court should read the language in question "in light of the parties' intentions as reflected by their language and in view of all the circumstances." <u>Id.</u> at 1266; <u>accord</u> <u>Demetree v. Commonwealth Trust Co.</u>, C.A. No. 14354 1996 Del. Ch. LEXIS 112, at *11-12 (Aug. 27, 1996).  ("Where parties have entered into an unambiguous integrated written contract, the contract's construction should be that which would be understood by an objective reasonable third party.")  "If the intention of the parties is clear from such a reading, there is no ambiguity." <u>Smith</u>, 659 P.2d at 1266.  "The mere fact that parties disagree as to its meaning does not establish an ambiguity," <u>Chandler Med. Bldg. Partners v. Chandler Dental Group</u>, 855 P.2d 787, 791 (Ariz. Ct. App. 1993), and "[i]t is only where a contract is ambiguous or equivocal that extrinsic evidence may be resorted to for the purpose of determining the real meaning of the contract." <u>Fovargue v. Singer</u>, 270 P.2d 1090, 1093 (Ariz. 1954) (quoting <u>Valentine v. Shepard</u>, 168 P. 643, 644 (Ariz. 1917)).

064951.1001

SECTION 4.2. <u>Non-Use and Non-Disclosure</u>. LICENSEE [Phenomenex] agrees that, <u>for a period of five (5) years</u> after the date of LICENSEE's receipt of PRO-PRIETARY INFORMATION, it shall not:    (i) commercially use any PROPRIETARY INFORMATION; or (ii) disclose to any third party any PROPRIETARY INFORMATION disclosed to it under this Agreement. . . (emphasis added).

Section 4.2 clearly and unambiguously restricted Phenomenex's ability to use and disclose allegedly proprietary information for exactly five years after receipt of the information. Neither Section 4.2 nor any other section of the agreement imposed any confidentiality (or other) restriction on Phenomenex after the five-year period terminated, e.g., on (or before) September 29, 1998 which was six months after the agreement's Effective Date of March 29, 1993. (<u>See</u>, <u>e.g.</u>, Ex. B, § 2.4 ("The Evaluation License shall expire and have no further effect on the date six (6) months after the EFFECTIVE DATE").)  Therefore, at the very latest (assuming that Phenomenex did not receive any proprietary information until the last effective date of the agreement), Phenomenex's confidentiality obligations pursuant to the Evaluation License expired as of <u>September 29, 1998</u>.  Indeed, UDTC agrees, as it has not asserted in the briefing on the Motion to Dismiss the original Complaint, or in the Proposed Amended Complaint, that its claim under the Evaluation License arose any later than September of 1998.

The applicable statute of limitations then determines whether an action for allegedly breaching this provision of the Evaluation License that on or before September 1998 is time-barred.  Delaware's borrowing statute, 10 Del. C. § 8121, applies.  <u>See</u> <u>Am. Energy Techs., Inc.</u> <u>v. Colley & McCoy, Inc.</u>, C.A. No. 98-398-MMS, 1999 U.S. Dist. LEXIS 7097, at *7, *9, (D. Del. Apr. 15, 1999).  That statute provides, in pertinent part:

Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. …

10 Del. C. § 8121.

Here, because Delaware's three-year state of limitations for contractual claims is shorter than those of the other states where the cause of action potentially occurred, the three-year statute governs.[9] Under Delaware law, an action for a breach of contract accrues at the time of the alleged breach, regardless of whether the plaintiff was then aware of the injury. VLIW Tech. LLC v. Hewlett-Packard Co., C.A. No. 20069, 2005 Del. Ch. LEXIS 59, at *41 (May 4, 2005). Therefore, because the latest date upon which a breach of the confidentiality provisions of the Evaluation License could have occurred was on September 29, 1998, and because, under Delaware's three-year statute of limitations, any claims should have been asserted before September 29, 2001, UDTC's claim, which was not asserted until December 2005, is time-barred by at least four years.

To the extent UDTC attempts to argue that the statute of limitations was somehow tolled based on alleged fraudulent concealment by Phenomenex of the breach, or that the alleged contractual breach was "inherently unknowable" (both of which arguments were raised by UDTC in opposition to Phenomenex's Motion to Dismiss the original Complaint), those arguments are foreclosed because neither exception to Delaware's "accrual" rule for causes of actions applies here. Delaware courts have narrowly construed "tolling" exceptions. Johannes R. Krahmer v. Christie's Inc., C.A. No. 606-N, slip op. at 8 (Del. Ch. June 2, 2006. First, it is well-settled that "[a] party asserting that tolling applies bears the burden of pleading specific

---

[9]    The cause of action would have arisen in either Delaware, California or Arizona. For example, Phenomenex is a California corporation (Proposed Amended Complaint ¶ 2), and the Evaluation Agreement was governed by Arizona law. Delaware law sets forth a three-year statute of limitations. See 10 Del. C. § 8106 (setting forth three-year statute of limitations). Statutory limitations periods for contractual breaches in Arizona and California are six years and four years, respectively. See Ariz. Rev. Stat. § 12-548 (LexisNexis 2005); Cal. Civ. Code Section 337 (Deering 2005).

facts to demonstrate that the statute of limitations is, in fact, tolled." CertainTeed Corp. v. Celotex Corp., C.A. No. 471, 2005 Del. Ch. LEXIS 11, at *21 (Jan. 24, 2005) (emphasis added). The Proposed Amended Complaint does not allege any fraud or fraudulent concealment of the alleged contractual breaches, much less with the specificity required by Rule 9(b). See, e.g. Tuckman v. Aerosonic Corp., C.A. No. 4094, 1975 Del. Ch. LEXIS 220, at *7 (Oct. 21, 1975) (granting motion to dismiss on grounds of statute of limitations, and denying plaintiff's argument that fraudulent concealment tolled statute; "Initially, there does not appear to be any express allegation of fraudulent concealment. That would seem dispositive. . . .")

Moreover, the Proposed Amended Complaint does not allege any affirmative act of concealment or misrepresentation by Phenomenex which was intended to put UDTC "off the trail of inquiry." Halpern v. Barran, 313 A.2d 139, 143-44 (Del. Ch. 1973) (dismissing certain claims as barred by statute of limitations on 12(b)(6) motion) (emphasis added). Nor does it allege that Phenomenex knowingly made statements to prevent inquiry by UDTC. See CertainTeed, 2005 Del. Ch. LEXIS 11, at *30. UDTC's fraudulent concealment assertions are facially inconsistent with its allegation that "Phenomenex has been selling Jupiter HPLC columns around the globe, as though it owned the technology disclosed and claimed in the '625 Patent." (Proposed Amended Complaint ¶ 28.)

Further, UDTC fails to allege in its complaint that the alleged breach was "inherently unknowable." See In re Dean Witter Partnership Litigation, C.A. No. 14816, 1998 Del. Ch. LEXIS 133 at *19-*20, *40 (Jul. 17, 1998) (dismissing claims as time-barred on motion to dismiss, despite plaintiff's argument that wrongs were inherently unknowable and fraudulently concealed by defendants). Under the applicable law, a product allegedly incorporating proprietary information would not constitute an "inherently unknowable" situation, particularly

16

where (i) UDTC alleges that the Jupiter product was available on the marketplace (Proposed Amended Complaint ¶ 28); and (ii) UDTC alleges that, prior to bringing this lawsuit, it was able to conduct an "investigation" and conclude that there had in fact been an alleged breach o contract. (Id.) UDTC therefore could not meet its burden, based on the Proposed Amended Complaint of establishing a "tolling" exception to the statute of limitations. See CertainTeed at *21 (holding that plaintiff bears the burden to plead facts demonstrating the applicability of a tolling exception); Krahmer, C.A. No. 606-N, slip op. at 18 (denying motion to amend as futile where claims would be time-barred and no "tolling" exception to statue of limitations applied.)

Any claims arising under the Evaluation License are therefore time-barred and should be denied on the basis of futility.

B.    The Proposed Amended Complaint Does Not Adequately Allege
      a Breach of the Express Covenants of the Materials Treatment Agreement

The Proposed Amended Complaint alleges that Phenomenex breached the Materials Treatment Agreement in two ways, by:

a.    Employing the material that is the subject of the Patent Application and thereafter, the Licensed Technology, for a purpose other than research or evaluation;

b.    Sharing the material that is the subject of the Patent Application and thereafter, the Licensed Technology, with third parties, and profiting thereby.

(Proposed Amended Complaint ¶ 45 (a)-(b).)[10]

---

[10]    The Proposed Amended Complaint defines the phrase "Licensed Technology" as "meaning all technology associated with the '625 Patent and any trade secrets and/or know how associated therewith, as well as any technology, including any trade secrets and/or know how associated therewith, that is encompassed by any of the Marketing Agreement [to which Phenomenex is not a party], the Materials Treatment Agreement and the Evaluation License, including the Licensed [P]roducts and Licensed Processes as defined in those Agreements." (Proposed Amended Complaint ¶ 34.)

The express and unambiguous terms of the Materials Treatment Agreement specifically required Phenomenex to treat as confidential only the materials treated and provided to Phenomenex pursuant to that agreement. The Materials Treatment Agreement does not impose any obligations upon Phenomenex with respect to products covered by the alleged invention and/or that utilize alleged trade secrets or know how related to the invention. Accordingly, even assuming (as the Court would be required to do on a Rule 12(b)(6) motion) that Phenomenex uses information transferred under the Materials Treatment Agreement in its current products, UDTC has failed to state a claim for breach because the Materials Treatment Agreement clearly and unambiguously fails to bar such activity. See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship., 213 F.3d 175, 181 (4th Cir. 2000) ("Because the lease expressly gives J.D. Associates the right to take the actions alleged by Eastern Shore in the complaint, the district court properly dismissed Eastern Shore's claim related to these express provisions.").

C.    UDTC's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Has No Basis in Law; Amendment With Respect to this Claim Should Be Denied As Futile

UDTC 's Proposed Amended Complaint alleges that Phenomenex breached the covenant of good faith and fair dealing implied in the Materials Treatment Agreement and Evaluation License by "acting to evade the letter and spirit of the bargain between the owner of the Licensed Technology and Phenomenex." (Proposed Amended Complaint ¶ 51.) The crux of this claim is that Phenomenex's alleged misuse of certain licensed technology and trade secrets received pursuant to the Evaluation License and the Materials Treatment Agreement constituted breaches of the implicit covenants of those agreements. However, the plain and unequivocal language of the contracts at issue, which defines the clear boundaries of Phenomenex's confidentiality

18

obligations with respect to materials provided pursuant to those contracts, forecloses UDTC's claims relating to breach of the implied covenants.

Under Arizona law, which governs the contracts at issue,[11] as under Delaware law, a covenant of good faith and fair dealing is implied into every contract to protect contracting parties from having their counterparties acting in ways that, although not explicitly prohibited by the contract, would be inconsistent with the parties' reasonable expectations under the contract:

> [C]ontracting parties, hard as they may try, cannot reduce every understanding to a stated term. Instances inevitably arise where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain. . . The law of good faith, though inexact, attempts a remedy for such abuse.

Southwest Sav. and Loan Assoc. v. SunAmp Sys., Inc., 838 P.2d 1314, 1319 (Ariz. Ct. App. 1992). Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. v. Pima County, 88 P.3d 169, 176 (Ariz. Ct. App. 2004); Bike v. Kramer, 46 P.3d 431, 434 (Ariz. Ct. App. 2002). In short, the implied covenant ensures that parties cannot use contractual discretion "for a reason outside the contemplated range – a reason beyond the risks assumed by the party claiming a breach." Southwest Savings, 838 P.2d at 1319.

As a result, courts have emphasized that implying contractual duties such as the covenant for breach of the duty of good faith and fair dealing is an "'occasional necessity'. . . [which should occur] 'only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of. . .had they thought to negotiate with respect to that matter.'" Cypress Assoc., LLC. v. Sunnyside Cogeneration. Assoc. Project, C.A. No. 1607-N, 2006 Del. Ch. LEXIS 61, *30 (Mar. 8, 2006) (internal citation omitted) (granting motion to

---

[11]    Arizona law explicitly governs the Evaluation License. The Materials Treatment Agreement would likely also be interpreted under Arizona law: it was entered into between the same parties as the Evaluation License, addresses the same subject matter and was executed less than a year prior to that agreement.

064951.1001

dismiss claims of implied contractual covenant of good faith and fair dealing; "The implied covenant of good faith and fair dealing does not exist as a license for the judiciary to rewrite contracts."); Palese v. Del. State Lottery Office, C.A. No. 1546-N, 2006 Del. Ch. LEXIS 126 (June 29, 2006) (dismissing claim for breach of the implied covenant of good faith and fair dealing on a motion to dismiss under 12(b)(6); where subject of alleged wrong was addressed in the parties' agreement). Policy reasons support limiting the circumstances in which breach of the covenant is found: "If contracting parties cannot profitably use their contractual powers without fear that a jury will second guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires." Wells Fargo Bank v. Ariz. Laborers, P.3d 12, 30 (Ariz. 2002)

The touchstone of interpreting the parties' reasonable expectations under a contract – and what conduct the parties would have specifically prohibited had they contemplated it – is the express language of the contract itself. See Rawlings v. Apodaca, 726 P.2d 565, 571 (Ariz. 1986) (covenant implied in insurance contract did not "entitle[] the insured to payment of claims that are excluded by the policy, [] to protection in excess of that which is provided for in the contract, [n]or to anything inconsistent with the limitations contained in the contract."); Waterfall 88 P.3d at 176 ("contracts are designed to memorialize and enforce the intentions of the parties, the express terms of a contract remain the best evidence in assessing the parties reasonable expectations under that contract") (citing Southwest Savings standard).

Accordingly, looking to the contractual language, courts dismiss claims for breaches of the duty of good faith and fair dealing under Rule 12(b)(6) where the parties could not have intended the conduct at issue to be contractually prohibited – even where a complaint has alleged that certain conduct was conducted in "bad faith". See Moore Business Forms, Inc. v. Cordant

20

Holdings Corp., C.A. No. 13911, 1995 Del. Ch. LEXIS 134, *26 (Nov. 2, 1995) (dismissing

claim for breach of implied covenant of good faith and fair dealing on a motion to dismiss under

Rule 12(b)(6) notwithstanding allegation that defendant acted in bad faith; implied duties

plaintiff sought to enforce were inconsistent with the scheme of express duties set forth in the

contract); Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 332 (3d Cir. 2001)

(claim for breach of duty of good faith and fair dealing was properly dismissed on the pleadings).

　　　　Applying these well-settled rules, UDTC's allegations regarding purported breaches of

confidentiality could not support its claim for the breach of good faith and fair dealing.

Phenomenex and RCT clearly and unambiguously bargained in Section 4.2 of the Evaluation

License for a 5-year non-use and non-disclosure period for any allegedly confidential

information transferred under the Evaluation License.  The disclosing parties to the Evaluation

License expressly assumed the risk that Phenomenex might use RCT's confidential information

after the five-year period expired.  The policy reasons behind enforcing provisions like Section

4.2 according to their plain language is straightforward:  trade secret litigation is very expensive

and reasonable contracting parties therefore negotiate contractual limitations periods to balance

(i) legitimate protection of the disclosed information during the time the information is likely to

have value, with (ii) the receiving party's need to protect its legitimate future business operations

and technology developments from claims of trade secret theft long after the disclosed

information is likely to have value.

　　　　Indeed, the alleged breach asserted by UDTC is the very "risk assumed by" UDTC in

Section 4.2.  Without the protections of provisions like 4.2, reasonable objective parties who

have contracted to receive confidential information – like Phenomenex – would be very reluctant

to accept confidential information at all.  UDTC should not now be permitted to raise claims

064951.1001

"under a vague standard of good faith" where such claims were "expressly rejected at the time of contracting," as evidenced by the clear and unambiguous language of the Evaluation License. Southwest Savings, 838 P.2d at 1319. See also Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys., 708 A.2d 989, 994 (Del. 1998) (affirming Court of Chancery's decision to dismiss plaintiff's claim for implied covenant of good faith and fair dealing under Rule 12(b)(6) where Court of Chancery refused to imply additional obligations into an unambiguous agreement). UDTC's claim for breach of the duty of good faith and fair dealing implied in the Materials Treatment Agreement fares no better because the Proposed Amended Complaint does not allege any conduct that meets the standard of Southwest Savings in connection with that agreement. (See Proposed Amended Complaint ¶ 51.)[12]

III.    THE PROPOSED AMENDED COMPLAINT DOES NOT STATE CLAIMS FOR MISUSE OR MISAPPROPRIATION OF CONFIDENTIAL INFORMATION PURSUANT TO THE ARIZONA OR DELAWARE STATUTES; AMENDMENT WITH RESPECT TO THESE CLAIMS SHOULD THEREFORE BE DENIED AS FUTILE

UDTC's Proposed Amended Complaint alleges that Phenomenex has misappropriated trade secrets in violation of Arizona and Delaware statutes. These claims are without basis and amendment with respect to them should therefore be denied based on futility.

Under the Delaware and Arizona trade secret statutes – both of which are based on the Uniform Trade Secrets Act – state trade secret law uses parties' agreement with respect to the boundaries of their duties of confidentiality to define the scope of impermissible activities. This

---

[12]    Although courts in Arizona have recognized a tort claim for breach of the duty of good faith and fair dealing under certain circumstances, UDTC has not alleged such a tort claim here. See, e.g., Burkons v. Ticor Title Ins. Co. of Cal., 813 P.2d 710, 720 (Ariz. 1991). Nor has UDTC alleged the type of "special relationship" which is a predicate for this type of tort recovery under Arizona law. Such a "special relationship" can arise from fiduciary duties, contracts for the public interest, or where the object of a contract is

follows from the statutory language which defines the scope of duty of confidentiality based on

the relationship or agreement between the parties:

> (2)    "Misappropriation" means:
>
> *        *        *
>
> > (ii) [D]isclosure or use of a trade secret of another <u>without express or implied consent</u> by a person who:
> >
> > > (A) used improper means to acquire knowledge of the trade secret, or
> > >
> > > (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
> > >
> > > > (I) derived from or through a person who had utilized improper means to acquire it;
> > > >
> > > > (II) <u>acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use</u>; or
> > > >
> > > > (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . .

Uniform Trade Secrets Act § 1.(2)(ii), Uniform Laws Annotated (West 2005) (emphasis added);

6 Del. C. § 2001 (2005); Ariz. Rev. Stat. § 44-401(b) (LexisNexis 2005).

Applying this statute, the courts have barred claims for trade secret misappropriation like

those asserted by UDTC here.  Thus, in <u>Union Pacific R.R. Co. v. Mower</u>, 219 F.3d 1069 (9th

Cir. 2000), the court addressed a situation where an agreement "limited its protection of

[confidential] information to a distinct period of time, ending December 31, 1995." <u>Union</u>

<u>Pacific</u> at 1075.  Concluding that parties may "alter by negotiation duties that would otherwise be

governed by state law," the court held that, pursuant to the unambiguous meaning of the

---

service, professional help, security or other intangibles.  <u>Leal v. Allstate Ins. Co.</u>, 17 P.3d
95, 98 (Ariz. Ct. App. 2000).

23

agreement, the agreement's nondisclosure requirements did not apply after December 31, 1995.

Id. at 1074. Similarly, the U.S. District Court for the Northern District of Illinois has held that:

> It must be recognized that the Illinois [Trade Secret] Act does not purport to limit or override an express contractual arrangement governing the confidential exchange of proprietary information (see Act § 8(b)(1)). Instead, because a confidentiality agreement is a valid contract enforceable according to its terms . . . Illinois law precludes the finding of "any implied duty of nondisclosure" that "would directly contradict the express agreement of the parties" . . . Thus a contract that defines the degree of confidentiality among the parties also serves to establish – and to define – the duty of confidentiality required to underpin an Illinois Act claim.

Nilssen v. Motorola, Inc., 963 F. Supp. 664, 680 (N.D. Ill. 1997) (citations omitted). See also

Marketel Int'l, Inc. v. Priceline.com, Inc., 36 Fed. Appx. 423, 425 (Fed. Cir. 2002) (holding that

no implied obligation of confidentiality existed under California version of Uniform Trade

Secrets Act because alleged misappropriation occurred after the four year contractual

confidentiality period established in the parties' agreement; "the written non-disclosure

agreement supplanted any implied duty of confidentiality that may have existed"); All West Pet

Supply Co. v. Hill's Pet Products Div., 840 F. Supp. 1433, 1439 (D. Kan. 1993) (holding that the

defendant's duty to maintain confidentiality expired at the end of an agreement, pursuant to the

agreement's express expiration date).[13]

As set forth above at page 8, Section 4.2 of the Evaluation License clearly and

unambiguously limited Phenomenex's confidentiality obligations to five years after the

termination of the Evaluation License, e.g., until September 29, 1998. See also Marketel, 36 F.

Fed. Appx. at 425 (limiting a confidentiality provision to a four year period expressed in the

---

[13] The trade secret statutes at issue in Marketel and All West Pet Supply Co. are the same as the trade secret statutes in Arizona and Delaware. Each of these statutes was taken from the Uniform Trade Secrets Act.

same contract); <u>All West Pet Supply Co.</u>, 840 F. Supp. at 1439 (limiting a confidentiality provision to the express date of termination in the same contract).

Accordingly, because the parties' specific agreement in the Evaluation License limiting misconduct to alleged misappropriations of trade secrets occuring through September 28, 1998, UDTC cannot state any statutory trade secret claim based on conduct arising after that date. As to claims arising before that date, those claims are time-barred as a matter of law under Delaware's three-year statute of limitations. <u>See</u> § II.A, <u>supra</u>.

IV.   FIVE COUNTS OF THE PROPOSED AMENDED COMPLAINT
      ARE PREEMPTED BY TRADE SECRET AND PATENT LAW

Five of the counts UDTC alleges in the Proposed Amended Complaint are displaced as a matter of law by the Delaware and Arizona trade secret statutes: Phenomenex's alleged violation of Delaware's Deceptive Trade Practices Act (Count VI); Unjust Enrichment (Count VII); Conversion (Count VIII); Accounting (Count XI) and Equitable or Resulting Trust (Count XII). Amendment with respect to those five claims should be therefore be denied on the basis of futility.[14] Preemption may be addressed on a Rule 12(b)(6) motion to dismiss, and can thus provide a basis for denial of a motion to amend on the grounds of futility. <u>See, e.g., Ethypharm S.A. v. Bentley Pharm., Inc.</u>, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (dismissing fraud and unjust enrichment claims on the basis of preemption on a motion to dismiss under R. 12(b)(6)); <u>Balthazar</u>, 137 Fed. Appx. at 488, 490 (denying motion to amend on the basis of futility where proposed claims would not meet Rule 12(b)(6) standard).

The Delaware Uniform Trade Secret Act ("DUTSA") unifies the law in Delaware with respect to trade secrets, preserving a single state-law cause of action for trade secret

misappropriation that "displaces conflicting tort, restitutionary and other [Delaware] law providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a). Courts have interpreted the statute such that it displaces any claim that is "grounded in the same facts which purportedly support the [statutory] Misappropriation of Trade Secrets claim." Savor Inc. v. FMR Corp., C.A. No. 00C-10-249-JRS, 2001 WL 541484, *4 (Del. Super. 2001).[15] To apply this rule, the court often looks to whether the potentially preempted claim would overlap with a claim of trade secret misappropriation such that "failure of the misappropriation claim would [also] doom" the potentially preempted common law claim. Ethypharm S.A., 388 F. Supp. 2d at 433 (citation omitted). Counts VI, VII, VIII, XI, and XII of the Proposed Amended Complaint each fail this test and therefore should be disallowed on the basis of futility.

   **Count VI (Alleged Deceptive Trade Practices).** In Count VI of the Complaint, UDTC alleges in relevant part that Phenomenex has:

> engage[d] in a persistent course of conduct to deceive the public to whom Phenomenex markets such that it represents [sic] expertise, experience and product design that are the result of secret misappropriation of the Licensed Technology and the '625 Patent.

(Proposed Amended Complaint ¶ 72.) The Federal Circuit Court of Appeals in On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1146 (Fed. Cir. 2004) held that a very similar allegation was preempted under the Connecticut version of the trade secret statute.[16] In that case, the plaintiff alleged that the defendant "had improperly used trade secrets obtained

---

[14] Count III (good faith and fair dealing) would also be preempted, to the extent UDTC attempts to raise the argument that this count sounds in tort. As discussed at note 9, supra, however, UDTC has not made this allegation.

[15] The preemption section of the Arizona trade secret statute, Ariz. Rev. Stat. § 44-407, is identical to the Delaware. Thus, it is not necessary for the purposes of this analysis to determine whether the Delaware or Arizona trade secret statute applies. See, e.g. 6 Del. C. § 2007 (2006); Ariz. Rev. Stat. § 44-407 (2006).

                                

from [plaintiff] to make its own products and <u>had represented to a variety of parties that</u>

<u>[plaintiff's] trade secrets were its own,</u>" the same allegations that UDTC makes here. <u>Id.</u> at 1146

(emphasis added).  The Court of Appeals held that this allegation was preempted:

> All of [plaintiff's] allegations relate to the misappropriation of
> trade secrets, as is clear from [plaintiff's] complaint, which relies
> upon [defendant's] alleged acquisition and use of [plaintiff's]
> confidential information.  As a result, we agree with the trial court
> that CUTSA preempts [plaintiff's] unfair trade practices claims.

<u>Id</u>.  <u>See also</u> <u>Penalty Kick Mgmt. Ltd. v. Coca Cola Co.</u>, 318 F.3d 1284, 1297-98 (11th Cir.

2003) (holding that the Georgia Trade Secret Act ("GTSA") preempted state law claims for

conversion, breach of confidential relationship and duty of good faith, and unjust enrichment,

finding that all are "wholly based upon a trade secret" and "on the same facts that comprise the

trade secret misappropriation claim," covered under the GTSA); <u>Opteum Financial Services,</u>

<u>LLC v. Spain</u>, 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005) (dismissing plaintiff's state law

claims for conversion, misappropriation and unjust enrichment as being "clearly based upon a

trade secret," and therefore preempted by the GTSA).

**Count VII, Alleged Unjust Enrichment.**  In Count VII of the Complaint, UDTC alleges

that Phenomenex has "benefited" from unauthorized use of UDTC's "Licensed Technology"

(which it defined in the Proposed Amended Complaint ¶ 34 as constituting its trade secrets and

information conveyed to Phenomenex under the Materials Treatment Agreement and Evaluation

License) and the '625 patent.  (Proposed Amended Complaint ¶ 78.)  This allegation is founded

on the same facts required to show trade secret misappropriation, e.g., that Phenomenex was

unjustly enriched by using UDTC's alleged trade secret without authorization and this allegation

would fail in its entirety if UDTC's trade secret claim were to fail, because the count is

---

[16]    The Connecticut statute, while not identical to the Delaware and Arizona statutes, is the
same as the Delaware and Arizona statutes in relevant part.

27

dependent on finding unauthorized use of UDTC's trade secrets. Amendment with respect to Count VII should therefore be denied. See, e.g., Ethypharm, 388 F. Supp. 2d at 434 (dismissing unjust enrichment claim under Rule 12(b)(6)) (applying Delaware law); Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 318 F. Supp. 2d 216, 219 (D. Del. 2004) (granting judgment as a matter of law on unjust enrichment claim) (applying California law); Penalty Kick Mgmt., 318 F.3d at 1297-98 (11th Cir. 2003) (affirming dismissal of state law claim for unjust enrichment under Rule 12(b)(6)) (applying Georgia law); Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Calif. 2005) (dismissing claim for unjust enrichment because the claim is based on the "same nucleus of facts as the misappropriation of trade secrets claim") (applying California law).

**Count VIII, Alleged Conversion.** Count VIII, conversion, is also preempted. To support this claim, UDTC alleges that it owns the "Licensed Technology" and that Phenomenex is improperly using it. (Proposed Amended Complaint ¶¶ 81-83.) As with the unjust enrichment count, this allegation is founded on the same facts required to show trade secret misappropriation, and it also would fail in its entirety if UDTC's trade secret claim were to fail. As a result, amendment with respect to Count VIII should be denied. See, e.g., Callaway Golf Co., 318 F. Supp. 2d at 219 (granting judgment as a matter of law) (applying California law).

**Counts XI and XII, Request for Accounting and Equitable or Resulting Trust.**

To support its claim that it is entitled to these remedies, UDTC again references the alleged trade secret misappropriation. (Proposed Amended Complaint ¶¶ 89, 93.) Count XI alleges that UDTC has suffered "damages and losses" from Phenomenex's "secret actions or otherwise in the misappropriation and permitted [sic] use of the Licensed Technology and the '625 Patent." (Proposed Amended Complaint ¶ 89.) Count XII similarly alleges that Phenomenex "systematically misappropriated, pilfered, stole or otherwise converted the

28

Licensed Technologies and the '625 Patent." (Id. ¶ 93.) Once again, these allegations are founded on the same facts required to show trade secret misappropriation, and they would also fail in their entirety if UDTC's trade secret claim were to fail. Amendment with respect to these counts should therefore be denied. See, e.g., Penalty Kick, 318 F.3d at 1297-98 (affirming dismissal of claims for conversion based on preemption); Opteum Financial Services, 406 F. Supp. 2d at 1380 (dismissing state law claims for conversion, misappropriation and unjust enrichment based on preemption).

**Patent-Law Preemption**

The allegations set forth as the basis for each of the counts discussed above (Counts VI – XII) suggest that each of these counts is grounded in the alleged patent infringement in addition to alleged trade secret misappropriation. These counts therefore also are preempted by the patent laws. See also Ultra-Precision Mfg. Ltd., v. Ford Motor Co., 411 F.3d 1369, 1377-79 (Fed. Cir. 2005) (holding that "state law that conflicts with federal law is without effect," and that federal patent law preempts state law which "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" federal patent law) (citations omitted); Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 168 (1989) (finding a Florida statute to conflict with federal patent laws).

V.    AMENDMENT OF UDTC'S COMPLAINT WITH RESPECT TO ITS DEMAND FOR AN ACCOUNTING AND THE IMPOSITION OF AN EQUITABLE OR RESULTING TRUST SHOULD BE DENIED AS FUTILE

UDTC attempts to allege equitable remedies as independent counts, in Counts XI (Demand for An Accounting) and Count XII (Demand for Imposition of An Equitable or Resulting Trust in Favor of UDTC). Amendment with respect to these claims should be denied on the basis of futility. The claims are remedies, not stand-alone causes of action.

29

Remedies cannot be imposed upon a party unless an underlying right has been breached. For example, in <u>Teachers' Retirement System of Louisiana v. AIG</u>, C.A. No. 20106, 900 A.2d 654 (Del. Ch. 2006), the Court of Chancery dismissed a purported stand-alone cause of action for the remedy of a constructive trust where the complaint did not allege the basis for a cause of action against the defendant. The court explained that it could not "impose the remedy of a constructive trust against a party unless that party is properly subject to an order of relief under a recognized cause of action." Slip op. at 25. <u>See also</u> Donald J. Wolfe, Jr. & Michael A. Pittenger, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 12-7[b] at 12-77 (March 2005) ("Constructive trusts have been employed to remedy unjust enrichment in a variety of situations. They are perhaps most often imposed to remedy breaches of fiduciary duty or the wrongful acquisition of title to property through fraud, duress, or other unconscionable conduct."). Here, it would be fundamentally unfair to subject Phenomenex to a cause of action which the courts have not recognized does not provide an independent basis of recovery. Phenomenex would be forced to guess the required elements of the cause of action. UDTC's Motion to Amend should be denied as futile, with respect to Counts XI and XII.

VI.    UDTC DOES NOT HAVE STANDING FOR ITS CLAIMS EXCEPT FOR A POST 2001 PATENT LAW CLAIM

    A.    UDTC Lacks Standing to Assert Contract Claims Under Either the Materials Treatment Agreement or the Evaluation License

In its Motion to Dismiss UDTC's original Complaint, Phenomenex demonstrated that UDTC did not have standing to assert a claim under either the Materials Treatment Agreement or the Evaluation License. UDTC's Proposed Amended Complaint suffers the same defect.

The Proposed Amended Complaint adds one new paragraph which appears to be an attempt to cure the standing problem of the original Complaint. In this respect, the new paragraph sets forth the conclusory allegation that "At all times relevant, [the University of

30

Delaware] was the owner of the intellectual property at issue herein, including the right . . . to

pursue contract damages pursuant to the contracts identified herein, between RCT and

Phenomenex." (Proposed Amended Complaint ¶ 9.)[17]  UDTC's Motion to Amend does not refer

to ¶ 9 of the Proposed Amended Complaint or otherwise explain how pleading deficiencies of

the initial Complaint have been corrected.  This Court should therefore strike any attempt by

UDTC to raise such argument in its reply brief on this motion.  See note 3, supra.

   UDTC, again, has failed to allege standing for its breach of contract claims.  The

conclusory allegation of ¶ 9 cannot create standing where such would be inconsistent with the

face of the contracts and the underlying assignment documents.  It is well-settled that:

> [c]onclusory allegations or legal conclusions masquerading as factual conclusions
> will not suffice to prevent a motion to dismiss.  While facts must be accepted as
> alleged, this does not automatically extend to bald assertions, subjective
> characterizations, or legal conclusions.

2-12 Moore, et al., MOORE'S FEDERAL PRACTICE § 12.34[1][b] at 12-61 - 12-63 (3d ed. 2006);

Gen. Motors Corp., 263 F.3d at 333 (3d Cir. 2001) (affirming the district court's dismissal of

claim for breach of implied covenant based on conclusory legal allegations).

   Here, the conclusory allegation of ¶ 9 of the Proposed Amended Complaint is

inconsistent with the plain and unambiguous language of the relevant contracts.  For example,

the only parties to the Materials Treatment Agreement were Phenomenex and RCT.  The

agreement does not in any way reference third-party beneficiaries.  Similarly, the Evaluation

License was entered into between Phenomenex and RCT and does not reference third-party

beneficiaries.  That agreement expressly and unambiguously provides that there were no third-

---

[17]    UDTC alleges that because it was granted certain rights from the University relating to
the '625 patent and the agreements related thereto (Proposed Amended Complaint ¶ 10),
and the University received those rights from RCT (see id. at ¶ 8), UDTC has rights to
pursue contract damages.

party beneficiaries to the obligations provided therein and that no third-parties were permitted to enforce the terms of the agreement. (Ex. B, § 7.4.)

Like the contracts themselves, the underlying assignment documents conflict with UDTC's conclusory allegation that it somehow acquired rights (through the University) to bring claims under the contracts at issue. Neither the July 2001 Agreement to Assign from RCT to the University nor the accompanying Deed of Assignment reference in any way the transfer of contractual rights. See Gen. Motors Corp., 263 F.3d at 333. In fact, the Agreement to Assign demonstrates that the parties expected RCT to retain certain rights in connection with the licensing of the '625 patent (see Ex. C, § 2.2(b)), an expectation that would be inconsistent with the parties' intent to transfer any and all rights, including contractual rights, from RCT to the University. Moreover, the Deed of Assignment specifically listed categories of rights that were transferred from RCT to the University – contractual rights are not among those categories. (Ex. C, § 1)[18]

Based on the plain language of the documents attached to this opposition, therefore, UDTC cannot, sufficiently allege standing under the contracts at issue. The conclusory allegation of ¶ 9 of the Proposed Amended Complaint is simply insufficient to meet the required threshold that plaintiff allege "a factual predicate concrete enough to warrant further proceedings." 2-12 Moore, et al., MOORE'S FEDERAL PRACTICE § 12.34[1][b] at 12-61 - 12-63.

---

[18]    Section 1 of the Deed of Assignment (Ex. C) provides that:

RCT hereby assigns to ASSIGNEE RCT's entire right, title and interest in:

(a) the INVENTION;
(b) the PATENT RIGHTS;
(c) all reissues, extensions, renewals and reexaminations of the patent rights described in (b).

064951.1001

The amendment UDTC seeks should be denied as futile with respect to UDTC's breach of contract claims.

      B.     <u>UDTC Lacks Standing to Assert A Trade Secret Misappropriation Claims</u>

The Proposed Amended Complaint asserts two nearly identical trade secret claims – one under the Arizona trade secret misappropriation statute (Count IV) and the other under the Delaware trade secret misappropriation statute (Count V). (Proposed Amended Complaint ¶¶ 55-70.) UDTC has not sufficiently alleged standing with respect to either of these statutes because RCT, not UDTC, would have been the entity with the right to sue when the claims would have arisen. Notwithstanding the conclusory allegation of ¶ 9 of the Proposed Amended Complaint, the complaint lacks any allegation that RCT transferred to UDTC (or the University) the right to sue for claims of trade secret misappropriation arising on or before the date of assignment. As set forth above, the confidentiality obligations of Phenomenex with respect to the technology at issue would have expired on September 28, 1998. <u>See</u> § II.A, <u>supra</u>. Therefore, misappropriations could not have occurred after this date. Assignment of rights from RCT to the University occurred in July 2001. The plain language of the Agreement to Assign and the accompanying Deed of Assignment from RCT to the University did not in any way reference the right to bring a claim for misappropriation of trade secrets or know-how, much less for misappropriations that occurred <u>prior</u> to the date of RCT's assignment. <u>See</u> note 18, <u>supra</u>. This is fatal to UDTC's standing, insofar as an assignment of intellectual property rights must expressly reference the right to sue for past infringement in order to transfer that right.[19] The

---

[19]     The patent law rule requiring express transfer of the right to sue for past infringement has been widely acknowledged to apply to every other form of intellectual property. <u>See, e.g.</u>, <u>H & J Foods, Inc. v. Reeder</u>, 477 F.2d 1053, 1056 (9th Cir. 1973) (holding that "pre-assignment [trademark] damages are disfavored, and they are allowed only when the right to sue is clearly spelled out in a valid assignment."); <u>George W. Luft Co. Inc., v.</u>

            

Motion to Amend should therefore be denied as futile with respect to UDTC's statutory trade secret claims.

C.      UDTC Lacks Standing to Assert A Claim For
        Patent Infringement Arising Prior to 2001

UDTC's purported claim for patent infringement in the Proposed Amended Complaint is similarly deficient, insofar as the complaint does not allege that RCT expressly transferred to the University or to UDTC the right to sue for any infringement arising prior to the date of transfer. It is well-settled that an assignment of rights to under a patent does not include the right to sue for prior infringement, unless such right is expressly transferred. Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("The right to sue for prior infringement is not transferred unless the assignment manifests an intent to transfer this right."). UDTC's conclusory allegation in ¶ 9 of the Proposed Amended Complaint is simply not sufficient to allege an express transfer of the prior right to sue for infringement. See, e.g., Gen. Motors Corp., 263 F.3d at 333; 2-12 Moore, et al., MOORE'S FEDERAL PRACTICE § 12.34[1][b] at 12-61 - 12-63 (Matthew Bender Co. 2005).

Moreover, the plain and unambiguous language of the 2001 assignment from RCT to the University confirm that RCT did not expressly convey rights greater than legal title to the patent. In this regard, Section 2.2(b) of the assignment requires RCT to pay moneys "received or to be

---

Zande Cosmetic Co., Inc., 142 F.2d 536, 541 (2d Cir. 1944) (stating the rule that "the assignment of a trade-mark, like the assignment of a patent, carries no right to sue for past infringements."); ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991) (holding that "a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them."). As a matter of logic and public policy, there is no reason to treat trade secrets differently; in fact, greater economic certainty is provided if the same rule – the right to sue for past infringement/misappropriation must be expressly transferred – applies to trade secrets along with patents, copyrights, and state and federal trademarks.

34

received by RCT . . . as a consequence of RCT's ownership of the '625 patent."[20]  This provision

would be meaningless if, as UDTC claims, RCT transferred all rights relating to the patent.

Moreover, the assignment on its face states that it will not become effective until July 24, 2001,

and does not mention retroactive application.  See Sicom Sys. Ltd. v. Agilent Techs., Inc., C. A.

No. 03-1171-JJF, 2004 U.S. Dist. LEXIS 19966, at *6 (D. Del. Oct. 5, 2004) (fact that contract

"is only effective as of the date it was signed" was one of bases for court's ruling that contract

did not transfer rights to sue for prior patent infringement).  Similarly, Section 1(c) of the Deed

of Assignment assigns various rights beyond legal title to the patent; the right to sue for past

infringement is not among those mentioned.  (Ex. C (Deed of Assignment) ¶ 1(c) (assigning

RCT's entire right, title and interest in reissues, extensions, renewals and reexaminations of the

patent ).)

Accordingly, UDTC does not have standing to assert a claim for infringement of the '625

patent arising prior to 2001.  The Motion to Amend with respect to such claim must be denied as

futile.

---

20    See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc., 248 F.3d 1333, 1342
      (Fed. Cir. 2001) ("In making such a determination [about standing to sue], it is helpful to
      consider  rights retained by the grantor in addition to rights transferred to the grantee.")
      (addressing licensee standing), aff'd in part and rev'd in non-relevant part, Intellectual
      Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc., 336 F.3d 1308 (Fed.
      Cir. 2003).

064951.1001

## CONCLUSION

For the reasons set forth above, Phenomenex respectfully requests that this Court deny the relief requested by UDTC in its Motion to Amend.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Elena C. Norman (No. 4780)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

Attorneys for Defendant Phenomenex, Inc.

Dated: August 21, 2006

36

## CERTIFICATE OF SERVICE

I, Elena C. Norman, Esquire, hereby certify that on August 21, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Michael P. Kelly
> McCarter & English, LLP
> 919 N. Market Street, Suite 1800
> P.O. Box 111
> Wilmington, DE 19899
> (302) 984-6301
> mkelly@mccarter.com

Additionally, I hereby certify that on August 21, 2006, a copy of the foregoing document was caused to be served by hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> Elena C. Norman (No. 4780)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6600
> enorman@ycst.com