IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UD TECHNOLOGY CORPORATION,    )
          )
        Plaintiff,    )
          )
      v.    )    Civil Action No.  05-842-GMS
          )
PHENOMENEX, INC.,    )
          )
        Defendant.    )

## DEFENDANT PHENOMENEX, INC.'S MOTION FOR REARGUMENT OF THE COURT'S JANUARY 26, 2007 ORDER (D.I. 47)

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw (No. 3362)
Karen L. Pascale (No. 2903)
Elena C. Norman (No. 4780)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
kkeller@ycst.com

*Attorneys for Defendant Phenomenex, Inc.*

Dated: February 9, 2007

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................... ii

SUMMARY OF ARGUMENT ...................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................2

STATEMENT OF FACTS ...........................................................................................3

ARGUMENT..............................................................................................................6

I.  THE COURT SHOULD PERMIT REARGUMENT OF ITS
    JANUARY 26 ORDER ALLOWING UDTC TO PROCEED
    WITH ITS CLAIM FOR PATENT INFRINGEMENT
    OCCURRING BETWEEN 2001-2004 BECAUSE UDTC'S
    MOTION FOR RECONSIDERATION MISREPRESENTED
    THE FACTS AND THE LAW...................................................................6

    A.  The Standard for Reargument ...........................................................6

    B.  UDTC's Misrepresentations of the Facts.........................................7

        1.  The Assignments Are Unambiguous on Their
            Face and Do Not Demonstrate That UDTC
            Has Standing To Sue for Infringement That
            Occurred Prior to May 2004 ................................................7

        2.  UDTC's Presentation of New Evidence Via Its
            Motion for Reconsideration Was Improper .........................9

    C.  UDTC's Misrepresentations of the Law ........................................10

        1.  Dismissal for Lack of Standing Can Be With Prejudice....11

        2.  UDTC's Repeated Failures to Cure Its Standing
            Deficiencies Warrant Dismissal With Prejudice................12

CONCLUSION........................................................................................................16

DB02:5778289.1                                                                          064951.1001

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acierno v. Worthy Bros. Pipeline Corp.,*
    693 A.2d 1066 (Del. 1997) ................................................................... 14

*Associated/ACC Int'l, Ltd. v. DuPont Flooring Sys. Franchise Co.,*
    2002 U.S. Dist. LEXIS 6464 (D. Del. Mar. 28, 2002) ................................. 14

*Bannon v. Knauss,*
    320 S.E.2d 470 (S.C. Ct. App. 1984) ...................................................... 14

*California Public Employees' Retirement Systems v. The Chubb Corp.,*
    394 F.3d 126 (3d Cir. 2004) ............................................................ 13, 14

*Carlon v. Thaman,*
    130 F.3d 309 (8th Cir. 1997) ................................................................ 13

*Cinel v. Connick,*
    15 F.3d 1338 (5th Cir. 1994) ................................................................ 11

*Corning Inc. v. SRU Biosystems,*
    C.A. No. 03-633-JJF, Memo. Opinion (D. Del. Jan. 20, 2006) ....................... 3

*Douglas v. Clark,*
    No. 92-1533, 1993 U.S. App. LEXIS 10321 (7th Cir. 1993) ........................ 13

*Fieldturf, Inc. v. Southwest Recreation Indus., Inc.,*
    357 F.3d 1266 (Fed. Cir. 2004) ............................................................. 11

*Figueroa v. Buccaneer Hotel, Inc.,*
    188 F.3d 172 (3d Cir. 1999) ................................................................. 11

*Foman v. Davis,*
    371 U.S. 178 (1962) ........................................................................... 13

*Foster v. JLG Indus., Inc.,*
    No. 06-1537, 2006 U.S. App. LEXIS 24898 (3d Cir. Oct. 4, 2006) ............... 13

*H.R. Technologies v. Astechnologies, Inc.,*
    275 F.3d 1378 (Fed. Cir. 2002) ............................................................. 10

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.,*
    248 F.3d 1333, 1342 (Fed. Cir. 2001) ..................................................... 8

*Iron Cloud v. South Dakota,*
    984 F.2d 241 (8th Cir. 1993) ...................................................................................12

*Kaplan v. Rose,*
    49 F.3d 1363 (9th Cir. 1994) ...................................................................................13

*Kiser v. General Electric Corp.,*
    831 F.2d 423 (3d Cir. 1987)......................................................................................11

*Korvettes, Inc. v. Brous,*
    617 F.2d 1021 (3d Cir. 1980)...................................................................................12

*Mir v. Fosburg,*
    646 F.2d 342 (9th Cir. 1980) ...................................................................................13

*Newman-Green, Inc. v. Alfonzo-Larrain,*
    490 U.S. 826 (1989)..................................................................................................12

*Miller v. Stanmore,*
    636 F.2d 986 (5th Cir. 1981) ...................................................................................11

*Schering Corp. v. Amgen, Inc.,*
    25 F. Supp. 2d 293 (D. Del. 1998)........................................................................9, 10

*Sicom Sys. Ltd. v. Agilent Technologies, Inc.,*
    C.A. No. 03-1171-JJF, 2004 U.S. Dist. LEXIS 19966 (D. Del. Oct. 5, 2004),
    *aff'd,* 427 F.3d 971 (Fed. Cir. 2005) .........................................................................8

*Sicom Sys. Ltd. v. Agilent Technologies, Inc.,*
    427 F.3d 971 (Fed. Cir. 2005)............................................................................10, 14

*Textile Prods., Inc. v. Mead Corp.,*
    134 F.3d 1481 (Fed. Cir. 1998)................................................................................10

*UDTC v. Phenomenex, Inc.,*
    C.A. No. 05-842-GMS, Memorandum (D. Del. Jan. 4, 2007) ........................... *passim*

*UDTC v. Phenomenex, Inc.,*
    C.A. No. 05-842-GMS, Order (D. Del. Jan. 26, 2007)....................................... *passim*

*Wentner v. Ridgewood Energy Corp.,*
    No. 94-15345, 1995 U.S. App. LEXIS 23766 (9th Cir. 1995) ...................................13

*Westlands Water Dist. v. Firebaugh Canal,*
    10 F.3d 667 (9th Cir. 1993) ......................................................................................13

*Willow Bay Assocs., LLC v. Immunomedics Inc.,*
    C.A. No. 00-99-GMS, 2002 U.S. Dist. LEXIS 10566 (D. Del. June 12, 2002) ..............

DB02:5778289.1
064951.1001

Statutes & Rules

28 U.S.C. §1653 ..................................................................................................11

Fed. R. Civ. P. 12(b)(1) ......................................................................................11

Fed. R. Civ. P. 12(b)(6) ......................................................................................11

Fed. R. Civ. P. 15(a) ..........................................................................................12

D. Del. LR 7.1.5 ...............................................................................................1, 16

Other Authorities

John Edward Murray, Jr., MURRAY ON CONTRACTS, § 30 (4th ed. 2001) ........................14

064951.1001

Defendant, Phenomenex, Inc. ("Phenomenex") hereby respectfully moves, pursuant to D. Del. L.R. 7.1.5, for reargument of the Court's January 26, 2007 Order (D.I. 47). The grounds for this motion are briefly and distinctly set forth below.

## SUMMARY OF ARGUMENT

1.      Plaintiff UD Technology Corporation ("UDTC") filed this action over one year ago and has yet to establish that it has standing to bring a claim for patent infringement for all time periods. Only in its fourth attempt at curing the problem did UDTC finally produce an assignment from the University to UDTC, and then only in an improper context (as an exhibit to a Motion for Reconsideration) (D.I. 45). In its Motion for Reconsideration, UDTC inaccurately represented to the Court that the August 2001 and November 2005 assignments transferred the right to sue for past infringement. The actual assignments, however, are unambiguous on their face and do *not* demonstrate that UDTC has standing to sue for infringement that occurred prior to May 27, 2004, the effective date of the first assignment to UDTC.

2.      Because UDTC has now tried and failed four times to cure its pleading problems, the Court should dismiss its claims for patent infringement prior to May 27, 2004 *with* prejudice. UDTC's motion for reconsideration claimed that the cases make it error to ever dismiss for lack of standing with prejudice, but UDTC was wrong. The prevailing Federal Circuit case law on the subject leaves to the district court's discretion whether to dismiss an action for lack of standing with prejudice. UDTC also failed to note that the Federal Circuit has held that it *is* appropriate to dismiss claims *with* prejudice when a plaintiff repeatedly fails to establish its standing to sue. UDTC neither cited nor even acknowledged this case law, even though the Federal Circuit decisions govern on patent issues. Here, UDTC has repeatedly failed to establish that it has ownership of the right to sue for past infringement under the '625 patent. Serial amendments such as those proffered by UDTC should be and are prohibited.

## NATURE AND STAGE OF THE PROCEEDINGS

This action arises out of UDTC's claims that Phenomenex infringes its patent related to high-performance liquid chromatography (HPLC) columns, and that Phenomenex breached certain contractual and statutory obligations. UDTC filed its initial Complaint against Phenomenex and third party RCT in December 2005. (D.I. 1). The initial Complaint did not attach any assignments or licenses indicating UDTC's ownership of the patent-in-suit. It contained only bare allegations regarding: (a) two assignments from the University of Delaware (the "University") to UDTC (with no discussion of the content or date of these assignments), and (b) an agreement to assign between RCT and the University on July 24, 2001. (D.I. 1 ¶¶ 8, 30). Phenomenex and RCT both moved to dismiss the Complaint. (D.I. 14, 22). Briefing on the motions to dismiss was completed on March 3, 2006.

On May 15, 2006, UDTC filed a letter with the Court stating that it had settled its claims with RCT and would be filing a stipulation restating the prior assignment of rights to UDTC as well as a "Clarification" assigning any rights remaining with RCT to UDTC. (D.I. 36). This "Clarification" was not filed until January 19, 2007, as an exhibit to UDTC's Motion for Reconsideration. (D.I. 45 at Ex. D).

On July 21, 2006, UDTC filed a Stipulation of Dismissal against RCT and a Motion to Amend its Complaint. (D.I. 37, 38). Phenomenex opposed UDTC's Motion to Amend as futile. (D.I. 41). The proposed amended complaint removed all allegations relating to RCT and proffered a conclusory allegation that appeared to relate to standing: "[A]t all times relevant, [the University of Delaware] was the owner of the intellectual property at issue herein, including the right to sue for past, present and future infringement ...." (D.I. 38, Ex. B at ¶ 9). Again, UDTC did not append any assignments or licenses evidencing UDTC's ownership of the patent-in-suit. Briefing on the Motion to Amend was completed on September 1, 2006.

2

On January 4, 2007, the Court issued a Memorandum and Order: (1) dismissing UDTC's claim for patent infringement prior to August 10, 2001; (2) conditionally dismissing UDTC's claim for patent infringement after August 10, 2001, with leave for UDTC to provide a more definite statement (including any evidence of an assignment from the University to UDTC after August 10, 2001); and (3) dismissing Counts II-XII (UDTC's state law and breach of contract claims and all claims against RCT). (D.I. 44).

UDTC moved on January 19, 2007 for reconsideration of the January 4 Order, requesting that the dismissal of its pre-August 10, 2001 patent infringement claim be made "without prejudice." (D.I. 45). Attached to the Motion for Reconsideration were additional assignments from the University to UDTC, and the settlement agreement (with cover letter) from RCT. These assignments had not previously been produced or attached to any court filing. In its motion UDTC represented to the Court that UDTC gained, by virtue of the additional assignments from the University, all right, title and interest in the '625 patent, "including the right to sue for past infringement". (D.I. 45 at 3).

The Court issued an Amended Order on January 23, 2007 (D.I. 46), modifying the language in paragraph 1(a) of the January 4 Order to clarify that the dismissal of the pre-2001 patent infringement claims was "without prejudice." Then, on January 26, 2007, the Court issued another Order (D.I. 47), denying UDTC's Motion for Reconsideration and—in apparent reliance on UDTC's representations in its Motion for Reconsideration —vacated paragraph 1(b) of the Court's January 4 Order.

## STATEMENT OF FACTS

In July of 1993, the inventors on the '625 patent, Mary J. Wirth and Hafeez O. Fatunmbi assigned the "INVENTION and PATENT RIGHTS" as defined in the assignment document to RCT.

As of July 24, 2001, RCT agreed to assign back to the University all rights in the patent, without any express transfer of the right to sue for past infringement. (Ex. A). The transfer was effectuated by a Deed of Assignment executed on August 10, 2001. *See* Ex. A (transferring RCT's "entire right, title and interest in (a) the invention, (b) the patent rights, and (c) all reissues, extensions, renewals and reexaminations of the patent rights described in (b)").

On May 27, 2004, in language strikingly similar to that ruled inadequate by the Court's January 4 ruling, the University assigned to UDTC all of its "right, title and interest" in the '625 patent (the "2004 Patent Assignment"). (Ex. B). Like with the assignment from RCT to the University, there again was no express provision in the assignment giving UDTC the right to sue for past damages or past infringement. (*Id.*). UDTC has not provided any other contemporaneous agreements related to the 2004 Patent Assignment; we therefore believe (unless additional documents exist that UDTC has not yet put into the record) that the 2004 Patent Assignment is the only document from 2004 that addresses this transfer of rights.

On November 30, 2005, the University executed a second agreement with UDTC. This agreement expressly provided that it did not change any of the terms in the 2004 Patent Assignment. (*See* Ex. C at p.2, ¶ 3) ("nothing in this Assignment of Rights shall change any of the terms of the Corporation Assignment")[1].

Nor does any provision in this agreement expressly convey to UDTC the right to sue for past patent infringement damages. In contrast, the agreement does expressly convey to UDTC the right

---

[1] This agreement defined "Corporation Assignment" as the May 27, 2004 assignment from the University to UDTC.

064951.1001

to sue for past wrongs. Thus, for example, Section 1.1 of the agreement provides, under the title "Assignment of University's Rights and Obligations Under the DECA":

> The University hereby assigns to the Corporation any and all of its rights arising under the DECA, including without limitation the rights to receive any and all past, present and/or future payments from RCT including, but not limited to the Royalty Obligations, as well as any and all past, present and/or future claims, demands, causes of action, of every name and nature, known or unknown, in law and in equity, arising out of, which may have existed, and/or which could have been asserted or in any way connected with the commercialization of the Technology by RCT under the DECA, including without limitation any and all past, present and/or future third party beneficiary rights held by the University.

(Ex. C at p.2).[2]

The agreement, in turn, makes clear that the patent-in-suit falls outside of the defined terms "DECA" and "Technology". For example, the first recital of the agreement defines the "DECA" as technologies transferred in 1990, three years before the patent-in-suit was filed. Technology is defined separately from "Patent" in the other recitals. Moreover, Section 1.1 ("Assignment of the University's Rights and Obligations Under the DECA") does not mention any patent rights – expressly or otherwise.

Finally, the assignment contains an integration clause stating:

> 4.1    This Assignment of Rights together with the Corporation Assignment, represents the entire agreement between the Corporation and the University with respect to the subject matter hereof and supercedes [sic] all other agreements or discussions between the parties whether in writing or oral, including any warranties, express or implied by the parties. No amendment or modification shall have any effect unless reduced to writing and signed by all parties thereto.

(Ex. C at p.2).

---

[2]    Of course, the University could only transfer the rights under this section that the University held. It does not appear, even from UDTC's "Clarifications" attached to its Motion for Reconsideration that RCT ever transferred any of these rights to the University in 2001.

**ARGUMENT**

I. **THE COURT SHOULD PERMIT REARGUMENT OF ITS JANUARY 26 ORDER ALLOWING UDTC TO PROCEED WITH ITS CLAIM FOR PATENT INFRINGEMENT OCCURRING BETWEEN 2001-2004 BECAUSE UDTC'S MOTION FOR RECONSIDERATION MISREPRESENTED THE FACTS AND THE LAW.**

A. **The Standard for Reargument.**

A motion for reconsideration should be granted if "it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension." *UDTC v. Phenomenex, Inc.*, C.A. No. 05-842-GMS, Order, at 2 (D. Del. Jan. 26, 2007) (D.I. 47).[3] Further, a district court should grant a motion for reconsideration when "(1) there has been an intervening change in controlling law; (2) there is newly discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice." *Willow Bay Assocs., LLC v. Immunomedics Inc.*, C.A. No. 00-99-GMS, 2002 U.S. Dist. LEXIS 10566, at *5-6 (D. Del. June 12, 2002)[4]. Such motions should not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Id.*

As detailed below, UDTC made both factual and legal errors in its Motion for Reconsideration, to which Phenomenex did not have an opportunity to respond. These material misrepresentations, we submit, led the Court to reach an erroneous ruling resulting in "manifest injustice."

---

[3]    UDTC's Motion for Reconsideration was filed as a motion to reconsider and amend a court order pursuant to Fed. R. Civ. P. 59(e). A motion for reconsideration under D. Del. L.R. 7.1.5 is considered the "'functional equivalent'" of a motion to amend a judgment pursuant to Rule 59(e). *Corning Inc. v. SRU Biosystems*, C.A. No. 03-633-JJF, Memo. Opinion, at 2 (D. Del. Jan. 20, 2006) (internal citations omitted).

[4]    Copies of all unreported opinions cited in this brief are attached as Ex. D.

064951.1001

**B.     UDTC's Misrepresentations of the Facts.**

    1.    The Assignments Are Unambiguous on Their Face and Do Not Demonstrate That UDTC Has Standing To Sue for Infringement That Occurred Prior to May 2004.

UDTC never owned, and still does not own, the right to sue for patent infringement damages that occurred during the August 10, 2001 to May 27, 2004 time period. UDTC states in its Motion for Reconsideration (D.I. 45) that the August 10, 2001 assignment from RCT to the University assigned "all right, title and interest in the '625 patent, including the right to sue for past infringement." (D.I. 45 at 3). It further alleges that on November 30, 2005, the University executed a second assignment to UDTC that transferred "all right, title and interest in, including the right to sue for past infringement of, the '625 patent." (*Id.*). The actual assignment documents, however (attached to UDTC's Motion for Reconsideration as Exhibits A and C), reveal that there is no express transfer in either document conferring on either the University or UDTC the right to sue for past infringement.

As this Court has already held, an assignment that merely transfers all of the "right, title and interest" in a patent, and does not expressly transfer the right to sue for past damages, will not give a party standing to sue for infringement prior to the date of that assignment. *UDTC v. Phenomenex, Inc.,* C.A. No. 05-842-GMS, Memo., at 7 (D. Del. Jan. 4, 2007) (citing cases) (D.I. 44)[5]. This was exactly the case with the RCT assignment to the University in 2001 and the 2004 Patent Assignment to UDTC is no different. It too, on its face, transfers *only* the University's "right, title and interest" in the '625 patent to UDTC.

---

[5]    The requirement of an express assignment serves the important policy goals of public notice and of avoiding the expenditure of precious judicial resources on claims that are doubtful or that otherwise would be subject to dismissal only after extensive discovery and use of judicial resources.

064951.1001

There is no language anywhere – in any agreement – that expressly transfers the right to sue for past infringement to UDTC. The 2004 Patent Assignment contains no language at all about an assignment of the right to sue for past infringements.[6]   The University retained a non-exclusive license under the 2004 Patent Assignment and the 2005 Agreement. (Ex. B, ¶ 4). Such a provision would be meaningless if all rights were in fact transferred to UDTC, including the right to sue for past infringement. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001) (addressing licensee standing, "[I]n making such a determination [about standing to sue], it is helpful to consider rights retained by the grantor in addition to rights transferred to the grantee."), *aff'd in part, rev'd in non-relevant part, Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308 (Fed. Cir. 2003).

In short, the assignments are unambiguous on their face and do not state an express transfer of the right to sue for past infringement. Furthermore, the assignments on their face recite their effective dates as May 27, 2004 and November 30, 2005, respectively, and do not mention retroactive application. *See Sicom Sys. Ltd. v. Agilent Technologies, Inc.*, C.A. No. 03-1171-JJF, 2004 U.S. Dist. LEXIS 19966, at *6 (D. Del. Oct. 5, 2004) (fact that contract "is only effective as of the date it was signed" was one basis for court's ruling that contract did not transfer rights to sue for prior patent infringement), *aff'd*, 427 F.3d 971 (Fed. Cir. 2005).

UDTC mischaracterized these documents in its Motion for Reconsideration, and it failed to discuss the content of the documents in light of the governing case law. Thus, only through inference (at best) can any transfer of the right to sue for past infringements be found. Finding the transfer through inference, of course, is not permitted under the case law. Moreover, Section 3 of the

---

[6]     The transfer of the right to sue for past infringement cannot be inferred from the mere assignment of the patent itself. *UDTC*, C.A. No. 05-482-GMS, Memo., at 5 (D.I. 44).

064951.1001

2005 agreement between the University and UDTC makes clear that no additional rights related to the patents were transferred in that document, "[e]xcept as *specifically set forth herein*." As stated above, however, nothing was specifically set forth in that agreement conveying the right to sue for past infringements.

> 2.    UDTC's Presentation of New Evidence Via Its
>        Motion for Reconsideration Was Improper.

Additionally, it was improper for UDTC to use its Motion for Reconsideration as a stealth method to get new evidence before the Court that was already in its possession at the time of original briefing on Phenomenex's Motion to Dismiss, which squarely raised the standing issue. *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998) (noting "a motion for reargument may not be used by the losing litigant as a vehicle to supplement or enlarge the record...upon which the merits decision was made unless 'new factual matters *not previously obtainable*' have been discovered since the issue was submitted to the Court.") (internal citations omitted) (emphasis added).

Briefing on Phenomenex's Motion to Dismiss was not completed until March 3, 2006, and briefing on UDTC's Motion to Amend was not completed until September 1, 2006. Both the May 2004 assignment and the November 2005 assignment were in the possession of UDTC during the time period those motions were being briefed. Not only is it UDTC's burden to demonstrate subject matter jurisdiction in its Complaint, but after Phenomenex raised the issue of standing in its Motion to Dismiss, UDTC should have been prepared to come forward with any and every document demonstrating its right to bring this lawsuit. *UDTC*, C.A. No. 05-842, Order, at 1 (D.I. 47); *UDTC*, C.A. No. 05-842, Memo., at 8 (D.I. 44). There is no conceivable excuse for UDTC's failure to produce these documents to the Court during the relevant briefing.

064951.1001

A motion for reconsideration is not the place to argue or present new evidence that was available at the time of the original briefing on the issue. *Schering Corp.*, 25 F. Supp. 2d at 295. Therefore, UDTC's attachment of the 2004 and 2005 assignments to its Motion for Reconsideration, together with the 2006 RCT settlement agreement and cover letter, was improper, and those documents need not have been considered by the Court.[7]

### C.    UDTC's Misrepresentations of the Law.

1.    Dismissal for Lack of Standing Can Be With Prejudice.

UDTC states throughout its Motion for Reconsideration that dismissal of a case for lack of standing must always be without prejudice. (D.I. 45 at 5-7). This is simply untrue. Recent Federal Circuit decisions have held that whether a dismissal should be with or without prejudice is at the discretion of the district court. *H.R. Technologies v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002). There are two situations where a dismissal with prejudice is appropriate, and both exist in this case. One of those situations is where the plaintiff has attempted multiple times to correct a standing deficiency and has failed. *Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005) (finding that the Delaware district court did not abuse its discretion in dismissing a patent infringement case with prejudice where plaintiff "twice attempted and twice failed to establish standing."); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) (affirming district court's dismissal of claim with prejudice because plaintiff "had chance to

---

[7]    UDTC did not seek reconsideration of the Court's January 4 Order as it related to the dismissal of its claims for patent infringement post-2001. The only relief sought by UDTC in their Motion was for the Court to "amend or alter the Opinion and Order to allow UDTC to file an amended pleading which will clarify that it in fact possesses the rights to pursue damages for Phenomenex's past [i.e., pre-2001] infringement of the '625 patent…" (D.I. 45 at 9). There was no request, either express or implied, for the Court to reconsider or address the dismissal of the post-2001 claims. Because the issue of dismissal of the post-2001 infringement claims was outside the adversarial issues presented to the Court, reargument of the January 26 Order is also appropriate.

064951.1001

show standing and failed"). The other situation is where "it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem." *Id.* at 1385; *see also Fieldturf, Inc. v. Southwest Recreation Indus., Inc.*, 357 F.3d 1266 (Fed. Cir. 2004) (remanding to the district court to determine whether plaintiff's claim should be dismissed with or without prejudice).

Both exceptions to the rule – which UDTC completely failed to acknowledge – apply here. On the other hand, the cases cited by UDTC are simply opposite to our facts. For instance, UDTC cites a Fifth Circuit case in which the plaintiff was *pro se* when the initial complaint was filed and later obtained counsel after briefing on a motion to dismiss for failure to plead under the correct statute (among other reasons). *Miller v. Stanmore*, 636 F.2d 986 (5th Cir. 1981). Here, UDTC has had competent and experienced counsel from the outset of the litigation, which is quite a different situation. Additionally, *Cinel* and *Figueroa* both involved motions to dismiss under Fed. R. Civ. P. 12(b)(6), not 12(b)(1). *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994); *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172 (3d Cir. 1999). This is significant because, unlike a motion under 12(b)(1), in considering a 12(b)(6) motion the court cannot look beyond the pleadings. *Cinel*, 15 F.3d at 1341. The court in *Cinel* also raised the issue of subject matter jurisdiction *sua sponte* (and then not as an issue of standing (as here), but of ripeness), so the plaintiff never before briefed the issue. These cases are also not from the Federal Circuit.

The statute cited by UDTC, 28 U.S.C. §1653, applies "in particular to amendments that affect a court's diversity jurisdiction" so that a court does not dismiss a diversity suit on technical grounds. *Kiser v. General Electric Corp.*, 831 F.2d 423, 426 (3d Cir. 1987) (allowing amendment where dismissal was based on diversity issues). Diversity jurisdiction is not at issue in this case. Furthermore UDTC never disclosed in its Motion for Reconsideration that § 1653 "allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts."

11

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (declining to expand scope of statute to allow plaintiff to amend its complaint to drop a party so as to produce complete diversity); *see also Iron Cloud v. South Dakota*, 984 F.2d 241, 243-44 (8th Cir. 1993) (denying motion to amend on appeal to add plaintiffs with standing because the motion sought to "overcome a defect in the jurisdictional facts"). We are dealing with defective jurisdictional facts here.

Finally, even the *Korvettes* case cited by UDTC states that "*[o]rdinarily* [a dismissal for lack of jurisdiction] is without prejudice," which of course demonstrates that without prejudice dismissal is not *always* the case. *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) (emphasis added). In *Korvettes*, the court found that it was improper to dismiss with prejudice because it was possible for circumstances to change, and the controversy between the parties to reoccur. This also bears no resemblance to the case at bar.

        2.      UDTC's Repeated Failures to Cure Its Standing
                <u>Deficiencies Warrant Dismissal With Prejudice.</u>

In this situation, dismissal with prejudice is analogous to denying UDTC a fifth chance to cure its standing problems. The U.S. Supreme Court has held that leave to amend under Fed. R. Civ. P. 15(a) should be denied where plaintiff has repeatedly "failed to cure deficiencies" by prior

12

amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962).[8] The Federal Circuit has affirmed this

Court's denial of an opportunity to cure a standing after just two attempts. In *Sicom*, the plaintiff

already had the opportunity to cure its standing deficiency twice and failed. *See Sicom*, 427 F.3d at

980. In addition, the Third Circuit has affirmed the District Court of New Jersey's denial of leave to

amend where plaintiffs moved to amend for a third time and the first two complaints failed to

comply with Fed. R. Civ. P. 9(b). *California Public Employees' Retirement Systems v. The Chubb

Corp.*, 394 F.3d 126, 164-65 (3d Cir. 2004). The district court in that case "provided...a detailed

roadmap" for how plaintiffs could cure their deficiencies, yet their second amended complaint still

failed to comply with the court's suggestions. *Id.* at 166. Therefore, the Third Circuit affirmed the

district court's denial of plaintiffs' motion to amend for a third time.

UDTC has now attempted four times to demonstrate to the Court that it has standing to bring

claims for patent infringement against Phenomenex. The first allegations appeared in their original

Complaint (D.I. 1). UDTC then submitted a letter to the Court (D.I. 36) informing the Court that it

---

[8]     *See also Foster v. JLG Indus., Inc.*, No. 06-1537, 2006 U.S. App. LEXIS 24898, at *5 (3d
Cir. Oct. 4, 2006) (affirming district court's denial of a fourth attempt to amend the
complaint where earlier amendments had failed to cure the deficiencies); *Carlon v. Thaman*,
130 F.3d 309, 323 (8th Cir. 1997) (affirming denial of leave to amend where plaintiffs
waited until two weeks after dismissal of their claims to attempt to remedy the problems they
were aware of months before); *Wentner v. Ridgewood Energy Corp.*, No. 94-15345, 1995
U.S. App. LEXIS 23766 (9th Cir. 1995) (affirming denial of leave to file a fourth amended
complaint where third amended complaint failed to cure pleading deficiencies and district
court instructed how to correct when granting the first motion to amend); *Kaplan v. Rose*, 49
F.3d 1363, 1370 (9th Cir. 1994) (denying leave to amend for among other reasons, already
amending the complaint twice); *Douglas v. Clark*, No. 92-1533, 1993 U.S. App. LEXIS
10321, at *6-7 (7th Cir. 1993) (affirming district court's denial of leave to file first amended
complaint where original complaint was dismissed without prejudice for lack of standing and
amended complaint did not cure deficiencies); *Westlands Water Dist. v. Firebaugh Canal*, 10
F.3d 667, 677 (9th Cir. 1993) (noting district court's discretion is "particularly broad where
the plaintiff has bypassed other opportunities to amend"); *Mir v. Fosburg*, 646 F.2d 342, 347
(9th Cir. 1980) (denying leave to file a second amended complaint where original and
amended complaint were dismissed for lack of jurisdiction) (holding district court's
discretion is especially broad "where the court has already given a plaintiff *one or more*
opportunities to amend his complaint...") (emphasis added).

would be submitting a Clarification of the assignments from the various parties. No "Clarification"
was ever submitted.[9] After settling its case with co-defendant RCT, UDTC moved to amend its
pleadings (D.I. 38). This motion did not demonstrate standing to sue, as the Court held in its January
4 Order. Finally, in response to the Court's January 4, 2007 Order dismissing both UDTC's pre- and
post-2001 infringement claims (D.I. 44), UDTC attached to its Motion for Reconsideration (D.I. 45)
certain exhibits containing additional assignments allegedly showing that UDTC has such standing.

What all of these pleadings and documents continually fail to show, however, is that UDTC
ever possessed, or currently possesses, the right to sue for infringement that allegedly occurred prior
to May 27, 2004, the effective date of the first assignment to UDTC. Indeed, UDTC's repeated
deficiencies in this case are even more egregious than those presented in *Sicom* (where the plaintiff
failed to establish standing after two attempts). And the instant case resembles *California Public
Employees' Retirement Systems*, in that the Court provided UDTC a "detailed roadmap" as to how to
fix its standing problems in its January 4 Order; and UDTC still has not gotten it right. Perhaps
UDTC has not provided the evidence because the evidence does not exist. Whatever the reason,

---

[9]    The 2006 letter from RCT attached to UDTC's Motion for Reconsideration as Exhibit D was
perhaps the promised "Clarification." This post-contracting subjective view of contractual
meaning is not evidence of contract meaning. *Bannon v. Knauss*, 320 S.E.2d 470, 472 (S.C.
Ct. App. 1984) ("Interpretation of the contract is governed by the objective manifestation of
the parties' assent at the time the contract was made. It does not depend on the subjective,
after the fact meaning one party assigns to it.") (internal citations omitted); *Acierno v.
Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1070 (Del. 1997) ("An overt manifestation of
assent, not a subjective intent, controls the formation of a contract. The unexpressed
subjective intention of a party is therefore not relevant."); John Edward Murray, Jr., MURRAY
ON CONTRACTS, § 30 (4th ed. 2001) ("A legion of cases support the view that the outward
manifestations of the parties – their expressions – will be viewed as the exclusive view
of the parties' intentions rather than assertions of their subjective intention."). In any event,
extrinsic evidence can never be used to vary an otherwise clear, express and unambiguous
agreement. *Associated/ACC Int'l, Ltd. v. DuPont Flooring Sys. Franchise Co.*, C.A. No. 99-
803-JJF, 2002 U.S. Dist. LEXIS 6464, at *8-10 (D. Del. Mar. 28, 2002) ("when the language
is unambiguous and has 'an unmistakable meaning, the writing itself is the sole source for
gaining an understanding of intent'") (granting motion for summary based on unambiguous
contract language) (citations omitted).

however, UDTC should be precluded from making a *fifth* attempt to correct its standing problem. Its

pre-May 27, 2004 patent infringement claims should be dismissed *with* prejudice.

15

## **CONCLUSION**

For all of the reasons stated herein, Phenomenex respectfully moves the Court to grant reargument pursuant to D. Del. L.R. 7.1.5 and dismiss UDTC's claims for patent infringement prior to May 27, 2004 with prejudice.  A proposed form of order is filed with this Motion.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*[signature]*

John W. Shaw (No. 3362)
Karen L. Pascale (No. 2903)
Elena C. Norman (No. 4780)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
kkeller@ycst.com

*Attorneys for Defendant Phenomenex, Inc.*

Dated: February 9, 2007

16

064951.1001

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on February 9, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

| | |
|---|---|
| Michael P. Kelly, Esquire | Benjamin J. Schladweiler, Esquire |
| McCarter & English, LLP | Morris, Nichols, Arsht & Tunnell |
| 919 N. Market Street, Suite 1800 | 1201 N. Market Street |
| P.O. Box 111 | P.O. Box 1347 |
| Wilmington, DE  19899 | Wilmington, DE 19899 |

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen E. Keller (No. 4489)
*kkeller@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Phenomenex, Inc.*