# EXHIBIT C

**Westlaw.**

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
Not Reported in F.Supp.2d, 2006 WL 155255 (D.Del.)
(Cite as: 2006 WL 155255 (D.Del.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
CORNING INCORPORATED, et al., Plaintiffs,
v.
SRU BIOSYSTEMS, et al., Defendants.
No. Civ.A. 03-633-JJF.

Jan. 20, 2006.

Richard L. Horwitz, and David E. Moore, of Potter Anderson & Corroon LLP, Wilmington, Delaware, Larry L. Shatzer, Andrew E. Rawlins, Kenneth E. Krosin, and George C. Best, of Foley & Lardner, Washington, D.C., for Plaintiffs, of counsel.

Steven J. Balick, and John G. Day, of Ashby & Geddes, Wilmington, Delaware, John J. McDonnell, Daniel A. Boehnen, Matthew J. Sampson, Richard A. Machonkin, Patrick G. Gattari, of McDonnell Boehnen Hulbert & Berghoff LLP, Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Pending before the Court is a Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order (D.I.299) filed by Defendants, SRU Biosystems, LLC, SRU Biosystems, Inc. and SRU Biosystems Holdings, LLC (collectively, "SRU"). Corning Incorporated and Artificial Sensing Instruments ASI AG (collectively, "Corning") have filed an Opposition to SRU's request. For the reasons discussed, the Court will deny SRU's Request For Reconsideration.

I. THE PARTIES' CONTENTIONS

By its Motion, SRU requests the Court to reconsider its November 15, 2005 decision on three grounds. Specifically, SRU contends that (1) the Court overlooked testimony of Corning's own witness in concluding that the '843 patent was not invalid for lack of written description; (2) the Court erroneously excluded the '248 patent which SRU maintains is relevant to this action; and (3) the Court should consider whether the '843 patent is invalid as indefinite as a result of an intervening development in the law, i.e. the Federal Circuit's recent decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377 (Fed.Cir.2005).

In response, Corning contends that the Court should deny reargument, because SRU restates arguments that have already been made by SRU in its prior submissions and rejected by the Court. Corning also contends SRU's request to reconsider the Court's exclusion of the '248 patent is untimely. As for the Federal Circuit's recent decision in *IPXL,* Corning contends that SRU waived any argument related to indefiniteness by failing to raise an indefinite argument at any point prior to the instant Request For Reconsideration.

II. STANDARD OF REVIEW

A motion for reconsideration under Delaware Local Rule 7.1.5 which is timely filed and challenges the correctness of a previously entered ordered is considered the "functional equivalent" of a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). [FN1] *In re DaimlerChrysler AG Securities Litigation,* 200 F.Supp.2d 439, 441 (D.Del.2002) (citations omitted). The purpose of a motion for reconsideration filed pursuant to Rule 59(e) is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999). Motions for reargument or reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court. *Karr v. Castle,* 768 F.Supp. 1087, 1090 (D.Del.1991); *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990). Thus, a court may only grant reconsideration if there is: (1) a change in the controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. *Max's Seafood,* 176 F.3d at 677. With this standard in mind, the Court will address SRU's Request For Reconsideration.

　　FN1. Because SRU's motion is made under Del. L.R. 7.1.5, Corning couches its discussion of the standard of review solely

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00842-GMS    Document 50-4    Filed 02/26/2007    Page 3 of 8

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2006 WL 155255 (D.Del.)
**(Cite as: 2006 WL 155255 (D.Del.))**

in terms of that which is required for reargument. Reargument, like reconsideration, is granted sparingly, but the grounds justifying reargument differ slightly from that which is required for reconsideration. Specifically, reargument is only appropriate where: (1) the court has patently misunderstood a party, (2) the court has made an error not of reasoning, but of apprehension, and (3) the court has made a decision outside the scope of the issues presented to the court by the parties.

Though brought under Del. L.R. 7.1.5, the Court believes SRU is seeking reconsideration as evidenced both by the relief it requests and its use of the term "reconsideration" throughout its briefing. However, under either the standard for reargument or the standard for reconsideration, the Court concludes that SRU is not entitled to relief.

III. DISCUSSION

A. *Whether SRU Is Entitled To Reconsideration Of The Court's Decision To Exclude The '248 Patent*

\*2 SRU requests the Court to reconsider its decision excluding from evidence the '248 patent. SRU contends that the '248 patent is a continuation of the '843 patent, and thus, relevant to demonstrate that the '843 patent fails to satisfy the written description requirement.

SRU raised these arguments previously, and they have already been considered by the Court. In addition, the Court's decision excluding the '248 patent from evidence was issued on September 27, 2005, with a Memorandum Opinion explaining the Court's decision on October 5, 2005. Thus, SRU was required to raise any motion to reconsider or reargue that decision by October 20, 2005, at the latest. Accordingly, the Court declines to grant reconsideration of its decision to exclude the '248 patent.

B. *Whether SRU Is Entitled To Reconsideration Of The Court's Decision That SRU Failed To Establish Invalidity Of The '843 Patent Based On Lack Of Written Description*

SRU also requests reconsideration of the Court's decision regarding the invalidity of the '843 patent based on the lack of written description. SRU contends that one of ordinary skill in the art would know that the evanescent field can actually extend into the sample more than one wavelength. SRU contends that the testimony of Corning's Dr. Pollock supports its position, and therefore, the Court erred in concluding that the specification teaches that the evanescent wave penetrates less than one wavelength into the sample and that the chemoresponsive layer within the evanescent field must therefore be less than one wavelength thick.

SRU's arguments concerning the written description requirement have already been raised in its previous briefing and considered by the Court. SRU has not demonstrated that reconsideration of these arguments is warranted.

In a letter requesting oral argument on its request for reconsideration, SRU contends that Corning has changed its position regarding what the '843 patent discloses. Specifically, SRU contends that Corning has "now admitted that the '843 patent discloses that 'the thickness of the chemo-responsive layer can be more than the evanescent filed.' " (D.I.312) (citing D.I. 306 at 9). However, it appears to the Court that Corning has always recognized that the '843 patent describes other sensors, such as sensors that work on absorption principles, and that in those types of sensors the thickness of the chemo-responsive layer can be more than the thickness of the evanescent field. D.I. 279 at 25-26; D.I. 275 at PFF 436. However, Corning has also argued that in sensors using adsorption principles, the chemo-responsive layer must be less than the evanescent field, and the Court's discussion of this issue is in the context of an adsorption layer. As such, the Court is not persuaded that it overlooked SRU's arguments or the testimony of Dr. Pollock as it pertains to this issue, and therefore, the Court is not persuaded that reconsideration of the Court's written description decision is warranted.

C. *Whether SRU Is Entitled To Reconsideration In Light Of The Federal Circuit's Decision In IPXL Holdings, L.L.C. Relating To Indefiniteness*

\*3 SRU also contends that reconsideration is appropriate so that the Court can consider whether the '843 patent is invalid for indefiniteness in light of the Federal Circuit's recent decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377 (Fed.Cir.2005). In *IPXL,* the Federal Circuit concluded that an invention is invalid for indefiniteness if it is a combination of two statutory classes of the invention. However, SRU did not raise an indefiniteness defense in response to Corning's

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 155255 (D.Del.)  
**(Cite as: 2006 WL 155255 (D.Del.))**

Page 3

Interrogatories requesting SRU's defenses, in the Joint Proposed Pretrial Order, at trial or in any of its original post-trial submissions. Although SRU contends that the *IPXL* decision was reached by the Federal Circuit as a matter of first impression, the Court notes that this type of indefiniteness argument was available to SRU well before the trial in this case, despite the lack of available Federal Circuit precedent on point. Specifically, the U.S. Patent & Trademark Office concluded in a published decision fifteen years ago that a patent claim is invalid if it is a combination of two statutory classes of invention. *See Ex parte Lyell,* 17 U.S.P.Q.2d 1548, 1552 (Bd. Pat.App. & Inter.1990). Further, the United States District Court for the Eastern District of Virginia reached the same conclusion in the *IPXL* case more than a year ago and before the trial in this case. In addition, SRU has not offered any reasons for its failure to pursue this argument earlier. Accordingly, the Court concludes that SRU's argument related to indefiniteness has been waived, and therefore, it is not the proper subject of a motion for reargument. *See e.g., Davis v. Mountaire Farms, Inc.,* 2005 WL 180054, *1 (D.Del. Jul. 29, 2005) (declining to address newly raised argument and recognizing that such an argument is "not properly the subject of a motion for reargument").

CONCLUSION

For the reasons discussed, the Court will deny SRU's Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order.

An appropriate Order will be entered.

ORDER

At Wilmington, this *20* day of January 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that SRU's Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order (D.I.299) is *DENIED.*

Not Reported in F.Supp.2d, 2006 WL 155255 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv00633 (Docket) (Jul. 10, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2000 WL 1251907 (D.Del.)
(Cite as: 2000 WL 1251907 (D.Del.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
PIPE LINERS, INC. and Hydro Conduit Corporation,
Plaintiffs,
v.
PIPELINING PRODUCTS, INC., Defendant.
No. Civ.A. 98-164(SLR).

Aug. 9, 2000.

Richard D. Kirk, of Morris, James, Hitchens & Williams, Wilmington, Delaware, Bradley B. Geist, Louis S. Sorell, David T. Cunningham, Richard L. Blaylock, and Gary Butter, of Baker & Botts, LLP, New York, New York, for Plaintiffs, of counsel.

Douglas E. Whitney, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Edward V. Filardi, Benjamin S. Lee, and Vincent Filardo, Jr., of White & Case, L.L.P., New York, New York, for Defendant, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Currently before the court is plaintiffs Pipe Liners, Inc. and Hydro Conduit Corporation's motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). (D.I.181) Plaintiffs contend that newly discovered evidence requires the court to amend its October 22, 1999 order and deny defendant Pipelining Products, Inc.'s motion for summary judgment of noninfringement under the doctrine of equivalents. Because this newly discovered evidence raises disputed issues of material fact, the court shall amend its prior order and deny defendant's motion for summary judgment of noninfringement under the doctrine of equivalents.

II. BACKGROUND

At issue is whether "new evidence" produced by plaintiffs compels the court to alter its finding that defendant did not infringe claim 12 of U.S. Patent No. 4,985,196 ("the '196 patent") under the doctrine of equivalents. Defendant had moved for summary judgment that it did not infringe claim 12 of the '196 patent either literally or under the doctrine of equivalents. Claim 12 of the '196 patent reads as follows:

a process for installing in situ a thermoplastic liner in a generally horizontally extending, generally cylindrical pipe, comprising the steps of:
(a) providing an elongate hollow liner formed of thermoplastic material having a cross-section altered at a shape memory activation temperature from a generally cylindrical cross-section having an original outer diameter substantially comparable to the inside diameter of the pipe to be lined to a reduced cross-section having reduced cross-sectional dimensions to enable the liner to be pulled into the pipe, said liner in said altered cross-section having a predetermined wall thickness;
(b) inserting said altered liner into said pipe such that end portions of said liner extend beyond opposite ends of said pipe;
(c) partially expanding the liner ends portions which extend beyond the opposite ends of the pipe by mechanical means inserted into said liner end portions such that said expanded liner end portions approximate the original cylindrical shape of said liner;
(d) sealing the expanded liner end portions beyond the opposite ends of said pipes to seal the interior of said liner at its opposite ends;
(e) subsequent to the step of sealing the liner and while maintaining the liner sealed, generally conforming said liner to the interior wall of the pipe while maintaining substantially the original predetermined wall thickness by (1) injecting a heated fluid into and through said sealed liner, (2) pressurizing the interior of said liner to a first predetermined pressure above atmospheric pressure by means of said heated fluid and (3) reheating said liner to a predetermined temperature by heat transfer from said heated fluid to said liner, whereby, the liner returns substantially to its remembered cylindrical cross-section; and
(f) then increasing the pressure in said liner to a second predetermined pressure above said first predetermined pressure to conform the liner substantially precisely to the interior wall surface contours of the pipe; and
*2 (h) while the liner is still hot, introducing a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 1251907 (D.Del.)  
**(Cite as: 2000 WL 1251907 (D.Del.))**

Page 2

cooling fluid into the liner for flow therethrough to fix the liner in final form in conformance to the interior wall of the pipe. [FN1]

> FN1. There is no element (g) to claim 12.

('196 patent, col. 10, lns. 60-68, col. 11, lns. 1-37, col. 12, lns. 1-2) In its October 22, 1999 opinion, the court construed element (a)'s term "shape memory activation temperature" as the crystallization point of a given thermoplastic, calculated according to the following formula:

$T_c \ll\text{congruent}\gg (T_m + T_g)/2$ where $T_c$ is the crystallization temperature, $T_m$ is the melting temperature and $T_g$ is the glass transition temperature.

(D.I. 174, opinion at 19) This construction necessitated the finding that defendant's Sure-Line® process does not literally infringe the '196 patent because there was no dispute that the Sure-Line® process alters its thermoplastic pipe liner at temperatures well below the liner's shape memory activation temperature. In their motion to alter or amend the judgment, plaintiffs do not challenge the court's claim construction or its finding that defendant's Sure-Line® process does not literally infringe the '196 patent.

As for whether the Sure-Line® process infringes the '196 patent under the doctrine of equivalents, the court concluded in its October 22, 1999 opinion that there was a substantial difference between the way in which the Sure-Line® process alters the liner's cross section and the way disclosed in element (a) of claim 12. The court reasoned that the difference between altering the liner at a shape memory activation temperature and altering it at a significantly lower temperature was not insubstantial. Moreover, evidence in the record indicated that altering a thermoplastic liner at a temperature below its shape memory activation temperature produces a substantially different result. Namely, the evidence revealed that liners deformed according to the Sure-Line® process tend to reround after deformation unless restrained by tensile tape whereas a liner altered at a shape memory activation temperature has "substantially no tendency to return to its original shape once the deforming stresses are removed." [FN2] (D.I. 17 at A356) Because it found that defendant did not infringe element (a) of claim 12 under the doctrine of equivalents, the court did not address plaintiffs' further argument that defendant's pressurization of its liners also infringed element (f) of claim 12.

> FN2. The quoted language appears in the prosecution history in a letter to the patent examiner from the inventor's patent counsel explaining the significance of deforming liners at a shape memory activation temperature. The inventor also attempted to include the quoted language in a later deleted claim that specifically recited that "the liner is maintained in its reduced cross-sectional shape with substantially no tendency to return to its cylindrical shape." (D.I. 17 at A342) The court found patent counsel's explanation of the effects of altering a liner at a shape memory activation temperature helpful in determining whether there was a substantial difference between altering a liner at its shape memory activation temperature and altering a liner at a manifestly lower temperature. The court did not, as plaintiffs suggest, import the quoted limitation into element (a) of claim 12. (*See* D.I. 182 at 13 n.9)

Now, plaintiffs have come forth with new evidence that purports to establish that liners deformed according to the Sure-Line® process exhibit shape memory activation properties. This new evidence also allegedly indicates that defendant's pressurization process is the substantial equivalent of element (f) of claim 12. This evidence consists of a test conducted by plaintiffs' expert, Stanley Mruk, on a Sure-Line® liner. Mruk observed both the deformation and the insertion of the Sure-Line® liner into a host pipe. The host pipe had three windows cut into its side to permit observation of the liner during its installation. Mruk noted that, after the removal of the tensile tape from the Sure-Line® liner, the liner retained its deformed "U-shape" during the insertion of the liner into the host pipe. Moreover, Mruk commented that the deformed liner did not tend to reround and, indeed, retained its deformed "U-shape" until after the introduction of pressurized steam. [FN3] This, he concluded, "confirms the use of memory activation properties in the Sure-Line liner." (D.I. 183 at A008, ¶ 19)

> FN3. Specifically, Mruk observed the following:
> After only a minute, just as the thermocouple showed an increase in the outside surface temperature of the liner to approximately 95° F and the pressure inside the liner reached approximately 4 psi, the liner quickly rerounded from its U-shape to its original round shape. Thus, in my

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 1251907 (D.Del.)
**(Cite as: 2000 WL 1251907 (D.Del.))**

opinion the Sure-Line liner retained its U-shape until the combination of pressure and heating to temperatures approaching the deforming temperature caused the liner to reround.
(D.I. 183 at A007, ¶ 16)

**\*3** Mruk further contends that the test reveals that the Sure-Line® liner "rerounded at a gauge pressure of approximately 4 to 5 psi and that after the pressure was further increased to defendant's target pressure in the 20-25 psi range, the liner subsequently achieved conformance [with the host pipe]." (D.I. 183 at A008, ¶ 20) Plaintiffs argue that this pressurization procedure is the substantial equivalent of element (f) of the '196 patent because it uses a "second predetermined pressure above [a] first predetermined pressure to conform the liner substantially precisely to the interior wall surface contours of the pipe." ('196 patent, col. 11, lns. 31-35)

III. DISCUSSION

The court first must ascertain whether plaintiffs' motion meets the threshold requirements of Rule 59(e). A motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995).

Plaintiffs contend that defendant refused numerous requests to produce a sample of the liner used in the Sure-Line® process and that defendant only provided plaintiffs with a sample of the liner on October 12, 1999. Plaintiffs state that, after receiving the sample, Mruk conducted the test on October 15, 1999 and completed his analysis on October 22, 1999. (D.I. 182 at 10) Defendant, on the other hand, counters that plaintiffs were well aware that it purchased its liner from a third party and that plaintiffs could have purchased liners from this third party and conducted their tests before October 1999. (D.I. 186 at 7; D.I. 187 at B002 (May 22, 1998 letter from defendant's counsel to plaintiffs' counsel indicating that defendant uses Plexco thermoplastic pipe in its Sure-Line® process)) Defendant, however, resisted plaintiffs' efforts to observe the deformation process and the various parameters of deformation. Indeed, this topic was the subject of no less than three telephone conferences with the court. (See generally D.I. 90, D.I. 138, D.I. 151) (telephone conf. trans.) Because of these delays, the results of plaintiffs' test on defendant's process were not available to the court prior to its decision on defendant's motion for summary judgment. Consequently, the court concludes that the evidence presented in support of plaintiffs' Rule 59(e) motion is "new evidence."

Next, the court must consider whether this new evidence warrants altering its prior conclusion that defendant's Sure-Line® process does not infringe the '196 patent under the doctrine of equivalents. A finding of equivalents infringement turns on whether "the differences between the claimed invention and the accused device ... are 'insubstantial.' " Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1563-64 (Fed.Cir.1996). Differences are insubstantial if "the element of the accused device at issue performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the limitation at issue in the claim." Dawn Equip. Co. v. Kentucky Farms Inc., 140 F.3d 1009, 1016 (Fed.Cir.1998).

**\*4** In its October 22, 1999 opinion, the court concluded that the Sure-Line®) process performs the same function as that taught in element (a) of claim 12. It deforms the cross-section of the pipe liner to facilitate insertion of the liner into a host pipe. Nonetheless, the court concluded that the differences between the Sure-Line® process and the '196 patent were substantial (1) because Sure-Line® liners are deformed in a different way than liners deformed according to the '196 patent and (2) because this difference in deformation produced significantly different results. Specifically, the evidence indicated that the Sure-Line® liner is deformed at temperatures significantly below its shape memory activation temperature. The evidence also suggested that this lower deformation temperature caused the Sure-Line® liner to reround after deformation unless restrained by tape, whereas liners deformed according to step (a) of claim 12 would not reround until after the application of steam and pressure.

The new evidence submitted by plaintiffs suggests that, even though the way in which the two processes deform the liner differs, the results produced by each process may be equivalent. Plaintiffs' test reveals that defendant's liner, although not deformed at its shape memory activation temperature, nonetheless retains its deformed "U-shape" after the removal of the tensile tape and only returns to round after pressure and steam are applied during the reformation stage of the Sure-Line® process. Because the Sure-Line® liner retains its "U-shaped" cross-section after removal of the tape even though it is deformed at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00842-GMS    Document 50-4    Filed 02/26/2007    Page 8 of 8

Not Reported in F.Supp.2d											Page 4
Not Reported in F.Supp.2d, 2000 WL 1251907 (D.Del.)
(Cite as: 2000 WL 1251907 (D.Del.))

relatively low temperatures, the evidence raises the question of whether the lower deformation temperature employed in the Sure-Line® process is equivalent to element (a)'s shape memory activation temperature.

Defendant questions the validity of plaintiffs' testing procedures. Its criticism rests on the fact the Sure-Line® liner returned to round when the liner surface temperature reached the mid-90° F range. Defendant contends that it frequently installs its liners in areas where the ambient temperatures reach 90° F. Thus, defendant concludes that plaintiffs' new evidence establishes only that Sure-Line® liners have no "U-shape" memory because they return to round at ambient temperatures. Plaintiff's expert notes, however, that the test liner was heated with pressurized steam at approximately 212° F and that, while the surface of the liner may have been in the 90° F range when it rerounded, the temperature of the liner as a whole was approximately 150° F. The dispute between these two experts is fundamentally a factual one and, as such, capable of resolution only by a jury.

The new evidence also raises genuine issues of material fact regarding whether the Sure-Line® process infringes element (f) of claim 12 by utilizing two different pressure stages in its reformation process. Because these disputed issues of material fact exist, the court must amend its October 22, 1999 order and deny defendant's motion for summary judgment of noninfringement under the doctrine of equivalents.

IV. CONCLUSION

*5 For the aforementioned reasons, the court shall grant plaintiffs' motion to amend the court's October 22, 1999 order. An appropriate order shall issue.

Not Reported in F.Supp.2d, 2000 WL 1251907 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:98cv00164 (Docket) (Apr. 02, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.